UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| v. | ) | Case Nos. 17-8092 |
| | ) | |
| TOWN OF EVANSVILLE, | ) | |
| WYOMING, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

_____

On Appeal from the United States District Court
for the District of Wyoming

The Honorable Nancy D. Freudenthal
District Court Judge

D.C. No. 17-CV-00017-NDF

_____

**APPELLANT'S APPENDIX VOLUME I**

_____

Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Tel: (307) 760-6258
E-mail: mlhayes@wyoming.com
Attorney for Roy Mestas

# APPENDIX TABLE OF CONTENTS

## VOLUME I

Appendix Table of Contents …………………….....……………………. i

Certificate of Service……………………………………………………….iv

Certificate of Digital Submission and Privacy Redactions…………………iv

Certificate of Compliance……………………………………………......... v

Docket Sheet …………………….....……………………………………… 1

1 Complaint …………………....……………………………………...10

10 Answer…………………….....……………………………………..24

17 Initial Pretrial Order …………....………………………………… 35

22 Stipulation Regarding Motion to Amend Complaint …………………..61

32 First Amended Complaint …………….....……………………………46

36 Defendant's Answer to Plaintiff's First Amended Complaint …………65

49 Parties' Fact Stipulations………….....……………………………….. 77

51 Plaintiff's Motion for Partial Summary Judgment ……………………..79

52 Plaintiff's Brief in Support of
Motion for Partial Summary Judgment ……………………………… 81

52-1 Affidavit of Plaintiff Roy Mestas, Exhibit A,
Plaintiff's Brief in Support of Motion for Partial
Summary Judgment …………….....……………………………… 95

52-2 Report of Injury form, Exhibit 1, Mestas Affidavit,
Plaintiff's Motion for Partial Summary Judgment ………………… 98

52-3 Plaintiff's Application for Temporary Total Disability Benefits,

Exhibit 2, Mestas Affidavit, Plaintiff's
Motion for Partial Summary Judgment ……………………………100

52-4 Initial Accident and Health Claim Form, Exhibit 3, Mestas Affidavit,
Plaintiff's Motion for Partial Summary Judgment…………………101

52-5 Probation Extended Memo, Exhibit 4, Mestas Affidavit,
Plaintiff's Motion for Partial Summary Judgment…………………102

53 Defendant's Motion for Summary Judgment …………………………103

53-2 Plaintiff's Admissions, Exhibit 2, Defendant's Motion
for Summary Judgment ……………………………………………105

53-3 Plaintiff's Interrogatory Responses, Exhibit 3, Defendant's Motion
for Summary Judgment ……………………………………………111

54 Defendant's Brief in Support of Motion for Summary Judgment ……120

58 Defendant's Opposition to Plaintiff's Motion for
Partial Summary Judgment …………...………………………….. 140

59 Plaintiff's Response in Opposition to Defendant's
Motion for Summary Judgment ………………………………….. 147

59-1 Declaration of Plaintiff Roy Mestas, Exhibit A, Plaintiff's Opposition
To Defendant's Motion for Summary Judgment ………………… 172

59-2 Town of Evansville Employee Handbook, Exhibit 1,
Mestas Declaration ………………………………………181

59-3 Extension of Probation Memo, Exhibit 2,
Mestas Declaration ………………………. ………………..268

59-4 Transcript of February 2013 audio recording, Exhibit 3,
Mestas Declaration ………………………………………269

**VOLUME II**

59-5 Plaintiff's memo pad, Exhibit 4,

Mestas Declaration ……………………………………………294

59-6 April 2013 audio transcript, Exhibit 5,
        Mestas Declaration ……………………………………………334

59-7 Eric Reyna Deposition Transcript, Exhibit B, Plaintiff's Opposition
        To Defendant's Motion for Summary Judgment ………………… 341

59-8 Ron Emond Deposition Transcript, Exhibit C, Plaintiff's Opposition
        To Defendant's Motion for Summary Judgment ………………… 368

59-9 Dan Adcock Deposition Transcript, Exhibit D, Plaintiff's Opposition
        To Defendant's Motion for Summary Judgment ……………………419

## VOLUME III

59-10 Dale Brown Deposition Transcript, Exhibit E, Plaintiff's Opposition
        To Defendant's Motion for Summary Judgment ……………………482

60-1 Roy Mestas Deposition Transcript, Exhibit F, Plaintiff's Opposition
        To Defendant's Motion for Summary Judgment ……………………662

62. Order Granting Defendant's Motion for Summary Judgment ……….719

63 Judgment ……………………………………………………….. 736

64 Notice of Appeal ……………………………………………….. 737

75 Transcript, Summary Judgment Hearing ……………………………. 739

## VOLUME IV – NON-PUBLIC DOCUMENTS

52-6 Affidavit of Yvonne Currie with medical records, Exhibit B,
        Plaintiff's Brief in Support of Motion for Partial
        Summary Judgment ………………….. ……………………………778

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2018, I served the

foregoing APPELLANT'S APPENDIX via this Court's CM/ECF system

addressed to:

> Thomas Thompson
> tthompson@wyomingattorneys.net

> s/  Megan L. Hayes

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **APPELLANT'S APPENDIX**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document to be filed with the Clerk and that this ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Avast Mac Security 2016, Version 12.7, most recently updated January 1, 2018), and, according to the program is free of viruses.  In addition, I certify all required privacy redactions have been made.

By:    /s/ Megan L. Hayes
        Megan L. Hayes

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

    1. This Appendix complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [X] this Appendix has been prepared in a proportionally spaced typeface using Microsoft Word for Mac v. 2011 in 14 point Times New Roman.

        /s/ Megan L. Hayes
        Megan L. Hayes

APPEAL,PROTO,TERMED

# U.S. District Court
## District of Wyoming (Casper)
## CIVIL DOCKET FOR CASE #: <u>1:17–cv–00017–NDF</u>
### *Internal Use Only*

| | |
|---|---|
| Mestas v. Evansville WY et al | Date Filed: 01/26/2017 |
| Assigned to: Honorable Nancy D Freudenthal | Date Terminated: 11/21/2017 |
| Referred to: Honorable Kelly H Rankin | Jury Demand: Both |
| Cause: 42:2000e Job Discrimination (Employment) | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

**Roy Mestas**                    represented by    **Megan Hayes**
910 Kearney Street
Laramie, WY 82070
307/760–6258
Email: <u>mlhayes@wyoming.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Evansville WY**                    represented by    **Kylie Marie Rangitsch**
*a duly incorporated Municipal*                    MACPHERSON KELLY THOMPSON
*Corporation under the laws of the State*                    LLC
*of Wyoming*                    616 West Buffalo Street
P.O. Box 999
Rawlins, WY 82301
307/324–2713
Fax: 307/324–7348
Email: <u>krangitsch@wyomingattorneys.net</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natasha Katrina Martinez**
MACPHEARSON KELLY &
THOMPSON LLC
PO Box 999
Rawlins, WY 82301
307/324–2713
Fax: 307/324–7348
Email: <u>nmartinez@wyomingattorneys.net</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A Thompson**
MacPHERSON KELLY & THOMPSON

1

616 West Buffalo Street
P O Box 999
Rawlins, WY 82301
307/324–2713
Fax: 307/324–7348
Email: tthompson@wyomingattorneys.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Evansville Public Works Supervisor**          represented by   **Kylie Marie Rangitsch**
*in his official capacity*                                       (See above for address)
*TERMINATED: 07/18/2017*                                         *LEAD ATTORNEY*
*also known as*                                                  *ATTORNEY TO BE NOTICED*
Dale Brown
*TERMINATED: 07/18/2017*                                         **Natasha Katrina Martinez**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Thomas A Thompson**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/26/2017 | 1 | | COMPLAINT (0 summons issued) with jury demand ( Filing fee $400 receipt #CAS001832.), filed by Roy Mestas.(Attachments: # 1 Civil Cover Sheet) (Court Staff, srd) Correct file date is reflected on document header. Modified on 1/31/2017 (Court Staff, srd). (Entered: 01/26/2017) |
| 01/26/2017 | 2 | | NOTICE of Attorney Appearance by Megan Hayes on behalf of Roy Mestas. (Court Staff, srd) Correct file date is reflected on document header. Modified on 1/31/2017 (Court Staff, srd). (Entered: 01/26/2017) |
| 01/31/2017 | 3 | | Praecipe for summons filed by Plaintiff Roy Mestas (Attachments: # 1 Exhibit, # 2 Exhibit) (Hayes, Megan) (Main Document 3 replaced on 1/31/2017) (Court Staff, sal). (All attachments replaced on 1/31/2017 as a non–fillable form) (Court Staff, sal). (Entered: 01/31/2017) |
| 02/09/2017 | 4 | | SUMMONS Returned Executed by Roy Mestas. Evansville Public Works Supervisor served on 2/7/2017, answer due on 2/28/2017 (Court Staff, stbd) (Entered: 02/09/2017) |
| 02/13/2017 | 5 | | Praecipe for Alias Summons filed by Plaintiff Roy Mestas (Attachments: # 1 Appendix summons) (Hayes, Megan) (Main Document 5 replaced as non–fillable form 2/13/2017) (Court Staff, stbd). (Attachment 1 replaced as non– fillable form attached on 2/13/2017) (Court Staff, stbd). 1 summons issued. (Entered: 02/13/2017) |
| 02/17/2017 | 6 | | SUMMONS Returned Executed by Roy Mestas. Evansville WY served on 2/13/2017, answer due on 3/6/2017 (Court Staff, stbd) (Entered: 02/17/2017) |

2

| 02/24/2017 | 7 | | NOTICE of Attorney Appearance by Thomas A Thompson on behalf of Evansville Public Works Supervisor, Evansville WY (Thompson, Thomas) (Entered: 02/24/2017) |
|---|---|---|---|
| 02/24/2017 | 8 | | FILED INCORRECTLY. Will be refiled by counsel. ~~NOTICE of Attorney Appearance by Thomas A Thompson on behalf of Evansville Public Works Supervisor, Evansville WY (Thompson, Thomas)~~ Modified on 2/24/2017 (Court Staff, sal). (Entered: 02/24/2017) |
| 02/24/2017 | 9 | | NOTICE of complexity by Defendants Evansville Public Works Supervisor, Evansville WY ; this case is non–complex. (Thompson, Thomas) (Entered: 02/24/2017) |
| 02/24/2017 | 10 | | ANSWER to 1 Complaint, with Affirmative Defenses, by Evansville Public Works Supervisor, Evansville WY. (Thompson, Thomas) (Entered: 02/24/2017) |
| 02/27/2017 | 11 | | NOTICE of Initial Pretrial Conference: **Initial Pretrial Conference set for 5/1/2017 09:00 AM in Judge Freudenthal Chambers (Room No. 2242) before Honorable Nancy D Freudenthal.** (Court Staff, sal) (Entered: 02/27/2017) |
| 02/28/2017 | 12 | | NOTICE of Attorney Appearance by Kylie Marie Rangitsch on behalf of Evansville Public Works Supervisor, Evansville WY (Court Staff, sal) (Entered: 02/28/2017) |
| 03/21/2017 | 13 | | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Protective Order filed by Defendants Evansville Public Works Supervisor, Evansville WY. (Thompson, Thomas) (Entered: 03/21/2017) |
| 03/21/2017 | 14 | | ORDER by the Honorable Kelly H Rankin granting 13 Motion for Protective Order. (Court Staff, sjg) (Entered: 03/21/2017) |
| 04/10/2017 | 15 | | Stipulated JOINT CASE MANAGEMENT PLAN by Roy Mestas. (Hayes, Megan) (Entered: 04/10/2017) |
| 04/19/2017 | 16 | | TIME CHANGE ONLY – NOTICE of Initial Pretrial Conference: **Initial Pretrial Conference RESET for 5/1/2017 08:30 AM in Judge Freudenthal Chambers (Room No. 2242) before Honorable Nancy D Freudenthal.** (Court Staff, sal) (Entered: 04/19/2017) |
| 06/02/2017 | 17 | | INITIAL PRETRIAL ORDER by the Honorable Nancy D Freudenthal. Motions filing deadline 9/8/2017. Motion response deadline 9/22/2017. **Dispositive Motions Hearing set for 11/13/2017 01:30 PM in Cheyenne Courtroom No. 1 (Room No. 2132) before Honorable Nancy D Freudenthal.** Expert Witness Designation–Plaintiff deadline 6/1/2017. Expert Witness Designation–Defendant deadline 7/14/2017. Discovery due by 9/8/2017. Stipulation Deadline 9/15/2017. **Final Pretrial Conference set for 1/5/2018 09:00 AM in Judge Freudenthal Chambers (Room No. 2242) before Honorable Nancy D Freudenthal. Jury Trial (5 days/stacked #1) set for 1/22/2018 08:30 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Nancy D Freudenthal. Status Conference set for 8/10/2017 09:30 AM in Judge Freudenthal Chambers (Room No. 2242) before Honorable Nancy D Freudenthal.** (Court Staff, sal) (Entered: 06/02/2017) |
| 06/07/2017 | 18 | | |

000004

| | | | |
|---|---|---|---|
| | | | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin. On June 7, 2017, the Court held an informal telephonic discovery conference to discuss a number of discovery issues. To begin, a general discussion was held regarding Defendant's concerns with Plaintiff's requests for production and interrogatories, along with Plaintiff's concerns with Defendant's responses to those same requests. After a lengthy discussion, Plaintiff agreed to generally narrow the scope of the discovery requests and Defendant agreed to provide additional information and responses in light of the narrowed requests. Next, the Court addressed Plaintiff's specific discovery request that the personnel files for several of Defendant's current and former employees be produced. After hearing from the parties, the Court made a preliminary finding that there is no sufficient nexus between the requested personnel files and the claims and allegations made in the underlying Complaint. Plaintiff then informed the Court of his intention to file a motion to file an amended complaint, and asserted this may alter the Court's preliminary findings regarding the requested personnel files. The Court agreed to revisit the issue if appropriate. Lastly, the Court ordered the parties to continue to work together to try and resolve any remaining or additional discovery disputes, and to contact the Court for further guidance if the conferral efforts prove unsuccessful. (Court Staff, sjgc) (Entered: 06/07/2017) |
| 06/13/2017 | 19 | | NOTICE of Attorney Appearance by Natasha Katrina Martinez on behalf of Evansville Public Works Supervisor, Evansville WY (Martinez, Natasha) (Entered: 06/13/2017) |
| 06/19/2017 | 20 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend/Correct 1 Complaint, filed by Plaintiff Roy Mestas. (Attachments: # 1 Appendix, # 2 NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – Exhibit)(Hayes, Megan) Modified on 7/27/2017 (Court Staff, sal). (Entered: 06/19/2017) |
| 06/19/2017 | 21 | | MOTION REFERRED TO Judge Kelly H Rankin. First MOTION to Compel *Discovery Responses* filed by Plaintiff Roy Mestas. (Hayes, Megan) (Entered: 06/19/2017) |
| 06/26/2017 | 22 | | STIPULATION re 20 MOTION to Amend/Correct 1 Complaint, , 21 First MOTION to Compel *Discovery Responses* by Roy Mestas. (Hayes, Megan) (Entered: 06/26/2017) |
| 06/28/2017 | 23 | | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin. Pursuant to the parties stipulated agreement, the Court grants the parties leave to file a joint Motion to Amend the Scheduling Order. Any such motion is due on or before 6/30/17. (Court Staff, sjg) (Entered: 06/28/2017) |
| 06/30/2017 | 24 | | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION to Amend/Correct 17 Initial Pretrial Order filed by Defendant Evansville WY. (Attachments: # 1 Proposed Order)(Rangitsch, Kylie) Text modified on 8/4/2017 (Court Staff, sal). (Entered: 06/30/2017) |
| 07/05/2017 | 25 | | ORDER by the Honorable Kelly H Rankin granting 24 MOTION REFERRED TO Amend Order on Pretrial Conference. (Court Staff, sjgc) (Entered: 07/05/2017) |
| 07/10/2017 | 26 | | NOTICE by Defendants Evansville Public Works Supervisor, Evansville WY re 20 MOTION to Amend/Correct 1 Complaint, *of Non–Opposition* |

| | | | |
|---|---|---|---|
| | | | (Thompson, Thomas) (Entered: 07/10/2017) |
| 07/10/2017 | 27 | | RESPONSE in Opposition re 21 First MOTION to Compel *Discovery Responses* filed by Defendants Evansville Public Works Supervisor, Evansville WY. (Thompson, Thomas) (Entered: 07/10/2017) |
| 07/11/2017 | 28 | | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting 20 . On June 19, 2017, Plaintiff filed a Motion to File a First Amended Complaint 20 . Defendant did not oppose the Motion so long as the Court allowed the parties to amend the scheduling order to allow additional time in the trial schedule. On July 5, 2017, the Court entered an amended scheduling order 25 . On July 10, 2017, Defendant filed a Notification of Non–Opposition to Plaintiff's Motion to File an Amended Complaint 26 given the amended scheduling order. Therefore, Plaintiff's Motion to File First Amended Complaint is granted and Plaintiff may file an amended complaint on or before July 14, 2017. (Court Staff, sjgc) (Entered: 07/11/2017) |
| 07/12/2017 | 29 | | REPLY to 27 Response in Opposition to Motion *to Compel Discovery Responses* filed by Plaintiff Roy Mestas. (Hayes, Megan) (Entered: 07/12/2017) |
| 07/14/2017 | 30 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Amended Complaint filing deadline filed by Plaintiff Roy Mestas. (Hayes, Megan) (Entered: 07/14/2017) |
| 07/17/2017 | 31 | | ORDER by the Honorable Kelly H Rankin granting 30 Motion for Extension of Time. Plaintiff's First Amended Complaint is due on or before July 21, 2017. (Court Staff, sjg) (Entered: 07/17/2017) |
| 07/18/2017 | 32 | | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – AMENDED COMPLAINT against Defendant Evansville WY with Jury Demand filed by Roy Mestas. (Court Staff, sal) Security Modified on 7/20/2017 (Court Staff, ssw). (Entered: 07/18/2017) |
| 07/21/2017 | 33 | | ORDER by the Honorable Kelly H Rankin denying, without prejudice, 21 Motion to Compel (Court Staff, sjgc) (Entered: 07/21/2017) |
| 07/25/2017 | 34 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Unopposed Requiring Independent Medical Examination (IME) filed by Defendant Evansville WY. (Attachments: # 1 Proposed Order)(Thompson, Thomas) (Entered: 07/25/2017) |
| 07/26/2017 | 35 | | ORDER by the Honorable Kelly H Rankin granting 34 Motion for Independent Medical Examination. (Court Staff, sjg) Modified text on 9/1/2017 (Court Staff, sjlg). (Entered: 07/26/2017) |
| 07/27/2017 | 36 | | ANSWER to 32 Amended Complaint, with Affirmative Defenses, by Evansville WY. (Thompson, Thomas) (Entered: 07/27/2017) |
| 07/28/2017 | 37 | | ~~MOTION REFERRED TO Judge Kelly H Rankin.~~ MOTION for Reconsideration of 33 Order denying Motion to Compel filed by Plaintiff Roy Mestas. (Attachments: # 1 Exhibit Adcock WFEP Interview Excerpts, # 2 Exhibit Reyna WFEP Interview Excerpts, # 3 Exhibit Emond WFEP Interview Excerpts, # 4 Exhibit Winslow WFEP Interview Excerpts, # 5 Exhibit Brown&Botcher WFEP Interview Excerpts)(Hayes, Megan) Modified on 8/2/2017 (Court Staff, szf). Modified on 8/25/2017 (Court Staff, sal). (Entered: 07/28/2017) |

000006

| 07/28/2017 | | | Motions No Longer Referred: 37 MOTION to Compel *Discovery Responses* (Court Staff, szf) (Entered: 08/02/2017) |
|---|---|---|---|
| 08/09/2017 | 38 | | RESPONSE in Opposition re 37 MOTION to Compel *Discovery Responses* filed by Defendant Evansville WY. (Thompson, Thomas) (Entered: 08/09/2017) |
| 08/09/2017 | 39 | | REPLY to 38 Response in Opposition to Motion filed by Plaintiff Roy Mestas. (Hayes, Megan) (Entered: 08/09/2017) |
| 08/10/2017 | 40 | | MINUTES for proceedings held before Honorable Nancy D Freudenthal: Status Conference held on 8/10/2017. (Court Reporter Jan Davis.) (Court Staff, sal) (Entered: 08/10/2017) |
| 08/11/2017 | 41 | | Designation of Expert Witnesses by Defendant Evansville WY. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B) (Thompson, Thomas) (Entered: 08/11/2017) |
| 08/25/2017 | 42 | | ORDER by the Honorable Nancy D Freudenthal denying 37 Plaintiff's Request for Reconsideration of Magistrate Judge's Order denying Plaintiff's Motion to Compel Discovery Responses.(Court Staff, sal) (Entered: 08/25/2017) |
| 09/07/2017 | 43 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Postpone Independent Medical Examination (IME) filed by Defendant Evansville WY. (Attachments: # 1 Proposed Order)(Thompson, Thomas) (Entered: 09/07/2017) |
| 09/07/2017 | 44 | | DUPLICATE PLEADING TO 43 – DISREGARD ~~MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order to Postpone Independent Medical Examination (IME) filed by Defendant Evansville WY. (Attachments: # 1 Proposed Order)(Thompson, Thomas)~~ Modified on 9/11/2017 (Court Staff, sal). (Entered: 09/07/2017) |
| 09/07/2017 | 45 | | ORDER by the Honorable Kelly H Rankin granting 43 Motion for Order. (Court Staff, sms) (Main Document 45 replaced on 9/11/2017) (Court Staff, sal). Modified on 9/11/2017 (Court Staff, sal). (Entered: 09/07/2017) |
| 10/03/2017 | 46 | | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin. On October 3, 2017, the Court held an informal telephonic discovery conference to discuss Defendant's objections to Plaintiff's interrogatories and requests for production served on September 26, 2017. Defendant objected to the requests as untimely as the discovery cutoff date was October 2, 2017, and on the grounds that the requested discovery is not relevant, not proportional to the needs of the case, and that one of the requests seeks privileged information. After hearing from the parties the court ordered as follows: (1) Plaintiff's discovery requests are timely given the fact the requests were served and received before the close of discovery; and (2) the Court granted Plaintiff permission to file a motion to compel to address Defendant's concerns surrounding relevancy, proportionality, and privilege. Plaintiff may file up to a five page motion to compel no later than October 11, 2017. Defendant has seven days from the filing of the motion to compel to lodge a five page response, with a three page reply due within two days of the response. (Court Staff, sjgc) (Entered: 10/03/2017) |
| 10/08/2017 | 47 | | MOTION REFERRED TO Judge Kelly H Rankin. Second MOTION to Compel *Discovery Responses* filed by Plaintiff Roy Mestas. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit Discovery Requests, # 2 Exhibit RFP Discovery Requests, # 3 Exhibit Reyna Deposition Excerpts, # 4 Exhibit Adcock Deposition Excerpts, # 5 Exhibit Emond Deposition Excerpts, # 6 Exhibit Brown Deposition Excerpts, # 7 Exhibit Boettcher Deposition Excerpts)(Hayes, Megan) (Entered: 10/08/2017) |
| 10/13/2017 | 48 | | RESPONSE in Opposition re 47 Second MOTION to Compel *Discovery Responses* filed by Defendant Evansville WY. (Attachments: # 1 Exhibit) (Thompson, Thomas) (Entered: 10/13/2017) |
| 10/13/2017 | 49 | | STIPULATION OF FACTS filed by Roy Mestas. (Hayes, Megan) (Entered: 10/13/2017) |
| 10/15/2017 | 50 | | REPLY to 48 Response in Opposition to Motion filed by Plaintiff Roy Mestas. (Attachments: # 1 Exhibit Brown Deposition Excerpt) (Hayes, Megan) (Entered: 10/15/2017) |
| 10/19/2017 | 51 | | MOTION for Partial Summary Judgment, filed by Plaintiff Roy Mestas. (Hayes, Megan) (Additional attachment(s) added on 10/23/2017: # 1 Proposed Order) (Court Staff, sal). (Entered: 10/19/2017) |
| 10/19/2017 | 52 | | BRIEF *in Support* re 51 Motion for Partial Summary Judgment filed by Plaintiff Roy Mestas. (Attachments: # 1 Declaration of Roy Mestas, # 2 NON–PUBLIC DOCUMENT – Report of Injury, # 3 NON–PUBLIC DOCUMENT – TTD Application, # 4 NON–PUBLIC DOCUMENT – Insurance Form, # 5 NON–PUBLIC DOCUMENT – Memo Extending Probation, # 6 NON–PUBLIC DOCUMENT – Currie Affidavit, # 7 NON–PUBLIC DOCUMENT – Mestas Records) (Hayes, Megan) Modified on 10/19/2017 (Court Staff, sal). (Entered: 10/19/2017) |
| 10/20/2017 | 53 | | MOTION for Summary Judgment filed by Defendant Evansville WY. (Attachments: # 1 NON–PUBLIC DOCUMENT – Exhibit, # 2 Exhibit, # 3 Exhibit)(Thompson, Thomas) Modified on 10/23/2017 (Court Staff, sal). (Entered: 10/20/2017) |
| 10/20/2017 | 54 | | BRIEF *in Support* re 53 Motion for Summary Judgment filed by Defendant Evansville WY. (Thompson, Thomas) (Entered: 10/20/2017) |
| 10/20/2017 | 55 | | FILING ERROR – DISREGARD. This should have been filed as an attachment to 51 . ~~PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW re 51 Motion for Partial Summary Judgment by Plaintiff Roy Mestas *and Proposed Order*~~ filed by Plaintiff Roy Mestas. (Hayes, Megan) Modified on 10/23/2017 (Court Staff, sal). (Entered: 10/20/2017) |
| 10/20/2017 | 56 | | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW re 53 Motion for Summary Judgment by Defendant Evansville WY filed by Defendant Evansville WY. (Rangitsch, Kylie) (Entered: 10/20/2017) |
| 10/27/2017 | 57 | | ORDER by the Honorable Kelly H Rankin granting 47 Motion to Compel. Defendant shall respond to Plaintiff's discovery requests as detailed in the Order. (Court Staff, sjgc) (Entered: 10/27/2017) |
| 11/02/2017 | 58 | | RESPONSE in Opposition re 51 MOTION for Partial Summary Judgment, filed by Defendant Evansville WY. (Thompson, Thomas) (Entered: 11/02/2017) |
| 11/03/2017 | 59 | | RESPONSE in Opposition re 53 MOTION for Summary Judgment, filed by Plaintiff Roy Mestas. (Attachments: # 1 Exhibit Declaration of Roy Mestas, # 2 |

000008

| | | | |
|---|---|---|---|
| | | | Exhibit Employee Handbook, # 3 Exhibit Probation Extended memo, # 4 Exhibit Transcript, February 2013 audio recording, # 5 Exhibit Memo Pad, # 6 Exhibit Transcript, April 2013 audio recording, # 7 Exhibit Reyna Deposition, # 8 Exhibit Emond Deposition, # 9 Exhibit Adcock Deposition, # 10 Exhibit Brown Deposition) (Hayes, Megan) (Entered: 11/03/2017) |
| 11/03/2017 | 60 | | EXHIBIT F in reference to 59 Response in Opposition to Motion filed by Plaintiff Roy Mestas. (Attachments: # 1 Exhibit) (Court Staff, sjlg) (Entered: 11/03/2017) |
| 11/20/2017 | 61 | | MINUTES for proceedings held before Honorable Nancy D Freudenthal: Motion Hearing held on 11/20/2017. Motions taken under advisement. (Court Reporter Jan Davis.) (Court Staff, sal) (Entered: 11/20/2017) |
| 11/21/2017 | 62 | 9 | ORDER by the Honorable Nancy D Freudenthal denying 51 Motion for Partial Summary Judgment and granting 53 Motion for Summary Judgment (Court Staff, sal) (Entered: 11/21/2017) |
| 11/21/2017 | 63 | | JUDGMENT in favor of Defendant against Plaintiff. (Attachments: # 1 Bill of Costs)(Court Staff, sal) (Entered: 11/21/2017) |
| 11/28/2017 | 64 | | BILL OF COSTS filed by Defendant Evansville WY. (Thompson, Thomas) (Entered: 11/28/2017) |
| 12/06/2017 | 65 | 26 | NOTICE OF APPEAL as to 62 Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment filed by Plaintiff Roy Mestas. (Hayes, Megan) (Entered: 12/06/2017) |

000009

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JAN 26  PM 1: 09

STEPHAN HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CR-17-F |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR DAMAGES |
| v. | ) | FOR EMPLOYMENT |
| | ) | DISCRIMINATION |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, and | ) | |
| DALE BROWN, in his official capacity | ) | |
| as Public Works Supervisor for the Town of | ) | |
| Evansville, | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| Defendants. | ) | |

### INTRODUCTION, JURISDICTION AND VENUE

1.    This action is brought by Roy Mestas (hereinafter "Mr. Mestas" or "Plaintiff") to secure redress for defendants' violations of his civil right to be free from employment discrimination based on his national origin and his disability.

2.    Mr. Mestas is an individual who, at all times relevant herein, was and is a resident of the County of Natrona, State of Wyoming.

3.    Plaintiff is informed and believes, and based thereon alleges, that defendant Town of Evansville (hereinafter "defendant Evansville") was and is a duly incorporated Municipal Corporation under the laws of the State of Wyoming, located in Natrona County, State of



Receipt # CAS 001832
Summons: 0 issued
0 not issued

000010

Wyoming.

4.      Defendant Evansville employs more than 15 employees and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(5)(A) (the "ADA").

5.      Plaintiff is informed and believes, and based thereon alleges, that defendant Dale Brown (hereinafter "defendant Brown") was and is an individual residing in Natrona County. At all times relevant herein, defendant Brown was a supervisor, managerial employee or agent of defendant Evansville.

6.      Plaintiff is informed and believes and based thereon alleges that each defendant is the agent, servant, employee, successor in interest, co-conspirator, and/or alter ego of every other defendant, and that, in doing the acts alleged herein, each defendant acted as the agent of and with the consent, knowledge, authorization and/or ratification of every other defendant herein.

7.      Plaintiff is informed and believes and based thereon alleges that each defendant was in some manner intentionally and/or negligently and legally responsible for the events and happenings alleged in this Complaint and for plaintiff's injuries and damages.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this case arises under federal law, specifically, Title VII and the ADA.

9.      Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

10.      Plaintiff Mestas has exhausted his administrative remedies.  Mr. Mestas filed a charge of discrimination on the basis of race or national origin in employment with the Wyoming

2

Fair Employment Program, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference. Over one hundred eighty days after Plaintiff filed his charge of discrimination, the U.S. Department of Justice issued a right to sue notice authorizing this lawsuit, a true and correct copy of which Mr. Mestas received on October 31, 2016, is attached hereto as Exhibit 2, and incorporated herein by reference.

## FACTS CENTRAL TO PLAINTIFF'S CLAIMS

11.    Plaintiff Mestas began his employment with the Public Works Department of defendant Evansville on September 12, 2012.  Defendants Evansville and Brown terminated Mr. Mestas's employment on April 17, 2013.

12.    During his employment with defendant Evansville, Mr. Mestas satisfactorily performed his job.

13.    During his employment with defendant Evansville, Mr. Mestas received no disciplinary actions or coaching for poor or unsatisfactory performance of his job duties.

14.    During his employment with defendant Evansville, Mr. Mestas was subjected to national origin-based harassment and intimidation as well as discrimination on the basis of a disability, all of which affected a term, condition or privilege of his employment.

15.    Defendant Evansville employed defendant Brown at all times relevant herein. Defendant Brown was the Public Works Supervisor for defendant Evansville's Department of Public Works and was Mr. Mestas's supervisor.

16.    On November 26, 2012, Mr. Mestas injured his back at work.  Because of his workplace injury, he did not return to work until January 14, 2013.

000012

17.    When Mr. Mestas returned to work on January 14, 2013, he provided a note from his physician stating that he could return to his regular duties with no restrictions.

18.    After Mr. Mestas returned to work on January 14, 2013, defendant Brown was upset that Mr. Mestas was injured and had missed work.

19.    In February of 2013, Defendant Brown told Mr. Mestas that Mestas had not been bed ridden when he was out on "disability" for his back injury and that he should have come to work anyway to perform administrative 'light-duty' work.

20.    In February of 2013, Defendant Brown told Mr. Mestas that someone working for the Town of Evansville outside of the Public Works Department, "on other authority," told defendant Brown that he should terminate Mr. Mestas's employment if Mr. Mestas could not perform his job duties.

21.    Following his return to work on January 14, 2013, defendant Brown subjected Mr. Mestas to harsh and condescending treatment more frequently and more severely than other employees.

22.    Defendant Brown expressed his displeasure with Mr. Mestas by frequently expecting Mr. Mestas to complete tasks without the assistance of co-workers.

23.    Defendant Brown manifested his displeasure with Mr. Mestas through directives to co-workers not to assist Mr. Mestas and chastising and verbally reprimanding those co-workers who did assist him.

24.    On or about February 22, 2013 and again on or about March 27, 2013, defendant Brown called Mr. Mestas and another Hispanic co-worker "stupid beaners."

000013

25.    On multiple occasions during Mr. Mestas's employment with defendant Evansville, defendant Brown repeatedly made derogatory remarks related to those of Hispanic origin. Defendant Brown frequently called subordinates, including Mr. Mestas, as well as citizens of the Town of Evansville, "beaners" or "stupid beaners."

26.    At all times relevant to this complaint, on multiple occasions during regular morning meetings with Public Works Department employees, defendant Brown told "minority" jokes.

27.    On at least two separate occasions, Mr. Mestas complained directly to defendant Brown that his derogatory comments regarding people of Hispanic descent were offensive.

28.    Defendant Brown responded to these complaints by stating that his (Brown's) wife is a "Mexican" and he says stuff like this to her all the time.

29.    At all times relevant herein, defendant Evansville did not have a specific procedure for employees to make complaints of harassment, other than for sexual harassment.

30.    On April 11, 2013, Mr. Mestas informed defendant Brown that his physician would perform an injection on April 18, 2013, to treat his back pain.

31.    Defendant Brown granted Mr. Mestas's request for time off of work to undergo the injection to treat his back pain.

32.    On or about April 9, 2013, Mr. Mestas timely reported for work. While performing his assigned snow removal duties, Mr. Mestas asked defendant Brown if he could use a snow blower because of back pain.

33.    Defendant Brown denied Mr. Mestas's request for a snow blower and said 'that's

5

what I have Mexicans for, to do this work.'

34.    On April 17, 2013, defendant Brown summoned Mr. Mestas to his office and terminated Mr. Mestas's employment because things were 'not working out.'

35.    Defendant Brown did not state that he was terminating Mr. Mestas's employment for poor or unsatisfactory job performance.

36.    Mr. Mestas herein incorporates all allegations from the preceding paragraphs for all claims for relief asserted below.

**COUNT 1. Cause of Action: Discrimination Based on National Origin, against All Defendants.**

37.    Defendants, and each of them, including defendant Evansville, through its agent or supervisor, defendant Brown, engaged in a pattern and practice of unlawful discrimination on the basis of race or national origin by subjecting Mr. Mestas to national origin based harassment and intimidation that affected a term, condition, or privilege of employment and was so pervasive and egregious that it altered the working conditions of his employment and created an abusive and hostile working environment, in violation of 42 U.S.C. § 2000e-2.

38.    Defendant Evansville at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraph 37 above.

39.    Defendant Brown failed to take any reasonable steps to prevent the discrimination based on race or national origin from occurring, after Mr. Mestas had complained to him about defendant Brown's discriminatory and derogatory statements.

40.    Defendant Brown violated Title VII by failing to take any action on Mr. Mestas's complaints regarding defendant Brown's national original discrimination, as described in

6

paragraphs 25-28 above.

41.     As a direct and proximate result of defendants' actions, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

42.     As a further direct and proximate result of defendants' violation of 42 U.S.C. 2000e-2, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. 2000e-5(k).

43.     Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of defendant Brown described above was malicious and oppressive, and done with a conscious disregard of plaintiff's rights, and with the intent to injure plaintiff. Because defendant Brown acted in his capacity as a supervisor and did nothing to correct his behavior after Mr. Mestas complained of his derogatory and offensive comments, plaintiff Mestas is entitled to punitive damages from defendants Brown and Evansville.

**COUNT 2. Cause of Action: Discrimination Based on Disability, against All Defendants.**

44.     Defendants, and each of them, including defendant Evansville, through its agent or supervisor, defendant Brown, engaged in a pattern and practice of unlawful discrimination on the basis of disability by discharging Mr. Mestas on the basis of defendant Brown's regard for Mr. Mestas as disabled and not for a legitimate, nondiscriminatory reason, in violation of 42

7

U.S.C. § 12112(a) and (b)(5).

45.    Defendant Evansville at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraph 44 above.

46.    As a direct and proximate result of defendants' actions, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

47.    As a further direct and proximate result of defendants' violation of 42 U.S.C. § 12112, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 12205.

48.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of defendant Brown described above was malicious and oppressive, and done with a conscious disregard of plaintiff's rights, and with the intent to injure plaintiff. Because defendant Brown acted in his capacity as a supervisor, plaintiff Mestas is entitled to punitive damages from defendants Brown and Evansville, pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 1981a(a)(3).

WHEREFORE, Plaintiff Roy Mestas, prays for judgment against Defendant Evansville and named-individual-supervisory defendant Brown as follows:

a.    For compensatory damages in excess of this Court's minimum jurisdiction according

8

to proof;

b. For punitive damages against the Town of Evansville and individually-named
   Defendant Brown;

c. For injunctive relief;

d. For attorney and expert witness fees as allowed by statute;

e. For pre-judgment interest at the maximum legal rate;

f. For interest on the judgment at the maximum legal rate;

g. For costs of the suit herein; and

h. For such other and further relief as the Court deems just and proper.

<div align="center">**JURY TRIAL DEMANDED**</div>

Plaintiff requests a jury trial on all issues and claims raised in this Complaint.

Respectfully submitted this 25ᵗʰ day of January, 2017.

For Plaintiff Roy Mestas

By: _Megan L. Hayes_
Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6258
mlhayes@wyoming.com

Attorney for Roy Mestas

<div align="center">9</div>

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s). |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 66-2013 541-2013-01402 |

| Wyoming Fair Employment Program | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Roy Mestas | (307) 258-8059 | 09-18-1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 164, Evansville, WY 82636 | RECEIVED MAY 16 2013 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| TOWN OF EVANSVILLE | 15-100 | (307) 234-6530 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. DRAWER 158,  Evansville, WY 82636 | RECEIVED MAY 03 2013 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | EEOC DENVER DISTRICT OFFICE | |

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN  ☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION  ☐ OTHER (Specify) | Earliest: 01-14-2013   Latest: 04-17-2013  ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  **PERSONAL HARM:**  Beginning on or about January 14, 2013, and continuing throughout my employment as a Sanitation Route Driver, the Director of Public Works subjected me to harassment. On or about April 17, 2013, I was discharged.

II.  **RESPONDENT'S DEFENSE:**  The Director of Public Works told me and another coworker (national origin, Hispanic) that he was just kidding when he made racist comments to us on two occasions. On or about April 17, 2013, the Director of Public Works told me that I was being discharged because I could no longer do my job.

III.  **DISCRIMINATION STATEMENT:**  I believe that I have been discriminated against based on my national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended, and based on a disability within the meaning of the Americans with Disabilities Act (ADA) of 1990, as amended, in violation of the ADA, in that:

A.  I was qualified for my job and I was performing satisfactorily.

B.  On or about November 26, 2012, I sustained an injury at work which caused me to miss between six and seven weeks of work.  On or about January 14, 2013, I was released to return to work without restrictions.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 03, 2013                    _____ Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

— Ex. 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 541-2013-01402 |

| Wyoming Fair Employment Program | and EEOC |
|---|---|

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*

C. Beginning on or about January 14, 2013, the Director of Public Works began to treat me poorly. He was unhappy with the fact that I had sustained an injury and needed to miss some work.

D. On or about February 22, 2013, and again on or about March 27, 2013, the Director of Public Works called me and another co-worker (national origin, Hispanic) "stupid beaners". Both times I told him that I was upset with his comments and not to make those comments to me.

E. In or about mid-March 2013, I informed the Director of Public Works that I had an injection scheduled next month for back pain.

F. On or about April 17, 2013, I called the Director of Public Works and asked to be excused from snow shoveling duty that day due to back pain. He refused my request and then summoned me to work.

G. On or about April 17, 2013, I was informed of my discharge. I dispute that I was unable to do my job.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **May 03, 2013**<br>Date         Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

 



**U.S. Department of Justice**

Civil Rights Division

_____

*Disability Rights Section - NYA*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*

DJ# 205-87-0

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

OCT 2 1 2016

Roy Mestas
PO Box 164
Evansville, WY  82636

Re:     EEOC Charge Against:      Town of Evansville
        EEOC No.:                 541-2013-01402
        DJ#:                      205-87-0

Dear Mr. Mestas:

_____

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation on your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, if you wish to pursue this matter, you should consult an attorney at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), referenced in Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

*Ex. 2*

000021

 

We are returning the files in this matter to EEOC's District Office.  If you or your attorney, have any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to:

John C. Lowrie, Director
Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ  85012

As requested by the Equal Employment Opportunity Commission, enclosed is the "Notice of Right to Sue" regarding your claim under Title VII.  You will also find a list of state resources and a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA).

We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General

BY: _____
Amanda Maisels
Deputy Chief
Disability Rights Section

Enclosure:
    EEOC Notice of Right to Sue
    Wyoming State Resources
    Notice of Rights under the ADAAA

cc:    Town of Evansville
       EEOC-Phoenix District Office

2

000022

Case 1:17-cv-00017-NDF   Document 1-1   Filed 01/26/17   Page 1 of 1

JS 44 (Rev. 12/12)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Roy Mestas | Town of Evansville, Wyoming; Dale Brown, in his official capacity |

| | | |
|---|---|---|
| **(b)** County of Residence of First Listed Plaintiff   Natrona | County of Residence of First Listed Defendant   Natrona |
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Megan L. Hayes, Attorney at Law<br>910 Kearney Street<br>Laramie, WY 82070<br>307/760-6258 | Phillip Willoughby |

FILED
U.S. DISTRICT COURT
2016 JAN 26 PM 2: 02
STEPHAN HARRIS, CLERK

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☒ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>42 U.S.C. § 2000 (Title VII); 29 U.S.C. § 706; § 791 et seq. (ADA)<br>Brief description of cause:<br>Employment discrimination based on national origin and disability. |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/25/2017 | *Megan L. Hayes* |

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

000023

Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendants
Town of Evansville and Dale Brown in
his official capacity as Public Works
Supervisor for the Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net

Page: 29

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, and | ) | |
| DALE BROWN, in his official capacity | ) | |
| as Public Works Supervisor for the Town of | ) | |
| Evansville, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND ASSERTION OF AFFIRMATIVE DEFENSES

**COME NOW**, Defendants, Town of Evansville, and Dale Brown, in his official capacity as

Public Works Supervisor for the Town of Evansville, in the above entitled matter, by and through

their attorneys, Thomas A. Thompson and Kylie M. Rangitsch, of MacPherson, Kelly and

Thompson, LLC, and hereby file their Answer and Assertion of Affirmative Defenses to Plaintiff's

Complaint for Damages for Employment Discrimination ("Complaint") as follows:

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 30

## INTRODUCTION, JURISDICTION AND VENUE

1.      The allegations contained in paragraph 1 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

2.      Defendants are without sufficient information and knowledge to form a belief as to allegations in paragraph 2 of *Plaintiff's Complaint* and therefore deny the same.

3.      Defendants admit the allegations contained in paragraph 3 of the *Plaintiff's Complaint.*

4.      Defendants admit that portion of paragraph 4 of the *Plaintiff's Complaint* that alleges that Defendant Evansville employs more than 15 employees. The remaining allegations contained in paragraph 4 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

5.      Defendants admit that portion of paragraph 5 of the *Plaintiff's Complaint* that alleges that the Defendant Dale Brown was and is an individual residing in Natrona County. The remaining allegations in paragraph 5 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

2

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 31

6.      The allegations contained in paragraph 6 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

7.      The allegations contained in paragraph 7 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

8.      The allegations contained in paragraph 8 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

9.      The allegations contained in paragraph 9 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

10.      Defendants admit that portion of paragraph 10 of *Plaintiff's Complaint* that alleges that Mestas filed a Charge of Discrimination with the Wyoming Fair Employment Program and that Exhibit 1 is a true and correct copy of the Charge of Discrimination. The remaining allegations contained in paragraph 10 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the sentence attempts

000026

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 32

to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

11.     Defendants deny the first sentence and admit the second sentence of the allegations contained in paragraph 11 of the *Plaintiff's Complaint.*

12.     Defendants deny the allegations contained in paragraph 12 of the *Plaintiff's Complaint.*

13.     Defendants are without sufficient information and knowledge to form a belief as to allegations in paragraph 13 of *Plaintiff's Complaint* and therefore deny the same.

14.     Defendants deny the allegations contained in paragraph 14 of the *Plaintiff's Complaint.*

15.     Defendants admit the allegations contained in paragraph 15 of the *Plaintiff's Complaint.*

16.     Defendants admit the allegations contained in paragraph 16 of the *Plaintiff's Complaint.*

17.     Defendants are without sufficient information and knowledge to form a belief as to allegations in paragraph 17 of *Plaintiff's Complaint* and therefore deny the same.

18.     Defendants deny the allegations contained in paragraph 18 of the *Plaintiff's Complaint.*

19.     Defendants deny the allegations contained in paragraph 19 of the *Plaintiff's Complaint.*

20.     Defendants deny the allegations contained in paragraph 20 of the *Plaintiff's Complaint*, as pled.

000027

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 33

21.     Defendants deny the allegations contained in paragraph 21 of the *Plaintiff's Complaint.*

22.     Defendants deny the allegations contained in paragraph 22 of the *Plaintiff's Complaint.*

23.     Defendants deny the allegations contained in paragraph 23 of the *Plaintiff's Complaint.*

24.     Defendants deny the allegations contained in paragraph 24 of the *Plaintiff's Complaint.*

25.     Defendants deny the allegations contained in paragraph 25 of the *Plaintiff's Complaint.*

26.     Defendants deny the allegations contained in paragraph 26 of the *Plaintiff's Complaint.*

27.     Defendants deny the allegations contained in paragraph 27 of the *Plaintiff's Complaint.*

28.     Defendants deny the allegations contained in paragraph 28 of the *Plaintiff's Complaint.*

29.     The allegations contained in paragraph 29 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

30.     Defendants are without sufficient information and knowledge to form a belief as to allegations in paragraph 30 of *Plaintiff's Complaint* and therefore deny the same.

000028

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 34

31.     Defendants are without sufficient information and knowledge to form a belief as to allegations in paragraph 31 of *Plaintiff's Complaint* and therefore deny the same.

32.     Defendants deny the allegations contained in paragraph 32 of the *Plaintiff's Complaint*.

33.     Defendants deny the allegations contained in paragraph 33 of the *Plaintiff's Complaint*.

34.     Defendants admit that portion of paragraph 34 of the *Plaintiff's Complaint* that alleges that on April 17, 2013, Defendant Brown summoned Mestas to his office and terminated his employment. Defendants affirmatively allege that Mestas was terminated as an employee at will. Defendants deny each and every allegation in paragraph 34 of *Plaintiff's Complaint* not specifically admitted herein.

35.     Defendants admit the allegations contained in paragraph 35 of the *Plaintiff's Complaint*, and affirmatively allege that Mestas was terminated as an employee at will, which does not require a reason for terminating employment.

36.     In response to paragraph 36 of the *Plaintiff's Complaint*, Defendants re-state and re-allege each and every response previously set forth and incorporate those responses in response to the allegations contained in paragraph 36 of the *Plaintiff's Complaint*.

37.     Defendants deny the allegations contained in paragraph 37 of the *Plaintiff's Complaint*.

38.     The allegations contained in paragraph 38 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the

000029

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 35

extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

39.     The allegations contained in paragraph 39 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

40.     The allegations contained in paragraph 40 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

41.     The allegations contained in paragraph 41 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

42.     The allegations contained in paragraph 42 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

43.     Defendants deny the allegations contained in paragraph 43 of the *Plaintiff's Complaint.*

44.     Defendants deny the allegations contained in paragraph 44 of the *Plaintiff's Complaint.*

7

Appellate Case: 17-8092      Document: 01019955822      Date Filed: 03/08/2018      Page: 36

45.     The allegations contained in paragraph 45 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

46.     The allegations contained in paragraph 46 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

47.     The allegations contained in paragraph 47 of the *Plaintiff's Complaint* are purportedly statements of law that do not require the Defendants to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendants deny each and every allegation contained therein.

48.     Defendants deny the allegations contained in paragraph 48 of the *Plaintiff's Complaint.*

49.     The Defendants deny each and every other allegation, however captioned or entitled, contained in the *Plaintiff's Complaint* that has not specifically been admitted hereinabove.

### AFFIRMATIVE DEFENSES

50.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the *Plaintiff's Complaint* fails to state a claim upon which relief can be granted.

51.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the claims and causes of action set forth therein are barred as a matter of fact and law by the applicable statute of limitations.

8

Appellate Case: 17-8092      Document: 01019955822      Date Filed: 03/08/2018      Page: 37

52.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that they are entitled to absolute immunity as a matter of fact and law from the claims and causes of action asserted therein.

53.     As a further and separate defense to the *Plaintiff's Complaint*, Defendant Brown asserts that he is entitled to qualified immunity as a matter of fact and law from the claims and causes of action asserted therein.

54.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the claim for punitive damages is barred as a matter of fact and law and is unconstitutional.

55.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the Plaintiff has failed to mitigate any damage he may have incurred or suffered as the result of any action or conduct of the Defendants.

56.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the Plaintiff has failed to comply with the Wyoming Governmental Claims Act, Wyo. Stat. §§1-39-101, *et seq.*, to the extent that it applies to this action or to any of the claims or causes of action asserted therein, including, but not limited to the Plaintiff's failure to file a proper or timely notice of claim as a condition precedent to the filing of this action.

57.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the Plaintiff's claims or causes of action are barred as a matter of fact and law by the Wyoming Governmental Claims Act.

58.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert that the Plaintiff is estopped by his conduct to assert any of the claims or causes of action asserted therein.

9

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 38

59.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

that the Plaintiff, by his conduct, has waived the right to assert any of the claims or causes of action

asserted therein.

60.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

that their conduct was not the proximate cause of any of the alleged injuries or damages suffered by

the Plaintiff.

61.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

that the Plaintiff has failed to exhaust his administrative remedies and thereby is barred from

asserting any of his claims or causes of action.

62.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

that the Plaintiff's notice of claims is defective and, therefore, the court lacks subject matter

jurisdiction over this action and the claims and causes of action asserted therein.

63.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

that no act or omission of the Defendants was malicious, willful, wanton, reckless or grossly

negligent and, therefore, any award of punitive damages is barred.

64.     As a further and separate defense to the *Plaintiff's Complaint*, the Defendants assert

they are entitled to absolute immunity under the circumstance of this case and the action at issue.

65.     The Defendants reserve the right to amend these pleadings to assert any further or

additional affirmative defenses that discovery in this case discloses.

**WHEREFORE**, the Defendants respectfully request that the *Plaintiff's Complaint* be

dismissed with prejudice, that the Defendants be awarded their attorney's fees, costs, and expenses

000033

of this action, and for such other and further relief as the Court deems just and proper under the circumstances.

**DATED** this 24th day of February, 2017.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Attorneys for Defendants
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 West Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net

**CERTIFICATE OF SERVICE**

This is to certify that on the 24th day of February, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY 82070
Email: mlhayes@wyoming.com

/s/   Thomas  A. Thompson
For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js

FILED

UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

8:07 am, 6/2/17

**Stephan Harris**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

ROY MESTAS,

Plaintiff,

vs.

Case No. 17-CV-17-F

TOWN OF EVANSVILLE, a duly
incorporated Municipal Corporation, and
DALE BROWN, in his official capacity,

Defendants.

## ORDER ON INITIAL PRETRIAL CONFERENCE

On May 1, 2017, the Honorable Nancy D. Freudenthal, District Court Judge for the District

of Wyoming held an initial pretrial conference in the above-entitled matter.   Counsel participating

were Megan Hayes for the Plaintiff; Thomas Thompson and Kylie M. Rangitsch for Defendants.

**Jurisdiction and Venue —**

The Court has jurisdiction over both the parties and the subject matter of this action, and

venue is proper in the United States District Court for the District of Wyoming.   Proper service of

process has been accomplished on all parties, and no parties are erroneously joined in or omitted

from the action.

**Consent to Trial by Magistrate Judge —**

The parties are all aware of the provisions of 28 U.S.C. 636(c) and U.S.D.C.L.R. 73.1, and

acknowledge that this case will proceed before the District Judge assigned hereto, and not before

1

the Magistrate Judge located in Cheyenne, Wyoming.  However, the parties are not precluded

from consenting to trial before a Magistrate Judge anytime sixty (60) days prior to the trial date.

**Claims and Defenses —**

Plaintiff was employed in the Town of Evansville's Public Works Department from

September 12, 2012 until April 17, 2013. On April 17, 2013, Defendant Brown, who was

Plaintiff's co-supervisor, terminated Plaintiff's employment with the Town of Evansville, despite

Plaintiff's alleged satisfactory job performance.

Plaintiff alleges that during his employment with the Town of Evansville, he was subjected

to national origin-based harassment and intimidation as well as discrimination on the basis of

Defendant Brown's regard for him as disabled, all of which he alleges affected a term, condition of

privilege of his employment. Plaintiff's claims arise under federal law, specifically Title VII and

the ADA, giving this Court jurisdiction under 28 U.S.C. § 1331.

Defendants assert several affirmative defenses including, failure to state a claim upon

which relief can be granted, bar of Plaintiff's claims due to the statute of limitations, absolute

immunity, failure to mitigate damages, failure to properly or timely submit a notice of claim, bar of

claims due to the Wyoming Governmental Claims Act, estoppel, waiver, lack of cause, failure to

exhaust administrative remedies, lack of subject matter jurisdiction, and lack of malicious, willful,

reckless or grossly negligent acts by Defendants precluding punitive damages.

**Complexity of the Case —**

The Judge is of the opinion that this is a non-complex case.

**Rule 26(f) Scheduling Conference —**

The parties have complied with the requirements of Rule 26(f) of the Federal Rules of Civil

Procedure.

000036

**Self-Executing Routine Discovery —**

The parties have complied with self-executing routine discovery exchange as required by Fed. R. Civ. P. 26(a).

Pursuant to the General Order Regarding Discovery Motions available at http://www.wyd.uscourts.gov/pdfforms/orders/rankin_disc_ord.pdf the parties shall confer regarding any discovery dispute, and in the event the parties cannot settle the discovery dispute on their own, counsel shall jointly contact chambers prior to filing any written discovery motions.

**THE PARTIES HAVE A CONTINUING DUTY TO SUPPLEMENT OR CORRECT ALL DISCOVERY DISCLOSURES OR RESPONSES IN ACCORDANCE WITH FED. R. CIV. P. 26(a).**

**Proposed Orders —**

All proposed orders regarding non-dispositive civil motions should be submitted to Judge Rankin's chambers in a word processing format and emailed to wyojudgekhr@wyd.uscourts.gov.

All proposed orders regarding dispositive civil motions should be submitted to Judge Freudenthal's chambers in a word processing format and emailed to wyojudgendf@wyd.uscourts.gov.

**Status conference for Dispositive Motions – August 10, 2017 at 9:30 a.m.**

The Court will hold a status conference on August 10, 2017 at 9:30 a.m. to discuss the necessity of any dispositive motions and whether the need for any anticipated motions can be negated by agreement of stipulation of the parties.   Counsel should appear by telephone, calling into chambers on one line at (307) 433-2190.

**Dispositive Motions — Hearing November 13, 2017 at 1:30 p.m.**

**Deadline September 8, 2017; Response September 22, 2017**

000037

The deadline for the parties to file all dispositive motions together with briefs and affidavits in support thereof is September 8, 2017.

The parties shall file responsive briefs and affidavits on or before September 22, 2017.

If the dispositive motions are filed earlier than the above scheduled date, the responding party must respond in accordance with U.S.D.C.L.R. 7.1.

**Parties submitting deposition testimony in support of their motions shall also provide to the Court via email to wyojudgendf@wyd.uscourts.gov, the e-transcript version of the deposition provided to the parties by the Court Reporter.**

The dispositive motions are hereby set for oral hearing before the Honorable Nancy D. Freudenthal on November 13, 2017 at 1:30 p.m. in Cheyenne, Wyoming. **The parties shall strictly comply with all provision of U.S.D.C.L.R. 7.1.   Counsel for the parties shall submit to the Court, together with their briefs, proposed findings of fact and conclusions of law and orders supported by the record which reflects the position of the parties to be taken at the hearing. [U.S.D.C.L.R. 7.1(b)(2)(d)].**   In the event all dispositive motions have been argued and briefed before the Court prior to the above deadlines, counsel shall so advise the Clerk of Court and the hearing date will be stricken.

**Expert Witness Designation —**

**Plaintiff Designation Deadline — June 1, 2017**

**Defendant Designation Deadline — July 14, 2017**

Pursuant to Fed. R. Civ. P. 26(a)(2), Plaintiff shall designate expert witnesses and provide the opposing party with a complete summary of the testimony of each expert by June 1, 2017.   In accordance with Fed. P. Civ. P. 26.1(a)(2), Defendants shall designate expert witnesses and

000038

provide the opposing party with a complete summary of the testimony of each expert by July 14, 2017.   These summaries **SHALL** include a comprehensive statement of the expert's opinions and the basis for the opinions.   *See Smith v. Ford Motor Company*, 626 F.2d 784 (10th Cir. 1980).

**FOR ALL OF JUDGE FREUDENTHAL CASES, THE PARTIES <u>SHALL</u> FILE THEIR EXPERT DESIGNATIONS WITH THE COURT**.   Plaintiff may depose Defendants' experts after the discovery cutoff date, but must complete the depositions fourteen (14) days **PRIOR** to the final pretrial conference.

The party designating the expert witness shall set forth all special conditions or requirements which the designating party or the expert witnesses will insist upon with respect to the taking of their depositions, including the amount of compensation the expert witness will require and the rate per unit of time at which said compensation will be payable.   In the event counsel is unable to obtain such information to include in the designation, the efforts to obtain the same and the inability to obtain such information shall be set forth in the designation.

**FOR JUDGE FREUDENTHAL CASES, PARTIES <u>SHOULD NOT</u> FILE THEIR NOTICES.**

**Discovery Cutoff Date — September 8, 2017**

The discovery cutoff date is September 8, 2017.   All discovery depositions shall be completed by the discovery cutoff date.   Trial depositions may be taken up to seven (7) days prior to the trial date.

**Stipulations as to Facts — September 15, 2017**

The parties shall exchange proposals for stipulations as to facts in accordance with U.S.D.C.L.R. 16.1(b)(6) by September 15, 2017.

000039

**Final Pretrial Conference — January 5, 2018 at 9:00 a.m.**

A final pretrial conference in this matter has been scheduled for January 5, 2018 at 9:00 a.m. in the Chambers of the Honorable Nancy D. Freudenthal, Cheyenne, Wyoming.   Counsel shall appear in person.

BEFORE THE CONFERENCE, COUNSEL FOR REPRESENTED PARTIES ALL MUST AGREE UPON, PREPARE, AND SIGN A JOINT PROPOSED FINAL ORDER PREPARED FOR JUDGE FREUDENTHAL'S SIGNATURE IN THE FORMAT PROVIDED ON THE DISTRICT COURT WEBSITE UNDER CIVIL FORMS.  **UNLESS OTHERWISE AGREED UPON BY COUNSEL, THE COURT EXPECTS PLAINTIFF'S COUNSEL TO TAKE THE LEAD IN DRAFTING THE JOINT PRETRIAL ORDER**. If you cannot locate the form, please contact Judge Freudenthal's chambers.   All represented parties are jointly responsible for the preparation of the proposed Joint Final Pretrial Order.  **A copy of the proposed order must be delivered directly to Judge Freudenthal's chambers (but not filed) via e-mail to wyojudgendf@wyd.uscourts.gov least seven (7) days before the final pretrial conference.**

**WITNESS AND EXHIBIT LISTS MUST BE EXCHANGED BY THE PARTIES (BUT NOT FILED) AT LEAST FOURTEEN (14) DAYS BEFORE THE FINAL PRETRIAL CONFERENCE.**   Exhibit lists must be attached to, and witness lists must be included as part of, the proposed Final Pretrial Order in accordance with the instructions in the form order.   The parties are not required to list rebuttal witnesses or impeachment exhibits.

**COPIES OF ALL EXHIBITS AS TO WHICH THERE MAY BE OBJECTIONS MUST BE BROUGHT TO THE FINAL PRETRIAL CONFERENCE.**   If an exhibit is not brought to the final pretrial conference and an objection to the exhibit is asserted, the exhibit may

000040

be excluded from evidence for noncompliance with this order.   Exhibits must be prepared for the final pretrial conference and for trial in accordance with the following instructions:

      **A. *Marking of Exhibits***: All exhibits must be marked by the parties before trial. The plaintiff(s) shall list and mark each exhibit with numerals and the number of the case, and counsel for the defendant(s) shall mark each exhibit intended to be offered at the pretrial conference with letters and the number of the case, e.g., Civil No._____, Plaintiff's Exhibit 1; Civil No. _____, Defendant's Exhibit A.   In the event there are multiple parties, plaintiff or defendant, the surname or abbreviated names of the parties shall proceed the word "Exhibit," e.g., Defendant Jones Exhibit A, Defendant Smith Exhibit A, etc.

      **B. *Elimination of Duplicate***.   The parties should compare the exhibits and eliminate duplicates.   If more than one party wants to offer the same exhibit, then it should be marked with a number and listed as a joint exhibit on the exhibit list of the plaintiff(s).

      **C. *Copies for the Court***.   There is no need to provide copies of exhibits to the Court.   The originals of the exhibits not submitted through JERS shall be provided to the Deputy Clerk as they are introduced and admitted at trial.

**EXHIBIT LIST:** The parties' exhibit lists are to be prepared in the following format.

| Plaintiff(s) Exhibits | Objections (Cite Fed. R. Evid.) | Category A, B, C | Offered | Admit/Not Admitted (A) - (NA)* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

\* This column is for use by the trial judge at trial.   Nothing should be entered in this column by the parties.

000041

The following categories are to be used for objections to exhibits:

    A.    **Category A**. These exhibits are admissible upon motion of any party, and will be available for use by any party at any stage of the proceedings without further proof or objection.

    B.    **Category B**.  These exhibits are objected to on grounds other than foundation, identification, or authenticity.  This category should be used for objections such as hearsay or relevance.

    C.    **Category C**.  These exhibits are objected to on grounds of foundation, identification, or authenticity.   This category should not be used for other grounds, such as hearsay or relevance.

ANY COUNSEL REQUIRING AUTHENTICATION OF AN EXHIBIT MUST SO NOTIFY THE OFFERING COUNSEL IN WRITING WITHIN FIVE (5) BUSINESS DAYS AFTER THE EXHIBIT IS MADE AVAILABLE TO OPPOSING COUNSEL FOR EXAMINATION.   Failure to do so is an admission of authenticity.

ANY EXHIBIT NOT LISTED ON EXHIBIT LIST IS SUBJECT TO EXCLUSION AT TRIAL.  THE COURT MAY DEEM ANY OBJECTION NOT STATED ON THE EXHIBIT LIST AS WAIVED.

The parties shall identify all witnesses they <u>will</u> call or <u>may</u> call and shall further identify whether each witness will testify in person, by deposition or by video tape.

MOTIONS IN LIMINE OR MOTIONS RELATING TO THE EXCLUSION OF EVIDENCE SHALL BE FILED NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE **FINAL PRETRIAL CONFERENCE**.   Responses shall be filed seven (7) days before the final pretrial conference.

000042

**Jury Trial — January 22, 2018 at 8:30 a.m.**

A jury trial is set before the Honorable Nancy D. Freudenthal for 8:30 a.m. on January 22, 2018, in **Casper, Wyoming**, and is expected to last five (5) days.   This case is stacked #1 on the civil docket.   U.S.D.C.L.R. 40.1(a).

**\*\*\*THE COURT HAS IMPLEMENTED A SYSTEM FOR ELECTRONIC SUBMISSION OF EXHIBITS TO THE JURY.  THE JURY EVIDENCE RECORDING SYSTEM (JERS) ALLOWS JURORS TO REVIEW EVIDENCE (DOCUMENTARY, PHOTO, OR VIDEO/AUDIO EXHIBITS) ON A LARGE LED SCREEN DURING DELIBERATIONS.  ATTORNEYS SHOULD PROVIDE THEIR TRIAL EXHIBITS IN ELECTRONIC FORMAT ON A USB DRIVE, DVD, OR CD TO THE OFFICE OF THE CLERK OF COURT A MINIMUM OF FIVE (5) DAYS PRIOR TO THE START OF TRIAL.**   COUNSEL IS REQUIRED TO PROVIDE THEIR EXHIBITS IN THE FOLLOWING ELECTRONIC FORMATS:

All electronic evidence should be provided using the following formats:

- Document and Photographs: .pdf, .jpg, .bmp, .tif, .gif

- Video and Audio Recordings: .avi, .wmv, .mpg, .mp3, .mp4, .wma, .wav

Regarding the file size of electronic evidence, individual files should not exceed 500MB. If possible, exhibits approaching or exceeding this size limit should be separated into multiple files.   PARTIES MAY OBTAIN ADDITIONAL INFORMATION REGARDING THE SUBMISSION OF ELECTRONIC EXHIBITS BY CONTACTING THE CLERK'S OFFICE AT 307-433-2120.

The parties SHALL file their proposed voir dire questions, jury instructions and special verdict form no later than seven (7) days prior to the commencement of trial.   Jury instructions

9

000043

must include citations of authority. **The proposed voir dire questions, jury instructions, and special verdict forms shall be submitted directly to Judge Freudenthal's chambers via e-mail to wyojudgendf@wyd.uscourts.gov.   The instructions must be formatted as a single document for word or wordperfect.**   Counsel need to submit only proposed substantive jury instructions; the Court has its own general instructions, which can be found on the district court website under forms.

**THE PARTIES MUST SUBMIT JOINT JURY INSTRUCTIONS AND A JOINT PROPOSED VERDICT FORM**.   **UNLESS OTHERWISE AGREED UPON BY COUNSEL, THE COURT EXPECTS PLAINTIFF'S COUNSEL TO TAKE THE LEAD IN DRAFTING THE JOINT JURY INSTRUCTIONS**. In order to produce these joint instructions, the parties shall meet and confer sufficiently in advance of the required submission date. The instructions should be submitted in the order in which the parties wish to have the instructions read.

If the parties cannot reach an agreement on the instructions then instructions shall be submitted in three (3) sets as follows:

1. The agreed upon instructions.

2. Those instructions propounded by Plaintiff, opposed by Defendants.

3. Those instructions propounded by Defendants, opposed by Plaintiff.

 For disputed instructions, the party should note its objections to the proposed instruction. The parties should also submit differing versions of disputed instructions or a statement as to why the instruction should not be included.

10

At the same time as the filing of the jury instructions, the parties shall file a joint statement setting forth briefly and simply, in a noncontentious manner, the background of the case and the claims and defenses being asserted.   The parties should make every effort to agree upon the language for the statement.   To the extent the parties cannot agree, they should use the following format: "Plaintiff contends . . . .; Defendants contend . . . ."

**Settlement Possibilities —**

The Judge considers settlement possibilities of this case to be fair.

Dated this ___2nd___ day of May, 2017.

_____
NANCY D. FREUDENTHAL
CHIEF DISTRICT COURT JUDGE

11

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas



---

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

---

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CV-00017-NDF |
| | ) | |
| Plaintiff, | ) | |
| | ) | FIRST AMENDED |
| | ) | COMPLAINT FOR DAMAGES |
| v. | ) | FOR EMPLOYMENT |
| | ) | DISCRIMINATION |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| Defendant. | ) | |
| | ) | |

### INTRODUCTION, JURISDICTION AND VENUE

1.    This action is brought by Roy Mestas (hereinafter "Mr. Mestas" or "Plaintiff") to secure redress for defendants' violations of his civil right to be free from employment discrimination based on his national origin and his disability.

2.    Mr. Mestas is an individual who, at all times relevant herein, was and is a resident of the County of Natrona, State of Wyoming.

3.    Plaintiff is informed and believes, and based thereon alleges, that defendant Town of Evansville (hereinafter "defendant Evansville") was and is a duly incorporated Municipal Corporation under the laws of the State of Wyoming, located in Natrona County, State of Wyoming.

000046

4.      Defendant Evansville employs more than 15 employees and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(5)(A) (the "ADA").

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this case arises under federal law, specifically, Title VII and the ADA.

6.      Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

7.      Plaintiff Mestas has exhausted his administrative remedies. Mr. Mestas filed a charge of discrimination on the basis of race or national origin in employment with the Wyoming Fair Employment Program, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference. Over one hundred eighty days after Plaintiff filed his charge of discrimination, the U.S. Department of Justice issued a right to sue notice authorizing this lawsuit, a true and correct copy of which Mr. Mestas received on October 31, 2016, is attached hereto as Exhibit 2, and incorporated herein by reference.

## FACTS CENTRAL TO PLAINTIFF'S CLAIMS

8.      Plaintiff Mestas began his employment with the Town of Evansville Public Works Department on September 12, 2012. As a new hire, Mr. Mestas was required to serve a six-month probationary period as an at-will employee.

9.      At all times material hereto, defendant's managers, supervisors, agents and employees were acting within the scope of their employment and with the knowledge and

2

000047

consent of defendant.

10.    During his employment with defendant Evansville, Mr. Mestas received no disciplinary actions or coaching for poor or unsatisfactory performance of his job duties.

11.    During his employment with defendant Evansville, Mr. Mestas was subjected to national origin-based harassment and discrimination; harassment, intimidation and discrimination on the basis of his disability; and retaliation for taking medical leave protected by the ADA, all of which affected a term, condition or privilege of his employment.

12.    Defendant Evansville employed Dale Brown at all times relevant herein. Dale Brown was one of two supervisors in defendant Evanville's Public Works Department and was Mr. Mestas's immediate supervisor.

13.    On November 26, 2012, Mr. Mestas injured his back at work.  He submitted documentation from his physician that he was unable to work "until further notice."

14.    Because of his disabling workplace injury, he was on medical leave until January 14, 2013.

15.    When Mr. Mestas returned to work on January 14, 2013, he provided documentation from his physician that he could return to his regular duties with no restrictions.

16.    When Mr. Mestas returned to work on January 14, 2013, Department of Public Works Supervisors Brown and Brian Botcher presented him with a letter informing him that they were extending his six-month probationary period as a new hire through May 24, 2013 "because of the extended lost work time due to your injury on November 26, 2012."

17.    After he returned to work on January 14, 2013, Mr. Mestas was able to

3

satisfactorily perform his essential job duties.

18.    After Mr. Mestas returned to work on January 14, 2013, Supervisor Brown was upset that Mr. Mestas was injured and had missed work.

19.    Following his return to work on January 14, 2013, Supervisor Brown subjected Mr. Mestas to harsh and condescending treatment more frequently and more severely than other employees.

20.    Supervisor Brown frequently expressed his hostility toward Mr. Mestas by expecting Mr. Mestas to complete tasks without the assistance of co-workers.

21.    Supervisor Brown also manifested his hostility toward Mr. Mestas through directives to co-workers not to assist Mr. Mestas and by chastising and verbally reprimanding those co-workers who did assist him.

22.    On multiple occasions during Mr. Mestas's employment with defendant Town of Evansville, Supervisor Brown repeatedly made derogatory remarks related to those of Hispanic origin.  Supervisor Brown frequently called subordinates, including Mr. Mestas, as well as citizens of the Town of Evansville, "beaners" or "stupid beaners."

23.    At all times relevant to this complaint, on multiple occasions during regular morning meetings with Public Works Department employees, Supervisor Brown told "minority" jokes.

24.    Because of Supervisor Brown's hostile and condescending treatment, Mr. Mestas began contemporaneously documenting and recording some of his conversations with Supervisor Brown, to document Brown's hostile, intimidating treatment and Mr. Mestas's efforts to address that treatment.

4

000049

25.    In one audio recording on or about February 21, 2013, Mr. Mestas asked to speak privately with Supervisor Brown.  He asked Brown if he had done something to 'piss him off,' an obvious reference to Supervisor Brown's hostile treatment.

26.    Supervisor Brown responded that 'I am still frustrated with your back,' and that although he knew that Mr. Mestas had not injured his back intentionally, Mr. Mestas had not been bed ridden when he was out on "disability" for his back injury and that he should have come to work anyway to perform administrative 'light-duty' work.  Supervisor Brown accused Mr. Mestas of using his back to call in sick two times after he had returned from medical leave.

27.    In that same February of 2013 recorded conversation, Supervisor Brown told Mr. Mestas that someone working for the Town of Evansville outside of the Public Works Department, "on other authority," purportedly had told him that he should terminate Mr. Mestas's employment if Mr. Mestas could not perform his job duties.

28.    After this conversation in February of 2013, Supervisor Brown continued to treat Mr. Mestas in a hostile, intimidating manner, and Mr. Mestas continued to satisfactorily perform his job duties.

29.    During his employment with the Town of Evansville, Mr. Mestas kept a memo pad in his shirt pocket in which he documented job-related information, such as addresses where trash bins needed to be repaired, where trash bins had not been set out, or where extra trash had been left on the ground next to the trash bins.

30.    On or about February 22, 2013 and again on or about March 27, 2013, Mr. Mestas documented in his memo pad that Supervisor Brown had made a "stupid beaner" remark.

31.    On at least two separate occasions, Mr. Mestas complained directly to Supervisor

5

Brown that his derogatory comments regarding people of Hispanic descent were offensive.

32.    Mr. Mestas documented one of those occasions in his memo pad as follows:
"Asked Dale to stop using Beaner remarks!!! 4-1-13."

33.    Supervisor Brown responded to these complaints by stating that his (Brown's)
wife is a "Mexican" and he says stuff like this to her all the time.

34.    At all times relevant herein, defendant Evansville did not have a specific
procedure for employees to make complaints of harassment, other than for sexual harassment.

35.    At all times material to this complaint, Department of Public Works employees,
including Mr. Mestas, were expected to report to work by 7 a.m., to shovel snow at Town of
Evansville facilities.

36.    In early April of 2013, Mr. Mestas contacted his physician to schedule a steroid
injection to relieve his recurring back pain.

37.    On April 11, 2013, in a recorded conversation, Mr. Mestas informed Supervisor
Brown that his physician would perform an injection on April 18, 2013, to treat his back pain.

38.    Supervisor Brown granted Mr. Mestas's request for time off of work to undergo
the injection to treat his back pain and told him to write it on the Public Works Department
calendar.

39.    On or about Monday, April 15, 2013, Mr. Mestas timely reported for work to
assist with snow removal.  While performing his assigned snow removal duties, Mr. Mestas
asked Supervisor Brown if he could use his own snow blower because of back pain.

40.    Supervisor Brown denied Mr. Mestas's request for a snow blower.  Supervisor

000051

Brown later stated that he denied Mr. Mestas's request to use a snow blower because he thought Mr. Mestas was 'just trying to get out of work' and that he would require Mr. Mestas to shovel the snow by hand unless he was excused from doing so by a doctor.

41.    On April 17, 2013, in a recorded conversation, Supervisor Brown summoned Mr. Mestas to his office and terminated Mr. Mestas's employment because things were 'not working out' and that Mr. Mestas should go 'take care of your back and whatever.'

42.    Mr. Mestas herein incorporates all allegations from the preceding paragraphs for all claims for relief asserted below.

**COUNT 1. Cause of Action: Discrimination Based on National Origin.**

43.    Defendant Town of Evansville, through its agent or supervisor, Dale Brown, engaged in a pattern and practice of unlawful discrimination on the basis of race or national origin by subjecting him to national origin based harassment and intimidation that affected a term, condition, or privilege of employment and was so pervasive and egregious that it altered the working conditions of his employment and created an abusive and hostile working environment, in violation of 42 U.S.C. § 2000e-2.

44.    Defendant Town of Evansville, through its agent or supervisor, Dale Brown, engaged in unlawful discrimination on the basis of race or national origin by discharging Mr. Mestas after he complained to Supervisor Brown of the national origin based harassment and intimidation that was affecting a term, condition, or privilege of his employment, in violation of 42 U.S.C. § 2000e-2.

45.    Defendant Evansville at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraphs 43 and 44 above.

000052

46.    Supervisor Brown failed to take any reasonable steps to prevent the discrimination based on race or national origin from occurring, after Mr. Mestas had complained to him about his discriminatory and derogatory statements.

47.    Supervisor Brown violated Title VII by failing to take any action on Mr. Mestas's complaints regarding his national original discrimination, as described in paragraphs 31-32 above.

48.    Defendant Town of Evansville is strictly liable for illegal national origin discrimination because plaintiff's supervisor knew of and carried out the adverse personnel actions against the plaintiff.

49.    As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer humiliation, embarrassment, loss of enjoyment of life and emotional distress all in an amount to be shown according to proof at time of trial and for which damage he should be justly compensated.

50.    As a further direct and proximate result of defendant's violation of 42 U.S.C. 2000e-2, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendant and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. 2000e-5(k).

**COUNT 2. Cause of Action: Hostile Work Environment Based on Disability, in Violation of the ADA.**

51.    Defendant Town of Evansville, through its agent or supervisor, Dale Brown, engaged in a pattern and practice of unlawful discrimination on the basis of disability by subjecting Mr. Mestas to unwelcome harassment based on plaintiff's disability, harassment that

8

was sufficiently several or pervasive to alter a term, condition, or privilege of employment, in violation of 42 U.S.C. § 12112(a) and (b)(5).

52.    Defendant Evansville at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraph 51 above.

53.    Supervisor Brown failed to take any reasonable steps to prevent the discrimination based on plaintiff's disability from occurring, after Mr. Mestas confronted him about his hostile and intimidating treatment.

54.    Supervisor Brown violated the ADA by failing to take any action on Mr. Mestas's complaints regarding his disability discrimination, as described in paragraph 25 above.

55.    As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer humiliation, embarrassment, loss of enjoyment of life and emotional distress all in an amount to be shown according to proof at time of trial and for which damage he should be justly compensated.

56.    As a further direct and proximate result of defendant's violation of 42 U.S.C. § 12112, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendant and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 12205.

**COUNT 3. Cause of Action: Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.**

57.    Defendant Town of Evansville, through its agents or supervisors, engaged in unlawful retaliation against Mr. Mestas after he took protected medical leave that was a

9

reasonable accommodation for his disabling back condition, in violation of 42 U.S.C. § 12203(b).

58.     Defendant Town of Evansville at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraph 57 above.

59.     Supervisor Brown failed to take any reasonable steps to prevent the discrimination based on plaintiff's disability from occurring, after Mr. Mestas confronted him about his hostile and intimidating treatment.

60.     Supervisor Brown violated the ADA by failing to take any action on Mr. Mestas's complaints regarding his disability discrimination, as described in paragraph 25 above.

61.     As a direct and proximate result of defendant's actions, Mr. Mestas has suffered and will continue to suffer humiliation, embarrassment, loss of enjoyment of life and emotional distress all in an amount to be shown according to proof at time of trial and for which damage he should be justly compensated.

62.     As a further direct and proximate result of defendant's violation of 42 U.S.C. § 12203(b), plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendant and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 12205.

**WHEREFORE**, Plaintiff Roy Mestas prays for judgment against Defendant Evansville as follows:

    a.   For compensatory damages in excess of this Court's minimum jurisdiction according to proof;

000055

b.  For injunctive relief;

c.  For attorney and expert witness fees as allowed by statute;

d.  For pre-judgment interest at the maximum legal rate;

e.  For interest on the judgment at the maximum legal rate;

f.  For costs of the suit herein; and

g.  For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues and claims raised in this Amended Complaint.

Respectfully submitted this 17 <sup>th</sup> day of July, 2017.

<div style="margin-left:40%">

For Plaintiff Roy Mestas

By: *Megan L. Hayes*
Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6258
mlhayes@wyoming.com

Attorney for Roy Mestas

</div>

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Amended Complaint was served via the Court's CM/ECF system this 18 th day of July, 2017, to all attorneys of record.

_Megan L. Hayes_
Megan L. Hayes

11

000056

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA   ☒ EEOC | 66-2013  541-2013-01402 |

**Wyoming Fair Employment Program** — and EEOC

State or local Agency, if any

Name (indicate Mr., Ms., Mrs.)
**Mr. Roy Mestas**

RECEIVED
MAY 16 2013

Street Address                  City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

Name: **TOWN OF EVANSVILLE**     No. Employees, Members: 15-100   Phone No. (Include Area Code): (307) 234-6530

RECEIVED
MAY 03 2013
EEOC DENVER OFFICE

Street Address: **P.O. DRAWER 168, Evansville, WY 82636**

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN  ☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION  ☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-14-2013**  Latest **04-17-2013**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. PERSONAL HARM: Beginning on or about January 14, 2013, and continuing throughout my employment as a Sanitation Route Driver, the Director of Public Works subjected me to harassment. On or about April 17, 2013, I was discharged.

II. RESPONDENT'S DEFENSE: The Director of Public Works told me and another coworker (national origin, Hispanic) that he was just kidding when he made racist comments to us on two occasions. On or about April 17, 2013, the Director of Public Works told me that I was being discharged because I could no longer do my job.

III. DISCRIMINATION STATEMENT: I believe that I have been discriminated against based on my national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended, and based on a disability within the meaning of the Americans with Disabilities Act (ADA) of 1990, as amended, in violation of the ADA, in that:
A. I was qualified for my job and I was performing satisfactorily.
B. On or about November 26, 2012, I sustained an injury at work which caused me to miss between six and seven weeks of work. On or about January 14, 2013, I was released to return to work without restrictions.

Date: **May 03, 2013**

Ex. I

000057

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 541-2013-01402 |

| Wyoming Fair Employment Program | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

C. Beginning on or about January 14, 2013, the Director of Public Works began to treat me poorly. He was unhappy with the fact that I had sustained an injury and needed to miss some work.

D. On or about February 22, 2013, and again on or about March 27, 2013, the Director of Public Works called me and another co-worker (national origin, Hispanic) "stupid beaners". Both times I told him that I was upset with his comments and not to make those comments to me.

E. In or about mid-March 2013, I informed the Director of Public Works that I had an injection scheduled next month for back pain.

F. On or about April 17, 2013, I called the Director of Public Works and asked to be excused from snow shoveling duty that day due to back pain. He refused my request and then summoned me to work.

G. On or about April 17, 2013, I was informed of my discharge. I dispute that I was unable to do my job.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| May 03, 2013 _____<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |



**U.S. Department of Justice**

**Civil Rights Division**

*Disability Rights Section - NYA*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

DJ# 205-87-0

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

OCT 2 1 2015

Roy Mestas
███████████
███████████████████

Re:     EEOC Charge Against:     Town of Evansville
        EEOC No.:                541-2013-01402
        DJ#:                     205-87-0

Dear Mr. Mestas:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation on your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, if you wish to pursue this matter, you should consult an attorney at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), referenced in Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

Ex. 2

We are returning the files in this matter to EEOC's District Office. If you or your attorney, have any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to:

John C. Lowrie, Director
Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012

As requested by the Equal Employment Opportunity Commission, enclosed is the "Notice of Right to Sue" regarding your claim under Title VII. You will also find a list of state resources and a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA).

We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General

BY: Amanda Maisels
Amanda Maisels
Deputy Chief
Disability Rights Section

Enclosure:
    EEOC Notice of Right to Sue
    Wyoming State Resources
    Notice of Rights under the ADAAA

cc:    Town of Evansville
    EEOC-Phoenix District Office

2

Megan L. Hayes, #6-2891
Attorney at Law
910 Kearney St.
Laramie, WY  82070
(307) 760-6258-phone
mlhayes@wyoming.com

Attorney for Plaintiff


Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax


Attorneys for Defendants
Town of Evansville and Dale Brown in
his official capacity as Public Works
Supervisor for the Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING


| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, and | ) | |
| DALE BROWN, in his official capacity | ) | |
| as Public Works Supervisor for the Town of | ) | |
| Evansville, | ) | |
| | ) | |
| Defendants. | ) | |


**PARTIES' STIPULATION REGARDING CONFERRING
ON PLAINTIFF'S MOTION TO COMPEL AND
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
AND EXTENSION OF TIME FOR RESPONSES**


COME NOW, the parties, by and through their respective undersigned attorneys, and

hereby stipulate as follows to the Motion for Leave to File First Amended Complaint (Document

21) and Plaintiff's Motion to Compel Discovery Responses (Document 21), both filed with the Court on June 19, 2017:

1. Undersigned counsel conferred on the Motion to Compel on June 20, 2017. Counsel for defendants opposes the Motion to Compel as contrary to the Order that was entered by Magistrate Judge Rankin on June 7, 2017 (Doc. 18). Magistrate Judge Rankin entered said Order after holding an informal discovery conference to address the issue of disclosing personnel files of current and former Town of Evansville employees, one of whom was the Plaintiff's co-supervisor. Magistrate Rankin determined that there is no sufficient nexus between the requested personnel files and the claims and allegations made in the underlying complaint. The Plaintiff filed his Motion to Compel, contending that the Court's preliminary finding requiring a nexus is contrary to the law in the Tenth Circuit. He therefore continues to seek access to those personnel files in the discovery phase of this proceeding.

2. Undersigned counsel also conferred on the Motion for Leave to File First Amended Complaint on June 20, 2017. Counsel for defendants generally does not oppose this motion so long as the Court permits the parties to amend the scheduling order to allow additional time for discovery, defendants' expert designations, dispositive motions and an Independent Medical Evaluation before trial;

3. The parties would also request leave from the Court allowing them to file an amended scheduling order;

4. Plaintiff did not confer with opposing counsel until the day after filing Doc. 20 and Doc. 21. The parties have stipulated and agreed that defendants' time to respond to both Doc. 20 and Doc. 21 will begin as of the date of the filing of this motion.

2

DATED this 26th day of June, 2017.

                _s/Thomas A. Thompson_____
                Thomas A. Thompson, WSB #6-2640
                Kylie M. Rangitsch, WSB #7-5547
                Attorneys for Defendants
                MacPherson, Kelly & Thompson, LLC
                P.O. Box 999
                616 West Buffalo
                Rawlins, WY 82301
                (307) 324-2713-phone
                (307) 324-7348-fax
                tthompson@wyomingattorneys.net

                ___s/Megan L. Hayes_____
                Megan L. Hayes
                Attorney for Plaintiff
                910 Kearney St.
                Laramie, WY 82070
                (307) 760-6258-phone
                mlhayes@wyoming.com

000063

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, and | ) | |
| DALE BROWN, in his official capacity | ) | |
| as Public Works Supervisor for the Town of | ) | |
| Evansville, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ALLOWING THE PARTIES TO**
**FILE AMENDED SCHEDULING ORDER**

THIS MATTER came before the Court on the parties' stipulation and request for leave to

file an amended scheduling order.  Having reviewed the file and the parties' stipulation,

IT IS HEREBY ORDERED AND ADJUDGED that the parties are granted leave to file an

amended scheduling order to include, *inter alia*, a deadline to complete an independent medical

evaluation.

SO ORDERED this _____ day of _____, 2017.


_____
Kelly H. Rankin
Magistrate Judge

4

000064

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 70

Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendants
Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net
nmartinez@wyomingattorneys.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO FIRST AMENDED COMPLAINT AND ASSERTION OF AFFIRMATIVE DEFENSES

**COMES NOW**, the Defendant, Town of Evansville in the above entitled matter, by and through its attorneys and hereby files its *Answer to First Amended Complaint and Assertion of Affirmative Defenses* in response to Plaintiff's First Amended Complaint for Damages for Employment Discrimination ("*Amended Complaint*") as follows:

## INTRODUCTION, JURISDICTION AND VENUE

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 71

1.      The allegations contained in paragraph 1 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

2.      Defendant admits the allegations contained in paragraph 2 of *Amended Complaint*.

3.      Defendant admits the allegations contained in paragraph 3 of the *Amended Complaint*.

4.      The allegations contained in paragraph 4 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

5.      The allegations contained in paragraph 5 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

6.      The allegations contained in paragraph 6 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

7.      Defendant admits that portion of paragraph 7 of *the Amended Complaint* that alleges that Mestas filed a Charge of Discrimination with the Wyoming Fair Employment Program and that Exhibit 1 is a true and correct copy of the Charge of Discrimination. The remaining allegations contained in paragraph 7 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the sentence attempts to

000066

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 72

allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

## FACTS CENTRAL TO PLAINTIFF'S CLAIMS

8.      Defendant denies the first sentence and admits the second sentence of the allegations contained in paragraph 8 of the *Amended Complaint*.

9.      The allegations contained in paragraph 9 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

10.     Defendant denies the allegations contained in paragraph 10 of the *Amended Complaint*.

11.     Defendant denies the allegations contained in paragraph 11 of the *Amended Complaint*.

12.     Defendant admits the allegations contained in paragraph 12 of the *Amended Complaint*.

13.     Defendant admits the allegations contained in paragraph 13 of the *Amended Complaint*.

14.     Defendant is without sufficient information and knowledge to form a belief as to that portion of paragraph 14 of the *Amended Complaint* which refers to Plaintiff's injury as "disabling" and therefore denies the same. Defendant admits that portion of paragraph 14 of the *Amended Complaint* which states Plaintiff was on leave until January 14, 2013.

15.     Defendant admits the allegations contained in paragraph 15 of the *Amended Complaint*.

3

000067

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 73

16.    Defendant admits the allegations contained in paragraph 16 of the *Amended Complaint*.

17.    The allegations contained in paragraph 17 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

18.    Defendant denies the allegations contained in paragraph 18 of the *Amended Complaint*.

19.    Defendant denies the allegations contained in paragraph 19 of the *Amended Complaint*.

20.    Defendant denies the allegations contained in paragraph 20 of the *Amended Complaint*.

21.    Defendant denies the allegations contained in paragraph 21 of the *Amended Complaint*.

22.    Defendant denies the allegations contained in paragraph 22 of the *Amended Complaint*.

23.    Defendant denies the allegations contained in paragraph 23 of the *Amended Complaint*.

24.    Defendant denies that portion of paragraph 24 which alleges that Supervisor Brown treatment towards Plaintiff was hostile and condescending. Defendant admits that Plaintiff recorded conversations with Supervisor Brown and affirmatively allege that said recordings were made without the knowledge or consent of Brown. Defendant is without sufficient information and knowledge to form a belief as to the remaining allegations contained in paragraph 24 of the *Amended Complaint* and therefore denies the same.

000068

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 74

25.     Defendant admits that Plaintiff was recording Brown and doing so without Brown's knowledge or consent. Defendant admits that a portion of the recording that Plaintiff made contains language to the effect as alleged in paragraph 25 of the *Amended Complaint*. Defendant is without sufficient information and knowledge to form a belief as to the remaining allegations contained in paragraph 25 of the *Amended Complaint* and therefore denies the same.

26.     Defendant denies the allegations contained in paragraph 26 of the *Amended Complaint* as plead and affirmatively allege that the audio recordings made by Plaintiff speak for themselves. Defendant is without sufficient information and knowledge to form a belief as to the allegations contained in paragraph 26 of the *Amended Complaint* which refer to what Brown knew and therefore denies the same. Defendant denies each and every other allegation in paragraph 26 of the *Amended Complaint* not specifically admitted.

27.     Defendant denies the allegations contained in paragraph 27 of the *Amended Complaint* as plead and affirmatively allege that the audio recordings made by Plaintiff speak for themselves.

28.     Defendant denies the allegations contained in paragraph 28 of the *Amended Complaint*.

29.     Defendant is without sufficient information and knowledge to form a belief as to the allegations contained in paragraph 29 of *Amended Complaint* and therefore deny the same.

30.     Defendant is without sufficient information and knowledge to form a belief as to the allegations contained in paragraph 30 of *Amended Complaint* and therefore deny the same.

31.     Defendant denies the allegations contained in paragraph 31 of the *Amended Complaint*.

32.     Defendant is without sufficient information and knowledge to form a belief as to the allegations contained in paragraph 32 of *Amended Complaint* and therefore deny the same.

33.     Defendant denies the allegations contained in paragraph 33 of the *Amended*

000069

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 75

*Complaint.*

34.      The allegations contained in paragraph 34 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

35.      Defendant admits the allegations contained in paragraph 35 of the *Amended Complaint.*

36.      Defendant is without sufficient information and knowledge to form a belief as to the allegations contained in paragraph 36 of *Amended Complaint* and therefore deny the same.

37.      Defendant denies the allegations contained in paragraph 37 of the *Amended Complaint* as plead.

38.      Defendant denies the allegations contained in paragraph 38 of the *Amended Complaint* as plead.

39.      Defendant admits the allegations contained in paragraph 39 which state that on April 15, 2013 Plaintiff reported to work, that Plaintiff was required to perform snow removal as the other employees with a snow shovel and admit that Plaintiff requested to go home and get his own snow blower and bring it to the Town of Evansville. Defendant is without sufficient information and knowledge to form a belief as to the remaining allegations contained in paragraph 39 of the *Amended Complaint* and therefore denies the same.

40.      Defendant denies that allegation contained in paragraph 40 of the *Amended Complaint* that alleges that Supervisor Brown denied Plaintiff's "request for a snow blower". Defendant affirmatively alleges that Supervisor Brown denied Plaintiff's request to leave the job site

6

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 76

and go home to retrieve Plaintiff's own personal snow blower. Defendant denies the remaining allegations as plead in paragraph 40 of the *Amended Complaint*.

41.     Defendant admits the allegations of paragraph 41 of the Amended Complaint that alleges that on April 17, 2013 Brown summoned Mestas to his office. Defendant denies the remaining allegations contained in paragraph 41 of the *Amended Complaint* as plead and affirmatively alleges that the entirety of the audio recording made by Plaintiff speaks for itself and provides the entire context of the recording.

42.     In response to paragraph 42 of the *Amended Complaint*, Defendant re-states and re-alleges each and every response previously set forth and incorporate those responses in response to the allegations contained in paragraph 42 of the *Amended Complaint*.

**Count 1. Cause of Action: Discrimination Based on National Origin.**

43.     The allegations contained in paragraph 43 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

44.     The allegations contained in paragraph 44 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

*Complaint.*

45.     The allegations contained in paragraph 45 of the *Amended Complaint* are purportedly

7

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 77

statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

46.    The allegations contained in paragraph 45 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

47.    The allegations contained in paragraph 47 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein

48.    The allegations contained in paragraph 48 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein

49.    Defendant denies the allegations contained in paragraph 49 of the *Amended Complaint.*

50.    Defendant denies the allegations contained in paragraph 50 of the *Amended Complaint.*

**Count 2. Cause of Action: Hostile Work Environment Based on Disability, in Violation of the ADA**

51.    The allegations contained in paragraph 51 of the *Amended Complaint* are purportedly

8

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 78

statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

52.     The allegations contained in paragraph 52 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

53.     The allegations contained in paragraph 53 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

54.     The allegations contained in paragraph 54 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

55.     Defendant denies the allegations contained in paragraph 55 of the *Amended Complaint*.

56.     Defendant denies the allegations contained in paragraph 56 of the *Amended Complaint*.

**Count 3. Cause of Action: Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.**

57.     The allegations contained in paragraph 57 of the *Amended Complaint* are purportedly

000073

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 79

statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

58.     The allegations contained in paragraph 58 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

59.     The allegations contained in paragraph 59 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

60.     The allegations contained in paragraph 60 of the *Amended Complaint* are purportedly statements of law that do not require the Defendant to either admit or deny the same, but to the extent that the paragraph attempts to allege operative facts as opposed to conclusions of law, the Defendant denies each and every allegation contained therein.

61.     Defendant denies the allegations contained in paragraph 61 of the *Amended Complaint*.

62.     Defendant denies the allegations contained in paragraph 62 of the *Amended Complaint*.

63.     The Defendant denies each and every other allegation, however captioned or entitled, contained in the *Amended Complaint* that has not specifically been admitted hereinabove.

## **AFFIRMATIVE DEFENSES**

10

000074

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 80

64.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the *Amended Complaint* fails to state a claim upon which relief can be granted.

65.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the claims and causes of action set forth therein are barred as a matter of fact and law by the applicable statute of limitations.

66.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that it is entitled to absolute immunity as a matter of fact and law from the claims and causes of action asserted therein.

67.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the Plaintiff has failed to mitigate any damages he may have incurred or suffered as the result of any action or conduct of the Defendant.

68.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the Plaintiff is estopped by his conduct to assert any of the claims or causes of action asserted therein.

69.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the Plaintiff, by his conduct, has waived the right to assert any of the claims or causes of action asserted therein.

70.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that its conduct was not the proximate cause of any of the alleged injuries or damages suffered by the Plaintiff.

71.     As a further and separate defense to the *Amended Complaint*, the Defendant asserts that the Plaintiff has failed to exhaust his administrative remedies and thereby is barred from asserting any of his claims or causes of action.

000075

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 81

72.    The Defendant reserves the right to amend these pleadings to assert any further or additional affirmative defenses that discovery in this case discloses.

**WHEREFORE**, the Defendant respectfully requests that the *Amended Complaint* be dismissed with prejudice, that the Defendant be awarded its attorney's fees, costs, and expenses of this action, and for such other and further relief as the Court deems just and proper under the circumstances.

**DATED** this 27th day of July, 2017.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Attorney for Defendant
MacPherson, Kelly & Thompson, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 27th day of July, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY 82070
Email: mlhayes@wyoming.com

/s/   Thomas A. Thompson
For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js

000076

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION OF FACTS

**COMES NOW** the Defendant, by and through its attorney, Thomas A. Thompson, of the law firm of MacPherson, Kelly & Thompson, and the Plaintiff, Roy Mestas, by and through his attorney Megan Hayes and pursuant to this Court's Scheduling Order and with the stipulation of the parties hereby submit the parties *Stipulation as to Facts* as follows:

1.    Plaintiff was employed with the Town of Evansville, Wyoming, as a sanitation route truck driver from September 12, 2012 to April 17, 2013.

2.    Evansville is a Wyoming municipal corporation organized and existing under the laws of the State of Wyoming.

3.    During his employment with the Town of Evansville, the Plaintiff was classified as a probationary, at-will employee.

4.    On November 26, 2012, Plaintiff injured his back.

5.    Plaintiff was treated for his work injury of November 26, 2012 by Dr. Demian

000077

Yakel.

6.      Plaintiff submitted a doctor's note to the Town of Evansville from Dr. Demian

Yakel, that he was "unable to work until further notice."

7.      Plaintiff was on medical leave until January 14, 2013. On January 14, 2013 Dr.

Demian Yakel released Plaintiff to return to work, to his regular duties, with no restrictions.

8.      Between January 14, 2013, and April 17, 2013, Plaintiff did not present

Evansville with any doctor's statement or order which stated he had any restrictions regarding

performing his regular job duties with the Town of Evansville.

9.      Plaintiff was off work due to his work injury from November 26, 2012, to

January 14, 2013.

**DATED** this 13th day of October, 2017.          **DATED** this 13th day of October, 2017.


/s/ Megan L. Hayes                              /s/ ThomasA.Thompson
Megan L. Hayes, #6-2891                         Thomas A. Thompson, #6-2640
Attorney for Plaintiff                          MacPherson, Kelly & Thompson, LLC
                                                Attorney for Defendant

000078

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas

---

### IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

---

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CV-00017-NDF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Roy Mestas, by and through undersigned counsel, moves for a partial summary

judgment pursuant to Federal Rule of Civil Procedure 56(c). He seeks a summary judgment in

his favor that he has satisfied two specific and distinct elements of his *prima facie* case on his

hostile work environment and retaliation claims under the Americans with Disabilities Act, as

amended.  Specifically, he seeks a partial summary judgment that he is "disabled" within the

meaning of the ADA because he has a record of a disability under 42 U.S.C. § 12102(1)(b), for

purposes of his hostile work environment claim.  He also seeks a partial summary judgment that

medical leave he took to recover from a workplace injury constituted a reasonable

accommodation for that injury that is protected by the ADA, for purposes of his retaliation claim

under 42 U.S.C. § 12203(b).

1

As set forth more fully in his brief supporting this motion, Mr. Mestas requests entry of partial summary judgment in his favor that he is disabled within the meaning of the ADA because he has a record of a disability and that his medical leave was conduct protected from retaliation by the ADA.

Respectfully submitted this 19th day of October, 2017.

For Plaintiff Roy Mestas


By: s/Megan L. Hayes
Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6258
mlhayes@wyoming.com

Attorney for Roy Mestas


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Partial Summary Judgment was served via the Court's CM/ECF system this 19th day of October, 2017, to all attorneys of record.

___s/Megan L. Hayes_____
Megan L. Hayes

000080

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas

---

### IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

---

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CV-00017-NDF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S BRIEF IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Roy Mestas, by and through undersigned counsel, submits this brief in support

of his motion for a partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

He seeks a summary judgment in his favor that he has satisfied two specific and distinct elements

of his *prima facie* case on his discrimination claims under the Americans with Disabilities Act

for a hostile work environment and retaliation.

Mr. Mestas asserted two ADA claims against the Town of Evansville: a hostile work

environment claim for harassment by his supervisor, Dale Brown, after returning from medical

leave for a workplace injury.  His second ADA claim asserts retaliation by Mr. Brown for taking

that medical leave, leave that was a reasonable accommodation for a disability and therefore is

1

conduct protected by the ADA.  These two ADA claims have different *prima facie* case elements and legal requirements.  This motion for partial summary judgment seeks to establish, based on the undisputed facts and as a matter of law, that (1) Mr. Mestas had an actual disability that was reasonably accommodated with medical leave, leave to which Mr. Mestas was entitled and that constitutes protected conduct for purposes of his ADA retaliation claim; and (2) when he returned to work from his medical leave and was able to perform his job duties without accommodation, Mr. Mestas was disabled because he had a "record of" a disability based on that medical leave and his inability to work, for purposes of his ADA hostile work environment claim. As argued more fully below, Mr. Mestas seeks a partial summary judgment in his favor that he has established the first elements of both his ADA hostile work environment and retaliation claims.

I.    **Undisputed facts relevant to the issues of Mr. Mestas's record of a disability and his medical leave for a workplace injury that is conduct protected by the ADA.**

1)   Mr. Mestas began his employment as a sanitation route truck driver with the Town of Evansville on September 12, 2012.  Declaration of Roy Mestas, ¶ 1, attached hereto as Exhibit A.

2)   On November 26, 2012, Mr. Mestas injured his back at work.  He submitted documentation from his physician that he was unable to work "until further notice." Defendant's Answer to First Amended Complaint, p. 3, ¶ 13, admitting the allegations in ¶ 13 of Plaintiff's First Amended Complaint; Mestas Decl., ¶ 4.

3)   Mr. Mestas's back injury was so painful that he could not work or perform many other activities without significant pain, including walking, standing, lifting, bending, sitting

000082

for longer than two hours, driving in a vehicle, and putting on his shoes and socks. Mestas Decl., ¶ 4.

4) After Mr. Mestas injured his back on November 26, 2012, he was on medical leave until January 14, 2013. Defendant's Answer to First Amended Complaint, ¶ 14, p. 3, admitting the allegations in ¶ 14 of Plaintiff's First Amended Complaint that Mr. Mestas was on medical leave until January 14, 2013; Parties' Stipulation of Facts, p. 2 ¶ 9 ("Plaintiff was off work due to his work injury from November 26, 2012, to January 14, 2013"); Mestas Decl., ¶ 5.

5) While on medical leave, Mr. Mestas received treatment for his back injury from Dr. Demian Yakel, including steroid injections to relieve back pain.  He also participated in physical therapy, sometimes twice per week, at Casper Orthopaedic Associates, P.C. Mestas Decl., ¶ 6; Affidavit of Yvonnie Currie, attached hereto as Exhibit B, and medical records from Casper Orthopaedic Associates, P.C., attached thereto as Exhibit 1.

6) Mr. Mestas submitted a report of injury to the Wyoming Division of Workers' Compensation on November 26, 2012.  Mestas Decl., ¶ 7 and Report of Injury, attached thereto as Exhibit 1.

7) The Division of Workers Compensation determined that Mr. Mestas's back injury was compensable; the Division paid all medical bills for treatment related to his back injury from November 28, 2012 to January 14, 2013.  Mestas Decl., ¶ 8.

8) Mr. Mestas applied for and was awarded Temporary Total Disability benefits from the Division of Workers Compensation while he was on medical leave from November 26, 2012 to January 14, 2013.  Mestas Decl., ¶ 9 and Application for Temporary Total Disability Benefits, attached thereto as Exhibit 2.

3

9) Mr. Mestas also completed an Initial Accident and Health Claim form for the Town of Evansville in which he indicated that he was unable to work after his November 26, 2012 injury.  That form also required information about and verification of his injury by his physician. Mestas Decl., ¶ 10 and Initial Accident and Health Claim form, attached thereto as Exhibit 3.

10) When he returned to work, he provided documentation from his physician to the Town of Evansville that he could return to his regular duties with no restrictions. Defendant's Answer to First Amended Complaint, ¶¶ 14 and 15, p. 3, admitting the allegations in ¶ 15 of Plaintiff's First Amended Complaint.

11) When he returned to work on January 14, 2013, Dale Brown and Brian Boettcher informed Mr. Mestas that they were extending his probationary period through May 24, 2013, "because of the extended lost work time due to [his] injury on November 26, 2012." Defendant's Answer to First Amended Complaint, ¶ 16, admitting the allegations in ¶ 16 of Plaintiff's First Amended Complaint; Mestas Decl., ¶ 11 and Memo from Boettcher and Brown to Mestas, attached thereto as Exhibit 3.

12) After returning to work in January of 2013, Mr. Mestas was physically able to perform his job duties without any work restrictions.  Mestas Decl., ¶ 12.

13) Mr. Mestas reinjured his back while performing his job duties at the Town of Evansville in early April of 2017.  Mestas Decl., ¶ 13.

14) Because he was experiencing severe back pain, Mr. Mestas scheduled an appointment with Dr. Yakel to have a steroid injection in his back on April 18, 2017. Mestas Decl., ¶ 14.

15) Dale Brown terminated Mr. Mestas's employment on April 17, 2013.  Mestas Decl., ¶ 15.

4

16) Mr. Mestas later applied for Social Security Disability Insurance benefits.  In his
application for benefits, Mr. Mestas stated that as of April 16, 2013, he had impairments
that prevented him from engaging in any substantial gainful activity, including his back
injury of November 26, 2012. Mestas Decl., ¶ 16.

17) Mr. Mestas started receiving SSDI benefits based on his inability to engage in any
substantial gainful activity as of April 16, 2013.  Mestas Decl., ¶ 17.

II.  **Mr. Mestas seeks a Partial Summary Judgment that he is Disabled and that his
     Medical Leave is Protected Conduct under the ADA.**

   A.  **Standard for Summary Judgment.**

The standard for summary judgment is well-established: Summary judgment is
appropriate when "there is no genuine issue as to any material fact and . . . the moving party is
entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v.
Catrett*, 477 U.S. 317 (1986); *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1531
(10th Cir. 1995).  A dispute is genuine if "the evidence is such that a reasonable jury could return
a verdict for the nonmoving party" on the issue.  *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d
950, 959 (10th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A
party may seek a summary judgment on all or any part of his claim.  Fed. R. Civ. Pro. 56(a) ("A
party may move for summary judgment, identifying each claim or defense — or the part of each
claim or defense — on which summary judgment is sought."). Summary judgment is not "a
disfavored procedural shortcut, but an integral part of the Federal Rules as a whole which are
designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*,
477 U.S. at 327 (citing Fed. R. Civ. P. 1).  As argued below, Mr. Mestas is entitled to a partial

5

000085

summary judgment in his favor because the undisputed facts demonstrate that he has satisfied the

first elements of his hostile work environment claim and his retaliation claim as a matter of law.

**B. The Town of Evansville accommodated Mr. Mestas's back injury with medical leave that allowed him to receive treatment for and recover from that injury. That medical leave is conduct protected from retaliation by the ADA.**

The ADA's retaliation statute provides in pertinent part as follows: "It shall be unlawful

to coerce, intimidate, threaten, or interfere with *any individual* in the exercise or enjoyment of, or

on account of his or her having exercised or enjoyed, . . . any right granted or protected by this

chapter." 42 U.S.C. § 12203(b) (emphasis added). To prosecute an ADA retaliation claim, "'a

plaintiff need not show that []he suffers from an actual disability.'" *Foster v. Mountain Coal*

*Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) (quoting *Selenke v. Med. Imaging of Colo.*, 248

F.3d 1249, 1264 (10th Cir. 2001). Disability is not an element of a retaliation action under the

ADA. *Id.* (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("By its own

terms, the ADA retaliation provision protects 'any individual' who has opposed any act or

practice made unlawful by the ADA . . . .") (quoting 42 U.S.C. § 12203(a)). *See also Barker v.*

*Riverside Cnty. Office of Educ.*, 584 F.3d 821, 827-28 (9th Cir. 2007) (because 42 U.S.C. §

12203(a) applies to "any individual," the plaintiff need not prove disability within the meaning

of the ADA to sustain a retaliation claim under the ADA.).

To establish retaliation in violation of the ADA, a plaintiff must prove that:

1. he engaged in conduct protected under the ADA;
2. he was subjected to an adverse employment action after the protected conduct occurred;
3. the defendant retaliated against him because of his conduct protected by the ADA.

*Foster*, 830 F.3d 1178, 1187 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th

Cir. 1999). Conduct protected under the ADA includes medical leave to receive treatment for or

6

to recover from an injury. *Foster*, 830 F.3d 1178, 1187 (request for leave from work for injury

may constitute "protected activity" under the ADA); *Cisneros v. Wilson*, 226 F.3d 1113, 1129

(10th Cir. 2000)[1] ("It is well-settled that a request for leave may lead to a 'reasonable'

accommodation; such a request may allow an employee sufficient time to recover from an injury

or illness such that the employee can perform the essential functions of the job (i.e., attend work)

in the future") (citing 29 C.F.R. Pt. 1630, Appendix to Part 1630 Interpretative Guidance to Title

I of the ADA, § 1630.2(o) (examples of possible accommodations include "permitting the use of

accrued paid leave or providing additional unpaid leave for necessary treatment."); *Smith v.

Difee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002) (an individual with either

an actual impairment or a record of such an impairment may be entitled to be reasonably

accommodated by taking limited leave for medical treatment) (citing *Rascon v. U.S. West

Communications, Inc.*, 143 F.3d 1324, 1333-34 (10th Cir. 1998) and *Hudson v. MCI

Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996)); *Taylor v. Pepsi-Cola Co.*, 196

F.3d 1106, 1110 (10th Cir. 1999) ("An allowance of time for medical care or treatment may

constitute a reasonable accommodation.").

Here, Mr. Mestas took medical leave from November 26, 2012 to January 14, 2013, to

receive treatment for and to recover from his workplace injury.  This leave was a reasonable

accommodation that enabled him to return to work on January 14, 2013, when he was

sufficiently recovered to perform the essential functions of his job.  The facts are undisputed that

he took medical leave and that he received medical treatment while on leave.  This medical leave

constitutes conduct protected by the ADA under clear and controlling Tenth Circuit law.  Mr.

Mestas therefore seeks a partial summary judgment in his favor that he has established the first

---

[1] Cisneros was overruled on 11th Amendment grounds by *Board of Trustees of Univ. of Alabama*

000087

element of his *prima facie* case of retaliation in violation of the ADA, namely that he engaged in

conduct protected by the ADA by taking medical leave as a reasonable accommodation for his

back injury.

> **C.  A Workplace Injury that Substantially Limits an Individual's Ability to Engage in Major Life Activities, including Work, Creates a Record of an Impairment that Qualifies as a Disability under the ADA.**

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a

qualified individual with a disability because of the disability of such individual in regard to ...

discharge of employees, ... and other terms, conditions, and privileges of employment." 42

U.S.C. § 12112(a). The Tenth Circuit has determined that hostile work environment claims, such

as the one asserted by Mr. Mestas against the Town of Evansville, are actionable under the ADA.

*Lanman v. Johnson Co., Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004).

To establish a *prima facie* case of discrimination under the ADA, including a hostile

work environment claim, a plaintiff must demonstrate "'(1) that [he] is disabled within the

meaning of the ADA; (2) that [he] is qualified-with or without reasonable accommodation; and

(3) that [he] was discriminated against because of [his] disability.'" *McKenzie v. Dovala*, 242

F.3d 967, 969 (10th Cir. 2001) (quoting *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir.

1998)).[2]  For the first element, demonstrating that the plaintiff is disabled, the ADA defines the

term "disability" as "(A) a physical or mental impairment that substantially limits one or more of

---

[2]To succeed on a hostile work environment claim, a plaintiff must prove, for the third element of his *prima facie* case, "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Anthony v. City of Clinton*, 1999 WL 390927 at *3 (10th Cir. June 15, 1999) (discussing elements of an ADA disability harassment claim and quoting *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (discussing elements of a Title VII sexual harassment claim based on a hostile work environment theory)).

000088

the major life activities of such individual; (B) **a record of such an impairment**; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(1) (emphasis added). *See also* 29

CFR 1630.2(g)(1)(ii) (defining "disability" as having a "record of" a physical impairment that

substantially limits one or more of the major life activities" of the individual). Major life

activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and **working**." 42 U.S.C. § 12102(2)(A) (emphasis added). *See also*

*Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) ("Plaintiff's disability prevented her

from attending work. Attendance is generally an 'essential' function of any job) (citing *Nowak v.*

*St. Rita High Sch.*, 142 F.3d at 999, 1003 (7th Cir. 1998) ("Obviously, an employee who does not

come to work cannot perform the essential functions of his job."); *Rogers v. Int'l Marine*

*Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("an essential element of any job is an ability to

appear for work. . . .") (citation, alteration, and internal quotation marks omitted). Mr. Mestas

seeks to establish, as a matter of law and based on the undisputed facts, that he is "disabled"

within the meaning of the ADA because as of January 14, 2013, he had a record of a disability.

On September 25, 2008, the Americans with Disabilities Act Amendments Act of 2008

("the ADA Amendments Act" or "ADAAA") went into effect. In amending the ADA, Congress

intended to convey "that the primary object of attention in cases brought under the ADA should

be whether entities covered under the ADA have complied with their obligations, and to convey

that the question of whether an individual's impairment is a disability under the ADA should not

demand extensive analysis." ADA Amendments Act, section 2(b)(6). "The ADAAA and the

EEOC's regulations also make clear that the primary object of attention in cases brought under

the ADA should be whether entities covered under the ADA have complied with their

000089

obligations, not whether the individual meets the definition of disability." Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act, Section 1630.1(c) Construction, citing ADAAA section 2(b)(5).

Section 2(b)(5) of the ADA Amendments Act and its implementing regulations specifically provide that determining whether an individual has a "record of a disability" shall not require extensive analysis:

> Whether an individual has **a record of an impairment that substantially limited a major life activity shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis**. An individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment.

29 CFR 1630.2(k)(2), defining "record of such an impairment" (emphasis added).   In addition, whether an individual is "substantially limited" in a major life activity "**usually will not require scientific, medical, or statistical analysis**" and the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." 29 CFR 1630.2(j)(v) and (ix), defining "substantially limits" (emphasis added).   These changes were adopted to clarify that "the primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA." Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act, Section 1630.1(c) Construction. Evidence that an in individual has had a substantially limiting impairment could be contained in many different types of records, "including but not limited to, education, medical, or employment records.  Such evidence that an individual has a past history of an impairment that substantially limited a major life activity is all that is necessary to establish coverage under the second prong." Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act, Section 1630.2(k) Record of a Substantially Limiting Impairment.

10

A condition that substantially limits one or more major life activities creates a "record of" a disability under the ADA Amendments Act and its implementing regulations.  29 C.F.R. 1630.2(k) ("a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."); *St. Onge v. Livingston Co.*, 2005 WL 1838529 (E.D. Mich. 2005) (plaintiff had a record of disability when she was fired nearly two years after taking a six-week medical leave for breast cancer treatment, even though she was no longer actually disabled when fired). Even impairments lasting fewer than six months can be substantially limiting for purposes of establishing an actual impairment or a record of such an impairment under the ADA.  The implementing regulations of the ADA Amendments Act "include a clear statement that the definition of an impairment as transitory, that is, 'lasting or expected to last for six months or less,' only applies to the 'regarded as' (third) prong of the definition of 'disability' as part of the 'transitory and minor' defense to 'regarded as' coverage. It does not apply to the first or second prong of the definition of disability."  Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act, Section 1630.2(j)(1)(ix), Effects of an Impairment Lasting Fewer Than Six Months Can Be Substantially Limiting (citing 29 C.F.R. Section 1630.2(j)(1)(ix)).

According to the undisputed facts of this case and applying the law set forth above, Mr. Mestas was "disabled" within the meaning of the ADA for purposes of his hostile work environment claim after he returned to work on January 14, 2013.  At that time, he had a record of a disability because he took medical leave, received medical treatment and was unable to engage in multiple major life activities, including work, from November 26, 2012 to January 14, 2013, due to his back injury.

11

**D.  Mr. Mestas is Entitled to a Partial Summary Judgment in his Favor Finding
that he is Disabled within the Meaning of the ADA and that his Medical
Leave is Conduct protected by the ADA.**

Mr. Mestas alleged that his supervisor, Dale Brown, harassed, intimated, threatened and

retaliated against him after he returned from taking medical leave for his back injury. The

undisputed facts show that Mr. Mestas's treating physician documented Mr. Mestas's inability to

work because of his back injury.  The undisputed facts also show that Mr. Mestas was off work

from November 26, 2012, to January 14, 2013.  During that time, he underwent medical

treatment and physical therapy for his workplace injury; he has included his medical records as

an exhibit to this motion to show it is beyond dispute that he sought medical treatment for his

injury.  While on medical leave, he received Temporary Total Disability benefits from the State

of Wyoming because his compensable injury prevented him from working.  Finally, the

Workers' Compensation Division paid all medical bills related to his workplace injury.

The undisputed facts further show that defendant Town of Evansville admitted that on

November 26, 2012, Mr. Mestas injured his back at work and that he provided medical

documentation from his physician that he was "unable to work until further notice." The

defendant also admitted that after Mr. Mestas injured his back at work on November 26, 2012,

he was on medical leave until January 14, 2013, when he provided medical documentation that

he could return to his regular duties with no restrictions, which he did. Finally, defendant has

admitted that it extended Mr. Mestas's six-month probationary period "because of the extended

lost work time due to [his] injury on November 26, 2012."

When Mr. Mestas sustained a back injury that prevented him from working, he had an

"actual disability" that entitled him to be reasonably accommodated with medical leave to

recover from that injury. On January 14, 2013, he was sufficiently recovered from his workplace

12

injury to return to work and perform the essential functions of his job without work restrictions.

When he returned to work in January, it is undisputed that he had a record of a disability. After

returning from medical leave, Mr. Mestas alleges that supervisor Dale Brown subjected him to a

hostile work environment through harassment and intimidation, based on his record of a

disability, and retaliated against him for taking medical leave that was protected conduct under

the ADA.

**III. Conclusion.**

Disability discrimination occurs when an employer covered by the Americans with

Disabilities Act, as amended, treats a qualified individual with a disability who is an employee

unfavorably because he has either an actual disability or a record of a disability.  The ADA also

requires an employer to provide a reasonable accommodation to an employee with a disability,

unless doing so would cause undue hardship for the employer. An allowance of time for medical

care or treatment constitutes a reasonable accommodation under the ADA.  And the ADA

prohibits a covered employer from retaliating against an employee for exercising any right

granted or protected by the ADA, including taking medical leave as a reasonable accommodation

for a disability.

For the foregoing reasons and based on the undisputed facts, Mr. Mestas requests entry of

partial summary judgment in his favor that he is disabled within the meaning of the ADA

because he has a record of a disability and that his medical leave was conduct protected from

retaliation by the ADA, as amended.

000093

Respectfully submitted this 19th day of October, 2017.

> For Plaintiff Roy Mestas
>
>
> By: s/Megan L. Hayes
> Megan L. Hayes
> Attorney at Law
> 910 Kearney Street
> Laramie, WY  82070
> (307) 760-6258
> mlhayes@wyoming.com
>
> Attorney for Roy Mestas

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that a true and correct copy of the foregoing Plaintiff's Brief in Support of Motion for Partial Summary Judgment was served via the Court's CM/ECF system this 19th  day of October, 2017, to all attorneys of record.

> ___s/Megan L. Hayes_____
>        Megan L. Hayes

000094

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CV-00017-NDF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF PLAINTIFF ROY MESTAS

I, Roy Mestas, declare that the following statements are true and correct to the best of my knowledge:

1) I was employed as a sanitation route truck driver with the Town of Evansville's Public Works Department from September 12, 2012 to April 17, 2013.

2) During my employment with the Town of Evansville, I was classified as a probationary, at-will employee.

3) Dale Brown was my direct co-supervisor in the Public Works Department.

4) On November 26, 2012, I injured my back at work. My back injury was so painful that I was unable to work and could not perform many other activities without significant pain, including walking, standing, lifting, bending, sitting for longer than two hours, driving in a vehicle, and putting on my shoes and socks.

1

Case 1:17-cv-00017-NDF   Document 52-1   Filed 10/19/17   Page 2 of 3

5) After I injured my back on November 26, 2012, I was on medical leave until January 14, 2013.

6) While on medical leave, I received treatment for my back injury from Dr. Demian Yakel, including steroid injections to relieve my back pain. I also was in physical therapy, sometimes twice per week, at Casper Orthopaedic Associates, P.C.

7) I submitted a report of injury to the Wyoming Division of Workers' Compensation on November 26, 2012. *See* Report of Injury, attached hereto as Exhibit 1.

8) The Division of Workers Compensation determined that my back injury was compensable; the Division paid all medical bills for treatment related to my back injury from November 28, 2012 to January 14, 2013.

9) I applied for and was awarded Temporary Total Disability benefits from the Division of Workers Compensation while I was on medical leave from November 26, 2012 to January 14, 2013. *See* Application for Temporary Total Disability Benefits, attached hereto as Exhibit 2.

10) I also completed an Initial Accident and Health Claim form for the Town of Evansville indicating that I was unable to work after my November 26, 2012 injury. That form also required information about and verification of my injury by my physician. *See* Initial Accident and Health Claim form, attached hereto as Exhibit 3.

11) When I returned to work on January 14, 2013, Dale Brown and Brian Boettcher informed me that they were extending my probationary period through May 24, 2013, "because of the extended lost work time due to [my] injury on November 26, 2012." Memo from Boettcher and Brown to Mestas, attached hereto as Exhibit 4.

2

12) When I returned to work to work on January 14, 2013, I was physically able to perform my job duties without any work restrictions.

13) I reinjured my back while performing my job duties at the Town of Evansville in early April of 2017.

14) Because I was experiencing severe back pain, I scheduled an appointment with Dr. Yakel to have another steroid injection in my back on April 18, 2017.

15) Dale Brown terminated my employment on April 17, 2013.

16) After my termination, I applied for Social Security Disability Insurance benefits.  In my application for benefits, I stated that as of April 16, 2013, I had impairments that prevented me from engaging in any substantial gainful activity, including my back injury of November 26, 2012.

17) I began receiving SSDI benefits based on my inability to engage in any substantial gainful activity as of April 16, 2013.

Signed under the penalties of perjury, this _16 TH_ day of October, 2017.


Roy Mestas

3

000097

**1**

## WYOMING REPORT OF INJURY
**Workers' Safety & Compensation**  307-777-7441

Please use **BLACK** ink  Do not cross zeros or sevens

CASE #: 201212483

### EMPLOYER INFORMATION

BUSINESS NAME: TOWN OF EVANSVILLE          WORK COMP EMPLOYER #: 2 7235

ADDRESS: 235 Curtis St - Box 158

CITY: EVANSVILLE   ST: WY   ZIP: 82636   PHONE: (307) 234-6530

TYPE OF BUSINESS: Town Maint. Municipal

### EMPLOYEE INFORMATION

LAST NAME: MESTAS          FIRST NAME: Roy   MI:

MAILING ADDRESS: PO BOX ██████

CITY: EVANSVILLE   ST: WY   ZIP: 82636   PHONE: (

PHYSICAL ADDRESS: ██████

CITY: EVANSVILLE   ST: WY   ZIP: 82636   DATE HIRED: 09/24/12   STATE: WY

US CITIZEN? Yes ☒ No ☐   IF NO, INS#   SSN#: ██████   SEX: M ☒ F ☐

DATE OF BIRTH: ██████   MARITAL STATUS: SINGLE ☐ MARRIED ☒ DIVORCED ☐ WIDOWED ☐   NUMBER OF DEPENDENTS: 4

DRIVER LICENSE #: 102771730   ST: CO   EDUCATION HIGHEST GRADE COMPLETED: 12

### WAGE INFORMATION

WAGE RATE: $ 15.50   PER: (HOUR) DAY ☐ WEEK ☐ MONTH ☐   HOURS WORKED PER DAY: 08   # OF DAYS WORKED PER WEEK: 5

OT HOURS PER WEEK: 2   PAID IN FULL FOR THE DAY OF INJURY? Yes ☐ No ☐   DO YOU HAVE MORE THAN ONE PAYING JOB? Yes ☐ No ☒

### INJURY INFORMATION

DATE OF INJURY: 11/26/12   TIME OF INJURY: 06:49 AM ☒ PM ☐   IF FATALITY, DATE OF DEATH: /  /

SHIFT BEGAN: 07:00 AM ☒ PM ☐   SHIFT ENDED: 16:0 AM ☐ PM ☒   DATE EMPLOYER NOTIFIED: 11/26/12

PERSON CONTACTED: DALE BROWN          CONTACT PHONE #: (307) 259-4561

INJURED WORKER JOB TITLE: Sanitation Driver   STATUS: OWNER ☐ CORPORATE OFFICER ☐ PARTNER ☐ INDEPENDENT CONTRACTOR ☐

CHOOSE TYPE OF EMPLOYEE: R - REGULAR, V - VOLUNTEER, I - INMATE, O - OTHER: R   TIME LOST FROM WORK? Yes ☐ No ☐   DATE LOST TIME BEGAN: /  /   DATE RETURN TO WORK: /  /

### DESCRIBE THE ACCIDENT/ INJURY (ATTACH SEPARATE SHEET IF NEEDED) AND EXPLAIN WHICH SIDE AND BODY PART HAS BEEN INJURED)

I BACKED INTO MY PARKING SPOT. (IT HAD SNOWED & PARKING AREA WAS BLACK ICE) WAS GETTING OUT OF MY TRUCK WHEN I SLIPPED AND FELL ON MY REAR END & BACK. HURTING MY L/HAND L/FINGERS REAR END & L/BACK

MACHINE/PRODUCT FAILURE OR VEHICLE ACCIDENT? Yes ☐ No ☒          DID INJURY OCCUR ON EMPLOYER PREMISES? Yes ☒ No ☐

ACCIDENT ADDRESS: 280 5TH STREET

CITY: EVANSVILLE   ST: WY   COUNTY: NATRONA

WITNESS NAME: DAN ADDCOCK   WITNESS PHONE #: (   ) -

HAS THIS BODY PART(S) BEEN INJURED PREVIOUSLY? Yes ☐ No ☒   EXPLAIN (ATTACH SHEET IF NEEDED)

WAS THE PRIOR INJURY WORKERS' COMP? Yes ☐ No ☐   IF YES, IN WHAT STATE?   DATE OF PRIOR INJURY:

TREATING HEALTH CARE PROVIDER: CASPER ORTHO

ADDRESS:   PHYSICIAN PHONE #: (   ) -

CITY: CASPER   ST: WY   ZIP:   DATE OF INITIAL EXAM: 11/28/12

INJRPT
REVISED 05/06

**IMPORTANT: PLEASE COMPLETE THE BACKSIDE OF THIS FORM.**

NOTE: This report of injury is not a claim for benefits
Benefits must be filed on separate forms
An incomplete form may be returned and will delay case processing

**CLAIMANT'S EXHIBIT # 1-1**

WSCD 12872012 147964

Case 1:17-cv-00017-NDF Document 56 Filed 10/19/17   Page 2 of 2

Mestas Affidavit
Exhibit 1

**INJURY Codes REQUIRED**
**(See attached Injury Code Table)**   CASE #:
PLEASE CODE ONE LINE IN EACH COLUMN FOR EVERY BODY PART INJURED.

| PART OF BODY | SIDE L/R | NATURE OF INJURY | SOURCE OF INJURY | EVENT TYPE | ENVIRONMENTAL FACTORS |
|---|---|---|---|---|---|
| 3 7 | | 0 3 | 1 1 | 0 5 | 1 7 |
| 24 | L | 0 7 | 1 1 | 1 5 | 1 7 |
| 1 2 | L | 0 3 | 1 1 | 0 5 | 1 7 |
| 4 2 | | 0 3 | 1 1 | 0 5 | 1 7 |

**Employee Release:** I authorize the Division of Workers' Safety and Compensation to disclose and or obtain information about my case to or from other state agencies; insurers, group health plans, third party administrators, health maintenance organizations or similar entities. The information that may be released or obtained includes: my name, my social security number, the medical services I received and the dates of those services, the amounts charged by health care providers for my medical services, and the amount of benefits paid. This information may be needed to ensure that benefit payments are not duplicated.

The information given by me herein is true and correct. I further acknowledge that misrepresentation or fraud can lead to a civil action or criminal prosecution. By filing this report, I grant the Division of Workers' Safety & Compensation full access to any records maintained by any of my health care providers, photocopies of this authorization shall be given the same effect as the original.

I agree this release shall remain in full effect until revoked by me in writing.

Employee Signature or Employee's Representative _____ Date  11-26-12 _____ Relationship to Employee

Print Employee Name  Roy Mestas          EMPLOYEE SSN#

**Employer Certification:** I am an authorized agent of the employer. The information given by me herein is true and correct. I further acknowledge that misrepresentation or fraud can lead to a civil action or criminal prosecution.

Do you believe this injury or condition is work-related? Yes ☐ No ☐ Unsure ☒
If no, please attach letter of explanation stating the disputed facts     If yes, do you approve payment of temporary total
disability benefits to which the employee may be entitled? Yes ☐ No ☐ Unsure ☒
If no, please attach letter of explanation

Drug or alcohol test performed on date of injury? Yes ☐ No ☒ Unsure ☐

Employer / Supervisor Signature                                Date  11/26/12

Print Employer / Supervisor Name  Janelle Underwood | Town of Evansville        Title

WORK COMP EMPLOYER #  27835      Business Name  Town of Evansville      PHONE #  (307) 234-6520

**Mail ORIGINAL form to:**

**Wyoming Workers' Safety & Compensation Division**
**PO Box 20207**
**Cheyenne, WY 82003 - 7005**

DO NOT WRITE IN THIS AREA

RECEIVED WCD
NOV 2 8 2012
U S MAIL MAILROOM ③

RECEIVED WCD
DEC 0 6 2012
NON POSTAL MAILROOM ②

**IMPORTANT:** For general claims information call (307)777-7441
To order forms please call the mail room at (307) 777-6375

INJRPT
REVISED 08/06

CLAIMANT'S
EXHIBIT # 1-2

DEC. 10. 2012  1:55PM    CASPER ORTHOPAEDICS          NO. 9162  P. 2/2

Case WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION 8/11/10W

Mestas Affidavit

**WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION**
P.O. Box 20207, Cheyenne, WY 82003-7005
1-307-777-7441 Fax: 1-307-777-6552

WSCD 01182813 360058

## EMPLOYEE'S APPLICATION FOR TEMPORARY TOTAL DISABILITY BENEFITS

| | |
|---|---|
| NAME (PRINT): Roy Mestas | CASE NUMBER: 201212488 |
| ADDRESS: P.O. Box 665 | DATE OF BIRTH: |
| CITY, STATE, ZIP: Evansville, WY 82636 | SOCIAL SECURITY NUMBER: |
| IS THIS A NEW ADDRESS? YES ☐ NO ☐   DATE OF INJURY: 11-26-12 | PHONE NUMBER: |

1. ARE YOU WORKING OR HAVE YOU WORKED PART-TIME OR FULL TIME SINCE THE DATE OF YOUR INJURY IN A JOB OR SELF-EMPLOYMENT THAT IS ORDINARILY DONE FOR PAY?   YES ☐ NO ☑

2. HAVE YOU ASKED YOUR EMPLOYER FOR SUITABLE DUTIES THAT ACCOMMODATE YOUR PHYSICAL CONDITION?   YES ☑ NO ☐

3. ARE YOU RECEIVING UNEMPLOYMENT INSURANCE COMPENSATION?   YES ☐ NO ☑

4. ARE YOU REQUIRED TO MAKE CHILD SUPPORT PAYMENTS BY COURT ORDER?   YES ☐ NO ☑

By signing below, I hereby make application and claim for temporary total disability benefits. I understand the Division will rely on current medical opinion and current medical literature to determine my eligibility for these benefits.

Under penalty of prosecution for false statement, I swear that the information given by me herein is true and correct. I authorize the Division to obtain from any source and release to other agencies, insurers or employers, any medical, employment or payroll information necessary to determine eligibility under the Workers' Compensation Act. A copy of this release has the effect of the original.

I agree to notify the Division (my case analyst) and my health care provider(s) immediately if I return to any work after applying for this benefit.

EMPLOYEE SIGNATURE:    DATE: 12-7-17

## HEALTH CARE PROVIDER'S CERTIFICATION OF TEMPORARY TOTAL DISABILITY

THIS CERTIFICATION FULFILLS THE REQUIREMENT UNDER WS 27-14-404 AND 27-14-501(B) FOR TTD BENEFITS. THE HEALTH CARE PROVIDER SHALL EXAMINE THE INJURED EMPLOYEE AND FILE THIS WRITTEN REPORT WITH THE WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION.

| | |
|---|---|
| FEDERAL TAX ID #: 83 0231437 | DATE OF LAST EXAM BY THE CERTIFYING HEALTH CARE PROVIDER: 12/06/12 |
| HEALTH CARE PROVIDER'S NAME (PRINT OR TYPE): Demian M. Yakel D.O. | DATE OF NEXT APPOINTMENT: 1/03/13 |
| ADDRESS: 4140 Centennial Hills Blvd Ste A | IS SURGERY INDICATED?  YES ☐ NO ☐ |
| CITY, STATE, ZIP: Casper, WY 82609 | NUMBER OF ANTICIPATED FOLLOWUP VISITS: undetermined |
| PHONE #: 307-265-7205 | REFERRED TO: |
| DIAGNOSIS: 724.2  842.00 | HAS THE PATIENT'S INJURY RESULTED IN AN ASCERTAINABLE LOSS? |
| WORK RELATED?  YES ☐ NO ☐ UNABLE TO DETERMINE ☐ | (WYOMING STATUTE 27-14-102(A)(II): THAT POINT IN TIME WHICH IT IS APPARENT THAT PERMANENT PHYSICAL IMPAIRMENT HAS RESULTED FROM THE INJURY, THE EXTENT OF THE IMPAIRMENT CAN BE DETERMINED AND THE IMPAIRMENT WILL NOT SUBSTANTIALLY IMPROVE OR DETERIORATE BECAUSE OF THE INJURY |
| DATE EMPLOYEE WILL BE ABLE TO RETURN TO FULL DUTY WORK: Undetermined | |
| IS THE PATIENT ABLE TO RETURN TO MODIFIED DUTY AT THIS TIME?  YES ☐ NO ☐ | |
| IF YES PLEASE NOTE RESTRICTIONS: | YES ☐ NO ☐ |
| | IF YES, CAN YOU PROVIDE A RATING ACCORDING TO THE MOST CURRENT AMA GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT?   YES ☐ NO ☐ |

BASED ON MY EXAMINATIONS, CONDUCT AND STATEMENTS OF THE EMPLOYEE, I HEREBY CERTIFY THAT I HAVE EXAMINED THE ABOVE PATIENT WITHIN THE LAST SIXTY (60) DAYS AND THAT THE ABOVE PATIENT IS TEMPORARILY DISABLED FROM RETURNING TO ANY GAINFUL EMPLOYMENT EXCEPT AS SET FORTH ABOVE. THE EXPECTED DURATION OF TEMPORARY TOTAL DISABILITY IS:

FROM: 11/26/12    THROUGH: 1/5/13

SIGNATURE, HEALTH CARE PROVIDER:

DATE: 12/10/12

RECEIVED WSCD DEC 12 2012 FILING ②

RECEIVED WCD DEC 10 2012 NON POSTAL CBC BLDG
FOR OFFICE USE ONLY

APPREC
WCD-9
Revised 08/10
Page 1 of 1
Mestas v. Town of Evansville
17-CV-00017-NDF

CONFIDENTIAL

DEC 1 0 2012
WC 006667
Exhibit 2

000100

Mestas Affidavit

Exhibit 3

# INITIAL ACCIDENT & HEALTH CLAIM FORM

Page: 106

Date Filed: 03/08/2018

Document: 0101995582

Appellate Case: 17-8092

## INSURED INSTRUCTIONS

(1) COMPLETE AND SIGN THE "TO BE COMPLETED BY INSURED" SECTION
(2) HAVE YOUR PHYSICIAN COMPLETE AND SIGN THE "TO BE COMPLETED BY PHYSICIAN" SECTION.
(3) HAVE YOUR EMPLOYER COMPLETE AND SIGN THE "TO BE COMPLETED BY EMPLOYER" SECTION.
(4) RETURN THE COMPLETED AND SIGNED FORM TO YOUR BRANCH OFFICE.
NOTE: FAILURE TO COMPLETE, SIGN, AND RETURN THIS FORM MAY RESULT IN A DELAY IN PROCESSING YOUR CLAIM.
IF YOU HAVE ANY QUESTIONS, PLEASE CALL 1-800-325-2147.

### TO BE COMPLETED BY INSURED

| Claimant Name | ROY | MI | Last | MESTAS |
|---|---|---|---|---|

Mailing Address: PO Box █████

City: EVANSVILLE   State: WY   Zip Code: 82636-

Phone Number: ██████████   Date of Birth: ██████████

Occupation: TRUCK DRIVER

Is disability caused by: ☒ Accident  ☐ Illness   Nature of Illness:

Date Last Worked: 1-26-12   Beginning Date of Disability: 1-27-12

Have you had the same or similar illness before? ☐ Yes ☒ No   If yes, when?

Have you returned to work? ☐ Yes ☒ No   If yes, when?

### TO BE COMPLETED BY PHYSICIAN (Completed without expense to the Company)

| Patient Name | First | Roy | MI | Last | Mestas |
|---|---|---|---|---|---|

When did symptoms first appear or accident happen? 11-26-12   When did patient first consult you for this condition? 11-28-12

Diagnosis/Complications: 724.2 Lumbago   ICD Code:

Give all dates of treatment: 11-28-12

If hospitalized, please give dates:

Name of Hospital:

Street Address:

City:   State:   Zip Code:

Nature of surgical or obstetrical procedure:

Dates patient ☒ totally or ☐ partially disabled   From 11-26-12   To estimated 12 weeks

If pregnancy, give delivery date:

Name and address of physicians who previously treated patient for the above condition:

| Physician's Full Name | First | DAMIAN | MI | Last | YAKEL |
|---|---|---|---|---|---|

Physician's Phone Number: 307-265-7205

PHYSICIAN'S SIGNATURE:   Degree: MD   Date: 12-4-12

### TO BE COMPLETED BY EMPLOYER

Was away from work entirely from 11-27-12 To   If returned to work, give date:

If disability is due to illness, was the employee previously afflicted with this illness? ☐ Yes ☐ No   When:

Name of Company: Town of Evansville   Street Address: 235 Curtis St.

City: Evansville   State: WY   Zip Code: 82636-0158

Signature: _____   Title: Town Clerk   Date: 12/4/12   Phone Number: 307-234-6535

### BRANCH INSTRUCTIONS

(1) COMPLETE THE "TO BE COMPLETED BY THE BRANCH" SECTION
(2) FAX THE COMPLETED AND SIGNED CLAIM FORM TO INSURANCE CLAIMS AT 1 (800) 350-9582.
(3) MAINTAIN THE ORIGINAL CLAIM FORM IN THE CUSTOMER'S LOAN FILE.

### TO BE COMPLETED BY THE BRANCH

Branch Number: 5300110   Account Number: 1984-7617   Branch Phone #: 207-081-1507

Effective Date: 11-10-11   Term: 48   Branch Fax #: 307-634-3479

NOTE: INSURED MUST SIGN AND DATE THE BACK OF THIS FORM / BRANCH MUST COMPLETE INFORMATION SECTION BELOW FRAUD WARNINGS

UN93A1 (01-13-06) INITIAL A&H CLAIM FORM

Page 1 o   Evan.0019

000101

Exhibit 4

Appellate Case: 17-8092        Document: 01019955822        Date Filed: 03/08/2018        Page: 107

Date: January 14th, 2013

To: Roy Mestas

From: Dale Brown & Brian Boettcher

Re: Extension of probation

Roy:

This letter is to inform you that your probation is being extended days through May 24th, 2013.

This action is being taken because of the extended lost work time due to your injury on November 26th, 2012.

By signing below, you acknowledge receipt of, and agree to the contents of this letter.

_____      1-14-13
Signature                    Date

177-5507
Gina

Evan.0021

000102

Page: 108

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendant
Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net
nmartinez@wyomingattorneys.net

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Town of Evansville, by and through its attorneys, Thomas A. Thompson, Kylie

M. Rangitsch and Natasha K. Martinez, of MacPherson, Kelly and Thompson, LLC, and respectfully

moves the Court for an order granting summary judgment in Defendant's favor pursuant to Rule 56

of the *Federal Rules of Civil Procedure* and *Uniform District Court Local Civil Rule 7.1,* in that

there are no genuine issues as to any material fact, and the moving party is entitled to judgment as

a matter of law.

000103

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 109

In seeking an order granting summary judgment, Defendant submits pertinent portions of the Plaintiff's testimony made under oath [Exhibit 1];   Plaintiff's Responses to Requests for Admissions [Exhibit 2]; Plaintiff's Responses to Interrogatories [Exhibit 3].   Defendant has contemporaneously filed with this motion its Brief in Support of Motion for Summary Judgment, which is 20 pages in length, and proposed findings of fact, conclusions of law, and decision.

**WHEREFORE,** Defendant prays the Court will enter an order granting Defendant's motion for summary judgment, and for such other and further relief as the Court deems just and proper.

**DATED** this 20th day of October, 2017.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
Attorneys for Defendant
MacPherson,  Kelly  &  Thompson,  LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of October, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY  82070
Email: mlhayes@wyoming.com

/s/    Thomas  A.  Thompson
For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js

000104

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 110

# Exhibit 2

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 111

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

ROY MESTAS,                                )
                                           )
                  Plaintiff,               )
                                           )
v.                                         )          Civil Action No. 17-CV00017-NDF
                                           )
TOWN OF EVANSVILLE, a duly incorporated    )
Municipal Corporation under the laws of the )
State of Wyoming,                          )
                                           )
                  Defendant.               )
                                           )

## PLAINTIFF ROY MESTAS'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR ADMISSIONS TO PLAINTIFF

**COMES NOW**, Plaintiff Roy Mestas, by and through undersigned counsel, and pursuant to Fed. R. Civ P. Rule 36, hereby submits his Responses to Defendant's First Requests for Admissions to Plaintiff.

## ADMISSIONS

**REQUEST FOR ADMISSION 1:** Admit that you suffered an injury on November 26, 2012.

**ADMIT**

**REQUEST FOR ADMISSION 2:** Admit that you were treated for the injury of November 26, 2012 by Dr. Demian Yakel.

**ADMIT**

**REQUEST FOR ADMISSION 3:** Admit that on January 14, 2013, Dr. Yakel released you to return to work to your regular duties with the Town of Evansville, with no restrictions.

EXHIBIT

2

000106

Appellate Case: 17-8092      Document: 0101995822      Date Filed: 03/08/2018      Page: 112

ADMIT

**REQUEST FOR ADMISSION 4**: Admit that between January 14, 2013, and April 17, 2013, you did not present your employer with any doctor's statement or order which stated you had any restrictions regarding performing your regular job duties with the Town of Evansville.

ADMIT

**REQUEST FOR ADMISSION 5**: Admit that you were off work due to your work injury from November 26, 2012, to January 14, 2013.

ADMIT

**REQUEST FOR ADMISSION 6**: Admit that when you returned to work in January, 2013, you returned to the same position and duties which you had held on November 26, 2012.

ADMIT

**REQUEST FOR ADMISSION 7**: Admit that your employer expected you to perform all the duties required of your position when you returned to work on January 14, 2013 through your date of termination.

ADMIT

**REQUEST FOR ADMISSION 8**: Admit that when you returned to work on January 14, 2013, there were no changes in your job duties from those which existed on November 26, 2012.

ADMIT

**REQUEST FOR ADMISSION 9**:  Admit that when you returned to work on January 14, 2013, there was no reduction in your pay from what you were being paid on November 26, 2012.

ADMIT

000107

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 113

**REQUEST FOR ADMISSION 10**: Admit that when you returned to work on January 14, 2013, there was no reduction in your benefits provided by the Town of Evansville from what you were being provided on November 26, 2012.

**ADMIT**

**REQUEST FOR ADMISSION 11**: Admit that when you returned to work on January 14, 2013, there was no reduction in the amount of the work tasks that you were assigned from that which you performed on November 26, 2012.

**ADMIT**.

**REQUEST FOR ADMISSION 12**: Admit that when you returned to work on January 14, 2013, there was no reduction in the nature of the work tasks that you were assigned from that which you performed on November 26, 2012.

**ADMIT**.

**REQUEST FOR ADMISSION 13**: Admit that Dale Brown spoke the words "stupid beaner" or "dumb Mexican" on three different occasions between February 22, 2013, and April 17, 2013.

**ADMIT**

**REQUEST FOR ADMISSION 14**: Admit that on or about April 1, 2013, you told Dale Brown you did not like those comments ["stupid beaner" and/or "dumb Mexican"] and not to use those comments.

**ADMIT**

**REQUEST FOR ADMISSION 15**: Admit that Dale Brown did not use those comments ["stupid beaner" and/or "dumb Mexican"] or any other racial slur after you told him you did not like those comments.

**DENY**

3

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 114

**REQUEST FOR ADMISSION 16**: Admit that you did not file a grievance with the Town of Evansville concerning Dale Brown's comments.

   **ADMIT**

**REQUEST FOR ADMISSION 17**: Admit that you did not file a formal written complaint with the Town of Evansville concerning Dale Brown's comments.

   **ADMIT**

**REQUEST FOR ADMISSION 18**: Admit that you did not file an informal complaint with the Town of Evansville concerning Dale Brown's comments.

   **ADMIT**

**REQUEST FOR ADMISSION 19**: Admit that you did not personally speak to any of Dale Brown's supervisors at the Town of Evansville concerning Dale Brown's comments.

   **ADMIT**

**REQUEST FOR ADMISSION 20**: Admit that you did not personally speak to the mayor or any of the council members at the Town of Evansville concerning Dale Brown's comments.

   **ADMIT**

   **DATED** this 2nd day of October, 2017.

   Megan L. Hayes
   Attorney at Law
   910 Kearney St.
   Laramie, WY 82070
   307/760-6258
   Email: mlhayes@wyoming.com

4

000109

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 115

## CERTIFICATE OF SERVICE

This is to certify that on the 2nd day of October, 2017, I served the foregoing instrument by US Mail, postage prepaid to the following address:

Thomas A. Thompson
MacPherson, Kelly & Thompson, LLC
PO Box 999
Rawlins, WY 82301

*Megan Hayes*

000110

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 116

# Exhibit 3

Page: 117

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROY MESTAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 17-CV00017-NDF |
| | ) |
| TOWN OF EVANSVILLE, a duly incorporated | ) |
| Municipal Corporation under the laws of the | ) |
| State of Wyoming, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SUPPLEMENTAL INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF ROY MESTAS

**COMES NOW**, Plaintiff Roy Mestas, by and through undersigned counsel, and pursuant

to Rules 26, 33 and 34 of the FEDERAL RULES OF CIVIL PROCEDURE, hereby responds to

Defendant's First Supplement to First Interrogatories and Request for Production of Documents.

## INTERROGATORIES

**INTERROGATORY NO. 1:** For each request for admission which you denied, please

state the factual basis for the denial.

    **ANSWER:**    I denied request for Admission 15 because on April 15, 2013, when I

asked Dale Brown if I could use my snow blower to shovel snow at the Town Hall, he



**EXHIBIT**

3

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 118

refused that request and said it would take me too long to get my snow blower, which was at my home a few blocks away, and told me 'that's what I have Mexicans for, to do this work,' or words to that effect.

**INTERROGATORY NO. 2:** Please state whether or not you are currently receiving Social Security Disability benefits. If you are receiving Social Security Disability benefits, please specify the date you began receiving said benefits.

      **ANSWER:**    I am receiving Social Security Disability Insurance (SSDI) benefits now. I first began receiving SSDI benefits on April 20, 2014.

**INTERROGATORY NO. 3:** While employed with the Town of Evansville describe each work injury you allegedly suffered and the date of said injury.

      **ANSWER:**    On November 26, 2012, I slipped on the ice at work and injured my back.

**INTERROGATORY NO. 4:** Please identify the name of each and every medical practitioner or healer that treated you for the work injury you suffered on November 26, 2012.

      **ANSWER:**    Demian Yakel, D.O.
Robert Allaire, M.D.
Timothy Glennon, P.A.,
Marty Mohr, P.T.,
Casper Orthopaedics Associates
4140 Centennial Hills Blvd., Suite A
Casper, WY 82609
307-472-8871

Carlos Buckner, M.D.
Elkhorn Valley Rehab. Hospital
5715 E. 2nd Street
Casper, WY 82609
307-265-0005

Wyoming Neurological Associates
1020 East 2nd Street, Suite 100
Casper, WY 82601
307-265-4343.

2

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 119

**INTERROGATORY NO. 5:** Please state the period of time for which you were directed by a medical practitioner or healer not to return to work for the injury you suffered on November 26, 2012.

    **ANSWER:**    From November 26, 2012 until January 14, 2013.


**INTERROGATORY NO. 6:** Please state the date that a medical practitioner or released you to return to work, for the Town of Evansville.

    **ANSWER:**    January 14, 2013.


**INTERROGATORY NO. 7:** Please state the name of the medical practitioner or healer who released you to return to work for the Town of Evansville.

    **ANSWER:**    Dr. Demian Yakel
                           Casper Orthopaedics
                           4140 Centennial Hills Blvd., Suite A
                           Casper, WY  82609
                           307-472-8871.


**INTERROGATORY NO. 8:** Please state what work restrictions if any, that you were placed on when you were released to return to work for the Town of Evansville.

    **ANSWER:**    I had no work restrictions after I returned to work following medical leave to recover from my workplace injury on November 26, 2017.


**INTERROGATORY NO. 9:** State with specificity the rate of pay that you were receiving prior to your work injury of November 26, 2012 and the rate of pay you received subsequent to your work injury of November 26, 2012.

    **ANSWER:**    $15/per hour.

000114

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 120

**INTERROGATORY NO. 10:** Please state with specificity your job duties prior to your work injury of November 26, 2012 and your job duties after you were released to return to work on January 14, 2013.

> **ANSWER:**   Drive sanitation truck, maintain trash bins, keep curbs and gutters free and clear of trash, maintain, service and clean trash truck used on sanitation route, drive sanitation truck to and from landfill, shovel snow on snow days, assist other Public Works employees as needed with work-related job duties, and any other general duties associated with the Public Works Department.

**INTERROGATORY NO. 11:** On how many different occasions did you personally hear Dale Brown speak the words "Stupid Beaner" or "Dumb Mexican." Please state your understanding of whom those words were directed to. For each time Dale Brown spoke those words please state the date, the physical location, and who was present.

> **ANSWER:**   I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees.  These were general comments, references and jokes, not directed specifically at any one person, that included derogatory references about Hispanics. Also, before and during weekly morning meetings in the Public Works maintenance garage in the presence of other Public Works employees, Dale Brown and other employees would joke about Hispanics or other ethnic and racial minority groups.  I personally heard Dale Brown make derogatory comments about Hispanics on at least six occasions, if not more.

**INTERROGATORY NO. 12:** Specify the date that you told Dale Brown that you did not like those words "Stupid Beaner" or "Dumb Mexican" and not to use those comments.

> **ANSWER:**   April 1, 2013.

**INTERROGATORY NO. 13:** Please state with specificity what acts you took with the Town of Evansville after you heard Dale Brown speak the words "Stupid Beaner" or "Dumb

4

Mexican". Specifically, state whether or not you filed a grievance with the Town of Evansville,

the date of the grievance, and who you submitted the grievance to.

> **ANSWER:**   I complained directly to my department head and supervisor, Dale Brown,
> as set forth in the Town of Evansville general grievance procedure, even though only
> permanent employees, not at-will probationary employees like me, are eligible to use the
> grievance procedure.
>
> On April 1, 2013, I told Dale Brown to please stop with the "beaner" remarks and I noted
> this in the memo pad that I kept in my pocket at work. Dale Brown responded to my
> complaint by informing me that he refers to his wife in this manner ("beaner"). This was
> approximately 17 days before he terminated my employment.
>
> The Town of Evansville has no procedure or policy for making complaints of workplace
> harassment or retaliation.

**INTERROGATORY NO. 14:** State with specificity all elected and/or public officials

whom you spoke with, between the time period when Dale Brown spoke the words "Stupid

Beaner" or "Dumb Mexican" and the date of your termination on April 17, 2013.

> **ANSWER:**   I did not speak with any elected or public officials about Dale Brown's
> derogatory and discriminatory comments.

**INTERROGATORY NO. 15:** In applying for Social Security Disability please state

with specificity the date you alleged you were disabled and qualified to receive Social Security

Disability benefits.

> **ANSWER:**   April 16, 2013.

**INTERROGATORY NO. 16:** As of May 16, 2013 do you believe you were totally

disabled from performing certain activities because of your disability. If so, please state what

activities you believe you could not perform.

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 121

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 122

**ANSWER:**     I believe I was disabled for purposes of qualifying for Social Security Disability Income benefits from performing certain activities because of my disability.  I had difficulty walking, going up steps, showering, putting on socks and other clothing, getting in and out of or riding in a vehicle, sitting for more than 30 minutes, and doing manual labor.

**INTERROGATORY NO. 17:** Was the disability for which you were applying for Social Security Disability benefits present at the time you were terminated from the Town of Evansville on April 17, 2013.

**ANSWER:**     Yes.

**INTERROGATORY NO. 18:** Please state the time period when you were receiving benefits from the State of Wyoming Workers' Compensation Division while also receiving benefits from the Social Security Administration.

**ANSWER:**     I began receiving SSDI benefits on April 20, 2014.  I continue to be eligible for and receive benefits from the State of Wyoming Workers' Compensation Division for any medical care related to a workplace injury for which Workers' Compensation coverage was approved.

**INTERROGATORY NO. 19:** Please state with specificity the amount of benefits that you were receiving from the Social Security Administration during the time period you were also receiving Temporary Total Disability benefits from the State of Wyoming, Workers' Compensation Division.

**ANSWER:**     I received my first SSDI payment on or around April 20, 2014, in the amount of $6,100.00.  I began receiving monthly SSDI payments in May of 2014, in the amount of $1,367.00.  I received my last monthly Temporary Total Disability payment from the State of Wyoming, Workers' Compensation Division on May 31, 2014.

000117

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 123

Temporary Total Disability payment from the State of Wyoming, Workers' Compensation Division on May 31, 2014.

Dated this __4__ day of __OCTOBER__, 2017.

Roy Mestas

STATE OF WYOMING          )
                          ) ss.
COUNTY OF NATRONA         )

The foregoing was subscribed and sworn before me by _____ this __4th__ day of __October__, 2017.

NOTARY PUBLIC
MARCIA C. GIERKE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires August 7, 2020

_Marcia C. Gierke_
Notary Public

## PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Produce all medical practitioner or healer's notes which you provided to the Town of Evansville after your release to return to work on January 14, 2013.

**RESPONSE:** That document is in Mr. Mestas's personnel file with the Town of Evansville, Evan.0020.

**REQUEST FOR PRODUCTION NO. 2:** Produce all documents received from the Social Security Administration regarding your application for Social Security Disability benefits.

000118

Appellate Case: 17-8092     Document: 01019995822     Date Filed: 03/08/2018     Page: 124

**REQUEST FOR PRODUCTION NO. 3:** Please produce all medical records and documentation regarding you Social Security Disability application.

**RESPONSE:** The Plaintiff has previously disclosed all medical records and documentation regarding his Social Security Disability application. Those documents are identified by Bates Numbers SSA000001-000314.

**DATED** this 4th day of October, 2017.

Megan Hayes
*Digitally signed by Megan Hayes DN: cn=Megan Hayes, o, ou, email=mlhayes@wyoming.com, c=US Date: 2017.10.04 11:34:05 -06'00'*

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY 82070
307/760-6258
Email: mlhayes@wyoming.com

**CERTIFICATE OF SERVICE**

This is to certify that on the 4th day of October, 2017, I served the foregoing instrument by causing to be deposited a full, true and correct copy thereof in the United States Mail, duly enveloped with postage prepaid, and addressed to:

Thomas A. Thompson
Kylie M. Rangitsch
Natasha K. Martinez
Attorneys for Defendant
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
Rawlins, WY 82301

Megan Hayes
*Digitally signed by Megan Hayes DN: cn=Megan Hayes, o, ou, email=mlhayes@wyoming.com, c=US Date: 2017.10.04 11:34:27 -06'00'*

000119

Page: 125    Date Filed: 03/08/2018    Document: 0101995822    Appellate Case: 17-8092

Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendant
Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net
nmartinez@wyomingattorneys.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROY MESTAS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 17-CV00017-NDF |
| ) | |
| TOWN OF EVANSVILLE, a duly incorporated ) | |
| Municipal Corporation under the laws of the ) | |
| State of Wyoming ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Town of Evansville, by and through its attorneys, Thomas A. Thompson, Kylie

M. Rangitsch, and Natasha K. Martinez, of MacPherson, Kelly and Thompson, LLC, respectfully

submits this brief in support of its Motion for Summary Judgment.

1. **Introduction and Short Statement of Evidence.**

The Defendant, Town of Evansville [Town], is a municipal corporation located in Natrona

County, Wyoming. The Plaintiff, Roy Mestas, was an employee of the Town from September 24,

1

Appellate Case: 17-8092      Document: 0101995822      Date Filed: 03/08/2018      Page: 126

2012, to April 17, 2013. [Plaintiff's Amended Complaint; admitted as true by Defendant]

The Defendant's Motion for Summary Judgment is directed to all three counts or causes of action set forth in Plaintiff's Amended Complaint, *i.e.* Discrimination Based on National Origin; Hostile Work Environment Based on Disability, in Violation of the ADA; Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.

Pertinent parts of the Plaintiff's deposition testimony and pertinent deposition exhibits [Exhibit 1], Plaintiff's responses to requests for admissions [Exhibit 2], and Plaintiff's answers to interrogatories [Exhibit 3] are submitted in support of Defendant's Motion for Summary Judgment.

**2.  All Claimed Undisputed Material Facts.**

For the purposes of this motion, the following are undisputed material facts:

A.    Mr. Mestas suffered an injury on November 26, 2012. [Exhibit 2.  Request for Admission 1].  Mr. Mestas was treated for the injury by Dr. Demian Yakel. [Exhibit 2.  Request for Admission 2]. On January 14, 2013, Dr. Yakel released Mr. Mestas to return to work to his regular duties with the Town of Evansville, with no restrictions. [Exhibit 2.  Request for Admission 3].  Mr. Mestas was off work due to his work injury from November 26, 2012, to January 14, 2013. [Exhibit 2.  Request for Admission 5]

B.    Between January 14, 2013, and April 17, 2013, Mr. Mestas did not present his employer with any doctor's statement or order which stated he had any restrictions regarding the performance of his regular job duties with the Town of Evansville. [Exhibit 2. Request for Admission 4].

C.    When Mr. Mestas returned to work at the Town on January 14, 2013, he returned to the same position and duties as he held on November 26, 2012. [Exhibit 2.  Request for Admission 6].

2

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 127

D.  The Town of Evansville expected Mr. Mestas to perform all the duties required of his position when he returned to work on January 14, 2013, through the date of his termination. [Exhibit 2. Request for Admission 7].

E.  When Mr. Mestas returned to work on January 14, 2013, there were no changes in his job duties from those which existed on November 26, 2012 [Exhibit 2. Request for Admission 8]; there was no reduction in his pay from what he was being paid on November 26, 2012 [Exhibit 2. Request for Admission 9];  there was no reduction in his benefits provided by the Town of Evansville from what were being provided on November 26, 2012  [Exhibit 2. Request for Admission 10]; there was no reduction in the amount of work tasks that he was assigned from that which he performed on November 26, 2012  [Exhibit 2. Request for Admission 11]; there was no reduction in the nature of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 12].

F.  Mr. Mestas' employment was terminated on April 17, 2013. [Exhibit 1. Plaintiff's deposition p. 70, line 10; Depo.Exh. 5] On May 3, 2013, Mr. Mestas filed a claim with the EEOC claiming discrimination based on national origin and disability and stating that he was qualified for his job with the Town and was performing satisfactorily. [Exhibit 1. Plaintiff's deposition, Depo.Exh. 5] On May 16, 2013, Mr. Mestas filed a claim for Social Security Disability benefits, asserting he was disabled from working beginning on April 16, 2013. [Exhibit 1. Plaintiff's deposition, Depo.Exh.2; Exhibit 3. Interrogatory No. 15] He was awarded SSDI benefits on April 14, 2014, and found to be disabled as of April 16, 2013. [Exhibit 1. Plaintiff's deposition, Depo.Exh.8] He filed this action in 2017.

Additional claimed undisputed material facts are provided herein below as relevant to the

3

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 128

issues.

### 3. Standard for Summary Judgment.

The standard for summary judgment is well known.  "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Davis v. Unified School District 500*, 750 F.3d 1168, 1170 (10th Cir. 2014)( quotations omitted); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015).  An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and an issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Lounds, supra.*  The Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party.  *Lounds, supra.*  Even so, the non-movant must still identify sufficient evidence requiring submission to the jury to survive summary judgment.  *Id.*   Failure of proof of an essential element renders all other facts immaterial. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000).

### 4.   The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of discrimination based on national origin as there are  no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law.

Mr. Mestas' first count against the Town of Evansville is that he was subjected to national origin based discrimination in violation of 42 U.S.C. 2000e-2.  He asserts: 1) he was subjected to national origin based harassment and intimidation that affected a term, condition or privileged of employment and was so pervasive and egregious that it altered the working conditions of his employment and created a hostile working environment;   2) he was discharged after he complained to his supervisor,  Dale Brown, of the national origin based harassment and intimidation.

4

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 129

**Harassment.**  Taking the following as undisputed  facts for purposes of this summary judgment motion, Mr. Mestas' claim of discrimination based on national origin fails:  In response to requests for admissions, Mr. Mestas admitted that  Dale Brown spoke the words "stupid beaner" or "dumb Mexican" on three  occasions between February 22, 2013, and  April 17, 2013.[Exhibit 2. Request for Admission 12]. Those dates were February 22, 2013, March 27, 2013, [Exhibit 1, Plaintiff's deposition,pp.126-129; Depo.Exh. 5] and on April 15, 2013, when  Mr. Mestas asked to use his personally owned snow blower to shovel snow at Town Hall and  Mr. Brown  refused the request  saying  it would take him too long to get his snow blower, which was at Mr. Mestas' home a few blocks away,  and told Mr. Mestas "that's what I have Mexicans for, to do this work" or words to that effect.  [Exhibit 3.   Interrogatory No. 1]. On or about April 1, 2013, Mr. Mestas told Dale Brown that he did not like those comments ["stupid beaner" and/or "dumb Mexican"] and not to use those comments.   [Exhibit 2. Request for Admission 14 and Exhibit 3.  Interrogatory No. 12].

In response to Interrogatory No. 11: which asked how many different occasions Mr. Mestas personally heard Mr. Brown speak the words "Stupid Beaner" or "Dumb Mexican," who those words were directed to, and where it occurred, Mr. Mestas answered :

> I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees.  These were general comments, references and jokes, not directed specifically at any one person, that included derogatory references about Hispanics.  Also before and during weekly morning meetings in the Public Works maintenance garage in the presence of other Public Works employees, Dale Brown and other employees would joke about Hispanics or other ethnic and racial minority groups.  I personally heard Dale Brown make derogatory comments about Hispanics on at least six occasions, if not more.

Mr. Mestas did not file a grievance with the Town concerning Dale Brown's comments

Appellate Case: 17-8092   Document: 010199955822   Date Filed: 03/08/2018   Page: 130

as described above [Exhibit 2. Request for Admission 16]; did not file a formal written complaint with the Town concerning Dale Brown's comments as described above [Exhibit 2. Request for Admission 17]; did not file an informal complaint with the Town concerning Dale Brown's comments as described above [Exhibit 2. Request for Admission 17]; did not personally speak to any of Dale Brown's supervisors at the Town concerning Dale Brown's comments [Exhibit 2. Request for Admission 18]; or, personally speak to the mayor or any council members at the Town concerning Dale Brown's comments [Exhibit 2. Request for Admission 18].

During Mr. Mestas' period of employment with the Town, there was no change in his job duties, pay, benefits; there was no change in the nature or amount of the work tasks assigned. [Exhibit 2. Request for Admissions: 8, 9, 10, 11, 12].

42 U.S.C. 2000e-2 (a)(1)  provides, in pertinent part,  that it shall be an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

The requirements to establish a Title VII hostile work environment claim, were established long ago in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-66 (1986) are : (1) plaintiff is a member of a protected class; (2) the employee was subjected to unwelcome harassment; (3) that harassment was based upon membership in protected class; (4) the harassment was sufficiently severe or pervasive so as to alter conditions of the employee's employment and create a hostile or abusive work environment; (5) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim did in fact

000125

Appellate Case: 17-8092     Document: 010199955822     Date Filed: 03/08/2018     Page: 131

perceive it to be so, and (6) some basis for employer liability has been established.

Whether an individual was subjected to a hostile work environment depends on the totality of the circumstances.  In examining whether an environment is sufficiently hostile or abusive for purposes of Title VII, courts consider the totality of the circumstances, including such factors as (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct was physically threatening/humiliating or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work; (5) what physiological harm, if any, resulted.  *Chavez v. New Mexico*, 397 F.3d 826,832-33 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech. Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999).

The law is clearly established in the Tenth Circuit that a plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments. *Morris v. City of Colorado Springs*, 666 F.3d 654, 666 (10th Cir. 2012).  The plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule and insult in order for it to reach the level that it meets the legal requirement that the conduct complained of is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.  The work environment must be subjectively *and* objectively hostile or abusive. *Lounds, supra,* at 1222.

Looking at the totality of the circumstances in this case, Mr. Mestas' claim of hostile work environment based on national origin fails, as a matter of law. Mr. Brown's conduct as described by Mr. Mestas, while not appropriate, was not pervasive, and it was not so egregious that it altered the working conditions of Mr. Mestas' employment and created a hostile working environment. According to Mr. Mestas, Mr. Brown made comments concerning Hispanics that he found

7

Appellate Case: 17-8092   Document: 010199955822   Date Filed: 03/08/2018   Page: 132

objectionable on three to six occasions during Mr. Mestas' period of employment with the Town. Mr. Mestas stated that the comments were made in general. [Exhibit 3. Interrogatory No. 11]. There is no evidence that the conduct was in any way physically threatening or humiliating. Mr. Mestas testified while he had sought counseling, that counseling was not related to his termination from employment with the Town of Evansville. [Exhibit 1. Plaintiff's deposition, pp. 142-43].

In conclusion, as stated in *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005), Title VII does not establish "a general civility code." The run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim. See, e.g., *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) wherein the Court, in discussing the Supreme Court's hostile work environment decisions, and stated that "[a] recurring point in these opinions is that simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."

It is respectfully requested that the Court grant summary judgment in favor of the Town on Mr. Mestas' claim of discrimination based upon national origin based harassment. Taking Plaintiff's responses to the requests for admission, interrogatories and deposition testimony as true, there are no genuine issues of material fact, and as a matter of law, the conduct described, while inappropriate, is not legally sufficient to establish a hostile work environment based upon national origin. These were isolated incidents of sporadic slurs, not the required steady barrage of opprobrious comments. The isolated incidents were not such as to permeate the workplace with discriminatory intimidation, ridicule and insult so as to be sufficiently severe or pervasive, as a matter of law, so as to alter the conditions of the plaintiff's employment.

Appellate Case: 17-8092     Document: 010199558822     Date Filed: 03/08/2018     Page: 133

**Retaliation.**   To prevail on a Title VII claim of retaliation, the plaintiff must establish that his having complained to Dale Brown on April 1, 2013, about his comments about Hispanics played some part in the employment decision to terminate him on April 17, 2017.  *Hansen v. Skywest Airlines,* 844 F.3d 914, 925 (10ᵗʰ Cir. 2016).    There is no evidence of any type that demonstrates that Mr. Mestas' complaints to Mr. Brown played any part in his discharge or became a source of motivation for that discharge.  As such, the Court should grant summary judgment in favor of the Town on this retaliation claim as there are no genuine issues of material fact, and as a matter of law the Town is entitled to judgment in its favor.

**5.   The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of  hostile work environment based on disability as there are no genuine issues as to any material fact and  the moving party is entitled to a judgment as a matter of law.**

Mr. Mestas asserts he was subjected to harassment and intimidation based on disability that affected a term, condition or privileged of employment and was so pervasive and egregious that it altered the working conditions of his employment and created a hostile working environment.

42 U.S.C. 12112 (a) and (b)(5),  provide in pertinent part as follows:

> **(a) General rule**
> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
> * * *
> **(b) Construction.**
> As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes–
> * * *
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered

9

Appellate Case: 17-8092     Document: 010199955822     Date Filed: 03/08/2018     Page: 134

entity; or
    **(B)** denying employment opportunities to a job applicant or employee who is an
    otherwise qualified individual with a disability, if such denial is based on the need
    of such covered entity to make reasonable accommodation to the physical or mental
    impairments of the employee or applicant.

However, in order for Mr. Mestas to establish a claim for hostile work environment based

on a disability in violation of 42 U.S.C. 12112 (a) and (b)(5), Mr. Mestas must first establish that he

was a "qualified individual with a disability" during the time period he asserts he was subjected to

a hostile work environment based upon disability.   The definition of disability is set forth in 42

U.S.C. S 12102, which provides in pertinent part:

**(1) Disability**
    The term "disability" means, with respect to an individual–
        **(A)** a physical or mental impairment that substantially limits one or more major life
        activities of such individual;
        **(B)** a record of such an impairment; or
        **(C)** being regarded as having such an impairment (as described in paragraph (3)),

**(2) Major life activities**
    **(A) In general**
        For purposes of paragraph (1), major life activities include, but are not limited to
        caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,
        walking, standing, lifting, bending, speaking, breathing, learning, reading,
        concentrating, thinking, communicating, and working.
                                        * * *
**(3) Regarded as having such an impairment**
    For purposes of paragraph (1)(C):
        **(A)** An individual meets the requirement of "being regarded as having such an
        impairment" if the individual establishes that he or she has been subjected to an
        action prohibited under this chapter because of an actual or perceived physical or
        mental impairment whether or not the impairment limits or is perceived to limit a
        major life activity.
        **(B)** Paragraph (1)(C): shall not apply to impairments that are transitory and minor.
        A transitory impairment is an impairment with an actual or expected duration of 6
        months or less.

To avail himself of a cause of action based upon the ADA,  it is necessary that Mr. Mestas

000129

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 135

establish that he is a "qualified individual with a disability" at the point in  time that Mr. Mestas

asserts a violation of ADA has occurred.  That can be accomplished by an affirmative showing that

he has an actual disability under 42 U.S.C. 12102(1)(A)  *i.e.*, a  physical impairment that

substantially limits a major life activity, or,   has  a record of such physical impairment which

substantially limits a major life activity [42 U.S.C. 12102(1)(B)], or, is regarded as having such an

impairment [42 U.S.C. 12102(1)(C), subject to the limitations of (3)(B)] .

**A. There is no evidence that Mr. Mestas was a "qualified individual with a disability" so as to be able to pursue a claim under the ADA.**

As noted above in Section 2 of this brief,  Mr. Mestas was off work due to his work injury

for approximately 6-7 weeks. [Exhibit 2. Request for Admission 5]. Dr. Yakel released Mr. Mestas

to return to work to his regular duties with the Town of Evansville with no restrictions. [Exhibit 2.

Request for Admission 3].   The medical release contains no information concerning a physical

impairment, no information concerning whether Mr. Mestas had a physical impairment which

substantially limited a major life activity as compared to most people in the general population. 29

C.F.R. 1630.2(j) [Exhibit 1. Plaintiff's deposition; Depo.Exh. 3, Evans0139]. Between January 14,

2013, and April 17, 2013, Mr. Mestas did not present his employer  with any doctor's statement or

order which stated he had any restrictions  regarding the performance of his regular job duties with

the Town of Evansville. [Exhibit 2. Request for Admission 4].

One of the rules of construction found in 29 C.F.R. 1630.2(j)(1)(i) which is used when

determining if an individual is substantially limited in performing a major life activity is that "not

every impairment will constitute a disability." See *McDonald v. City of New York*, 786 F.Supp. 2d

588 (E.D.N.Y. 2011) (City department of transportation employee's impairment, namely herniated

11

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 136

disc in cervical-lumbar area, did not substantially limit his major life activities of walking, sitting, standing, lifting, bending, or working, therefore, not actually "disabled" within the meaning of the ADA); *Brewer v. Sears, Roebuck & Co.*, 315 F.Supp.2d 295 (W.D.N.Y. 2004) service technician was not "disabled" for purposes of ADA as result of herniated disk in his back where his back had healed and his doctor cleared him to return to work without any restrictions.

Mr. Mestas made a claim for Social Security Disability benefits, asserting that he was totally disabled from working, commencing on April 16, 2013. The Social Security Administration found that his total disability began on April 16, 2013. All this leads to the logical conclusion that prior to the date of April 16, 2013, that Mr. Mestas did not have a physical impairment which substantially limited his ability to work, and, hence, he was not a "qualified individual with a disability" of the physical impairment type as provided in 42 U.S.C.12102 (1)(A).

An individual may establish that they are a qualified individual with a disability by establishing that they have a "record of impairment." To establish a "record of impairment" type disability in this matter, Mr. Mestas would have to establish by competent medical evidence that he had previously possessed a physical impairment that substantially limited a major life activity. As noted above, Mr. Mestas was only off work for 6-7 weeks, and he was released to return to his regular job duties, with no restrictions, and during the period of his employment, no restrictions were placed upon him or his activities at work. The medical release to return to work did not contain any information which demonstrated that Mr. Mestas had a physical impairment that substantially limited a major life activity as compared to most people in the general population. In the absence of that type of finding, Mr. Mestas will not have a "record of disability" under the provisions of 42 U.S.C. 12102(1)(B) and will not be a qualified individual with a disability who can maintain an action under

000131

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 137

the ADA.

As stated in the 29 C.F.R. 1630.2 (j) (1)(i), not every impairment is a disability. The fact that a person has once possessed a physical impairment will not necessarily result in a determination that a "record of impairment" type of disability exists. In *Sampson v. Mathacton School District*, 88 F.Supp. 3d 422 (E.D.Pa. 2015) a school administrator was trying to establish a prima facie case of disability discrimination based on a knee injury. She failed to establish that she had a "record of impairment" as her injury was limited in duration and impact. While she experienced pain and swelling for approximately six months, then missed four or five months of work due to surgery and recuperation, and the collateral effects of her injury included the occasional use of knee brace, difficulty standing, walking and sitting for long periods of time without feeling discomfort, her impairment did not rise to the level of being substantially limiting of major life activities, hence, her impairment was not a disability. In *Marsh v. Terra International (Oklahoma), Inc.*, 122 F.Supp. 3d 1267 (N.D. Okla. 2015), the employee could not show that he qualified as disabled because he had a record of disability; the employee had suffered back and knee injuries, but those did not cause him any significant problems or cause him to be placed on any restrictions.

A individual can also establish that they are a qualified individual with a disability if they can demonstrate that they are "regarded as being disabled" as provided in 42 U.S.C. 12102(1)(C). That occurs when the impairment, whether real or imagined, is regarded as substantially limiting a major life activity because a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or, a covered entity mistakenly believes that a non-limiting impairment substantially limits one or more major life activities. Excluded from "regarded as being disabled" are conditions that are both transitory and

13

minor—meaning the impairment is expected or actually lasted less than 6 months.

Mr. Mestas was injured, but he returned to work to his regular duties within 6-7 weeks, with no restrictions. As such, Mr. Mestas' injury was both transitory and minor. When Mr. Mestas returned to work at the Town on January 14, 2013, he returned to the same position and duties as he had held on November 26, 2012. [Exhibit 2. Request for Admission 6]; there were no changes in his job duties, his pay, benefits received, the nature of work tasks assigned, or a reduction in the nature of the work tasks assigned from those which existed on November 26, 2012 [Exhibit 2. Request for Admissions 8, 9, 10,11, 12]. After his return to work, Mr. Mestas did not present his employer with any doctor's statement or order which stated he had any restrictions regarding the performance of his regular job duties with the Town of Evansville. [Exhibit 2. Request for Admission 4].

Based on these undisputed facts, Mr. Mestas was not a qualified individual with a disability of the " regarded as" disability type as provided by 42 U.S.C. 12102(1)(C). This is in line with the result reached in *Bush v. Donahoe*, 964 F.Supp.2d 401 (W.D. Pa. 2013) where the employee's impairment, which was an ankle/foot sprain which required her to wear an open-toed cast/boot, was transitory and minor thus precluding a finding that she was regarded as disabled under the ADAAA. The impairment lasted less than six months, the employee could perform all duties of her job, and there was no evidence that she had been removed from full duty. See also, *Fuoco v. Lehigh University*, 981 F.Supp. 2d 352 (E.D.Pa. 2013), where the employee's bare, unsupported assertion that she was "viewed as disabled" was insufficient to support her claim of disability discrimination in violation of the ADA, based on her termination. She had failed to explain which disability she was regarded as having, and by whom, and offered no evidence that her employer perceived her as

14

Appellate Case: 17-8092    Document: 0101995582    Date Filed: 03/08/2018    Page: 138

having a disability at or around the time it terminated her employment.

In summary, Mr. Mestas has presented no evidence which establishes that the November 26, 2012, injury resulted in a physical impairment that substantially limited a major life activity as compared to most people in the general population as required by the regulations to establish a disability under 42 U.S.C. 12102(1)(A).  Only if that type of evidence exists with regard to the November 26, 2012, injury can Mr. Mestas establish a "record of impairment" disability  so that Mr. Mestas can be a qualified individual with a disability for the time period of January 14, 2013, to April 16, 2013–which is the time period during which he alleges that he was subjected to a hostile work environment based on disability under the ADA.  In the absence of that showing, Mr. Mestas is not a qualified individual with a disability [of the record of disability type] and cannot avail himself of an action under the ADA.  In the absence of that showing, then the Court should find that no genuine issue of material fact  exists and that summary judgment should be entered in favor of the Town.

**B.  The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of  hostile work environment based on disability.**

Mr. Mestas asserts  he was subjected to a hostile work environment based upon  disability. As discussed above, evidence in the record does not establish  Mr. Mestas was a qualified individual with a disability  so as to allow him to pursue such a claim under the ADA  for hostile work environment based upon disability.  However, even if such action were pursued, Mr. Mestas' claim would fail, as a matter of law,  because the conduct complained of was not  sufficiently severe or pervasive to alter a term, condition or privilege of employment.

Title VII   precedent  for hostile  work  environment  is  applied  to  ADA  hostile  work

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 139

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 140

environment cases.  As such, a claimant must prove, to establish a hostile work environment claim based on disability: that he is a qualified individual with a disability; he was subjected to unwelcome harassment; the harassment was based on his disability; the harassment was sufficiently severe or pervasive to alter a term, condition or privilege of employment; and some factual basis exists to impute liability for the harassment to the employer.

Whether an individual was subjected to a hostile work environment based on disability depends on the totality of the circumstances.  In examining whether an environment is sufficiently hostile or abusive for purposes of ADA hostile work environment, courts consider such factors as (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct was physically threatening/humiliating or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work; (5) what physiological harm, if any, resulted. *Chavez, supra.*

The law is clearly established in the Tenth Circuit that a plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs, comments or conduct.  Instead, there must be a steady barrage of opprobrious comments or incidents.  *Morris, supra.*  The plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule and insult in order for it to reach the level that it meets the legal requirement that the conduct complained of is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.  The work environment must be subjectively *and* objectively hostile or abusive. *Lounds, supra,* at 1222.

Looking at the totality of the circumstances in this case, Mr. Mestas' claim of hostile work environment based on disability fails, as a matter of law. Mr. Brown's  conduct as described by the

000135

Plaintiff of being harsh and condescending and not letting him use his personal snow blower, or having him do his job without assistance [Exhibit 1. Plaintiff's deposition pp. 119, 121-22] was not so pervasive and not so egregious that it altered the working conditions of Mr. Mestas' employment and created a hostile working environment.  There is no evidence that the conduct was in any way physically threatening or humiliating.  Mr. Mestas testified he had sought counseling, but the counseling was not related to his termination from employment with the Town of Evansville. [Exhibit 1. Plaintiff's deposition, pp. 142-43].

Looking at the totality of the circumstances, Mr. Mestas' claim of hostile work environment based on disability fails, as a matter of law. Mr. Brown's conduct as described by the Plaintiff, was not pervasive and it was not so egregious that it altered the working conditions of Mr. Mestas' employment and created a hostile working environment; the Court should grant summary judgment in favor of the Town on this claim.

**6.   The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of retaliation in employment for taking protected medical leave for a disability in violation of the ADA as there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.**

42 U.S.C. 12203 (b)  provides in pertinent part as follows:

**S 12203.  Prohibition against retaliation and coercion**
                                    * * *
**(b) Interference, coercion, or intimidation**
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised, or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

Mr. Mestas asserts that he  was retaliated against in his employment for taking protected medical leave for a disability in violation of 42 U.S.C. 12203 (b).  However, the evidence clearly

17

Appellate Case: 17-8092     Document: 010199955822     Date Filed: 03/08/2018     Page: 142

establishes that Mr. Mestas, upon return from taking medical leave, returned to the same job and job duties and received the same pay and same benefits as he had received prior to the medical leave. [Exhibit 2. Request for Admissions 8, 9, 10]. There was no reduction in the amount of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 11]; there was no reduction in the nature of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 12]. The Town of Evansville expected Mr. Mestas to perform all the duties required of his position when he returned to work on January 14, 2013, through the date of his termination. [Exhibit 2. Request for Admission 7].

If Mr. Mestas is claiming that his termination on April 17, 2013, was in retaliation for having taken a medical leave five and a half months earlier, the burden is on Mr. Mestas to come forward with evidence which establishes that termination was "on account of" or motivated by his having taken medical leave. There must be some showing of a causal connection between that leave and the subsequent termination. There has been no evidence, direct or indirect, which supports that claim.

In addition, Mr. Mestas' claim of retaliation under the ADA fails because on April 17, 2013, the date of his termination, he was not a "qualified individual with a disability" able to perform the essential functions of the position. Mr. Mestas' claim for Social Security Disability benefits stated that he was totally disabled from performing various activities as of April 16, 2013, [Exhibit 3. Interrogatory No. 16], and that the disability for which he was applying for Social Security Disability benefits was present at the time he was terminated from the Town of Evansville on April 17, 2013.[Exhibit 3. Interrogatory No. 17]. The Court looks only to whether Mr. Mestas was

000137

qualified at the time of his termination. *Moss v. Harris County Constable Precinct One*, 851 F.3d 413,418 (5th Cir. 2017). In this situation, Mr. Mestas was not able to perform the essential functions of the position, according to his own statements made under oath. Consequently, Mr. Mestas has failed to establish a prima facie case of retaliation under the ADA, and his claim fails as a matter of law, and summary judgment should be entered in favor of the Town of Evansville on this claim.

When a plaintiff seeking to assert a claim under the ADA has made an application for disability benefits, and asserts that he is unable to work, he must produce an explanation of this apparent inconsistency that is "sufficient" to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807 (1999). Mr. Mestas has offered no explanation for the inconsistency between his sworn testimony in applying for SSDI , and his claim to the EEOC, and now to this Court that he is a qualified individual with a disability who can perform the essential functions of the job. In fact, here, as in *Cleveland, supra,* the only evidence he uses to support his contention is that the statutes have different standards for determining disability. [Exhibit 1. Plaintiff's deposition, pp. 152-153] In *Moxley v. New Jersey State Police*, 196 F.3d 160, 166 (1999), the court noted that simply averring that the statutory schemes differ is not enough to survive summary judgment in light of *Cleveland*. In addition, the *Cleveland* court held that a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or own previous sworn statement." *Id.* at 806.

For the reasons stated above, there are no genuine issues of material fact, and the Town of Evansville is entitled to the entry of summary judgment in its favor on the Plaintiff's claim of retaliation for having taken protected medical leave under the ADA.

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 143

**7. Conclusion.**

There are no genuine issues of material fact which would preclude this Court, as a matter of law,  from granting summary judgment to the Town of Evansville on all of Mr. Mestas' claims.

**WHEREFORE,** Defendant Town of Evansville prays the Court will enter an order granting Defendant's motion for summary judgment, and for such other and further relief as the Court deems just and proper.

**DATED** this 20th day of October, 2017.

> /s/ Thomas A. Thompson
> Thomas A. Thompson, #6-2640
> Kylie M. Rangitsch, #7-5547
> Natasha K. Martinez, #7-5119
> Attorneys for Defendants
> MacPherson, Kelly & Thompson, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of October, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY  82070
Email: mlhayes@wyoming.com

> /s/   Thomas  A.  Thompson
> For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 144

000139

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 145

Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendant
Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net
nmartinez@wyomingattorneys.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

ROY MESTAS,                                     )
                                                )
            Plaintiff,                          )
                                                )
      v.                                        )      Civil Action No. 17-CV00017-NDF
                                                )
TOWN OF EVANSVILLE, a duly incorporated         )
Municipal Corporation under the laws of the     )
State of Wyoming,                               )
                                                )
            Defendant.                          )

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**COMES NOW,** Defendant, the Town of Evansville, by and through its attorneys, Thomas A. Thompson, Kylie M. Rangitsch and Natasha K. Martinez, of MacPherson, Kelly and Thompson, LLC, and hereby files Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

000140

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 146

***Plaintiff's Motion for Partial Summary Judgment***

Plaintiff's Motion for Partial Summary Judgment requests that this Court find, that

(1) Plaintiff had an actual disability that was reasonably accommodated with medical leave, leave to which Plaintiff was entitled and that constitutes protected conduct for purposes of his ADA retaliation claim; and

(2) when Plaintiff returned to work from his medical leave and was able to perform his job duties without accommodation, Plaintiff was disabled because he had a "record of" disability based on that medical leave and his inability to work, for purposes of his ADA hostile work environment claim.

"Plaintiff seeks a partial summary judgment in his favor that he has established the first elements of both his ADA hostile work environment and retaliation claims."

[Doc. 52 at p. 2].

A.      ***Plaintiff's Affidavit of Yvonne Currie is not Proper and Should be Stricken***

In support of Plaintiff's Motion for Partial Summary Judgment, the Plaintiff has attached Exhibit B, which is an Affidavit of Yvonne Currie, Casper Orthopaedic Associates, P.C. [Doc. 52-6]. According to her affidavit, Ms. Currie is purportedly a supervisor whose duties include supervising the medical records department at Casper Orthopaedic Associates, P.C. Attached to the Affidavit of Yvonne Currie are approximately eighty-seven (87) pages of various medical records which Plaintiff relies upon in support of his Motion for Partial Summary Judgment. It should be noted that Plaintiff failed to designate any experts for trial, including any of Plaintiff's treating health care providers or treating physicians.

"To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). The requirement is that the party

2

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 147

submitting the evidence show that it will be possible to put the information, the substance of the content of the evidence, into an admissible form. "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

Although Plaintiff may choose to call Ms. Currie to testify at trial that the medical records attached to Exhibit B are true and correct copies of the originals which are kept in the normal course of business, Ms. Currie cannot testify as to the content of those medical records, specifically as to Plaintiff's alleged disability or impairment. An affidavit supporting or opposing a summary judgment motion cannot contain expert testimony unless the affiant has first been designated as an expert witness under Rule 26(a)(2). *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005). Since Ms. Currie is not an expert, and since Plaintiff has failed to designate any health care provider or treating physician as an expert in this matter, the content of the medical records which have been attached as an exhibit to Plaintiff's summary judgment motion are hearsay and not admissible to prove the truth of the matters asserted concerning Plaintiff's medical care and treatment. Plaintiff has failed to designate any expert whom could be called at trial to testify as to the medical records, Plaintiff's alleged disability, or Plaintiff's alleged impairment. Since Plaintiff's expert witness designation deadline has passed, it is too late for Plaintiff to designate an expert or to introduce any medical testimony concerning Plaintiff's alleged disability or impairment.

Speculation, opinion, or hearsay testimony is "not suitable grist for the summary judgment mill." *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995). Plaintiff cannot rely upon the medical records attached to Exhibit B of his Motion for Partial Summary Judgment and Exhibit B for the purposes

Appellate Case: 17-8092     Document: 010199955822     Date Filed: 03/08/2018     Page: 148

of establishing a disability or impairment, and Exhibit B should be stricken by the Court as inadmissible hearsay.

**B.**   ***Plaintiff has Failed to Establish "Record of Impairment"***

Plaintiff must establish that he is a "qualified individual with a disability" at the point in time that Plaintiff asserts a violation of the ADA occurred. Plaintiff is proceeding under 42 U.S.C. 12102(1)(B) as an individual who has a record of a physical impairment which substantially limits a major life activity. There is no admissible evidence that Plaintiff was a "qualified individual with a disability" so as to be able to pursue a claim under the ADA.

As stated in Defendant's Brief in Support of Motion for Summary Judgment [Doc. 54] one of the rules of construction found in 29 C.F.R. 1630.2(j)(1)(I) which is used when determining if an individual is substantially limited in performing a major life activity is that "not every impairment will constitute a disability." See *McDonald v. City of New York*, 786 F. Supp. 2d 588 (E.D.N.Y. 2011) (City department of transportation employee's impairment, namely herniated disc in cervical-lumbar area, did not substantially limit his major life activities of walking, sitting, standing, lifting, bending, or working, therefore, not actually "disabled" within the meaning of the ADA); *Brewer v. Sears, Roebuck & Co.*, 315 F. Supp. 2d. 295 (W.D.N.Y. 2004) service technician was not "disabled" for purposes of ADA as a result of herniated disc in his back where his back had healed and his doctor cleared him to return to work without any restrictions.

Plaintiff's failure to designate a medical expert or treating physician is fatal to his burden of establishing by competent medical evidence that he previously possessed a physical impairment that substantially limited a major life activity. The facts in this case are undisputed that when Plaintiff returned to work, the medical release did not contain any information which would demonstrate that

000143

Appellate Case: 17-8092     Document: 010199955822     Date Filed: 03/08/2018     Page: 149

the Plaintiff had a physical impairment that substantially limited a major life activity as compared to most people in the general population. In the absence of that type of finding and without the ability at this point to present competent medial testimony, Plaintiff will not have a "record of disability" or "record of impairment" under the provisions of 42 U.S.C. 12102(1)(B) and will not be a qualified individual with a disability who can maintain an action under the ADA. As stated in 29 C.F.R. 1630.2(j)(1)(i), not every impairment is a disability.

Furthermore, Plaintiff has not reconciled his application for Social Security Disability benefits, which asserted that he was totally disabled from working, commencing on April 16, 2013, which is the date the Social Security Administration found his total disability began. The logical conclusion is that prior to the date of April 16, 2013, that Plaintiff did not have a physical impairment which substantially limited his ability to work, and, therefore, he was not a "qualified individual with a disability" of the physical impairment type as provided in 42 U.S.C. 12102(1)(A).

C.   *Plaintiff is Not Disabled within the Meaning of the ADA*

Plaintiff sets forth argument in his Brief in Support of Partial Motion for Summary Judgment [Doc. 52 at p. 12-13] that he is entitled to summary judgment in his favor finding that he is disabled within the meaning of the ADA and that his medical leave is conduct protected by the ADA. Plaintiff relies upon what he alleges are "undisputed facts." Those "undisputed facts" include that during the time period of November 26, 2012, to January 14, 2013, "he underwent medical treatment and physical therapy for his workplace injury; he has included his medical records as an exhibit to this motion to show it is beyond dispute that he sought medical treatment for his injury. While on medical leave, he received Temporary Total Disability benefits from the State of Wyoming because

000144

Appellate Case: 17-8092   Document: 010199955822   Date Filed: 03/08/2018   Page: 150

his compensable injury prevented him from working. Finally, the Workers' Compensation Division paid all medical bills and related workplace injury." *Id.* at 12.

Plaintiff's entire argument relies upon medical records and Workers' Compensation documents which address Plaintiff's medical condition. As discussed above, these documents are inadmissible, and Plaintiff has failed to designate any health care provider, medical doctor, physical therapist or other treating physician which would be able to testify as to Plaintiff's medical condition, specifically as to his alleged "disability" or "impairment." The statements contained in Plaintiff's brief concerning Plaintiff's medical condition and treatment are nothing more than conclusory statements made without the support of admissible evidence. Without such admissible evidence, Plaintiff's motion for summary judgment that he is disabled within the meaning of the ADA, and that his medical leave is conduct protected by the ADA, should be denied.

WHEREFORE, the Defendant respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment and for such other and further relief as the Court deems proper in the premises.

**DATED** this 2nd day of November, 2017.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
Attorneys for Defendants
MacPherson, Kelly & Thompson, LLC

000145

**CERTIFICATE OF SERVICE**

This is to certify that on the 2nd day of November, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY  82070
Email: mlhayes@wyoming.com

/s/    Thomas  A.  Thompson
For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js

7

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 151

MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258

Attorney for Roy Mestas

---

**IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING**

---

| | | |
|---|---|---|
| ROY MESTAS | ) | CASE NO. 17-CV-00017-NDF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Roy Mestas, by and through undersigned counsel, submits this brief in

opposition to Defendant Town of Evansville's motion for summary judgment. By including only

selected portions of the plaintiff's deposition and discovery responses, the Town has provided

this Court with a sanitized and incomplete picture of the hostile work environment and retaliation

inflicted on Mr. Mestas by his supervisor, Dale Brown.  As demonstrated below, there are

significant issues of disputed material fact regarding the pervasiveness of the harassment and the

adverse employment actions taken by Supervisor Brown against Mr. Mestas that preclude entry

of a summary judgment on any of Mr. Mestas's three discrimination claims.  Therefore, the

Court should deny the Town's motion.

1

I.    **Disputed and undisputed facts relevant to the Plaintiff's Title VII and ADA discrimination claims.**

**The following facts in this paragraph are undisputed**:  Mr. Mestas started working as a sanitation truck driver for the Town of Evansville on September 24, 2012.  According to the Town of Evansville's Employee Handbook, Mr. Mestas was to serve a six-month probationary period as an at-will employee.  Declaration of Roy Mestas, ¶ 1, attached hereto as Exhibit A and Employee Handbook, attached thereto as Exhibit 1.  His job location was the Public Works maintenance garage, which is in a physically separate location from the Evansville Town Hall.  The Town Hall houses the municipal offices and is approximately six blocks from the Public Works maintenance garage.  Mestas Decl., ¶ 2.  Mr. Mestas was injured at work on November 24, 2012 and took medical leave to recover from that injury until January 14, 2013, when he was able to return to work with no restrictions. On the day he returned to work, his co-supervisor, Dale Brown, informed him that he was extending Mr. Mestas's six-month probationary period through May 24, 2013, "because of the extended lost work time due to your injury on November 26, 2012." Mestas Decl., ¶¶ 3 and 6 and Memo from Boettcher and Brown to Mestas, attached thereto as Exhibit 2.

**The following facts are disputed, unless specifically noted otherwise**:  When Supervisor Brown presented Mr. Mestas with the memo extending his probationary period, Brown told Mr. Mestas that he would 'have to let him go' if he did not sign the document. Feeling threatened by this demand, Mr. Mestas signed the document, thereby acknowledging his agreement to its non-negotiable terms.  Mestas Decl. ¶ 7.  From then until Supervisor Brown fired him three months later, Brown subjected Mr. Mestas to harsh and condescending treatment more frequently and more severely than other employees. For example, Supervisor Brown

2

000148

expected Mr. Mestas to complete tasks without the assistance of co-workers, which was highly

unusual in the small Public Works department. Mestas Decl., ¶¶ 8-9; Deposition of Eric Reyna,

pp. 11-13, attached hereto as Exhibit B (describing multiple situations when public works

employees would help each other with job-related tasks).  Supervisor Brown never issued a

Town radio to Mr. Mestas so when he was driving his sanitation truck and needed assistance, he

used his personal cell phone to call Dale Brown's Town-issued cell phone to request help.  Mr.

Mestas's calls and phone messages to Brown requesting help always went unanswered.   Mestas

Decl., ¶ 10. *See also* Reyna Depo., p. 28(Brown did not let Mr. Mestas have a radio and when

Mestas called for help, Brown got upset and told Reyna "Don't help him.  He don't need help.").

Supervisor Brown instructed co-workers not to assist Mr. Mestas and reprimanded those co-

workers who did so. On one occasion, a large three-yard capacity trash bin fell into the back of

Mr. Mestas's sanitation truck.  This happens periodically and takes two or three employees to

remove a trash bin of that size. Supervisor Brown told Mr. Mestas's co-employees, Ron Emond,

Dan Adcock and Eric Reyna, not to help him and to let Mr. Mestas do it himself. Mestas Decl.,

¶¶ 11-12.  *See also* Reyna Depo., pp. 31-32 (describing incident and Supervisor Brown's

instructions to let Mr. Mestas do it himself); Deposition of Ron Emond, pp. 18-19, attached

hereto as Exhibit C (describing incident and Supervisor Brown's instructions to "Let him do it

himself"); Deposition of Dan Adcock, pp. 54-56, attached hereto as Exhibit D (describing

incident and Supervisor Brown's instructions to Mr. Mestas to get up on the truck and hook up

the bin by himself, even though it was evident to everyone that Mestas was afraid of heights).

Supervisor Brown was also hostile and condescending to Mr. Mestas during weekly meetings

with other public works employees, which was humiliating to Mr. Mestas.  Mestas Decl., ¶ 15.

3

Because of Supervisor Brown's hostile treatment, Mr. Mestas began to write down and

record some of his conversations with Brown, to document Brown's conduct and Mr. Mestas's

efforts to stop the harassment. Mestas Decl., ¶ 16.  In one audio recording on or about February

21, 2013,[1] Mr. Mestas sought out Supervisor Brown privately in an attempt to understand what

he could to do stop Brown's abusive treatment, as demonstrated by his opening words to Brown:

> Well, I – I don't know if I've done something to piss you off or something.  And I – I – man,
> I enjoy my job.  I love it here.  I – *I seem to upset you quite a bit, and I don't mean to*.

(Emphasis added).  Mestas Decl., ¶ 17, and transcript of recorded conversation, attached thereto

as Exhibit 3, p. 4. Supervisor Brown responded that "Well, I don't appreciate people arguing

with me."  He then proceeded to tell Mr. Mestas that he was 'still frustrated with your back,' and

that although he knew Mr. Mestas had not injured his back intentionally, Mr. Mestas was not

"bedridden" when he was out on "disability" for his back injury and that he should have come to

work anyway to perform administrative light-duty work.  Transc., pp. 4-5.[2] Brown accused Mr.

Mestas of using his injury to call in sick twice after returning from medical leave.  Supervisor

Brown told him that, "I have people outside of our department asking me, 'Is this a pattern?,'"

insinuating that Mr. Mestas was trying to get out of work.  Transc., pp. 6-7. Supervisor Brown

explained that someone working for the Town of Evansville outside of the Public Works

department, "on other authority," had told him that he should terminate Mr. Mestas's

employment if Mr. Mestas could not perform his job duties. Transc., p. 7. These comments

indicated that Supervisor Brown had discussed Mr. Mestas's continued employment with other

Town officials and were intimidating to Mr. Mestas.  Mestas Decl., ¶ 21. Supervisor Brown also

---

[1]Supervisor Brown confirmed his voice in the recording.  Deposition of Dale Brown, p. 48,
attached hereto as Exhibit E.
[2]It is undisputed that Mr. Mestas had provided documentation from his physician that he was
unable to work "until further notice."  Defendant's Answer, ¶ 13.

4

accused Mr. Mestas of being argumentative. Transc., pp. 4, 10, and 13-14.  Mr. Mestas

apologized profusely, multiple times, and explained that he never intended to be argumentative.

Mr. Mestas told Brown that in the future, he should tell Mr. Mestas if he's being argumentative

and to stop.  Transc., p. 4. At no time after this conversation did Mr. Brown ever tell Mr. Mestas

that he was being argumentative. Mestas Decl., ¶ 22.  *See also* Brown Depo., p.133 (could not

recall whether he had asked Mestas not to argue with him at any time after this conversation).

     During this conversation, Supervisor Brown never suggested that Mr. Mestas should or

could file a grievance, contact the mayor or any other Town official, or contact anyone at the

Town Hall with his concerns.  Mr. Mestas believed, based on that conversation, that if he got

injured or sick one more time, Brown would fire him.  Mestas Decl., ¶ 21. And although Mr.

Mestas had tried to address the hostile work environment directly with his supervisor, Brown's

harassment continued unabated. After that conversation, Mr. Mestas would frequently come

home upset and complain to his wife that Supervisor Brown called him stupid beaner, was

condescending, would not get Mr. Mestas any help when he requested it, and instructed co-

workers not to help him and if they did, Brown would reprimand them.  Mestas Decl., ¶ 25;

Deposition of Roy Mestas, p. 21, lines 12-17, attached hereto as Exhibit F.

     Throughout his employment and particularly after he returned from medical leave in mid-

January of 2013, Mr. Mestas heard Supervisor Brown use the words "stupid beaner," "dumb

Mexican," "beaner," and make other derogatory comments about "Mexicans" and other minority

groups on multiple occasions, usually in the Public Works maintenance garage office and often

in the presence of other Public Works department employees.  These were general derogatory

comments, references and jokes about Hispanics.  In addition, before and sometimes during

weekly morning safety meetings and in the presence of other Public Works employees,

000151

Supervisor Brown and other employees would joke about Hispanics or other ethnic and racial

minority groups.  Emond Depo., pp. 26-27.  Mr. Mestas personally heard Brown make

derogatory comments about Hispanics on at least six occasions, if not more.  Mestas Decl., ¶¶

26-28.

Mr. Mestas kept a memo pad in his shirt pocket in which he documented job-related

information, such as addresses where trash bins needed to be repaired, where trash bins had not

been set out, or where extra trash had been left on the ground next to the trash bins. On February

22, 2013[3] and again on or about March 27, 2013, Mr. Mestas documented in his memo pad that

Supervisor Brown had made a "stupid beaner" remark. Mestas Decl., ¶¶ 29-30, and Exhibit 4

thereto, Bates No. Mestas Employment, 000037. On at least two separate occasions, Mr. Mestas

complained directly to Supervisor Brown that his derogatory comments about Hispanics were

offensive.  Mestas Decl., ¶ 31. Mr. Mestas documented one of those occasions in his memo pad

as follows: "Asked Dale to stop using Beaner remarks!!! 4-1-13."  Mestas Decl., ¶ 32, and

Exhibit 4 thereto, Bates No. Mestas Employment, 000038. Supervisor Brown responded by

stating that his (Brown's) wife is a "Mexican" and he says stuff like that to her all the time.

Mestas Decl., ¶ 33.

After Mr. Mestas complained to him about his derogatory comments, Supervisor Brown

never suggested to Mr. Mestas that he could or should file a grievance, contact the mayor or any

other elected Town official, or contact anyone at the Town Hall with his concerns.  Mestas Decl.,

¶ 34.  **It is undisputed** that the Town of Evansville had no procedure for employees to make

complaints of harassment, other than for sexual harassment.  Mestas Decl., Exhibit 1, pp. 33-36.

**It is undisputed** that the Town only had a general grievance procedure that did not mention

---

[3] This was approximately one day after the recorded conversation described above, p. 4.

workplace harassment or discrimination.  The grievance procedure was expressly limited to use only by permanent employees, not probationary employees like Mr. Mestas. Mestas Decl., ¶¶ 35-37, and Town of Evansville Employee Handbook, Grievance Procedure, pp. 59-62. The Town of Evansville's grievance procedure provided that "[i]f a **permanent employee** has a grievance or wishes to complain, every effort should be made to resolve the problem by informal means at the lowest possible level, i.e., discussing the problem with the department head." Mestas Decl., Exhibit 1, p. 59 (emphasis added).

Three of Mr. Mestas's co-workers corroborated his hostile work environment and retaliation allegations against Supervisor Brown. Eric Reyna, the only other Hispanic employee in the Public Works department, testified that Supervisor Brown would make comments to him such as "not bad for a Mexican," comments that Mr. Reyna would relay to Mr. Mestas.  Reyna Depo., p. 36.  Mr. Reyna also described another incident when Brown had made a derogatory comment to Mr. Reyna and Mr. Mestas about Mexicans for which Brown later apologized privately to Mr. Reyna. Mr. Reyna recalled the incident as "pretty upsetting."  Reyna, Depo., p. 37.  Mr. Reyna explained that he told Mr. Mestas that Supervisor Brown had called him (Reyna) to apologize for the derogatory comment:

> . . . the reason why I mentioned it to Roy was because it was said in the presence of both of us.  And I remember looking at Roy, and he was upset about it, through his facial expressions.  And I wasn't too happy about it either.  First thing in the morning, something you don't want to hear.  And so I did let him know that, yeah, Dale had apologized to me to see if maybe he received an apology as well.

Reyna Depo., pp. 37-38. *See also* Mestas Deposition, Exhibit F hereto, p. 127 (when Reyna and Mestas were going out on a job together, Brown told them, "I don't need you beaners going together."). Reyna also testified that both he and Mr. Mestas were in Brown's presence when

000153

Brown used terms like "beaner" and "Mexican," recalling two specific times when Mr. Mestas

was not happy about it.  Reyna Depo., p. 38, lines 19-20, and p. 39.  Finally, Mr. Reyna recalled

Supervisor Brown using the term "beaner" one morning in the crew room in the presence of Mr.

Mestas and other employees.  Mr. Reyna never complained directly to Dale Brown or the

Town's mayor about Brown because he was afraid of losing his job and the likelihood that "there

would be repercussions in some way."  Reyna Depo., pp. 24-25, 44.  Mr. Reyna knew that

Mayor Hinds and Mr. Brown were close friends and Brown led employees to believe that Mayor

Hinds would always defend Brown, so complaining would be futile and likely to provoke

retaliation from Brown.  Reyna Depo., pp. 24-25, 44.

Ron Emond testified that he heard Supervisor Brown refer to Mr. Mestas as a "stupid

beaner" sometime after Mr. Mestas had returned from medical leave.  He also testified that he

heard Brown refer to someone as a "beaner" in a joking manner and that he heard jokes at work

that weren't only about "beaners." Emond Depo., pp. 26-27.  Dan Adcock testified that has heard

Brown use the term "beaner" "many times." He also heard Brown refer to his wife that way and

that Brown once referred to an electrician as "Beaner Electric."  Adcock Depo., p. 25.

Messrs. Reyna, Emond, and Adcock all testified that after Mr. Mestas returned from

medical leave, Supervisor Brown treated him much more harshly than before his leave, including

that Brown "was odious toward him." Reyna Depo., pp. 10-12 and 28 (after Mr. Mestas got

injured, Brown "targeted" Mr. Mestas, "singled him out" and was "odious towards him"). Ron

Emond testified that Supervisor Brown 'beat up on [Mestas] pretty good' and that Brown told

Emond that he would make Mestas's "life so miserable that he would quit."  Emond Depo., pp.

18 and 21.  Emond testified that Supervisor Brown "was always on [Mestas's] case with

8

whatever he did after he came back from the injury.  Dale was pissed because he got hurt, plain

and simple and that's it in a nutshell."  Emond Depo., p. 48, lines 19-22.  Dan Adcock testified

that Supervisor Brown treated Mr. Mestas differently after Mestas returned from injury leave,

specifically that Brown's treatment "progressively became worse.  I'm not positive the injury

was the cause of it, but it certainly helped verify Dale's feelings that Roy wasn't going to work

there anymore.  So he just kept pushing even harder, as we talked about, with [sic] put him in

positions to – very difficult to be successful, that sort of thing."  Adcock Depo., p. 21, lines 8-13;

*see also* pp. 8-11 (Adcock providing multiple examples of Dale Brown giving Mestas extra work

after his injury so that he could not be successful in his job). Emond also testified that Supervisor

Brown had yelled at him and Dan Adcock when they completed one of Mr. Mestas's work

orders.  Mr. Emond testified that he and Mr. Adcock weren't that busy so they delivered a trash

bin as requested in the work order.  When they returned Supervisor Brown "stopped and yelled

at us for doing his [Mestas's] job," which Mr. Emond found unusual and was something for

which he had never been reprimanded before.  Emond Depo, p. 23.  Dan Adcock testified that

Supervisor Brown told Mr. Mestas to complete a certain task by noon.  Adcock knew that would

be difficult to accomplish, so he did it himself and later was reprimanded for it by Brown, yet

another example of how Brown made it impossible for Mr. Mestas to be successful in his job.

Adcock Depo, pp. 21-22.

    All three employees testified that they got along fine with Mr. Mestas, believed he was a

hard worker who kept his sanitation truck clean and well maintained, had no complaints and

heard no complaints from other employees about his job performance, never noticed that he

would disappear from the job site, were never asked by Brown where Mestas was, and felt Mr.

Mestas was a "team player" who assisted them with job-related tasks when needed, as was the

000155

custom and practice in their department.  Adcock Depo., p. 4; Emond Depo., pp. 13-14, 21;

Reyna Depo., pp. 3-4, 9, 30-32. They all recalled being told by Supervisor Brown not to help Mr.

Mestas, including the incident when Brown made Mr. Mestas remove, by himself, the large

three-yard dumpster that had fallen into his sanitation truck, described on page 3 above.

In early April of 2013, Mr. Mestas reinjured his back while performing his job duties.

Mestas Decl., ¶¶ 38-39.  He never complained to Brown about his back pain and never filed an

injury report because he was worried he would be fired by Dale Brown.  Mestas Decl., ¶ 40.

Instead, he contacted his physician to schedule a steroid injection to relieve his back pain.  He

was concerned he would be fired if he could not perform his job duties so he continued to work

and performed all essential functions of his job.  Mestas Decl., ¶ 41.

In another recorded conversation on April 11, 2013, Mr. Mestas informed Supervisor

Brown that he would need one day off on April 18, 2013, because "they're going to do an

injection in my back where that – that – remember I was talking to you about it a while back?

They wanted to do one today, but I told them I couldn't because I need a driver and stuff because

of medicine they give you, I can't drive. . . . " Mr. Mestas explained that "I won't miss any work,

only than the – the day for the – the injection.  You want me to write it on the calendar?"  Mestas

Decl., ¶ 42 and Transcript of April 11, 2013 recorded conversation, attached thereto as Exhibit 5.

Supervisor Brown granted his request for time off of work for the injection and agreed that Mr.

Mestas should put it on the Public Works department calendar. Mestas Decl., ¶ 43.[4]

On snow days, most Public Works department employees were supposed to report to

work by 7 a.m., to shovel snow at Town facilities. On Monday, April 15, 2013, Mr. Mestas

---

[4]Supervisor Brown confirmed his voice in the recording.  Brown Depo., pp. 117-18.

000156

reported early to work to assist with snow removal.  On that day, the Casper area was

experiencing a late spring storm with heavy, wet snow. While shoveling snow, Mr. Mestas asked

Supervisor Brown if he could use his own snow blower because of his back pain.  Mr. Mestas's

house is only a few short blocks from the location where he was shoveling snow. Supervisor

Brown denied Mr. Mestas's request for a snow blower and said, 'that's what I have Mexicans

for, to do this work,' or words to that effect.  Mestas Decl., ¶¶ 44-47.  Mr. Mestas completed his

snow shoveling duties that day, which contributed significantly to his back pain. Mestas Decl, ¶

48. *See also* Emond Depo., p. 25 (recalling that Mr. Mestas asked to use his snow blower to

shovel snow because his back was sore and Dale Brown refused and required Mr. Mestas to

complete the shoveling with the rest of the crew). On April 16, 2013, the Casper area continued

to get wet, heavy snowfall.  Mr. Mestas called into work that morning to ask Supervisor Brown if

he could be excused from shoveling snow because he had reinjured his back.  Supervisor Brown

hung up on him.  When he called back, Supervisor Brown told him he did not 'want to hear my

shit.'  Mestas Decl., ¶ 49.

**The following facts in this paragraph are undisputed:** On April 17, 2013, Supervisor

Brown terminated Mr. Mestas's employment because things 'were not working out.'  He told

Mr. Mestas to 'go take care of your back and whatever . . . .'  Mestas Decl., ¶ 50.  After his

termination, Mr. Mestas applied for Social Security Disability Insurance (SSDI) benefits.  In his

application for benefits, Mr. Mestas stated that as of April 16, 2013, he had multiple

impairments, including his back injury of November 26, 2012 for which he was to undergo

surgery in June of 2013, that prevented him from engaging in any substantial gainful activity.

Mestas Decl, ¶ 51. He began receiving SSDI benefits based on his inability to engage in any

substantial gainful activity as of April 16, 2013. Mestas Decl, ¶ 52.

11

Mr. Mestas may have been able to continue working beyond April 17, 2013, if Supervisor Brown had accommodated him by excusing him from shoveling snow or had responded to his repeated requests for assistance from co-workers.  However, after reinjuring his back and being required to shovel snow on April 15, 2013, his back pain worsened significantly. Mestas Decl, ¶ 53.  Mr. Mestas ultimately underwent two surgeries for his back injury and reached maximum medical improvement in May of 2014. He returned to the workforce in December of 2014. Mestas Decl, ¶ 54.

Dale Brown categorically denied Mr. Mestas's allegations of harassment and retaliation. He testified that he only used the term "beaner" once in the workplace and that was in Eric Reyna's presence. Brown Depo., pp. 124-26, 169. He testified that he never used the term "beaner" or "stupid beaner" in Mr. Mestas's presence or at work and that Mr. Mestas never asked him to stop using beaner remarks.  Brown Depo., pp. 130-31.  He denied ever referring to his wife using that term and ever referring to his wife as a beaner in Dan Adcock's presence. Brown Depo., p. 127.  He denied telling co-workers not to assist Mr. Mestas and had no recollection of the incident when he required Mr. Mestas get a three-yard trash bin out of his sanitation truck alone.  Brown Depo., p. 135-36.  He denied telling Ron Emond that he would make Mr. Mestas's life so miserable that he would quit.  Brown Depo., p. 64.  He testified that he was not always "politically correct" and that employees would tell ethnic jokes and he didn't stop them, which is not "PC." Brown Depo., pp. 128-29.  He denied ever treating Mr. Mestas in an odious manner, after having that word comprehensively defined for him.  Brown Depo., pp. 134-35.

000158

Supervisor Brown testified that one older employee, Wilbur Yankey, did only "limited" shoveling on snow days, even though he did not have a note from his doctor that excused him from shoveling snow.  Brown described the department's snow shoveling duties as follows:

> There's a multitude of different tasks that we do from shoveling to sometimes we could use a snowblower – or, not a snowblower – a leaf blower if it's fine and powdery. Sometimes we used the John Deere tractor with the snow blade on it.  Not everything is just dyed in the wool.  Circumstance dictates what procedures we would use on a given time, heavy wet snow, light powdery snow, snowblower, shovels, brooms.

Brown Depo., pp. 115-116.  Despite not having a fixed "dyed in the wool" routine, he did not engage in any interactive process with Mr. Mestas after Mr. Mestas asked to use a snow blower because of back pain.[5]  Supervisor Brown testified that he would only have excused Mr. Mestas from shoveling snow if Mestas had a medical excuse.  Brown Depo., p. 117.

Brown further denied treating Mr. Mestas harshly at all or instructing co-employees not to help him. Instead, he claimed that after returning from medical leave, Mr. Mestas lacked initiative, was argumentative, was slow in his job duties and full of excuses, never had time to assist co-workers, and had problems "interfacing" with co-employees because of "antisocial" tendencies.  Brown Depo., pp. 64, 133-34. Supervisor Brown also claimed that Mr. Mestas would disappear from the job site and when asked by Brown, no other employee knew his whereabouts. Brown Depo., pp. 69-72.  Supervisor Brown could not recall which employees had issues with Mr. Mestas, could not recall which employees he asked about Mestas's whereabouts, and generally could not fathom Mr. Mestas's discrimination claims. He testified that he did not even know that Mestas was Hispanic, despite his complexion and surname.  Brown Depo., p.

---

[5] *See* 29 C.F.R. 1630.2(o)(3) (describing the "interactive process" for employers to engage in with an employee who requests a reasonable accommodation for a disability).

000159

170, lines 6-7.  Supervisor Brown never claimed to have terminated Mr. Mestas's employment

because of physical limitations in performing his job duties.

I.   **Summary judgment on Mr. Mestas's Title VII and ADA claims is not appropriate because there are disputed issues of material fact regarding the pervasiveness of the harassment and the adverse employment actions taken by Supervisor Brown against Mr. Mestas that should be decided by the jury.**

The Town argues that it is entitled to a summary judgment on Mr. Mestas's Title VII

hostile work environment claim because Brown made only isolated comments and the racial

harassment was not sufficiently pervasive. It further contends that there is no evidence that Mr.

Mestas's discharge on April 17, 2013 was related to Mr. Mestas's complaint on April 1, 2013,

when he asked Brown to 'stop with the beaner remarks.'  The Town argues that Mr. Mestas's

ADA hostile work environment claim should be dismissed because he is not a qualified

individual within the meaning of the ADA because he returned to work in January 2013 with no

work restrictions.  Finally, the Town seeks summary judgment on the ADA retaliation claim

because there was no adverse job action and terminating Mr. Mestas five and ½ months after he

was injured is too remote to constitute retaliation.  As demonstrated below, these arguments fail

to address disputed facts and are without merit. The Town's motion should be denied.

**A.  Standard for Summary Judgment.**

Summary judgment is only appropriate when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

At summary judgment, the court must view the evidence and draw reasonable inferences

therefrom in the light most favorable to the nonmoving party.  *Herrera v. Lufkin Industries, Inc.*,

474 F.3d 675, 680 (10th Cir. 2007).

14

### B. Summary judgment should be denied on the Plaintiff's Title VII and ADA hostile work environment claims because there are disputed issues of material fact regarding the pervasiveness of the hostile and abusive conduct.

A claim of harassment on the basis of disability proceeds largely in the same manner as a claim of hostile environment harassment based on any other protected category under Title VII. *Lanman v. Johnson Co., Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004) (hostile work environment claims are actionable under the ADA); *Anthony v. City of Clinton*, 1999 WL 390927, at *3 (10th Cir. June 15, 1999).  "'Title VII forbids employment discrimination on the basis of race or national origin,'" including hostile work environment discrimination based on one's protected class. *Herrera*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Chavez v. New Mexico*, 397 F.3d 826, 831 (10th Cir. 2005) and citing 42 U.S.C. § 2000-2(a)(1)).[6] To survive summary judgment on a hostile work environment claim based on race or disability, a plaintiff "'must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" and that the victim "'was targeted for harassment because of [his] ... race[ ] or national origin.'"  *Id.* (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004). *See also Anthony*, 1999 WL 390927, at *3 (discussing elements of an ADA disability harassment claim and quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (discussing elements of a Title VII sexual harassment claim based on a hostile work environment theory)).  The "'severity and pervasiveness evaluation is particularly unsuited for summary judgment

---

[6]An ADA hostile work environment claim requires the plaintiff to prove he is in the protected class, i.e., that he is disabled within the meaning of the ADA, qualified with or without reasonable accommodation, and was discriminated against because of his disability. *McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001); *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998). Mr. Mestas's partial summary judgment motion seeks to establish that he has a record of a disability.

000161

because it is quintessentially a question of fact.'" *Id.* (quoting *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (footnote omitted) and *O'Shea v. Yellow Tech. Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999).

Whether the environment constituted a racially- or disability-based hostile work environment is determined by looking at the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). A plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." *Penry*, 155 F.3d at 1261 (citing *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Mr. Mestas's allegations of racial insults, jokes and slurs are even more pervasive than those set forth in *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675 (10th Cir. 2007), where the Court reversed entry of a summary judgment for the employer. There, the court reviewed the plaintiff's four-year employment history in Wyoming and found that Mr. Herrera had set forth five specific, discreet examples of discriminatory comments by his supervisor, who was located in Texas. The court also found that other racially-neutral harassment, such as condescending and harsh treatment and comments made to other employees that were **occasionally** shared with the plaintiff, such as referring to the plaintiff as "the Mexican" and "the fucking Mexican," presented a "close call" as to the pervasiveness of the harassment. 474 F.3d at 678-79 and 691-92, Judge Cassell dissenting. But viewing the evidence in the light most favorable to the plaintiff, the court

16

concluded that Mr. Herrera had "asserted sufficient evidence from which a jury could find that his work environment was racially hostile. In particular, he has submitted sufficient evidence indicating that his workplace was pervasively discriminatory." *Herrera*, 474 F.3d at 680. The court reasoned that "'[f]acially neutral abusive conduct can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct.'" *Herrera*, 474 F.3d at 682, n.7 (quoting *Chavez*, 397 F.3d at 833) (addressing sexual harassment claim)[7]:

> This is because what is important in a hostile environment claim is the *environment,* and [racially]-neutral harassment makes up an important part of the relevant work environment. Conduct that appears [racially]-neutral in isolation may in fact be [race]-based, but may appear so only when viewed in the context of other [race]-based behavior. Thus, when a plaintiff introduces evidence of both [race]-based and [race]-neutral harassment, and when a jury, viewing the evidence in context, reasonably could view all of the allegedly harassing conduct ... as the product of [racial] hostility, then it is for the fact finder to decide whether such an inference should be drawn. *Id.* (quotations, citation omitted); *see also McCowan,* 273 F.3d at 925–26; *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1097, 1102 (10th Cir.1999). Further, the totality of the circumstances analysis in cases like the one before us obviates what would otherwise be the court's call in deciding how many racist comments constitute harassment or whether general profanity and vulgarity mixed with specific racial, ethnic, or sexual epithets equate to the sum of pervasiveness required .... Rather, by framing the evidence on *summary judgment* within the context of this particular workplace, we eliminate the suggestion that a certain number of comments is or is not actionable ... and leave the resolution to the trier of fact. *McCowan,* 273 F.3d at 926.

Viewing the facts in the light most favorable to Mr. Mestas, he has submitted sufficient evidence that his workplace was pervasively discriminatory. Mr. Mestas was employed for less than six months, during which time he was qualified to and did perform his job until April 16, 2013. During his employment, Supervisor Brown called him a "beaner," a "stupid beaner," and repeatedly referred to him as a "Mexican." Supervisor Brown subjected him to offensive jokes and disability-based hostile treatment, including making his life miserable, being condescending,

---

[7]In *Chavez*, the court determined that two comments made a supervisor, in which he said the plaintiff was a member of a "clica," were not sufficiently pervasive to withstand entry of a summary judgment. 397 F.3d 826, 832.

000163

isolating him from fellow employees, requiring him to complete tasks without assistance, and always finding fault with his work. Co-workers testified that Brown's harassment intensified after Mr. Mestas returned from injury leave. They gave specific examples of Brown's hostile and retaliatory treatment. Mr. Brown extended Mr. Mestas's probationary, at-will status immediately after his return from injury leave and threatened to 'let him go' if he did not agree to prolong his at-will status. Mr. Mestas remembered vividly and wrote down specific dates when Supervisor Brown had used racial epithets and when he told Brown to "stop with the Beaner remarks." That was April 1, 2013, just 16 days prior to his termination. Two days before he was fired and shortly after telling Brown he would need an injection in his back, Supervisor Brown refused his request for an accommodation for his back pain, specifically to use a snow blower. Brown told him 'that's why I have Mexicans, to do this work."

Indisputably, Mr. Mestas felt intimidated and threatened by Supervisor Brown's conduct, described by Eric Reyna as "odious." Mr. Mestas attempted to address the harassment directly with Supervisor Brown, as documented in the April 1, 2013 entry in his memo pad and the recorded conversation in February of 2013. Those efforts only engendered more hostility, particularly when Supervisor Brown claimed he would fire Mestas if he could not perform his job duties and insinuated that he and others considered that taking two days of sick leave equated to a "pattern" of avoiding work. Mr. Mestas believed these statements to be evidence of the precariousness of his continued employment. Mr. Mestas never complained to Brown about reinjuring his back or his recurring back pain, for fear he would be fired. Mr. Mestas's fears were realized when Brown fired him immediately following his first complaints of back pain.

It is the jury's responsibility to resolve, given the totality of the circumstances, how many racist, race-neutral, and disability-based comments constitute harassment and whether Brown's

000164

hostile, harsh treatment mixed with his specific racial epithets was motivated by race or

disability and was sufficiently pervasive to be actionable under Title VII and the ADA.  Mr.

Mestas was fired just two short two weeks after telling Dale Brown to stop with the "beaner"

comments.  His termination is an adverse employment action for purposes of his Title VII hostile

work environment claim, as is Brown's extending Mr. Mestas's probation immediately after

returning from injury leave.  That extension of his at-will status is also an adverse employment

action for purposes of his ADA hostile work environment claim.[8] The Town had no complaint

procedure for national origin- or disability-based discrimination and its general grievance

procedure was available only to permanent, not probationary employees like Mr. Mestas.

Supervisor Brown never offered any preventive or corrective opportunities after Mr. Mestas

complained directly to him about his racist comments and his hostile, angry behavior.  For these

reasons, this case is particularly ill-suited for summary judgment on Mr. Mestas's Title VII and

ADA hostile work environment claims.  He he has submitted sufficient evidence of a pervasively

discriminatory workplace and adverse employment actions taken against him by Dale Brown that

should be resolved by a jury.

---

[8]When an employee suffers a tangible employment action resulting from a direct supervisor's
harassment, the employer is strictly liable.  *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765
(1998); *Faragher*, 524 U.S. at 807-08.  No affirmative defense is available to the employer in
those cases.  In the absence of a tangible employment action, the employer may interpose an
affirmative defense to defeat liability by proving (a) that the employer exercised reasonable care
to prevent and correct promptly any discriminatory conduct, and (b) the plaintiff unreasonably
failed to take advantage of any preventive or corrective opportunities provided by the employer
or to otherwise avoid harm.  *Faragher*, 524 U.S. at 807-08; *Ellerth*, 524 U.S. at 764-65; *Vance v.
Ball State University,* 133 S. Ct. 2434 (2013).

000165

**C. There is sufficient evidence of retaliation and adverse employment actions to present Mr. Mestas's ADA retaliation claim to a jury.**

The ADA's retaliation statute provides in pertinent part as follows: "It shall be unlawful to coerce, intimidate, threaten, or interfere with *any individual* in the exercise or enjoyment of, *or on account of his or her having exercised or enjoyed*, . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b) (emphasis added). To prosecute an ADA retaliation claim, "'a plaintiff need not show that []he suffers from an actual disability.'" *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) ("By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA . . . .") (quoting 42 U.S.C. § 12203(a)).

To establish retaliation in violation of the ADA, a plaintiff must prove that:

1. he engaged in conduct protected under the ADA;
2. he was subjected to an adverse employment action after the protected conduct occurred;
3. the defendant retaliated against him because of his conduct protected by the ADA.

*Foster*, 830 F.3d 1178, 1187 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). In short, a plaintiff is subjected to an adverse employment action because of his participation in protected activity if the adverse employment action would not have occurred but for that participation.

As argued in his brief in support of his motion for partial summary judgment, conduct protected under the ADA includes medical leave to receive treatment for or to recover from an injury. *Foster*, 830 F.3d 1178, 1187; *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000); *Smith v. Difee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1333-34 (10th Cir. 1998); *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996)); *Taylor v. Pepsi-Cola Co.*, 196

20

F.3d 1106, 1110 (10th Cir. 1999). An adverse employment action in the context of a retaliation

claim need not materially affect the terms and conditions of employment so long as a reasonable

employee would have found the action materially adverse, which means it might have

"dissuaded a reasonable worker from making or supporting a charge of discrimination," or

engaging in any other conduct protected by the ADA. *See Burlington N. & Santa Fe Ry. Co. v.

White*, 548 U.S. 53, 68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011)

(applying *Burlington* standard). Here, Mr. Mestas must show that he was subjected to an adverse

employment action because he took medical leave protected by the ADA.

      The Tenth Circuit "liberally defines the phrase 'adverse employment action,'" and takes a

"case-by-case approach in determining whether a given employment action is 'adverse.'"

*Anderson v. Coors*, 181 F.3d 1171, 1178 (10th Cir. 1999) (quoting *Jeffries v. Kansas*, 147 F.3d

1220, 1232 (10th Cir. 1998). A materially adverse employment action includes scrutinizing work

more closely than that of other employees, without justification, and abusive verbal behavior that

is reasonably likely to deter protected activity, even if it is not sufficiently "severe or pervasive"

to create a hostile work environment. EEOC Enforcement Guidance on Retaliation and Related

Issues, August 25, 2016, p. 36. Retaliatory harassing conduct can also constitute a materially

adverse employment action, even if it is not severe or pervasive enough to alter the terms and

conditions of employment. *Id.* at 41 (citing *Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x

226, 230 (3d Cir. 2008) (ruling that after *Burlington Northern*, an employee claiming "retaliation

by workplace harassment" is "no longer required to show that the harassment was severe or

pervasive"); *EEOC v. Chrysler Grp., LLC*, WL 693642 at *8-11 (E.D. Wis. 2011) (holding that

reasonable jury could conclude employees were subjected to unlawful retaliation under

*Burlington Northern* standard when human resources supervisor verbally harassed them by

000167

screaming and pounding his fists on the table while threatening termination if they filed grievances)).

The Tenth Circuit has determined that direct evidence that retaliation played a part in the employment decision is satisfied when an employee complains about unlawful discrimination to a supervisor, thereby engaging in protected opposition to an unlawful employment practice under the ADA, and the employee is terminated shortly after making the complaint. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (the closer an adverse employment action is to the protected activity, the more likely it will support a showing of causation). *See also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007) (retaliatory motive can be inferred from short time period between protected activity and adverse employment action). Informal as well as formal complaints or demands are protected activities. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (Title VII retaliation case).

Mr. Mestas suffered several materially adverse employment actions in the three months following his return from protected medical leave. On his first day back at work, Dale Brown informed him that he would be fired unless he signed a memo acknowledging his agreement to extend his at-will status. In February of 2013, Mr. Mestas initiated a conversation with Supervisor Brown in an effort to address Brown's abusive treatment. Brown's response was that if Mr. Mestas can't physically perform his job duties, he will be fired and that taking any more sick leave would confirm suspicions that Mr. Mestas is using his injury to avoid work, another justification to fire him. He accused Mr. Mestas of arguing with him all the time when other employees instead observed that Brown 'beat up on Mr. Mestas pretty good,' was 'always on his case,' closely scrutinized Mr. Mestas's work, isolated him from co-employees, put him in situations where he could not succeed, and made him fear getting reinjured or sick.

000168

This conduct was retaliation because it would not have occurred but for Mr. Mestas's participation in protected activity, namely taking medical leave for his injury. Reyna, Adcock and Emond testified that Brown's hostile treatment intensified significantly after Mr. Mestas returned from medical leave. Moreover, Brown's retaliatory behavior deterred Mr. Mestas from participating in any further protected EEO activity, such as filing an injury report, requesting an accommodation or additional medical leave for his recurring back pain. Brown's conduct also deterred co-workers from complaining about the retaliation, for fear Brown would retaliate against them or they would lose their jobs. Mr. Reyna testified that he believed he would be retaliated against for reporting this conduct and that Brown 'would turn on us.' Finally, only days after informing Brown that he would need an injection in his back, Mr. Mestas asked to use a snow blower because of his back pain. Brown refused that request for some accommodation of his back injury.

Supervisor Brown's stated reasons for his dissatisfaction with Mr. Mestas's job performance included that he was lazy, unmotivated, slow, argumentative, would disappear from the job site, procured expensive items at the Town's expense without authorization,[9] had "issues" with co-employees and had anti-social tendencies. These proffered reasons are pretextual and unworthy of belief. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178. For purposes of summary judgment, Brown's assertions about Mr. Mestas's alleged poor job performance are disputed by Mr. Mestas and his co-workers, all of whom testified that Mr. Mestas was a team-player, worked hard, kept his truck clean and well-maintained, and that they got along just fine

---

[9]Supervisor Brown testified that after he returned to work following his medical leave, Mr. Mestas made several expensive, unauthorized purchases that Mr. Brown would later have to "sign off on." Brown Depo., p. 103. Despite reviewing all receipts for items procured by Mr. Mestas during that time period, Brown was unable to identify any that represented expensive, unauthorized or unapproved purchases. Brown Depo., pp. 72-99 and pp. 100-101.

23

with him and heard no complaints about his from other co-workers.  It was objectively obvious to those employees and to Mr. Mestas that Supervisor Brown was trying to drive him out of his job with retaliatory conduct.

Mr. Mestas's receipt of SSDI benefits as of April 16, 2013, does not conflict with his ADA retaliation claim, a claim that does not require a showing that Mr. Mestas was disabled or could perform the essential functions of his job.  Mr. Mestas was able to and did perform all essential functions of his job through April 15, 2013.  However, by April 16th, he could not shovel snow, which arguably is an essential function of his job even though other employees were excused from shoveling and mechanical snow removal options were available.  His SSDI benefit award has no bearing on either of his ADA claims because he was subjected to harassment, retaliation and adverse employment actions that pre-dated his inability to engage in substantial gainful activity as of April 16, 2013. In fact, he may have been able to continue in the workforce beyond April 16, 2017, if he had been accommodated by not having to shovel snow rather than driven by Brown to the point of a disabling back injury.

**III. Conclusion.**

For the foregoing reasons, this Court should deny the Town's request for a summary judgment on all of the plaintiff's claims because reviewing the facts in the light most favorable to Mr. Mestas, there are significant disputed issues of material fact regarding the pervasiveness of the hostile work environment, the retaliation, and the adverse employment actions taken by Dale Brown.  The Town is therefore not entitled to judgment as a matter of law.

000170

Respectfully submitted this 3rd day of November, 2017.

> For Plaintiff Roy Mestas
>
> By: s/Megan L. Hayes
> Megan L. Hayes
> Attorney at Law
> 910 Kearney Street
> Laramie, WY  82070
> (307) 760-6258
> mlhayes@wyoming.com
>
> Attorney for Roy Mestas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Brief in Opposition to Town of Evansville's Motion for Summary Judgment was served via the Court's CM/ECF system this 3rd day of November, 2017, to all attorneys of record.

> ___s/Megan L. Hayes_____
> Megan L. Hayes

25

000171

## <u>DECLARATION OF PLAINTIFF ROY MESTAS</u>

I, Roy Mestas, declare that the following statements are true and correct to the best of my knowledge:

1) I started working for the Town of Evansville on September 24, 2012, as a sanitation truck driver.  According to the Town of Evansville's Employee Handbook, as a new employee I was required to serve a probationary period of six months, during which time I was an at-will employee.  *See* Town of Evansville Employee Handbook, p. 12-13, attached hereto as Exhibit 1.

2) When I worked for the Town of Evansville, my job location was the Public Works maintenance garage, which is in a physically separate location from the Evansville Town Hall.  The Town Hall houses the municipal offices and is approximately six blocks from the Public Works maintenance garage.

3) I got injured at work on November 26, 2012, and was on medical leave from that date until January 14, 2013, when I was able to return to work with no restrictions.

4) In late December, I was able to sit for more than two hours for the first time since my injury.  I started feeling better in early January and was eager to get back to work.

5) I saw my physician on January 9, 2013 and he cleared me to return to work on January 14, 2013 with no restrictions.

6) The day I returned to work, January 14, 2013, Dale Brown informed me that he was extending my probationary period through May 24, 2013, "because of the extended lost

work time due to [my] injury on November 26, 2012." Memo from Boettcher and Brown

to Mestas, attached hereto as Exhibit 2.

7) Dale Brown told me that if I did not sign the memo acknowledging my agreement to its

terms, he would have to let me go. I felt intimidated by this demand. It did not feel like

Dale Brown was welcoming me back to work.

8) From then until Supervisor Dale Brown fired me on April 17, 2013, he subjected me to

harsh and condescending treatment more frequently and more severely than other

employees.

9) Supervisor Brown frequently expressed his hostility by expecting me to complete tasks

without the assistance of co-workers, which was highly unusual in our small department.

10) Supervisor Brown never issued me a Town radio during my employment, so when I was

driving my trash truck route and needed assistance, I had to use my personal cell phone to

call Mr. Brown's Town-issued cell phone to request help.  My calls and phone messages

to Mr. Brown requesting help always went unanswered.

11) Supervisor Brown also manifested his hostility toward me through directives to co-

workers not to assist me and chastised and verbally reprimanded those co-workers who

did assist me.

12) On one occasion, a big three-yard capacity trash bin fell into the back of my trash truck.

This happens periodically and takes two or three employees to remove a trash bin of that

size, two people to get into the truck to chain up the bin and another to operate a backhoe

to pull the bin out of the truck.  Supervisor Brown instructed co-employees, Ron Emond,

Dan Adcock, and Eric Reyna, not to help me and to let me do it myself.

13) On multiple occasions during my employment with the Town of Evansville, Supervisor Brown repeatedly made derogatory remarks about Hispanics.  Supervisor Brown frequently called subordinates, including me, as well as citizens of the Town of Evansville, "beaners" or "stupid beaners."

14) On multiple occasions during regular weekly morning safety meetings with Public Works Department employees, Supervisor Brown told and participated in "minority" jokes.

15) Supervisor Brown was hostile and condescending to me in these meetings, in front of my co-workers, which was humiliating to me.

16) Because of Supervisor Brown's hostile and condescending treatment, I began to write down and record some of my interactions with him, to document his conduct and my efforts to address his abusive treatment.

17) In one audio recording on or about February 21, 2013, I asked to speak privately with Supervisor Brown.  I began the conversation by asking him if I had done something to 'piss him off' because I did not understand why he was treating me with such hostility. *See* Transcript of Audio Recording, attached hereto as Exhibit 3.

18) Supervisor Brown responded that 'I don't like people arguing with me,' and 'I am still frustrated with your back.' He explained that although he knew I had not injured my back intentionally, I had not been bedridden when I was out on "disability" for my back injury and that I should have come to work anyway to perform administrative light-duty work.

19) Supervisor Brown also accused me of using my back injury to call in sick two times after I had returned from medical leave.  He stated that, "I have people outside of our department asking me, 'Is this a pattern?,'" insinuating that I was trying to avoid work.

3

In fact, I had called in sick twice because I had the flu.

20) In that same February of 2013 recorded conversation, Supervisor Brown told me that

someone working for the Town of Evansville outside of the Public Works Department,

"on other authority," had told him that he should terminate my employment if I could not

perform my job duties.

21) I took these statements as threats and worried that if I got injured again or called in sick

one more time, he would fire me.

22) During the recorded conversation in February of 2013, Supervisor Brown accused me of

being argumentative.  I apologized profusely, multiple times, and explained that I never

intended to be argumentative.  I told him that in the future, he should tell me I'm being

argumentative and to stop.  At no time after this conversation did Mr. Brown ever tell me

that I was being argumentative.

23) After this conversation in February of 2013, Supervisor Brown continued to treat me in a

hostile, intimidating manner. I continued to physically and satisfactorily perform my job

duties.

24) When I worked for the Town of Evansville, Eric Reyna was the only other Hispanic

employee in the Public Works Department.

25) During my employment, I would frequently come home upset and complain to my wife

that Supervisor Brown called me stupid beaner, was condescending toward me, and

would not get me any help when I requested it.  I also told her that Mr. Brown instructed

co-workers not to help me and if they did, he would reprimand them.

26) During my employment and particularly after I returned from medical leave in mid-

4

Mestas v. Town of Evansville   Plaintiff's Brief in Opposition to Defendant's  Summary Judgment Motion                Exhibit A
17-CV-00017-NDF

000175

January of 2013, I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees.  These were general comments, references and jokes, not directed specifically at any one person, that included derogatory references about Hispanics.

27) Before and sometimes during weekly morning safety meetings and in the presence of other Public Works employees, Dale Brown and other employees would joke about Hispanics or other ethnic and racial minority groups.

28) I personally heard Dale Brown make derogatory comments about Hispanics on at least six occasions, if not more.

29) During my employment with the Town of Evansville, I kept a memo pad in my shirt pocket in which I documented job-related information, such as addresses where trash bins needed to be repaired, where trash bins had not been set out, or where extra trash had been left on the ground next to the trash bins.

30) On or about February 22, 2013 and again on or about March 27, 2013, I documented in my memo pad that Supervisor Brown had made a "stupid beaner" remark. *See* Memo Pad, attached hereto as Exhibit 4, Bates No. Mestas Employment, 000037.

31) On at least two separate occasions, I complained directly to Supervisor Brown that his derogatory comments regarding people of Hispanic descent were offensive.

32) I documented one of those occasions in my memo pad as follows: "Asked Dale to stop using Beaner remarks!!! 4-1-13."  Exhibit 4, Bates No. Mestas Employment, 000038.

33) Supervisor Brown responded to these complaints by stating that his (Brown's) wife is a "Mexican" and he says stuff like that to her all the time.

34) After I complained to him about his derogatory comments, Supervisor Brown never suggested to me that I could or should file a grievance, contact the mayor or any other elected Town official, or contact anyone at the Town Hall with my concerns.

35) During my employment, the Town of Evansville did not have a procedure for employees to make complaints of harassment, other than for sexual harassment. Exhibit 1, Town of Evansville Employee Handbook, pp. 33-36.

36) During my employment, the Town of Evansville had a general grievance procedure that did not mention workplace harassment or discrimination.  That grievance procedure specifically provided that it could be used only by permanent employees, not probationary employees like me.  Town of Evansville Employee Handbook, Grievance Procedure, pp. 59-62.

37) The Town of Evansville's grievance procedure provided that "[i]f a permanent employee has a grievance or wishes to complain, every effort should be made to resolve the problem by informal means at the lowest possible level, i.e., discussing the problem with the department head."  This is exactly what I did, in complaining directly to Supervisor Brown about his derogatory comments.

38) On April 8, 2013, while driving my route, I attempted to use the hydraulic lift on my truck to empty a trash bin that was full to the brim with dirt and gravel.  The bin tipped over and the contents spilled onto the roadway.  I called Supervisor Brown's Town-issued cell phone for assistance but no one responded so I shoveled the entire contents

6

back into the bin by myself.

39) On April 9, 2013, there was a spring storm in the Casper area that left accumulations of up to 12 inches of snow. I shoveled snow that morning.  After shoveling on those two days, my back was hurting so badly that I called my physician, Dr. Yakel.

40) I did not file an injury report and I did not complain to Supervisor Brown about the resumption of my back pain because I was worried he would fire me.  I continued to perform all essential functions of my job.

41) Dr. Yakel scheduled me for a steroid injection on April 18, 2013, to relieve my back pain. I was concerned about losing my job if I could not perform my job duties because of my back injury, so I continued to work and perform all essential functions of my job.

42) On April 11, 2013, in a recorded conversation, I informed Supervisor Brown that I would need one day off on April 18, 2013, because "they're going to do an injection in my back where that – that – that – remember I was talking to you about it a while back?  They wanted to do one today, but I told them I couldn't because I need a driver and stuff because of medicine they give you, I can't drive. . . . " I also explained that "I won't miss any work, only than the – the day for the – injection.  You want me to write it on the calendar?" Transcript excerpt from 4/11/13 recorded conversation, attached hereto as Exhibit 5.

43) Supervisor Brown granted my request for time off of work for the injection and agreed that I should put it on the Public Works Department calendar.

44) At all times during my employment, most Department of Public Works employees were expected to report to work by 7 a.m., to shovel snow at Town of Evansville facilities.

45) On or about Monday, April 15, 2013, I reported early to work to assist with snow

Mestas v. Town of Evansville   Plaintiff's Brief in Opposition to Defendant's  Summary Judgment Motion                    Exhibit A
17-CV-00017-NDF

000178

removal.  On that day, the Casper area was hit by a late spring storm with heavy, wet snow.

46) While shoveling snow, I asked Supervisor Brown if I could use my own snow blower because of my back pain. My house is only a few blocks from the location where I was shoveling snow.

47) Supervisor Brown denied my request for a snow blower and said, 'that's what I have Mexicans for, to do this work,' or words to that effect.

48) I completed my snow shoveling duties that day, despite my back pain.  Being required to continue to shovel heavy wet snow contributed significantly to my worsening back pain.

49) On April 16, 2013, the Casper area continued to get wet, heavy snowfall.  I called into work that morning to ask Supervisor Brown if I could be excused from shoveling snow because I had injured my back.  Supervisor Brown hung up on me.  When I called back, Supervisor Brown told me he did not 'want to hear my shit.'

50) When I reported to work on April 17, 2013, Supervisor Brown terminated my employment because things 'were not working out.'  He told me to 'go take care of my back and whatever.'

51) After my termination, I applied for Social Security Disability Insurance benefits.  In my application for benefits, I stated that as of April 16, 2013, I had impairments that prevented me from engaging in any substantial gainful activity, including my back injury of November 26, 2012, for which I was scheduled for surgery in June of 2013.

52) I began receiving SSDI benefits based on my inability to engage in any substantial gainful activity as of April 16, 2013.

53) I may have been able to continue in the workforce beyond April 16, 2013, if Supervisor
    Brown had excused me from shoveling snow or had been willing to provide help from
    co-workers when I needed assistance from others to lift or shovel heavy items into trash
    bins.  However, after shoveling snow on April 15, 2013, and continuing to work that day,
    my back pain was significantly worse.

54) I underwent two surgeries for my back injury, one in August of 2013 and one in late
    October of 2013.  I reached Maximum Medical Improvement in May of 2014 and
    returned to the workforce in December of 2014.

Signed under the penalties of perjury, this 3<u>RD</u> day of November, 2017.



Roy Mestas

9

Mestas v. Town of Evansville   Plaintiff's Brief in Opposition to Defendant's  Summary Judgment Motion                    Exhibit A
17-CV-00017-NDF

000180

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 186

# TOWN OF EVANSVILLE

# EMPLOYEE HANDBOOK

## PERSONNEL RULES AND REGULATIONS

This publication is effective September 10, 1996
and supersedes all previous publications of this handbook and all other Evansville
employment laws, rules, regulations, and other directives where inconsistent.

-------------------------------------------------

    I acknowledge receipt of and have reviewed the within Personnel Rules and Regulations of the Town of Evansville, effective on September 10, 1996, and understand and will abide by the terms and any amendments.

_____     _____
____
**Printed Name**                                                    **Signature**

_____
**Date**

i

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 187

## TABLE OF CONTENTS

**Cover Page and Acknowledgment**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
     i

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**I.**   **Authority** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**II.**  **Application** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**III.** **Definitions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**IV.**  **Employee Classification and Compensation** . . . . . . . . . . . . . . . . . . . **7**

     Section 1: Classification Plan – General . . . . . . . . . . . . . . . . . . . . . **7**

     Section 2: Purpose of Classification Plan . . . . . . . . . . . . . . . . . . . . **7**

     Section 3: Maintenance of the Position
     Classification Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

     Section 4: Employee Compensation Plan -
     Statement of Policy . . . . . . . . . . . . . . . . . . . . . . . . . **8**

     Section 5: Compensation Plan Maintenance  . . . . . . . . . . . . . . . . . . . .
     9

     Section 6: Compensation Plan Review  . . . . . . . . . . . . . . . . . . . . **9**

     Section 7: Salary Schedule . . . . . . . . . . . . . . . . . . . . . . . **10**

     Section 8: Salary Upon Promotion . . . . . . . . . . . . . . . . . . . . . . **10**

     Section 9: Salary Upon Demotion . . . . . . . . . . . . . . . . . . . . . **11**

     Section 10: Compensation Upon Separation  . . . . . . . . . . . . . . . . . . . .
     11

**V.**   **Orientation; Performance Evaluation** . . . . . . . . . . . . . . . . . . . . . **12**

     Section 1: Employer Orientation  . . . . . . . . . . . . . . . . . . . . **12**

     Section 2: Probationary Period  . . . . . . . . . . . . . . . . . . . . **12**

     Section 3: Performance Evaluations . . . . . . . . . . . . . . . . . . . . **13**

     Section 4: Promotion Policy . . . . . . . . . . . . . . . . . . . . . . **14**

**VI.**  **Employment Practices** . . . . . . . . . . . . . . . . . . . . . . . . . **15**

     Section 1: Equal Opportunity Statement  . . . . . . . . . . . . . . . . . . . **15**

Mestas v. Town of Evansville             Declaration of Plaintiff Roy Mestas             Exhibit 1
17-CV-00017-NDF

000182

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 188

Section 2: Recruitment and Applications of
Job Vacancies and Posting . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 3: Screening . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 4: Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section 5: Residency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 6: Nepotism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 7: Personnel Records . . . . . . . . . . . . . . . . . . . . . . . .
20

Section 8: Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**VII. Conditions of Employment** . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 1: Working Hours . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Section 2: Rest Periods and Lunch Periods . . . . . . . . . . . . . . . . 22

Section 3: Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . .
22

Section 4: Compensatory Time and Overtime . . . . . . . . . . . . . . . 24

Section 5: Outside Employment or Contracting . . . . . . . . . . . . . . 25

Section 6: Use of Town Property . . . . . . . . . . . . . . . . . . . . . . 26

Section 7: Conduct and Appearance . . . . . . . . . . . . . . . . . . . . 27

Section 8: Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . 27

Section 9: Political Activity . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Section 10: Use of Controlled Substances and
Alcohol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Section 11: Safety . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 12: Sexual Harassment - Purpose, Definition,
Guidelines and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 13: Privileged Information . . . . . . . . . . . . . . . . . . . . . 36

Section 14: Attendance/Punctuality . . . . . . . . . . . . . . . . . . . . 36

Section 15: Participation in Volunteer Fire Department and
Ambulance Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**VIII.  Other Employee Benefits** . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Mestas v. Town of Evansville
17-CV-00017-NDF    Declaration of Plaintiff Roy Mestas    Exhibit 1

000183

Appellate Case: 17-8092          Document: 01019955822          Date Filed: 03/08/2018          Page: 189

Section 1: Worker's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Section 2: Health Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Section 3: Continuation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Section 4: Education Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Section 5: Membership in Professional Societies . . . . . . . . . . . . . . . . . 42

Section 6: Mileage and Per Diem . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

IX.   **Holiday and Leave Policy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**

Section 1: Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Section 2: Vacation (Annual Leave) . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Section 3: Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
48

Section 4: Military Leave of Absence . . . . . . . . . . . . . . . . . . . . . . . . 49

Section 5: Funeral Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Section 6: Court Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Section 7: Election Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Section 8: Administrative Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Section 9: Absence Without Leave/Tardiness . . . . . . . . . . . . . . . . . . . 51

Section 10: Emergency Closing . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Section 11: Family and Medical Leave Act (FMLA)
of 1993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

X.    **Separation from Employment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **54**

Section 1: Voluntary Separation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Section 2: Involuntary Separation . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Section 3: Layoffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

XI.   **Grievance Procedure** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **58**

Section 1: General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Section 2: Grievance Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
58

XII.  **Disciplinary Actions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

iv

Mestas v. Town of Evansville                    Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000184

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 190

**62**

Section 1: General ................................................. 62

Section 2: Types of Disciplinary Action ......................... 63

Section 3: Appeal Procedures .................................... 65

Section 4: Practice and Procedure Applicable
to Hearings ..................................................... 67

Section 5: Reinstatement on Appeal ............................. 69

XIII.  **Miscellaneous** ........................................ 70

Section 1: Severability ......................................... 70

Section 2: Amendment and Revocation, Reservations .............. 70

v

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 191

**Town of Evansville**                                         **Employee Handbook**

## I. AUTHORITY

These regulations are adopted pursuant to W.S. § 15-1-103.

I. Authority
Town of Evansville

1

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 192

**Town of Evansville**                               **Employee Handbook**

II.    APPLICATION

    These regulations shall be in full force and effect from and after September 10, 1996 and shall apply to all employees, appointees, and volunteers (where applicable), but not elected officials.

2                                            II.  Application

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 193

**Town of Evansville**                                        **Employee Handbook**

### III.   DEFINITIONS

The words and terms used in this employee handbook shall have, unless otherwise defined, the following meanings:

A.      **Applicant:**  An individual who has completed and submitted an application for employment with the governmental entity.

B.      **Appointing Authority:**  Refers to an elected official or person legally designated to authorize a personnel action.

C.      **Classification:**  A plan to assign positions on an evaluation of job content and factors such as: 1) duties and responsibilities; 2) requirements as to education, knowledge, experience and ability; and 3) ranges of pay.

D.      **Classified Employee:**  An employee who is assigned a position within the official classification plan of the governmental entity.

E.      **Compensation:**  Refers to all forms of valuable consideration, including wage and fringe benefits, earned by or paid to any employee by reason of service in a position with the governmental entity.

F.      **Compensatory Time Off:** Time off from work in lieu of monetary payment for overtime hours.

G.      **Demotion:**  Involuntary change of an employee's classification to a  lower salary range.

H.      **Discharge or Dismissal:**  The involuntary separation of an employee from his or her position for just cause, i.e., termination.

I.      **Employee:**  A person legally holding a compensated position with the governmental entity by virtue of prescribed procedures.

J.      **Essential Job Functions:**  Those functions that the individual would have to perform, with or without reasonable accommodation, in order to be considered qualified for a given position.

<div align="center">3</div>

III.  Definitions

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 194

**Town of Evansville**                                    **Employee Handbook**

    K.     **Grade:**  A specific range of pay rates within the compensation plan.

    L.     **Grievance:**  A misunderstanding or disagreement between an employee and a department head or other employee that relates to working conditions, established policy, benefits and/or compensation or discrimination as further defined hereafter.

    M.    **Immediate Family:**  Relatives by blood or adoption or by marriage including wife, husband, children, parents, grandchildren, grandparents, brothers, sisters, brothers-in-law, sisters-in-law, daughters-in-law, sons-in-law and parents-in-law.

    N.     **Layoff:**  The involuntary separation of an employee from his or her position because of lack of work, lack of funds, reorganization or legislative action.

    O.     **Merit Increase:**  Refers to an increase in salary based on work performance over a set period of time.

    P.     **Non-Classified Employee:**  An employee whose position is not included in the official classification plan of the Town.

    Q.     **Overtime:**  Any time worked in excess of forty (40) hours in the work week, except in the case of police officers and firemen.

    R.     **Part Time Position:**  A position, either permanent or temporary, in which the incumbent is regularly scheduled to work less than forty (40) hours per week.

    S.     **Pay/Compensation Plan:**  A schedule of pay ranges for all job classifications or departments in Town service.

    T.     **Pay Grade:**  One of the official ranges of pay at which a class of positions in the classified service is paid.

    U.     **Pay Rate:**  The specific dollar amount established for each step within a pay range.

    V.     **Permanent Employee:**  A full time or part time employee who has successfully completed a probationary period and is eligible for privileges and benefits as set forth herein.

<div align="center">4</div>

<div align="right">III.  Definitions</div>

Date Filed: 03/08/2018   Page: 195

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

**W.     Probationary Employee/Probationary Period:**   A trial period of employment during which the employee is required to demonstrate his or her fitness by actual performance of the duties of the position to which he or she is hired, appointed, or promoted.  A new employee or promotional employee shall be considered to be on a probationary period for no less than six (6) months of employment with the governmental entity.  Police Department employees shall be considered to be on a probationary period for no less than twelve (12) months of employment with the governmental entity.

**X.     Promotion:**  The change of an employee to a higher classification and/or a higher salary range.

**Y.     Promotional Employee:**  An employee who has been promoted and who is on probation.  Probation for a promotional employee shall be the same as a new employee.

**Z.     Reinstatement:**  The action by which an employee, after separation from Town service, is re-employed by the Town.

**AA.    Reprimand:**  A censure or reproof, administered to a person in fault by his or her department head or other properly designated official.  A warning issued to an employee specifying a deficiency in the employee's work performance or conduct.

**BB.    Review Date:**  Refers to the date designated for the performance evaluation review.  This review shall take place at the 30 day, 90 day and 6 month points for probationary or promotional employees and annually for permanent employees.

**CC.    Resignation:**  Voluntary separation from employment by the employee.

**DD.    Separation:**  The removal of an employee from the payroll for voluntary or involuntary reasons, including dismissal, disqualification, resignation, layoff, retirement, death, end of temporary assignment or end of appointive term.

**EE.    Step:**  A single rate of pay within a pay grade.

**FF.    Suspension:**  A temporary separation from service, with or without pay,

<div align="center">5</div>

III.  Definitions

Page: 196

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                      **Employee Handbook**

where the case is not sufficiently grave to merit dismissal or where the results of an independent investigation are pending.

      GG.    **Supervisor:**  An employee authorized by a department head or appointing authority to superintend and direct the work of other employees.

      HH.    **Temporary Position:**  A full-time or part-time position receiving hourly or salaried pay that is created with a time limit of less than six (6) months, i.e., a position that is not of a continuing nature.  Such positions receive only those employment benefits mandated by law, i.e., social security and workers compensation.

      II.    **Transfer:**  The reassignment of an employee from one position or class of work to a different position or class of work at the same pay range.

      JJ.    **Vacancy:**  A duly created position which is not occupied and for which funds have been provided.

      KK.    **Work Week:**  The hours of 12:01 A.M. Sunday morning until midnight Saturday night, established for the purpose of computing overtime.

III. Definitions

Mestas v. Town of Evansville
17-CV-00017-NDF

Declaration of Plaintiff Roy Mestas

Exhibit 1

000191

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 197

Town of Evansville                                          Employee Handbook

## IV.  EMPLOYEE CLASSIFICATION AND COMPENSATION

### Section 1:  Classification Plan - General.

The Town shall develop and maintain a position classification plan covering all classified employees of the Town.  The position classification plan shall describe all classes comprising the duties of individual, classified positions of the Town.  Each class, comprised of individual positions performing duties of similar nature with similar responsibilities, shall include a common title and written description of the duties of the class and individual positions therein.  All positions performing the same job within the same class shall be treated equitably with regard to treatment and employment practices and compensation.  No classified employees shall be employed or appointed by the Town to any position for which there is no complete and accurate description within the position classification plan.  The appointing authority or designated official(s) will maintain responsibility for all matters related to the development and maintenance of the classification plan.

### Section 2:  Purpose of the Classification Plan.

The position classification plan shall be used to benefit the Town in the following areas:

A.      In providing standard job descriptions to promote understanding by public officials, employees and the general public.

B.      In determining organizational structure, lines of authority, responsibilities and staffing requirements.

C.      In creating an effective and equitable recruitment, examination and selection program.

D.      In establishing an employee evaluation and training program.

E.      In providing information to be used in the maintenance of the compensation

Mestas v. Town of Evansville              Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000192

Page: 198          Date Filed: 03/08/2018          Document: 01019955822          Appellate Case: 17-8092

**Town of Evansville**                                      **Employee Handbook**

plan.

      F.     In determining promotional steps and assisting in career growth.

**Section 3:  Maintenance of the Position Classification Plan.**

     It shall be the responsibility of the appointing authority or designated official(s) to periodically review and revise the position classification plan as required.

     An individual position within a given classification may be subject to review and reclassification upon the following occasions:

      A.     Upon the request of an individual employee authorized by the appropriate department head.

      B.     Whenever there is significant permanent change or modification in the duties and responsibilities of a position through changing work requirements, reorganization or other administrative action and the appropriate department head has requested a position review.

      C.     When acting in compliance with a position classification review plan.

     Upon review, it shall be the responsibility of the appointing authority or designated official(s) to assign the reviewed position to an appropriate class in the position classification plan and to create, combine and/or eliminate classes as necessary.  When reviewing positions for designation to an appropriate class, all facts concerning the position shall be taken into account and class specifications shall be interpreted in their entirety, i.e., individual phrases or examples shall not be taken out of context for classification purposes.

**Section 4:  Employee Compensation Plan - Statement of Policy.**

     The Town reserves the right to establish, in its sole discretion, pay plans as it deems appropriate.  However, in establishing salary level for employees, the following

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 199

**Town of Evansville**                                    **Employee Handbook**

considerations may be taken into account:

    A.    Duties, responsibilities and qualifications of each job in comparison with other jobs within the Town system.

    B.    Pay ranges for other jobs in the Town system.

    C.    Prevailing rates of total compensation in the market area.

    D.    Other economic factors.

    E.    The level of compensation competitiveness sought by the Town.

Attached is Appendix A, the Town of Evansville Pay Plan Monthly Schedule. This schedule may be changed from time to time by the Governing Body making amendments and ratifying those by written resolution.

### Section 5:  Compensation Plan Maintenance.

It shall be the responsibility of the appointing authority or designated official(s) to review and revise the compensation plan on a regular basis. Modifications of the compensation plan shall be made in accordance with an established salary schedule. The compensation plan defines minimum and maximum rates of pay for each position classification.

### Section 6:  Compensation Plan Review.

In order to update the compensation plan, the salary schedule shall be reviewed and, if necessary, amended at least annually prior to the beginning of the Town's fiscal year. More frequent adjustments may be made in the event they are deemed necessary by the Town.

<div align="center">9</div>

IV.  Employee Classification

Page: 200

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                   **Employee Handbook**

Section 7:  Salary Schedule.

The minimum rate of pay for each job, as set forth in the established pay plan, shall be paid to each new employee.   Where unique circumstances exist, i.e., special qualifications required of a particular position within a class or where qualified applicants are not available at the minimum rate, the appointing authority may hire new employees at a rate above the minimum, but not to exceed the maximum rate within the range for the particular classification grade.

Upon completion of the probationary period and annually thereafter, the employee will be subject to a review to determine eligibility for salary increases.  These reviews shall be conducted by the appropriate supervisory official.  Salary increases may be made on the basis of longevity and/or performance.  However, pay increases are not to be considered automatic for longevity of service.

This section determines eligibility only.  It does not create any entitlement on the part of any employee for any pay increase at any time.  Entitlement to a pay increase based on eligibility is determined upon consideration of the above factors, and available funds and other budget constraints.  Entitlement to a pay increase for any Town employee will be determined only once annually during the budget process.

Section 8:  Salary Upon Promotion.

When an employee is promoted, the employee shall move to the entry step of the pay grade for the employee's new classification.  In no case shall an employee receive less than a five percent (5%) pay increase upon promotion.  If the entry rate of pay is less than five percent (5%) above the former pay rate, the promoted employee shall be moved to the next step.

IV.  Employee Classification

Page: 201

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

Section 9:  Salary Upon Demotion.

If an employee is demoted to a lower grade, the employee shall receive a rate of pay within the range of the new grade as determined to be appropriate by the appointing authority or designated official(s).

Section 10:  Compensation Upon Separation.

Employees who voluntarily leave the employ of the Town shall receive all accrued salary within five (5) working days of separation and accumulated vacation pay in accordance with Section IX.2 hereof, subject to the following:

A.      Any money owed the Town shall be repaid prior to the issuance of the final paycheck.  If any indebtedness remains at the time of the issuance of the check, funds may be withheld and a receipt issued for all money owed to the Town.

B.      Any Town property, e.g., uniforms or equipment, in the possession of the employee shall be returned to the Town prior to the issuance of the final paycheck.  If Town property is not returned, funds may be withheld and a receipt issued for the cost of the non-returned property.

Employees who are terminated involuntarily for cause or due to lay off shall receive all accrued salary within five (5) working days of termination, subject to the above conditions.

Employees shall receive compensation for one-half (½) of unused sick leave accumulated on the date of termination in accordance with Section IX §3.

11                                    IV.  Employee Classification

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 202

**Town of Evansville**                                    **Employee Handbook**

## V.   ORIENTATION; PERFORMANCE EVALUATION

### Section 1:  Employer Orientation.

Supervisory personnel shall be responsible for providing orientation to new employees regardless of classification.   Orientation shall include comprehensive information about the structure of Town government and its functions, pay plans, personnel rules and policies, fringe benefits, safety procedures and programs, policies of office or work area and department, grievance procedures, necessary employment forms and any other policies or programs which may affect the person's employment. Each new employee shall receive a copy of these rules and shall indicate receipt and understanding by signature.   Orientation shall be provided on an on-going basis as policies and procedures are created, revised or updated.  An employee orientation check list shall be signed by the employee and made a permanent part of the employee's personnel file.

### Section 2:  Probationary Period.

All new, rehired and promotional employees will serve a probationary period of no less than six (6) months, except for Police Department employees who shall serve a probationary period of no less than twelve (12) months.  The probationary period shall be a continuation of the orientation process and shall serve to provide a period of adjustment and training for the employee and for the evaluation of performance of such employees. PROBATIONARY EMPLOYEES MAY BE DISMISSED AT ANY TIME, WITHOUT CAUSE, AT THE DISCRETION OF THE APPOINTING AUTHORITY. PROMOTIONAL EMPLOYEES MAY BE RETURNED TO THEIR FORMER CLASSIFICATION, DEPENDING ON AVAILABILITY OF SAME, AT THE APPOINTING AUTHORITY'S DISCRETION. PROBATIONARY EMPLOYEES ARE CONSIDERED AT-WILL EMPLOYEES.

Law enforcement officers, as defined by Wyoming Statutes, shall be considered to

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 203

**Town of Evansville**                                    **Employee Handbook**

be on probation until the successful completion of a prescribed course of training at a certified law enforcement training academy and the completion of at least twelve (12) months of employment with the Town.

A performance appraisal shall be conducted with each probationary employee upon conclusion of 30 days, 90 days and 6 months of employment. The probationary employee or promotional employee may be awarded permanent status in the position at the end of the probationary period on successful completion of the probationary period. Unsatisfactory completion of the probationary period shall result in termination of the probationary employee. Probation may be extended at the discretion of the appointing authority, but for no more than one ninety (90) day period. Promotional probationary employees who do not complete probation shall be returned to their previous employee status without the benefit of promotion.

Section 3:  Performance Evaluations.

All permanent and probationary classified Town employees shall receive a written performance evaluation prepared by their department head as specified herein. Evaluations shall be based on the job duties and responsibilities of the employee's position as identified by the approved job description. All evaluations will be discussed with the employee by the department head, and department heads shall discuss their conclusions with the employee and make specific suggestions for improvement in all aspects of performance. The employee shall sign the rating form to indicate that the evaluation was discussed. A copy of the completed evaluation rating form shall be maintained with the employee's personnel file for a period of at least ten (10) years.

Performance evaluations for a permanent employee shall provide the basis for merit pay increases, promotions and/or disciplinary actions. Performance evaluations for

V. Orientation

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 204

**Town of Evansville**                                    **Employee Handbook**

probationary employees may provide the basis for continued service.

Section 4:  Promotion Policy.

It shall be the general policy of the Town, where practical and feasible as determined in the sole discretion of the appointing authority, to fill vacancies by the promotion of qualified permanent employees.  Criteria used to fill vacancies by promotion may include past performance evaluations, longevity and the ability to perform the duties and responsibilities of the higher classification.   A determination of eligibility for promotion shall in all respects comply with Section V.4 hereof.

14                              V.  Orientation

Page: 205

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                          **Employee Handbook**

## VI.  EMPLOYMENT PRACTICES

Section 1:  Equal Employment Opportunity Statement.

The Town of Evansville is an equal opportunity employer.  Discrimination on the basis of race, color, national origin, religion, handicap, disability, sex, age, veteran status or political affiliation with respect to terms and conditions of employment, including but not limited to, recruitment, employment, appointment, reinstatement, termination, training or any other personnel action is prohibited except where a bona fide occupational qualification or job requirement exists.

No person occupying or applying for any position covered under these personnel policies and procedures shall be employed, appointed, promoted, demoted or dismissed, nor shall any other employment action be taken, for any reason other than for qualification, merit and fitness for service, or lack thereof.

The Town of Evansville shall take action to insure equality of opportunity in employment.  The Town of Evansville shall encourage training for all management and supervisory personnel as necessary to provide an understanding of the Town of Evansville's equal employment opportunity policy and its implementation.

The Town of Evansville does encourage residents of the Town to make application for employment opportunities.  Preference shall be given to residents of the Town of Evansville where that preference is not discriminatory, as set out above, and where qualifications, merits and fitness are all equal.

15                              VI.  Employment Practices

**Town of Evansville**                                  **Employee Handbook**

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 206

Section 2:  Recruitment and Applications of Job Vacancies and Posting.

All vacancies for positions shall be publicized by posting an announcement on official bulletin boards and in other places and through such media as appropriate to attract any and all qualified applicants without regard to race, creed, sex, age, disability or national origin as defined under applicable statutes.  In addition, all position openings shall be posted with the Wyoming Employment Service.  An announcement shall specify the title, salary range, duties and minimum qualifications of the class, the time, place and method of making application, and other pertinent information.

Applications for job vacancies shall be made on forms to be provided by the Town of Evansville.  Application forms of accepted applicants will become a permanent part of the employee's personnel file.  Applications may remain active and shall remain on file for consideration for ninety (90) days after receipt.  Applicants desiring to insure that their application is actively considered may renew their application in writing for a period not to exceed one (1) year.  Thereafter, a new application must be submitted for further consideration.

Section 3:  Screening.

It shall be the responsibility of the appointing authority to receive and screen applications for position vacancies.  When an application is rejected, the nature and reasons for the rejection shall be noted on the application.  Applications may be rejected

<div align="center">16</div>

VI.  Employment Practices

Page: 207          Date Filed: 03/08/2018          Document: 0101995822          Appellate Case: 17-8092

**Town of Evansville**                                      **Employee Handbook**

for any of the following reasons:

    A.      The applicant does not meet the requirements of the position as established in the class specification or as prescribed by statute.

    B.      The applicant did not satisfactorily complete the application form.

    C.      The applicant has a record of unsatisfactory employment.

    D.      The applicant has been adjudged guilty of a crime which would preclude the applicant from effectively performing the duties of the position applied for or which would, by reason of statute, preclude his or her appointment to the position.

    E.      The applicant has made false statements of any material fact or practiced or attempted to practice fraud or deception in the application.

    F.      The applicant has violated rules or procedures set forth herein.

    G.      Other appropriate job related reasons, but not including disabilities as defined by the Americans with Disabilities Act, as amended.

A routine background investigation shall be conducted for all candidates prior to employment.   This will include reference inquiries and a criminal record check. Applicants will be required to sign appropriate releases so the Town may conduct these inquiries.

A medical examination may be required prior to original employment or appointment and after an offer of employment has been made.  The offer of employment may be conditioned on results of the medical exam only where all entering employees are

<div align="center">17</div>

<div align="right">VI.  Employment Practices</div>

Page: 208

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                              **Employee Handbook**

required to undergo the exam, regardless of any disability.  Medical examinations shall be required by the appointing authority only where such is deemed job related and consistent with business necessity.  Such examination shall be conducted by a licensed physician approved by the Town, and the cost shall be incurred by the Town.  If the physician deems any candidate medically or physically unable to perform the duties of the position applied for, the physician shall state in writing the reasons for this inability. Refusal to submit to a medical examination, when required, prior to employment or appointment, shall be grounds for rejection.  All medical information obtained about any applicant shall be kept strictly confidential.

The appointing authority or designated official(s) may, upon request of a department head, establish a written, oral or other relevant examination to determine eligibility and suitability for appointment, employment or promotion to a specified position. The appointing authority may authorize that such examinations administered by the town, county, state or federal agencies or private companies that may be approved by the appointing authority.  This material shall be confidential and shall not be disclosed except in accordance with the Wyoming Statutes Annotated.

Section 4:  Selection.

If more than one applicant possesses all of the requirements set forth in the class

000203

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 209

**Town of Evansville**                                           **Employee Handbook**

specifications, the appointing authority may make the selection on the basis of additional job related criteria, including examinations required pursuant to Section 3 above.  It shall be the responsibility of the appointing authority to select the best qualified applicant for the position as determined by the entire selection process.  All notes and material utilized in the selection process shall be retained on permanent file by the Town.

Section 5:  Residency.

      Residents of the Town shall be given first consideration, provided they are otherwise equally qualified, for position vacancies.  In certain cases, where employment necessity requires, as determined by the appointing authority, employees may be required to reside within the Town limits, either upon employment or within a specified period of time following employment.  An employee holding any position which may require emergency response may be required to live within a certain distance, as defined by his or her respective departments, of his or her work location.

Section 6:  Nepotism.

      In recruiting persons for employment or appointment, the applicant most qualified to perform the duties of the classification should receive the offer of employment.  Department heads, appointing authorities and elected officials shall not hire their spouse or children (blood relationship) for part or full time jobs or temporary employment.

<div align="center">19</div>

VI.  Employment Practices

Page: 210

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

Neither shall two members of an immediate family be employed at the same time, regardless of the department, if such employment will result in an employee supervising a member of his or her immediate family on a regular basis.

In order to avoid any possible conflict of interest, the persons so related must not participate in or vote on decisions relating to the hiring, retention, promotion or determination of the salary level of a member of his or her immediate family.

Section 7:  Personnel Records.

All personnel records shall be maintained by the Town administration. Applications, performance evaluations, training records, promotion and transfer records, vacation and sick leave records, pay schedules and other similar information shall become a part of each employee's personnel file.

All information in the personnel file shall be deemed confidential and shall be disclosed only in accordance with Wyoming Statutes Annotated.

Verification of employment, compensation and similar information is frequently requested with respect to Town employees.  All such requests shall be referred to the Town Clerk.  Only written requests shall be accepted, and such information shall be disclosed only with the written consent of the affected employee.

Section 8:  Exemptions.

<div align="center">20</div>                                    VI.  Employment Practices

Page: 211

Date Filed: 03/08/2018

Document: 010119955822

Appellate Case: 17-8092

**Town of Evansville**                                        **Employee Handbook**

     Employees in classified positions shall be employed in accordance with these policies and shall be subject to all provisions of the Town personnel policies and procedures.

     Employees in non-classified positions shall be appointed and shall serve at the pleasure of the appointing authority or as provided for in Wyoming statutes and local ordinances and for such term as may be designated by the appropriate authority.  Non-classified employees shall include seasonal employment, special events employees and temporary assignment employees.  Non-classified employees are subject to the provisions of the Town personnel policies and procedures except as may be required by applicable statutes or as otherwise specified herein.

21                           VI.  Employment Practices

Page: 212

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                   **Employee Handbook**

## VII.  CONDITIONS OF EMPLOYMENT

Section 1:  Working Hours.

Except as otherwise specifically provided, the normal work week of Town employees shall consist of forty (40) hours per week of work, except for sworn police officers who may be scheduled for eighty (80) hours in a two-week period.   The appointing authority or designated official(s) or department heads shall determine the schedules of the various departments consistent with the foregoing provisions.  Changes in scheduling may be made by appropriate department heads as working situations and conditions require.

Section 2:  Rest Periods & Lunch Periods.

Employee work schedules may provide for a fifteen (15) minute rest period during each four (4) hour period of continuous work as determined by the department head or appropriate supervisory personnel.  Break periods may not be accumulated.  In addition, employees shall be granted an unpaid lunch period during each work shift.  The normal lunch period should be scheduled near the middle of each work shift and should be approximately one (1) hour in length.  Exceptions to this provision may be made by the appointing authority or designated official(s).

Section 3:  Fair Labor Standards Act.

22                    VII.  Conditions of Employment

Page: 213    Date Filed: 03/08/2018    Document: 0101995822    Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

The Town complies with the provisions of the Fair Labor Standards Act (FLSA) which sets minimum wage, overtime pay, equal pay and child labor standards.

Under the terms of the FLSA, there are three categories of specific exceptions to the overtime definitions, and certain exceptions for employees of local governments. Those categories include executive, administrative and professional employees and officials appointed to policy making positions.   The following positions are hereby determined to be exempt under the terms of the FLSA:

| Position | Exempt or Nonexempt |
| --- | --- |
| Elected positions and appointed boards and commissions (Boards & Commissions) | Exec. - Exempt |
| Town Attorney | Prof. - Exempt |
| Town Public Works Superintendent | Exec. - Exempt |
| Town Clerk | Exec. - Exempt |
| Town Engineer | Prof. - Exempt |
| Chief of Police | Exec. - Exempt |
| Town Treasurer | Exec. - Exempt |
| Municipal Judge | Prof. - Exempt |
| Part-time Employees | Seasonal - Exempt |
| Emergency Management Coordinator | Exec. - Exempt |
| Fire Chief | Exec. - Exempt |

23                    VII.  Conditions of Employment

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 214

**Town of Evansville**                          **Employee Handbook**

Ambulance Director                          Exec. - Exempt

All other positions in the Town government are covered by the FLSA and shall be treated accordingly.  Town regulations on overtime pay may still allow the payment of overtime to selected positions accomplishing specialized functions.  Such regulations and policies shall be explained individually to selected employees and shall be determined by the appointing authority.


Section 4:  Compensatory Time & Overtime.

At the discretion of the appointing authority or designated official(s), reasonable overtime may be required of employees.  The performance of such overtime shall be scheduled at the direction of the appropriate department head.  In most cases, non-exempt classified employees who work more than their regularly scheduled forty (40) hours per week shall be eligible for overtime compensation or compensatory time off.  Non-exempt sworn police employees who work more than their regularly scheduled eighty (80) hours in a two-week pay period shall be eligible for overtime compensation or compensatory time off.

Exempt employees, because of the level of their position, may be expected to work additional hours over and above the normal forty (40) hour work week when the need arises.  Exempt employees may be granted compensatory time on an hour-per-hour basis for extra time worked at the discretion of the appointing authority.  Compensatory time

24                   VII.  Conditions of Employment

Appellate Case: 17-8092     Document: 01019995822     Date Filed: 03/08/2018     Page: 215

**Town of Evansville**                                    **Employee Handbook**

shall not vest with an exempt employee and shall not be paid to such employee upon termination or any other separation from employment.  Compensatory time may be utilized in association with sick leave, vacation or other holiday or leave benefits available to the employee.

It shall be the responsibility of the Town Clerk working with the appropriate department head to maintain records of all overtime and compensatory time accrued or taken.  These records shall be maintained on a weekly basis.

### Section 5:  Outside Employment or Contracting.

Employees may engage in outside employment provided there is no conflict with assigned working hours and if such employment does not interfere with or adversely effect the employee's responsibilities with the Town or create any conflict of interest.  A conflict of interest, as determined by the Department Head, is any activity inconsistent, incompatible, or in conflict with the duties, functions, or responsibilities of employment.  Outside employment shall not give rise to criticism or suspicion of conflicting interests or duties.  Should an employee engage in outside employment, such employment will not take precedence or interfere with the employee's assigned duties, work schedules, efficiency and job performance.  Employees shall be required to notify their department head in writing of the acceptance of outside employment and its nature.  The department head shall then provide a copy of the employee's notice to the Governing Body.  In the event extra

<div align="center">25</div>                           VII.  Conditions of Employment

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 216

**Town of Evansville**                                    **Employee Handbook**

or overtime duty may be necessary, such duty shall take precedence over outside employment.   The Town shall not conduct business with any employee or with any company owned or part-owned by an employee, except where the competitive bidding process applies.   The use of Town facilities, equipment, license, or material,   in the pursuit of outside employment is prohibited with the exception of contract services performed by the Town and approved by the Governing Body.   The use of, or taking property of the Town may result in involuntary separation or criminal prosecution.   The Town shall not be liable for any injury or liability incurred by the employee when he or she is engaged in work for a non-Town entity.   If the employee's outside employment interferes with the Town employment, or is determined by the Department Head to be a conflict of interest, the appointing authority or designated official(s) shall require the employee in writing to terminate the outside employment.   Failure by the employee to do so will result in termination.

Section 6:  Use of Town Property.

Employees shall be responsible for the proper use and care of Town property issued to them for the performance of their official duties.   No Town equipment, materials or supplies shall be removed from its location without approval of the department head except in the ordinary course of business.   Except as specifically provided, no Town employee shall use Town-owned property, equipment, vehicles or other materials for private gain,

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 217

**Town of Evansville**                                        **Employee Handbook**

Section 8:  Conflict of Interest.

      No employee shall engage in any activity or enterprise which conflicts with his or her duties as a Town employee or with the duties, functions and responsibilities of the department in which he or she is employed.  No employee of the Town shall have any financial interest in the profits of any contract, service or other work performed by the Town, nor shall any employee personally profit directly or indirectly from any contract, purchase, sale or service between the Town and any person or company.  Employees exercising influence in connection with a Town contract, purchase, payment or any other financial or monetary transaction and having substantial personal interest in a transaction shall provide seventy-two (72) hours written advance notice of the conflict to the Governing Body.  Failure to disclose a conflict of interest may be grounds for immediate termination.

Section 9:  Political Activity.

      Political beliefs, activities and affiliations shall be a private matter of the employees of the Town.  No employee or applicant for a vacant position shall be required to divulge political beliefs as a requirement of employment except in such cases where political affiliation may be a bona fide job requirement.  Nor shall any employee or applicant be required to participate in, make or withhold contributions to political parties or groups.

<div align="center">28</div>

VII.  Conditions of Employment

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 218

**Town of Evansville**                                    **Employee Handbook**

use or convenience.

Employees using Town vehicles shall use them exclusively for authorized purposes. Any abuse of Town vehicles shall be grounds for immediate disciplinary action. More than two (2) moving traffic violations in any one (1) calendar year in a Town vehicle shall be cause for disciplinary action, including termination if operation of a vehicle is part of the job description for the employee.

Some job classifications require that the employee possess a valid State of Wyoming driver's license of a certain class. Where an employee is notified in writing that such a requirement is a condition of employment, suspension of the driver's license or revocation of the classification for any reason or loss of insurability shall be cause for demotion or termination.

Section 7:  Conduct and Appearance.

The Town is a public service institution and, therefore, personal appearance, grooming and conduct are extremely important. Employees shall maintain a clean, well-groomed appearance consistent with their position and responsibilities. Employees shall serve the public in a courteous, impartial manner demonstrating tact and good judgment, and shall devote their energies to the service of the Town while on duty and not to personal affairs.

<div align="center">27                    VII.  Conditions of Employment</div>

Page: 219

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                        **Employee Handbook**

Political activity on the national, state or county level is unrestricted.  Employees shall refrain from any campaign activity while on duty.  An elected official may not become an employee without resignation from office.

For purposes of this section, an employee is defined as a paid employee and not a volunteer.

Section 10:  Use of Controlled Substances & Alcohol.

It is the policy of the Town to maintain a safe, healthy and productive work environment for all employees.  To that end, the Town is committed to eliminating any misuse of legitimate drugs or the use, possession, distribution, or sale of illicit or unprescribed controlled drugs on Town business or premises.  Possession, use, distribution, or the sale of alcoholic beverages on Town premises is not allowed, unless allowed by Town ordinance or specifically authorized by the appointing authority.  The use of drugs and alcohol impairs employee judgment which may result in increased safety risks, hazards to the public, employee injuries, faulty decision-making and reduced productivity.  All employees are expected to be in a state of mind and physical condition fit to complete their assigned duties safely and competently during work hours.  To achieve this end employees should refrain from the use of alcohol at least six (6) hours prior to the start of their next scheduled shift and under no conditions shall an employee

29                           VII.  Conditions of Employment

Page: 220

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

report to work under the influence of drugs or alcohol.  An employee in violation of this Policy may be referred to an employee assistance program, a drug counseling program, or disciplined, in accordance with Section XII hereof.

A.      Any employee who appears for work or is in attendance at work in a condition which gives his or her department head or immediate supervisor reasonable suspicion to believe that he or she has used alcohol or controlled substances shall be required to submit to a test of his or her urine in order to show that he or she is incapable of performing his or her normal job, and he or she shall be given an immediate suspension with pay for the remainder of his or her shift. Prior to the institution of any test, the department head may verbally notify the Mayor of his or her observations that were relied upon in requiring the employee to submit to a substance screening test.  Immediately after the institution of any test, the department head shall prepare a written report detailing the behavior observed and relied upon by the department head or the immediate supervisor in determining that the employee had used alcohol and/or controlled substances.  This written report shall be filed with the Mayor  as soon as it is feasible to do so.

B.      When the employee is ordered to take a test to determine the presence of alcohol and/or controlled substances in his or her system, he or she shall either take the test or shall admit to having used a controlled substance or alcohol.  If he or she refuses, a record of his or her refusal to take the test will be kept in his or her

<div align="center">30                    VII.  Conditions of Employment</div>

Page: 221     Date Filed: 03/08/2018     Document: 01019955822     Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

personnel file along with a copy of the department head's report. If a test is taken and it does not reveal the presence of alcohol or any controlled substance, then it shall be presumed that the employee had not used alcohol and/or any controlled substance and the department head's report shall not be retained as a part of the employee's personnel file nor made the basis of any disciplinary action against the employee and the employee's suspension shall be rescinded. If the test reveals the presence of alcohol, or any non-prescribed controlled substance, then the employee may be referred to an appropriate agency for drug and alcohol assessment and treatment, and a written record of this action shall be included in the employee's personnel file.

C.     If the employee is suspected of having alcohol and/or a controlled substance in his or her system during his or her work hours then he or she shall be directed to give a sample of urine for analysis at a laboratory specified by the Town. The Town will absorb the cost for the test. If the test is not performed within one (1) hour of the order, due to the fault of the employee then and in that event it shall be presumed that the employee had used a controlled substance or alcohol as asserted in the written report of the department head.

D.     Any employee who refuses to take a urine or blood screening test within one (1) hour of the time requested, or any employee who does not pass a drug and alcohol screening test and does not avail themselves to counseling and treatment,

Mestas v. Town of Evansville                Declaration of Plaintiff Roy Mestas                Exhibit 1
17-CV-00017-NDF

000216

Page: 222

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

and any employee who fails a test on more than one occasion shall immediately be terminated for cause.

E.      Any non-supervisory employee who has reasonable suspicion that another employee is using alcohol and or a controlled substance during working hours, shall immediately report the facts and circumstances to his/her supervisor.  Failure to do so shall subject the employee to disciplinary action.   The supervisor shall then follow the procedures stated above in Section 10.

F.      Employees may be required to submit to a drug and alcohol test if they, while working, are involved as a driver in a motor vehicle accident involving a death or serious injury.  If the employee discharges a firearm during the course of his/her duties as a police officer, or if the employee is operating heavy machinery that is involved in an accident involved in an accident involving death or serious injury, shall be required to submit to a drug and alcohol test.

G.      The Town may adopt other drug and alcohol ordinances, rules and policies to enlarge or amend the rules set out herein.   Modifications shall supersede specifics herein where rules are in conflict or modified.

Section 11:  Safety.

It is the responsibility of each employee to observe safety procedures at all times. It shall be the responsibility of department head to train employees in safety procedures. Any employee who has a question concerning safety practices should inquire of his or her

<div align="center">32                    VII.  Conditions of Employment</div>

Page: 223          Date Filed: 03/08/2018          Document: 010199955822          Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

department head.  Violation of the adopted safety rules and regulations may result in a disciplinary action.  Employees are encouraged to report safety violations or concerns to their department head.

Section 12:  Sexual Harassment - Purpose, Definition, Guidelines and Procedures.

 A.  Purpose.  The purpose of this policy is to deal with relationships that may cause some employees to be uncomfortable in the work place.  Harassment on the basis of sex is unlawful and forbidden.  In cases of sexual harassment, certain procedures shall be followed, as outlined hereafter.

 B.  Definition.  Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors or a verbal or physical conduct of a sexual nature.  Sexual harassment can include, but is not limited to, sex role stereotyping, gender abuse, individual targeted abuse, criminal touching, and quid pro quo.  Such conduct constitutes sexual harassment when:

  1. Submission to such conduct is made either explicitly or implicitly a term or condition of the individual's employment.

  2. Submission to or rejection of such conduct by an individual is used as the basis of employment decisions affecting such individual.

  3. Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive

<div align="center">33          VII.  Conditions of Employment</div>

Page: 224

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

work environment.

C.     Filing.  An employee may select the procedure under which the sexual harassment complaint will be filed.  The variety of ways which allow an employee to file such a complaint are due to the sensitivities associated with the conduct described as sexual harassment.  Employees shall file complaints in one of the following ways:

1.     Notify the Department Head.

2.     Notify the appointing authority or designated agent.

3.     Through these Policies and Procedures, under the Grievance Procedure (Section XI).

D.     Investigation of Complaints.  The Town's Attorney is designated as the person who is responsible for investigating any complaints of sexual harassment.  Any filing of a sexual harassment claim (as outlined in Subsection C above) will be investigated by the Town's Attorney, who will inform the employee of the options and procedures available, and then will take appropriate action pursuant to this policy.

E.     Confidentiality and Reporting.

1.     All investigations surrounding sexual harassment will be conducted to maintain confidentiality and to protect the privacy of parties involved.

2.     Breach of confidentiality by any of the involved parties may be reason for disciplinary action.

3.     Any employee who is aware of or suspects any occurrence of sexual

<div align="center">34</div>

                                        VII.  Conditions of Employment

Page: 225

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

harassment will be expected to report the matter through the most confidential and direct means possible and shall avoid any discussions of the matter with co-workers and persons not directly responsible for investigating the matter.

F.     Investigation Procedure.  When an allegation of sexual harassment is made concerning an employee, the Town's Attorney will take immediate steps to:

1.     Obtain a written statement from the complainant regarding the time, dates, places and circumstances surrounding the allegations.

2.     Discuss the matter with the alleged offender, and obtain a written statement as to the allegations made.

3.     Obtain a statement from the witnesses or possible witnesses from both sides of the issue, if any.

4.     Prepare a report of the investigation and submit it to the department head, the appointing authority and the Town Attorney.

5.     If the situation warrants, take immediate action to limit the concerned employee from any further work contact with the alleged offender.

G.     Intervention.    Employees in a supervisory position shall intervene appropriately when witnessing a violation of this section and are obliged to report the violation to their immediate supervisor.

Action and resolution.  Based on the report, steps shall be taken for immediate and appropriate action for determining whether or not the alleged conduct constitutes sexual

<div align="center">35</div>

VII.  Conditions of Employment

Page: 226
Date Filed: 03/08/2018
Document: 01019955822
Appellate Case: 17-8092

**Town of Evansville**                                   **Employee Handbook**

harassment.  The appointing authority or designated official(s) will review the offender's total record and the circumstances such as the nature of the sexual advances and the context in which the alleged sexual advances occurred.  A determination of a sexual harassment claim shall be made by the facts on a case-by-case basis.

    1.     If a foundation for the allegation exists, appropriate disciplinary actions will be commenced against the offending employee.  Safeguards will be taken to protect the informant or victim.  Any disciplinary action will follow the regular course of action, as described in these Policies and Procedures.

    2.     If a foundation for the allegation does not exist the following will apply:

        a.     No record shall be made of the allegation in any personnel files.

        b.     Bad faith allegations or use of this policy for purposes other than its intended use shall result in disciplinary action against the informant and/or complainant.

### Section 13:  Privileged Information.

    Town employees involved with plans, programs or information of significant public interest shall not use this information for personal gain or to benefit friends, relatives or acquaintances.  Each employee is charged with the responsibility of insuring that only information generally available to the public is released.

<center>36                    VII.  Conditions of Employment</center>

Page: 227     Date Filed: 03/08/2018     Document: 01019955822     Appellate Case: 17-8092

**Town of Evansville**                    **Employee Handbook**

Section 14:  Attendance/Punctuality.

Employees are expected to report for work at the specified hour.  Any employee unable to report for duty on a work day shall notify his or her department head or supervisor prior to the usual starting time.  Failure to provide notification shall be considered an absence without leave for which there shall be no compensation, and may be cause for further disciplinary action.

Section 15:  Participation in Volunteer Fire Department and Ambulance Service

The Town of Evansville maintains a volunteer Fire Department and a volunteer Ambulance Service.  The volunteers provide services without pay or compensation.  Most of the volunteers have employment that does not allow them to be available during the normal work day hours.

It is a mandatory condition of employment and requirement for continuing employment that all public works employees respond to fire and ambulance calls during their scheduled workday.

Employees shall not receive any additional compensation for their response to these emergency calls.  Failure to respond and act as directed by the Fire Chief, Ambulance Director, or Public Works Director shall result in termination.  The Governing Body may excuse an employee from responding.  The Governing Body may also excuse an employee from carrying out certain activities during the employee's response.

Appellate Case: 17-8092     Document: 0101995822     Date Filed: 03/08/2018     Page: 228

**Town of Evansville**                                    **Employee Handbook**

The Town may give preference in hiring public works applicants to those who hold certifications that may be advantageous to the volunteer services.  Any public works employee hired shall at a minimum within sixty (60) days, be CPR-certified.  Failure to certify or lapse in certification shall be cause for termination.

Employees having other certifications or obtaining certifications may be compensated by an increase in wage of salary.  Any employee so compensated who fails to maintain that level of certification shall have his or her compensation decreased in the same amount.

Employees shall be on call for the Volunteer Fire Department and Ambulance Service from 6:00 A.M. to 6:00 P.M.  Employees will be compensated for service outside of normal work hours at their normal rates of pay.

38                    VII.  Conditions of Employment

Page: 229          Date Filed: 03/08/2018          Document: 01019955822          Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

## VIII:  OTHER EMPLOYEE BENEFITS

### Section 1:  Worker's Compensation.

Certain classes of employees are covered by the Worker's Compensation Act under Wyoming State Law.  Eligible employees injured by accident or occupational disease in the performance of official duties shall receive only compensation in accordance with the Worker's Compensation Act.

### Section 2:  Health Insurance.

The Town maintains a comprehensive insurance program which provides life, dental and health coverage for the benefit and protection of all eligible employees. Complete details of these insurance benefits will be provided in the employee's insurance booklets.  Questions pertaining to these benefits should be directed to the Town Clerk or other officers administering the insurance policies.

All full-time employees shall be eligible for coverage under the above policies after three months of service.  The Town will pay the premium for the employee .  The Town will not pay dependent coverage.

### Section 3:  Continuation Coverage.

Federal law requires that employees and their families have the opportunity for temporary extension of health coverage(called "continuation coverage")and group rates in

<div align="center">39</div>

<div align="right">VIII.  Other Employee Benefits</div>

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 230

**Town of Evansville**                                              **Employee Handbook**

certain instances where coverage under the plan would otherwise end.  Employees of the Town covered by the Town's hospitalization or health plan have a right to choose to continue coverage of that health plan if they lose their group health coverage because of a reduction in hours of employment or the termination of employment (for reasons other than gross misconduct on the part of the employee).

Spouses of employees covered by the Town's health care plan have the right to choose continuation coverage for themselves if they lose group health coverage under the health care plan for the any of the following four reasons:

A.       The death of the spouse;

B.       The termination of the spouse's employment (for reasons other than gross misconduct) or reduction in spouse's hours of employment;

C.       Divorce or legal separation from the spouse; or

D.       The spouse becomes eligible for medicare.

In the case of a dependent child of an employee covered by the Town's health care plan, he or she has a right to continuation coverage if group health care coverage under the health care plan is lost for any of the following five reasons:

A.       Death of the parent;

B.       The termination of a parent's employment (for reasons other than gross misconduct) or reduction in parent's hours of employment;

C.       Parent's divorce or legal separation;

<div align="center">40</div>                                    VIII.  Other Employee Benefits

Page: 231

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                            **Employee Handbook**

D.      The parent becomes eligible for medicare; or

E.      The dependent ceases to be a "dependent child" under the health care plan.

The employee or a family member is responsible for notifying the health care carrier of a divorce, legal separation or child losing dependent status under the health care plan. The Town has the responsibility to notify the health care carrier of the employee's death, termination of employment or reduction of hours or medicare eligibility.

When the health care carrier is notified that one of these events has happened, the carrier will in turn notify the employee or other affected person that he or she has the right to choose continuation coverage. Said person shall have at least sixty (60) days from the date they would lose coverage because of one of the events above described to inform the health care carrier that they want continuation coverage. In the event continuation coverage is not chosen, health care insurance coverage will end.

Persons choosing continuation coverage are entitled to receive coverage which, as of the time coverage is being provided, is identical to the coverage provided under the plan to similarly situated employees or family members. Persons will be afforded the opportunity to continue coverage for eighteen (18) months at their own cost. Continuation coverage may be terminated for any of the following five reasons:

A.      The Town no longer provides group health insurance coverage to any of its employees;

B.      The premium for continuation health coverage is not paid;

41                         VIII.  Other Employee Benefits

Page: 232        Date Filed: 03/08/2018        Document: 0101995822        Appellate Case: 17-8092

Town of Evansville                                          Employee Handbook

C.      Covered persons are covered under another group health insurance plan;

D.      Covered persons become eligible for medicare; or

E.      Covered persons are divorced from a covered employee and subsequently

remarry and are covered under the new spouse's group health plan.

Persons choosing continuation coverage will have to pay all of the premium for

such coverage.  At the end of the eighteen (18) month or three (3) year continuation

period, persons choosing such coverage will be allowed to enroll in an individual

conversion health plan if one is provided under the Town's policy.

Section 4:  Education Assistance.

Permanent full-time employees may be reimbursed at the discretion of the

appointing authority or designated official(s), upon successful completion of an approved

course or courses in educational or vocational training.  The course of training must be

related to the work, be designed to improve competence in the job and must be of value

to the employer.  All requests for tuition reimbursement must be approved by the

appointing authority in advance of undertaking the course of study.

Section 5:  Membership in Professional Societies.

At the discretion of the appointing authority or designated official(s), a permanent

42                          VIII.  Other Employee Benefits

Page: 233

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                      **Employee Handbook**

employee's membership dues in work oriented professional societies may be paid by the Town.

Section 6:  Mileage and Per Diem.

Town employees may be required to travel in order to satisfy the responsibilities of their jobs.  The Town has, therefore, established the following policy regarding travel, travel expenses, and related matters.

A.     Use of personal automobiles in the performance of Town business is entirely voluntary.  The Town does not provide insurance coverage for any employee who uses his or her personal auto for business purposes.  Town employees will be reimbursed at the rate of 23¢ cents per mile upon completion and submission of appropriately executed forms.  This mileage allowance is provided to cover the cost of gas, maintenance, repair, and insurance while on Town business.     Since the Town assumes no responsibility beyond making available a mileage reimbursement allowance, it is the employee's responsibility to protect against damage to his or her automobile and legal liability in such form and amount as the employee deems adequate.  It is suggested that those employees who have occasion  to use their personal auto for business purposes carry a minimum coverage of $100,000/$300,000 bodily injury and $100,000 property damage.

It is highly recommended that employees consult with their own insurance agent and consider carrying liability coverage in excess of the above to insure avoidance of a

43                       VIII.  Other Employee Benefits

Page: 234        Date Filed: 03/08/2018        Document: 0101995822        Appellate Case: 17-8092

**Town of Evansville**                                          **Employee Handbook**

situation which could potentially be a financial burden to the employee.  It is also essential
that employees who use their personal auto for Town business properly inform their
carrier accordingly to insure complete coverage.

     B.     Travel expense.  The Town will reimburse employees for the following
actual out-of-pocket expenses incurred while away from home on overnight business trips:

     1.     Lodging - receipt required.

     2.     Meals - receipt required.  If another party is being entertained or a business
meeting held, the party's name, affiliation, place of meeting for entertainment and
business reason must be included.

     3.     Air fare -  receipt required.

     4.     Car rental - receipt required.

     5.     Telephone - work related.

Employees traveling away from the Town and the area surrounding, but not
overnight, will be reimbursed for actual costs of meals (not to exceed 15% for gratuity)
to a maximum of $10.00 per day, whichever is less.  Traveling from the Town overnight,
the maximum reimbursement for meals and lodging shall be $60.00 per day or actual
costs, whichever is less.  Employees will be reimbursed for mileage and stated above.

Expenses incurred due to a family member accompanying the employee on a
business trip are not chargeable to the Town.  Travel and entertainment expenses incurred
while on Town business are to be reported on a travel expense form and submitted to the

<center>44                    VIII.  Other Employee Benefits</center>

Appellate Case: 17-8092    Document: 0109955822    Date Filed: 03/08/2018    Page: 235

**Town of Evansville**                                          **Employee Handbook**

employee's department head for approval.  In no event may an employee approve his or her own expense form.

45                    VIII.  Other Employee Benefits

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 236

**Town of Evansville**                                            **Employee Handbook**

## IX.  HOLIDAY AND LEAVE POLICY

Section 1:  Holidays.

The following have been designated as legal holidays for all full time permanent

employees of the Town and shall be granted with pay:

A.      New Year's Day;

B.      President's Day;

C.      Memorial Day;

D.      Independence Day;

E.      Labor Day;

F.      Veteran's Day;

G.      Thanksgiving Day and the Friday following; and

H.      Christmas Day.

In the event one of the above holidays shall fall on a Sunday, it will be observed

on the following Monday.  If the holiday falls on a Saturday, it will be observed on the

preceding Friday.

In the event a holiday falls within an eligible employee's approved vacation period,

excepting police officers, the employee shall be entitled to an additional day off at the

beginning or end of the vacation period, or, at the Town's discretion, to pay in lieu of that

day.

In the case of emergency, employees who are assigned to work on a shift or 24-

Mestas v. Town of Evansville            Declaration of Plaintiff Roy Mestas            Exhibit 1
17-CV-00017-NDF

000231

Page: 237            Date Filed: 03/08/2018            Document: 01019955822            Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

hour call, the designated legal holidays are not observed.   When permanent full time employees are required to work on legal holidays, they shall be granted additional time off to compensate for the hours worked at the rate of one and one-half (1½) hours for the hours worked.        Police Department employees are granted an additional forty (40) hours of vacation leave each year in lieu of holiday compensation.

Employees with at least three (3) months service are eligible for a birthday holiday, to be taken on the employee's birthday, or if the birthdate falls on Saturday, then on the Friday before, or if on Sunday, then on the Monday after.   This holiday may not be carried into another year or otherwise accumulated and, if not taken by the end of the year, must be forfeited.   An employee may not receive additional pay in lieu of the birthday holiday.   Eligible Police Department employees who work their birthday holiday will be given compensatory time as department scheduling allows and with the prior approval of the Chief of Police.

Section 2:  Vacation (Annual Leave).

All permanent full-time Town employees shall earn and accrue annual leave as follows:

| Years of Service | Weeks of Vacation |
|---|---|
| 1 through 4 | ten days |
| 5 through 9 | fifteen days |
| 10 and over | twenty days |

47                          IX.  Holiday and Leave Policy

Page: 238        Date Filed: 03/08/2018        Document: 0101995822        Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

Vacation shall accrue on the first day after the 12-month anniversary and after the employee has worked all scheduled days of each month, excluding sick days, vacation days, medical disability or excused days by the Mayor.  Vacation shall accrue each 12-month anniversary thereafter under the same conditions.

All employees must use their vacation leave during the calendar year following the year in which it is earned, with a maximum of five (5) days allowed to carry-over into the next year.  A year shall be considered complete after actual completion of twelve (12) consecutive months of service.  Employees shall not be granted annual leave until they have completed 12 months of service, except for employees granted military leave. Employees eligible for annual leave must work or be on approved leave for all scheduled working days to earn leave.   In no case shall an employee be allowed to earn vacation leave beyond the maximum accrual limits. All employees must use their vacation leave within eighteen (18) months after accrual.  Vacation leave not taken within 18 months will be forfeited by the employee.  Accrued vacation pay cannot be converted into cash, except upon termination of employee.

If, during the period an employee is on annual leave, a condition occurs that would allow the employee to take sick leave or other justifiable leave, the employee shall not be allowed to convert said annual leave.  Holidays which occur during annual leave time shall not be charged against leave time.  If a regularly scheduled payday occurs during employee's vacation period, the employee may receive his or her paycheck on the last day

48                     IX.  Holiday and Leave Policy

Appellate Case: 17-8092     Document: 0101 9955822     Date Filed: 03/08/2018     Page: 239

**Town of Evansville**                                    **Employee Handbook**

of work prior to his or her vacation.

The minimum leave time shall be one (1) day and leave must be taken in no more than three (3) separate blocks of time, without the written permission of the department head.   Forfeiture of accrued leave time as a disciplinary action shall not be authorized. No employee shall lose accrued annual leave time when promoted, demoted or transferred.

Approval and timing of vacations shall be determined by the department head.   If more than two (2) weeks of leave is requested, the Town Council must approval the leave. An employee who takes annual leave without authorization shall be subject to dismissal. Departments heads shall set up annual leave schedules where the efficiency of the service dictates.

The Town Council reserves the right to determine vacation schedules, to rearrange vacations schedules at any time, and to select any period within the year for vacations.

Section 3:  Sick Leave.

After six (6) months of continuous service, all full-time employees shall accrue sick leave at the rate of eight (8) hours per month.   An employee must work, vacation or be on approved leave for all scheduled work days in a month to earn sick leave for that month.   Sick leave can be accumulated for a maximum of 192 hours. When an employee reaches a maximum accumulation of sick leave, and continuously maintains that maximum for a full quarter, then the employee shall accrue two (2) hours of vacation time for each

<div align="center">49</div>

IX.  Holiday and Leave Policy

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 240

**Town of Evansville**                                    **Employee Handbook**

calendar quarter in which the employee has accumulated maximum sick pay.  Accumulated

vacation time under this section shall be taken within one (1) year of its earned dated.

One-half (½) of unused accumulated sick leave shall be paid upon termination.

Sick leave may not be taken before accrued and may be used in the following

circumstances only:

A.      When the employee is ill or physically incapacitated;

B.      For care of the employee's immediate family in cases of illness;

C.      For medical, dental or optical appointments;

D.      Persons affected by pregnancy, child birth and related medical conditions

shall be treated the same as persons affected by other medical conditions.

The employee absent on sick leave shall be responsible for notifying the appropriate

department head prior to the beginning of his or her work schedule, explaining the

circumstances of his or her absence.  Abuse or misuse of sick leave may be cause for

disciplinary action.  The department head (or other appropriate officials of the Town) may

chose to investigate the absences and may request a physician's statement at any time.

An employee on sick leave in excess of three (3) consecutive days, either paid or

unpaid, may be required to provide a certificate from a physician verifying the continued

illness or injury.  If the requested certificate is not provided, sick leave shall be terminated

and the employee ordered to return to work by a specified date or be subject to dismissal.

50                           IX.  Holiday and Leave Policy

Page: 241          Date Filed: 03/08/2018          Document: 0101995822          Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

<u>Section 4:  Military Leave of Absence</u>.

 Upon presenting proper military orders, an employee who is a member of the National Guard, Army, Navy, Marine Corps, Air Force or Coast Guard Reserve shall be granted a maximum of fifteen (15) calendar days in any calendar year for the purpose of military training leave without pay.  The governing body may grant additional unpaid leave if requested for military duty.

 Military training leave shall commence the first working day the employee is on military training leave from his or her job and terminate on the last calendar day he or she is on a military training status, as evidenced by a copy of the military orders covering the leave period.

<u>Section 5:  Funeral Leave</u>.

 Permanent employees will be allowed up to three (3) days leave if necessary to attend the funeral of a member of their immediate family.  An employee must notify his or her department head as soon as possible upon learning of a death in the family.  Permanent employees may take up to three (3) days of sick pay for funeral leave.  Any excess days shall be taken without pay, except for vacation leave.

<u>Section 6:  Court Leave</u>.

 Employees of the Town shall not lose regular pay or leave accrual while serving

<div align="center">51</div>

           IX.  Holiday and Leave Policy

Mestas v. Town of Evansville
17-CV-00017-NDF    Declaration of Plaintiff Roy Mestas    Exhibit 1

000236

Date Filed: 03/08/2018   Page: 242

Document: 010199955822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

on jury duty or while appearing as a witness on behalf of the Town in a court proceeding. All jury and subpoena fees paid to the employee, regardless of his or her regular pay, shall be returned to the Town.  Any employee required to appear in court as a witness on matters not pertaining to official Town functions may be granted two (2) days maximum with pay.  Any more than two (2) days must be taken without pay.

Section 7:  Election Leave.

Employees shall be granted up to one (1) hour away from work, such time to be designated by their department head, for the purpose of voting in national, state and local elections in accordance with applicable state and federal laws.

Section 8:  Administrative Leave.

Employees may be granted administrative personal leave with or without pay with approval of the governing body.

Section 9:  Absence Without Leave/Tardiness.

Any unauthorized absence of an employee from duty shall be grounds for disciplinary action, which action may include dismissal.  An unauthorized absence is the failure to arrive at work without contacting the department head or supervisor within thirty (30) minutes of scheduled start time and being excused by the department head.  Any

Page: 243

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                 **Employee Handbook**

employee absent for two (2) consecutive working days without notice shall be considered to have resigned.  Where extenuating circumstances are found to have existed, the absence may be charged to leave with or without pay at the discretion of the  Department Head.

Section 10:  Emergency Closing.

The majority of the Governing Body has the responsibility for determining whether to close Town operations during emergencies such as severe weather conditions, lack of heat or electricity, civil disturbances, or other similar conditions.  Notice of operations closure will be broadcast on the local radio stations.  If the majority of the Governing Body closes operations for inclement weather or other emergency, the time off will be without pay.   The Town may require work of any or all employees during such emergencies.

If inclement weather or other emergency begins to develop during work hours and the majority of the Governing Body dismisses the work force early, this time off will be without pay.

If an employee does not report to work because of inclement weather or other emergency, and Town operations remain open despite that condition, the lost work time will be without pay.

This policy has no application to Town employees who are otherwise on normal days off or excused leaves of absence, such as annual leave, sick leave, disability leave,

Appellate Case: 17-8092      Document: 0101995822      Date Filed: 03/08/2018      Page: 244

**Town of Evansville**                                        **Employee Handbook**

or military leave during periods of operations closure.

Section 11:  Family and Medical Leave Act (FMLA) of 1993.

If an employee is unable to work due to his or her own illness, birth or adoption of a child or the serious illness of his or her spouse, child or parent, they will be guaranteed the same or an equivalent job and have their health insurance continued during the FMLA time period.  In order to qualify for FMLA, the employee must have been employed for one full year and must have worked at least 1,250 hours in the twelve months immediately preceding the leave.  An employee can be on FMLA a maximum of twelve (12) weeks in a calendar year.  This may be all at one time or intermittently throughout the year.  Employees are not paid for time away from work if taken under FMLA.  In the event the Federal FMLA is amended, the amendments shall supersede this section where inconsistent.

Mestas v. Town of Evansville              Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000239

Page: 245          Date Filed: 03/08/2018          Document: 01019955822          Appellate Case: 17-8092

**Town of Evansville**                                   **Employee Handbook**

## X.  SEPARATION FROM EMPLOYMENT

This policy defines the various types of separations from the employ of the Town and the effect of separation on benefits and continuous service.  This policy will apply to all full time, permanent employees.  THE POLICY WILL NOT APPLY TO PART-TIME AND TEMPORARY EMPLOYEES WHO ARE AT-WILL EMPLOYEES. PROBATIONARY EMPLOYEES ARE EMPLOYEES AT-WILL, WITHOUT CONTRACTUAL RIGHTS IN THEIR EMPLOYMENT, AND MAY BE DISMISSED AT ANY TIME WITHOUT CAUSE.

Section 1:  Voluntary Separation.

Voluntary Separation occurs when the separation is initiated by the employee.  The following are examples of voluntary separations:

A.      Written or oral resignation;

B.      Absence from work for two (2) consecutive working days without notifying the employee's department head;

C.      Failure to report for work from reduction of force, on the date designated;

D.      Failure to return from an approved leave of absence at the expiration of the leave;

E.      Retirement.

Employees who wish to voluntarily terminate their employ with the Town are

<center>55          X.  Separation from Employment</center>

Page: 246

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

expected to provide a written resignation to their department head two (2) weeks in advance of the anticipated separation date.  The letter of resignation shall remain a part of the employee's permanent personnel file.  Failure by an employee to provide sufficient notice may result in his or her not being eligible for reinstatement privileges, wherever otherwise applicable.

Section 2:  Involuntary Separation.

This type of separation occurs when the separation is not initiated by the employee. The following are examples of involuntary separations:

A.      Layoff for lack of work or elimination of positions, generally undertaken when the Town reduces its work force or eliminates positions for economic or other reasons.

B.      Discharge - as when an employee is unsuited for or incapable of performing work assigned or as when an employee who is suited for and capable of performing the work is terminated for such reasons as, for example, inefficiency, absenteeism, violation of rules of conduct including, but not limited to, habitual carelessness or recklessness, disorderly conduct, insubordination, theft, leaving work before quitting time without permission, falsification of records, sleeping on the job, use of illegal drugs or alcohol or waste.  Generally, the term should be understood to include discharge "for cause".

Page: 247

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

C.      Death of Employee.

D.      Disability - as when on the basis of medical evidence, an employee is totally and permanently disabled from performing the essential functions of their usual work assignment with reasonable accommodation and thus eligible for worker's compensation or other disability benefits.

Section 3:  Lay Offs.

In the event it shall become necessary, in the sole discretion of the Town, to lay off Town employees or eliminate job positions due to lack of funds, lack of work, reorganization or for any other reason, the appointing authority or designated representative shall render the final decision as to the layoffs or positions to be eliminated. When layoffs or position eliminations are necessary, the following matters will be considered in the order listed in determining which position(s) will be eliminated or which employees will be laid off:

A.      The employee's job responsibilities in relation to the continued efficient operations of the Town.

B.      The employee's skill level.

C.      The efficiency of the employee.

D.      The employee's length of service.

The Town will give an employee being laid off or whose position is being

<center>57                          X.  Separation from Employment</center>

Appellate Case: 17-8092      Document: 0101995822      Date Filed: 03/08/2018      Page: 248

**Town of Evansville**                                **Employee Handbook**

eliminated a minimum of five (5) working days advance notice, except in the case of an emergency lay off or position elimination where the situation would not have been reasonably predicted.  Vacation pay for vacation time earned but not taken will be paid to the laid off employee or employees whose positions have been eliminated.  Employees will be provided an opportunity to continue coverage under the Town's employee health benefit plan in accordance with COBRE.

A layoff or elimination of a position or transfer to an existing and vacant position is not considered to be a termination or disciplinary matter and, therefore, is not subject to appeal or hearing under the Town's appeal and disciplinary procedures.  Refusal to reappoint department heads or other officials enumerated in Wyoming statues at the expiration of their appointive term is likewise not considered a disciplinary matter and not subject to the Town's appeal and disciplinary procedures.  **FOR THIS SECTION "LAYOFF" (OR ELIMINATION OF POSITION), ALL TOWN EMPLOYEES ARE EMPLOYEES AT- WILL, THAT IS, EMPLOYED AT THE DISCRETION OF THE TOWN.**

58                    X.  Separation from Employment

Date Filed: 03/08/2018   Page: 249

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

## XI.  GRIEVANCE PROCEDURE

### Section 1:  General.

A grievance may be defined to include but is not limited to any dispute or difference of opinion on such matters as employee-department head relations, working conditions at facilities, granting of leave time, and duty assignments, not otherwise excluded herein.

The Town recognizes the meaningful value and importance of full discussion in resolving misunderstandings and preserving good relations between management and employees.   Accordingly, the Town believes that the following procedure will insure that complaints receive full consideration.   Should a condition exist which an employee feels is unsatisfactory, it is important that he or she bring it to the attention of the appropriate person in the proper manner.

### Section 2:  Grievance Process.

A.        If a permanent employee has an grievance or wishes to complain, every effort should be made to resolve the problem by informal means at the lowest possible level, i.e., discussing the problem with the department head.   This should be done within five (5) working days after occurrence of, or knowledge of, the grievous action.   If the department head believes no action is warranted or possible, the employee should receive a written explanation as to the reasoning of such decision.   Where action is warranted or required, at the discretion of the department head, it should be made and the employee

Mestas v. Town of Evansville                    Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000244

Page: 250

Date Filed: 03/08/2018

Document: 0101995582

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

informed in writing.  In either event, the employee should be fully advised within seven (7) working days after the problem has been discussed.

    B.     Normally, complaints will be resolved at this level.  If the employee continues to feel his or her complaint remains unresolved, however, a written statement requesting a meeting and specifying the grievance should be submitted to the Mayor and Town Council within five (5) days of receipt of the written decision provided by the appointing authority.  Any meetings conducted pursuant to request shall be informal, and every reasonable attempt shall be made to resolve the problem.  A meeting should be conducted within ten (10) days of receipt of the employee's request therefor and a decision rendered ten (10) days following the date of the meeting.  The decision of the Town Council shall be final.

    C.     All employees should be assured that every effort will be made to resolve problems to their satisfaction.  Under no circumstances will an employee be penalized for presenting a complaint to the department head or to members of the Town Council in accordance with the grievance process above set forth.

    D.     The Town and its appointed Department Heads reserve the exclusive right to manage the affairs and operations of their respective departments.  Accordingly, the following complaints are not grievable under this procedure:

        1.     Establishment and revision of wages or salaries, position classifications, or general benefits.

<div align="center">60</div>

                                      XI.  Grievance Procedure

Page: 251

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

2.    Work activity accepted by the employees as a condition of employment or work activity which may reasonably be expected to be a part of the job content.   (The measurement and assessment of work activity through a performance evaluation shall not be grievable except where the employee can show the evaluation was arbitrary and capricious.)

3.    The contents of established personnel policies, procedures, rules and regulations, ordinances, and statutes.

4.    Failure to be promoted (except where the employee can show established promotional policies or procedures were not followed or applied fairly.)

5.    The methods, means, and personnel by which such work activities are to be carried on.

6.    Dismissal, layoff, demotion, or suspension from duties because of lack of work, reduction in the work force, or job elimination.

7.    The hiring, transfer, assignment, and retention of employees within the department (provided such actions do not constitute disciplinary actions.)

8.    The relief of employees from duties of the departments in emergencies.

9.    The Town's financial, budgetary, accounting, compensation, and organizational policies and procedures.

10.    Oral reprimands, warnings or written reprimands.

<div align="center">61</div>

XI.  Grievance Procedure

Page: 252

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

11.    Management of Town employees, including the right to determine the duties to be included in a job classification; to make personnel appointments in accordance with adopted selection policies and techniques; to determine the number of persons to be employed or retained as employees, including the right to lay off employees whenever it is deemed to be in the best interest of efficiency or productivity or whenever necessitated by lack of funds or reduced workload; to establish performance evaluations; to transfer and assign employees within the Town; to determine the need for shift operation and rotation of the work week; to assign overtime; to determine job training and career development; and to determine duties and actions in emergency situations.

62                          XI. Grievance Procedure

Page: 253          Date Filed: 03/08/2018          Document: 010199955822          Appellate Case: 17-8092

**Town of Evansville**                                           **Employee Handbook**

## XII.  DISCIPLINARY ACTIONS

Section 1:  General.

  A.  Depending on the severity of the infraction and the employee's past job performance, disciplinary action may take the form of oral reprimand, written reprimand, suspension without pay or termination.  It is not necessary for disciplinary actions to follow a "step" process. Severity of discipline is dependant on the infraction and the circumstances of the infraction.  The appointing authority or his designated representative may assume the responsibility for administering official oral reprimands, written reprimands, suspensions or terminations as appropriate.  Disciplinary action may be taken for, but is not necessarily limited to, the following:

  1.  Violation of any of the personnel policies of the Town and/or violation of other operating policies of the Town.

  2.  Neglect of duties or inability to perform assigned job duties in an efficient and satisfactory manner.

  3.  Misconduct or negligence.

  4.  Failure to comply with reasonable directives and assignments made by department heads.

  5.  Theft or intentional destruction of Town property or another employee's property.

Mestas v. Town of Evansville   Declaration of Plaintiff Roy Mestas   Exhibit 1
17-CV-00017-NDF

000248

Page: 254    Date Filed: 03/08/2018    Document: 01019955822    Appellate Case: 17-8092

**Town of Evansville**                    **Employee Handbook**

6.    Being under the influence of intoxicants, non-prescribed drugs or illegal drugs while on duty.

7.    Falsification of records.

8.    Acceptance of any bribe, gift, token, money, or other thing of value intended as an inducement to perform or refrain from performing any official act, or any action of extortion or other means of obtaining money or anything of value through the employee's position.

B.    The employee may be suspended with pay pending investigation of charges of misconduct and upon written notification of such suspension.

Section 2:  Types of Disciplinary Action.

A.    Written reprimand.  Generally, but not always, formal disciplinary action begins with a written reprimand which shall be prepared by the designated department head.  The written reprimand shall address the specific infraction(s) and means of correction and shall be considered in the preparation of the employee's job performance evaluations and determination of salary increases.  A copy of the documentation shall be given to the employee and the employee shall initial or sign, and date the document to acknowledge receipt only.  The written reprimand shall be included in the employee's permanent personnel file.

B.    Suspension.  In the event of a serious infraction or repeated infractions by

64                    XII. Disciplinary Actions

Page: 255          Date Filed: 03/08/2018          Document: 0101995582          Appellate Case: 17-8092

**Town of Evansville**                    **Employee Handbook**

an employee, the designated department head may suspend the employee without pay. Prior to the effective date of the suspension (except in an emergency when immediate action is required), the employee shall be notified in writing of the proposed action, the effective date, the reasons therefor, and his or her right to request an informal hearing. The employee may request an informal hearing before the appointing authority at any time before the effective date, which the employee and the department head shall attend for the purpose of determining whether there is reasonable cause for suspension. A tape recorded record of the informal meeting shall be maintained. The reasons for and term of suspension shall be documented, a copy given to the employee, who shall initial or sign, and date the documentation to acknowledge receipt only. The documentation shall be included in the employee's permanent personnel file.

    C.    Termination.    An employee's employment may be terminated by the appointing authority or his designated agent upon recommendation of the employee's department head for an infraction of a severe nature or a repeated infraction following earlier disciplinary action. Notice of termination shall be in writing, stating the specific details of the infraction(s), earlier disciplinary action taken for other, similar infraction(s) (if appropriate), reasons for the termination action, the effective date, and notice of the right to request an informal hearing before the appointing authority prior to the effective date of termination. Prior to termination (except in an emergency when immediate action is required), the employee may request an informal hearing before the appointing

<div align="center">65</div>

    XII. Disciplinary Actions

Page: 256

Date Filed: 03/08/2018

Document: 01019955822

Appellate Case: 17-8092

**Town of Evansville**                    **Employee Handbook**

authority, which the employee and department head shall attend, for purposes of determining whether there is reasonable cause for termination. A tape recorded record of the informal hearing shall be maintained. The reasons for termination shall be documented, and a copy given to the employee, who shall initial or sign, and date the documentation to acknowledge receipt only. The documentation shall be included in the employee's permanent personnel file.

If written documentation of the disciplinary action is changed or modified at any time after insertion in the personnel file, the employee shall be informed by the department head who shall give a copy of the revised documentation to the employee. The employee shall initial or sign, and date the revised documentation to acknowledge receipt only.

Notwithstanding the above, an employee does not have a contract with the Town for continued employment and maybe terminated at anytime without cause.

Section 3: Appeal Procedures.

Permanent full time and part time employees of the Town shall have the right to appeal suspension without pay and/or termination actions. Notice of the appeal must be submitted to the appointing authority within ten (10) calendar days of the effective date of the suspension or dismissal action. The notice of appeal shall set forth:

A.      The name and address of the person making the request or protest and the name and address of his or her attorney, if any.

66                        XII. Disciplinary Actions

Page: 257

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

    B.      The action, decision, or order upon which a hearing or appeal is requested or an objection is made.

    C.      A statement in ordinary but concise language of the facts on which the appeal is based.

    D.      Request for hearing before the Governing Body.

The Governing Body shall act as the hearing board for the purpose of hearing all appeals hereunder. The Governing Body may designate one of its members as a presiding officer or may, at its sole discretion, appoint a neutral third party to act as the hearing examiner and presiding officer.

At a time on or before the day of any hearing, the presiding officer may direct the parties to appear before the officer in person or by telephone to consider:

    A.      Simplification of issues.

    B.      The necessity or desirability of amending the pleadings.

    C.      The possibility of obtaining admissions of fact and of documents to avoid unnecessary proof.

    D.      Formulating procedures to govern the hearing.

    E.      Such other matters as may aid in the disposition of the matter.

Such conferences shall be conducted formally. An order will be prepared which recites the actions taken at the conference, amendments allowed, agreements of the parties and limitation of the issues to those undisposed of by admissions or agreements of counsel

<center>67</center>                                    XII.  Disciplinary Actions

Page: 258          Date Filed: 03/08/2018          Document: 01019955822          Appellate Case: 17-8092

**Town of Evansville**                                                    **Employee Handbook**

and the parties.  A pre-hearing order will control the course of the hearing unless modified by the presiding officer to prevent manifest injustice.

For good cause shown, extensions and continuances of time may be granted or denied in the discretion of the hearing board or the presiding officer.

The hearing board or presiding officer may permit deviations from these rules insofar as it may find compliance therewith to be impossible or impracticable.

Disrespect or disorderly language or contemptuous conduct, a refusal to comply with directions or unreasonable standards of orderly and ethically conduct, at any hearing before the Governing Body, shall constitute grounds for immediate exclusion before the hearing.

The Governing Body shall make a written decision and order in all appeals, which decision shall contain findings of fact and conclusions of law based exclusively on the record.  The decision and order of the Governing Body shall be placed in the record of the case which shall be retained by the Governing Body.

Section 4:  Practice and Procedure Applicable to Hearings.

A.       As nearly as possible, hearings shall be conducted in accordance with the following order of procedure:

1.       The presiding officer shall announce that the board is open to transact business and shall call by title the case to be heard.

Mestas v. Town of Evansville                     Declaration of Plaintiff Roy Mestas                     Exhibit 1
17-CV-00017-NDF

000253

Page: 259

Date Filed: 03/08/2018

Document: 0101995822

Appellate Case: 17-8092

**Town of Evansville**                                    **Employee Handbook**

2.      All persons testifying at any hearing before the Governing Body shall stand and be administered an oath or affirmation in accordance with Wyoming Statutes.

3.      The parties will each be allowed an opening statement to briefly explain their position to the Council and outline the evidence the propose to offer together with the purpose thereof.

4.      The parties evidence will be heard.  Witnesses may be cross-examined by the opposing party or his attorney and by members of the Council and legal counsel for the Governing Body.

5.      The presiding officer may allow, in his discretion, evidence to be offered in any order.

6.      Closing arguments of the parties will be made in the manner set by the presiding officer.

7.      Time for oral argument may be limited by the presiding officer.

8.      The presiding officer may recess the hearing as required.

9.      After all interested parties have been offered the opportunity to be heard, the presiding officer shall declare the evidence closed and excuse all witnesses. The evidence may be reopened at a later date, for good cause shown, by order of the Governing Body upon motion by the party or on the Council's own motion.

B.      The presiding officer may, at his discretion, require parties to tender written briefs and set the time for filing such briefs.

<div align="center">69                          XII.  Disciplinary Actions</div>

Page: 260   Date Filed: 03/08/2018   Document: 01019955822   Appellate Case: 17-8092

**Town of Evansville**                                        **Employee Handbook**

C.     The presiding officer may declare that the matter is taken under advisement and that the decision and order of the Town Council will be announced at a later date. The presiding officer appointed pursuant to Section 3 D. shall preside during the course of the hearing.

D.     The Wyoming Rules of Civil Procedure and the Wyoming Rules of Evidence shall be followed to the extent that they are reasonable and appropriate considering the nature and subject matter of the proceedings before the board.  Care shall be taken in any instance to reserve the elements of procedural due process.

E.     In all appeals coming before the Town Council, the taking of depositions and discovery shall be available to the parties in accordance with the provisions of the Wyoming Administrative Procedure Act, § 16-3-101, *et. seq.*

F.     A record of all proceedings shall be maintained in the form of a tape recording.  Provided, however, such record may, at the request of any party, be in the form of stenographic notes and in such event the Town Council may determine the apportionment of cost therefor among the parties.

Section 5:  Reinstatement on Appeal.

In the event the Town Council shall reverse the decision of the appointing authority as to termination or suspension, the employee shall be restored to his or her former

70                              XII.  Disciplinary Actions

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 261

**Town of Evansville**                                    **Employee Handbook**

position, and all compensation and benefits lost from the date of suspension or termination

shall be restored.

71                              XII.  Disciplinary Actions

Page: 262

Date Filed: 03/08/2018

Document: 0101995582

Appellate Case: 17-8092

**Town of Evansville**                                        **Employee Handbook**

## XIII.  MISCELLANEOUS

Section 1:  Severability.

In the event any section, clause, or phrase shall be held unconstitutional or invalid by any court of competent jurisdiction, such holding shall not effect the remainder of these rules and the same shall remain in full force and effect.

Section 2:  Amendment and Revocation; Reservations.

The Town reserves the right, in its sole discretion, to amend and/or revoke, in whole or in part, in any manner and at any time these rules and regulations.  In addition, the Town reserves and retains at all times the right to determine Town policy; to organize and/or reorganize in any manner it chooses; to determine and undertake measures for the health, safety and welfare of its citizens and to introduce new, improved or difficult methods and techniques of operation.

**Town of Evansville**  **Employee Handbook**

Appendix A - Pay Plan Monthly Schedule  (Jan., 1995)

Grade:

| | Step A Base | Step A OT | Step B Base | Step B OT | Step C Base | Step C OT | Step D Base | Step D OT | Step E Base | Step E OT | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | | | | $5.83 | $8.75 | | | | | |
| 5 | | | $6.30 | $9.45 | $6.54 | $9.81 | $6.67 | $10.00 | | | |
| 6 | $6.93 | $10.40 | $7.07 | $10.61 | | | $7.30 | comp | | | |
| 7 | | | | | | | $8.25 | $12.38 | | | |
| 8 | | | $8.58 | $12.87 | | | | | | | |
| 9 | | | | | | | | | $10.03 | $15.05 | |
| 10 | | | $10.43 | $15.65 | $10.64 | $15.96 | $10.86 | $16.29 | | | |
| 11 | | | | | | | | | | | |
| 12 | | | | | | | $13.18 | $19.77 | | | |
| 13 | | | | | | | | | | | |

| | Step A Salary | Step B Salary | Step C Salary | Step D Salary | Step E Salary | Comments |
|---|---|---|---|---|---|---|
| 4 | | | | | | |
| 5 | | | $522.92 | | | bi-weekly* |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | $756.47 | | | | bi-weekly |
| 10 | $817.45 | | | | | bi-weekly |
| 11 | | $919.84 | | | | bi-wekly |
| 12 | | | | | | |
| 13 | | | $1,140.47 | | | bi-weekly |

* uses comp time rather than overtime

Mestas v. Town of Evansville        Declaration of Plaintiff Roy Mestas        Exhibit 1
17-CV-00017-NDF

Appellate Case: 17-8092   Document: 01019995822   Date Filed: 03/08/2018   Page: 263

000258

**RESOLUTION #20-2003**

## A RESOLUTION SETTING NEW PROCEDURES
## FOR EMPLOYEE COMPENSATION

**WHEREAS,** the Town of Evansville is a municipal corporation under the laws of the State of Wyoming; and

**WHEREAS,** the Town of Evansville recently completed the Fiscal Year 2002-2003 audit; and

**WHEREAS,** the auditors requested additional internal controls for employee time cards; and

**WHEREAS,** the Town of Evansville has authority pursuant to Chapter XIII, Section 2, to amend its Employee Handbook.

**NOW, THEREFORE, BE IT RESOLVED** by the Governing Body of the Town of Evansville that Chapter VII, Section 14 of the Town of Evansville Employee Handbook be amended to add the following provisions which are required of all employees:

1. Time clocks are to be used at all times.

2. Any time that is written in, needs to be initialed by your supervisor.

3. All time cards are to be signed off on by the Department Head.

4. An explanation is needed for any overtime worked.

5. All Department Head time cards will be initialed and signed off on by the Mayor.

6. If a paycheck is lost and the Town has to issue another check, the Town will place a stop-payment order on the lost check. It will then be the responsibility of the employee to reimburse the Town for the stop-payment fee.

Resolved this 10th day of November, 2003.

Bonnie Humphrey, Mayor

Robert Wilcox, Council

Dan Winer, Council

James Wagner, Council

Velma Jackson, Council

ATTESTED BY:

Janelle Underwood, Town Clerk

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 265

December 15, 2003

To All Employees:

Attached you will find a copy of Resolution #20-2003.  Please review this Resolution and keep the copy for your records.  Please read and sign below and return this form to Janelle.

Thank you.
Janelle
Town Clerk

_____

   I acknowledge receipt of and have reviewed Resolution #20-2003 of the Town of Evansville, effective November 10, 2003.  I understand and will abide by the terms of said resolution.

_____
Name Printed

_____
Signature

_____
Date

Mestas v. Town of Evansville             Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000260

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 266

## VIII.  CONDITIONS OF EMPLOYMENT

### SECTION 10:   USE OF CONTROLLED SUBSTANCES AND ALCOHOL.

### BACKGROUND:

There is immediate lowering of esteem as well as suspicion of ineffectiveness when contact with the public is made by an employee evidencing the use of intoxicants.  It is imperative employees be mentally alert and physically responsive.  The Town of Evansville must be cognizant of potential problems which may be caused by substance abuse.  The Town of Evansville recognizes that substance abuse can have an adverse impact on the general public, Town government, the Town's operations, and adversely affect the image and general health, welfare, and safety of Town employees.

### POLICY:

The recreational or experimental use of any controlled substance by an employee is **prohibited.**  No employee shall be on duty while under the influence of intoxicants or drugs.  An employee shall report for duty, free from the influence and odor or intoxicants and shall not consume intoxicating beverages until after the completion of the scheduled shift for the day.  Should the nature of an assignment require an employee to consume intoxicants, consumption shall be restricted to prevent intoxication.  Upon reporting for duty, an employee shall advise his supervisor of any controlled or prescribed drugs or internal medications being used.  While off-duty, an employee shall not use alcoholic beverages to a degree which may reflect adversely on the Town of Evansville, or impair on-duty performance.  An employee shall not bring or retain any intoxicating beverage on Town property or in Town vehicles except when required by the performance of assigned tasks.

Substance abuse cannot be condoned.  In order to provide for the protection of the Town and the well-being of the employee, the Town shall have the right and authority to require employees to submit to substance analysis under the following conditions:

1. Applicants for employment will submit to a drug analysis
2. Reasonable suspicion to believe the employee is under the influence of a substance (legal or illegal, controlled or non controlled, narcotic, drug, or alcohol).
3. A driver in a motor vehicle accident involving a death or serious injury.
4. The discharging of a firearm during the course of his/her duties as a police officer.
5. Operating heavy equipment or machinery that is involved in an accident resulting in death or serious injury.
6. Random drug testing of employees on a one (1) in five (5) ration based on a lottery style procedure.

Appellate Case: 17-8092    Document: 0101995822    Date Filed: 03/08/2018    Page: 267

**DEFINITIONS:**

*Reasonable suspicion:* Those specific, objective facts and rational inferences that one is entitled to draw therefrom, in light of his/her experience, which would lead to a reasonable suspicion that the activity in question had occurred or was occurring.

*Substance abuse:* Includes the use by an employee of any substance (legal or illegal, controlled or non controlled, narcotic, drug, or alcohol) that causes the employee's job performance or general physical or mental health to decline, be impaired, or which may render the employee incapable of performing assigned duties. If substance abuse is suspected, then distinguishing characteristics should be documented which tend to connect the employee's behavior or conduct to substance abuse. Representative examples of distinguishing characteristics that could be indicative of substance abuse include, but are not limited to:

a. Observable deficient or deteriorating job performance resulting in reduced productivity
b. Absenteeism or tardiness
c. Vehicular or physical accidents
d. Display of unusual physical symptoms or other aberrant behavior inconsistent with previous job performance.

**ACTION:**

An employee who refuses to take a urine or blood analysis test within one (1) hour of the time requested, shall be deemed to have tested positive for an illegal substance. This will result in immediate termination for cause.

Employees who test positive for an illegal substance will, if it is the first occurrence, be afforded the opportunity to attend drug treatment or counseling, at their expense prior to coming back to work. Employees will be on a suspended without pay status until they show successful completion of the treatment and/or counseling. The employee will be tested monthly at the discretion of the Mayor and/or department head for a period of six months.

An employee who tests positive for an illegal substance a second or subsequent time will be terminated for cause.

The Mayor or Department Heads are authorized to initiate a request for substance analysis, however, coordination will be affected with the Town's Attorney prior to submission. The request will be prepared in written form.

This procedure, when appoved by the Governing Body of the Town of Evansville, will supersede the substance abuse and alcohol policy presently in place in the Employees Handbook.

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 268

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 269

September 14, 2005

To All Town Employees:

Attached you will find a copy of the new Drug and Alcohol Policy that was adopted by the Evansville Town Council September 12, 2005.  Please read and sign below and return this form to me.

Thank you.
Janelle Underwood
Town Clerk

I acknowledge receipt of and have reviewed the new Drug and Alcohol Policy for the Town of Evansville and understand that it will become a part of the Evansville Employee Handbook.  I understand said terms of the new Drug and Alcohol Policy.

_____
Name Printed

_____
Signature

_____
Date

Appellate Case: 17-8092   Document: 0101995822   Date Filed: 03/08/2018   Page: 270

## ORDINANCE NO. 10-2009

### AN ORDINANCE AMENDING TOWN OF EVANSVILLE EMPLOYEE HANDBOOK

**WHEREAS**, the Town of Evansville is a duly authorized municipal corporation under the laws of the State of Wyoming;

**WHEREAS**, the Town of Evansville has the authority under Wyoming State Statutes to promulgate administrative procedures and to establish those by ordinance;

**WHEREAS**, the Town of Evansville on September 10th, 1996 made the Employee Handbook Personnel Rules and Regulations effective;

**WHEREAS**, the Town of Evansville has reviewed the Employee Handbook and based on the current economic, employment, and financial conditions has deemed that it is appropriate to modify the Handbook;

**WHEREAS**, the Town of Evansville believes it would be in the Town's best interest to modify the Handbook as follows;

**NOW, THEREFORE, BE IT ORDAINED BY THE GOVERNING BODY OF THE TOWN OF EVANSVILLE, WYOMING** deletes from the Employee Handbook, Section VII- Conditions of Employment subsection Section 4: Compensatory Time & Overtime and its entirety.

**IT IS THEREFORE ORDAINED:**  Chapters X, XI, & XII are deleted in their entirety effective upon finally passage and publication.

**IT IS FURTHER ORDAINED,** that the modifications and amendments mentioned above are effective as to all current and future employees with the exception of appointed officials.

**BE IT FURTHER ORDAINED,** that to page i of the Handbook, the following language shall be added:

> I acknowledge by signing below as an employee of the Town of Evansville, I am an "Employee at Will" as defined by laws and court decisions of Wyoming. I acknowledge I may be terminated at anytime with or without cause or notice as defined by Wyoming law. I further acknowledge the employee handbook does not bestow employment or job property rights or other rights of any type or kind. I acknowledge the employee handbook outlines and provides clarification and guidance to federal law, state law, and compensation for work preformed. Any conflicts within the Employee Handbook and this statement of at will employment shall be resolved wholly in favor of this paragraph and the conflicting statement within in the handbook shall be deemed void.

**PASSED AND APPROVED** on the first reading this 24th day of August, 2009

**PASSED AND APPROVED** on the second reading this 14th day of September, 2009

**ADOPTED AND APPROVED** on the third reading this 28th day of September , 2009

Phil Hinds, Mayor                    Doug White, Council

Page 1 of 2

Mestas v. Town of Evansville                    Declaration of Plaintiff Roy Mestas                    Exhibit 1
17-CV-00017-NDF

000265

John Lang, Council

Tiffany Rayner, Council

Lori Becker, Council

ATTESTED:

Janelle Underwood,
Town Clerk

Mestas v. Town of Evansville
17-CV-00017-NDF

Declaration of Plaintiff Roy Mestas

Exhibit 1

000266

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 272

**ACKNOWLEDGEMENT OF ORDINANCE #10-2009**

Signed _____

Date _____

Appellate Case: 17-8092     Document: 01019955822     Date Filed: 03/08/2018     Page: 273

Date: January 14th, 2013

To: Roy Mestas

From: Dale Brown & Brian Boettcher

Re: Extension of probation

Roy:

This letter is to inform you that your probation is being extended days through May 24th, 2013.

This action is being taken because of the extended lost work time due to your injury on November 26th, 2012.

By signing below, you acknowledge receipt of, and agree to the contents of this letter.

_____          1-14-13
Signature                                          Date

1177-5507
Gino

1

IN RE:  MESTAS V. TOWN OF EVANSVILLE


TRANSCRIPT OF AUDIO RECORDING LABELED

"A_A0000053"

2

```
 1                    (Inaudible voices.)

 2              MALE SPEAKER:  -- go in there with

 3  something to try to make him mad.

 4              MR. MESTAS:  No, I'm not going to.

 5              MALE SPEAKER:  Well, when you get

 6  done, let me know if you want to drive that one-ton.

 7              MR. MESTAS:  Well, we're going to need

 8  the -- the one-ton, because that bin's going to need

 9  to be replaced.  It's -- it ain't going -- there's

10  no use in just replacing the hook.  See, just

11  replace the hook, it's going to -- it's all rusted

12  out in the bottom.

13         You busy, Dale?

14              MR. BROWN:  Yeah.

15              MR. MESTAS:  Okay.

16              MR. BROWN:  Come on.  What?

17              MR. MESTAS:  Huh?

18              MR. BROWN:  Go ahead.

19              MR. MESTAS:  I was just going to talk

20  to you for a few minutes, if I could talk to you

21  one-on-one.

22              MR. BROWN:  You don't want Brian here?

23              MR. MESTAS:  No.  Just you and I.

24              MR. BROWN:  Okay.  Brian.

25              MR. MESTAS:  Thank you, Brian.
```

3

```
 1                    BRIAN:  You're quite welcome.

 2                         (Inaudible voices.)

 3                    MR. BROWN:  What's up?

 4                    MR. MESTAS:  Well, I -- I don't know

 5     if I've done something to piss you off or something.

 6     And I -- I -- man, I enjoy my job.  I love it here.

 7     I -- I seem to upset you quite a bit, and I don't

 8     mean to.

 9                    MR. BROWN:  Well, I don't appreciate

10     people arguing with me.  You know, I don't care

11     about (inaudible).  I said I didn't care about

12     (inaudible) truck.  And then you argued with me.  I

13     don't care.

14                    MR. MESTAS:  Okay.

15                    MR. BROWN:  The new truck, I care.

16     Okay?  But --

17                    MR. MESTAS:  Well --

18                    MR. BROWN:  -- I mean, think about it

19     in a realistic manner.  You know, there -- there's

20     what's legal, I suppose, but then there's a real --

21     realism that we live and work in.  That truck breaks

22     down, what's the first thing that's going to happen?

23     You're going to call somebody.

24                    MR. MESTAS:  Right.

25                    MR. BROWN:  How long does it take to
```

4

```
 1   get somebody from here to there?
 2               MR. MESTAS:  Well, that -- that -- I
 3   can understand that point.  I -- I want to get past
 4   that.  I just -- I want to get past that.
 5               MR. BROWN:  Yeah.  But -- well, the
 6   way past it is at least quit arguing with me.
 7               MR. MESTAS:  I -- and I -- and maybe I
 8   don't see that.  And I apologize.  I really do.
 9   Man, I -- I -- I -- I don't intend to.  If I do,
10   say, Roy -- pull me aside and say, Roy, you're
11   arguing with me, don't argue with me, man, please.
12   And I -- I'm sorry.  I really am.  Believe me, from
13   the bottom of my heart.  You know, God knows that
14   I -- I don't -- it's not intentional.  It's not.
15               MR. BROWN:  Well, I -- I want to tell
16   you.  I mean, I'm still frustrated over some of
17   this (inaudible).  I realize you did not hurt your
18   back on purpose.  But I still say get -- you know,
19   there's things you could have done and been in here
20   on light duty.  One of those things sits right there
21   in that corner table.  The -- no, this table.  Over
22   here.
23               MR. MESTAS:  Oh.
24               MR. BROWN:  This (inaudible).  Sit in
25   front of the computer and go through it and do it.
```

```
 1   Everybody here has to do it.  Could have come in and
 2   done that if you'd have just taken the time to say,
 3   Hey, doc.  I mean, you weren't laying in bed.  You
 4   weren't bedridden the whole time.
 5                  MR. MESTAS:  No, sir.
 6                  MR. BROWN:  You were -- I mean, we
 7   seen -- guys saw you up at the mall and various
 8   places.
 9                  MR. MESTAS:  Yeah.  I saw Dan up
10   there.
11                  MR. BROWN:  (Inaudible.)  Doesn't
12   matter.  That's not the point.  The point is you
13   weren't bedridden.
14                  MR. MESTAS:  No.
15                  MR. BROWN:  So you could have come in
16   here and sat.  You could have even done some
17   administrative work.  You could have done lots of
18   little non-weightbearing stuff that would -- not
19   even walking.  But you didn't offer.  You didn't
20   even pursue that.
21                  MR. MESTAS:  Well, neither one of us
22   did, but that's --
23                  MR. BROWN:  What do you mean, either
24   one of us?
25                  MR. MESTAS:  You -- I mean, you could
```

6

1   have said --

2               MR. BROWN:  It's not my job to get --

3   to motivate you in that respect.

4               MR. MESTAS:  Well, I understand that.

5   And -- and you got mad when I was going to suggest

6   maybe there was something I can do over at Town

7   Hall.  You said, No, you're not.

8               MR. BROWN:  You don't work for Town

9   Hall.

10              MR. MESTAS:  I -- I understand that.

11  But I -- I did suggest something.  I -- but my point

12  is I want to get past all this if we can.  It -- I

13  mean, if I pissed you off, please, let's get past

14  this so we can -- we can have a clean slate.  I

15  mean, I come to work.  You know I come to work.

16  I -- I was sick for six weeks, and I come in every

17  single day.  I never called in sick until twice,

18  I've called in, since I've been sick.  Last week,

19  I -- the doctor said, You are not going back to

20  work.

21              MR. BROWN:  Well --

22              MR. MESTAS:  And I says, I need to go

23  back.  She said, No.

24              MR. BROWN:  Well, no, you -- I would

25  rather you not be here when you're sick.  I get

7

```
 1   that.  But the first two Thursdays you're back, you
 2   call in sick.
 3                   MR. MESTAS:  I --
 4                   MR. BROWN:  Two days without a route.
 5                   MR. MESTAS:  Believe me, I know that.
 6                   MR. BROWN:  You know, I have people
 7   outside of our department asking me, Is this a
 8   pattern?
 9                   MR. MESTAS:  That's only twice,
10   though, that it's happened.  And I --
11                   MR. BROWN:  Yeah, but right after you
12   get back from (inaudible).  So, again, I'm being
13   asked by other people outside of our department,
14   Does this guy have a pattern here?  Outside of this
15   department.  Okay.  Just saying.  And I -- I was
16   told that if you were unable to perform your duties,
17   I should have just let you go.  I didn't.  Okay?
18   That was back when you were off on disability.
19                   MR. MESTAS:  Right.
20                   MR. BROWN:  Okay?  And that came from
21   outside this department, from another -- another
22   authority.  I didn't do that, Roy.
23                   MR. MESTAS:  And I thank you.
24                   MR. BROWN:  Then you come back and
25   then you take the two Thursdays in a row off.  I
```

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 281
Case 1:17-cv-00017-NDF   Document 59-4   Filed 11/03/17   Page 8 of 24

8

```
 1  mean, Jesus.  What have I got going on here?  You
 2  know, I'm saying -- and then think about -- think
 3  about your interrelationship with the rest of the
 4  team.  Every Friday -- which you're on a route, but
 5  every Friday they clean this shop.  Every Friday,
 6  they're cleaning over there where you park your
 7  truck, because it leaks out.
 8                  MR. MESTAS:  Right.
 9                  MR. BROWN:  (Inaudible) most of them
10  don't think they should have to clean up after your
11  truck.
12                  MR. MESTAS:  And I don't think they
13  should, either.
14                  MR. BROWN:  Okay.
15                  MR. MESTAS:  I agree with that.
16                  MR. BROWN:  And so that's why you're
17  cleaning it today.
18                  MR. MESTAS:  I've already cleaned it.
19                  MR. BROWN:  I know.  But do you see
20  where I'm going?  I mean, it's not just me.  You --
21  you need to be able to -- I don't know -- work on
22  interfacing with the -- the team as well.
23                  MR. MESTAS:  I -- I thought I did.
24                  MR. BROWN:  Well, just keep working at
25  it, then.
```

9

```
 1              MR. MESTAS:  I -- you know, I have no
 2   rift with anybody.
 3              MR. BROWN:  I don't think that you do.
 4              MR. MESTAS:  I --
 5              MR. BROWN:  But when I say, Leave it
 6   alone, just leave it alone.
 7              MR. MESTAS:  Okay.  You know, in -- in
 8   my defense, like Ron would say, I -- I came back on
 9   the 14th of January.  And I missed the 7th.  I was
10   here almost four weeks before I went home sick, but
11   I was sick for that entire time.  I mean, my chest,
12   I couldn't breathe.  I was having problems.  I -- I
13   got medicine once.  It didn't work.  I went to the
14   doctor and got antibiotics.  That actually worked.
15   And then not even a week later I come down with the
16   goddang flu.  And, I mean, they -- that damn near --
17   I felt like I was dying.  And --
18              MR. BROWN:  Sounded like you were
19   dying.
20              MR. MESTAS:  I -- I was -- I was
21   deathly ill.  My wife was ready to take me to the
22   hospital.  And I told her, I said, I'm going in in
23   the morning.  She goes, No, you're not.  That was
24   Friday morning.  I said, Yes, I am.  She goes, No,
25   you're not.  She said, Your doctor excused you.  I
```

10

```
 1   said, They need me.  She goes, You're not going.
 2   She goes, I'll call an ambulance.  So I didn't come
 3   in Friday.
 4                   MR. BROWN:  Well --
 5                   MR. MESTAS:  And then that's -- I
 6   tried calling you Saturday morning, and you didn't
 7   answer, just because I want -- I want you to know
 8   that I'm -- I like my job.  I'm interested in my
 9   job.  And I -- I mean, I -- when you hired me, I
10   told you, I'll come -- I'm sick when I come to work.
11   I'll come in and I'll -- dragging tail, I'll come to
12   work.  I've always been that way.  And I -- I just
13   don't -- you know, and I feel really bad.  If that's
14   the case that -- that you feel that I'm arguing with
15   you, I'm -- I apologize.  I -- I don't intend to.
16                   MR. BROWN:  Well, let's both work on
17   that a little bit.  The other thing is -- and I want
18   you to keep this firmly fixed in your mind.  Yes,
19   you -- your primary job is sanitation, but by the
20   same token, like on Thursday, like today --
21                   MR. MESTAS:  Uh-huh.
22                   MR. BROWN:  -- you're still a public
23   works employee who could be asked or required to do
24   any other job we have.  I can have you go mow parks
25   if it's summertime.  Or flushing hydrants today
```

11

```
 1   or -- or jetting sewers today.  You need to
 2   cross-train in all of those other areas anyway.
 3             MR. MESTAS:  Understood.
 4             MR. BROWN:  And, you know, but point
 5   is, don't assume that the only thing you're ever
 6   going to do is fix bins and pick up garbage --
 7             MR. MESTAS:  On Thursday?
 8             MR. BROWN:  -- and wash -- yeah -- and
 9   wash your truck.  And, you know, honestly, you
10   should be -- become proficient up on that route.
11   Like Tuesday -- Tuesday, you should be done by
12   1 o'clock at the latest.
13             MR. MESTAS:  You -- with the new
14   truck, I am.
15             MR. BROWN:  Yeah.
16             MR. MESTAS:  But I don't know how it's
17   going to be with the old one with them grabbers.
18   You know, they --
19             MR. BROWN:  Well, it's going to be
20   longer, but we have to drive the old truck.
21             MR. MESTAS:  I -- I never had a
22   problem driving that old boat.
23             MR. BROWN:  You know, if we don't,
24   then it's -- the day we do need it, it won't run.
25             MR. MESTAS:  Yeah.  No, I don't
```

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 285
Case 1:17-cv-00017-NDF   Document 59-4   Filed 11/03/17   Page 12 of 24

12

```
 1   disagree with you on that one bit.  Never have.
 2             MR. BROWN:  And I don't care -- you
 3   know, again, if Friday -- for some reason Friday --
 4   you need to get faster.  Okay?  Because I would like
 5   your Thursdays to free up enough that you can -- or
 6   your days during the week, the other four days --
 7   and I realize Monday and Wednesday are pretty long
 8   days.  But Tuesdays and Fridays seems to me that you
 9   could shorten them up enough that you could get your
10   wash -- get your truck washed, get your -- your rack
11   greased, maybe even have time to go out there and
12   repair a bin.  You know, if you maintain them as you
13   go, you don't have 20 of them to do all of a sudden.
14             MR. MESTAS:  Right.
15             MR. BROWN:  You know.
16             MR. MESTAS:  And that's what I've been
17   trying to do --
18             MR. BROWN:  (Inaudible) keep building
19   up, then -- and you're not the only one that's let
20   them build up.  So I'm not just pointing at you.
21   You haven't been doing it long enough to let them
22   build up like that.  Others have.  Okay?  But if you
23   let them get ahead of you, that's all you're going
24   to do and then it makes it harder and harder to do
25   the route.
```

13

```
 1              MR. MESTAS:  Then you're chasing your
 2   tail.
 3              MR. BROWN:  Well, you can't get the
 4   route done in any decent amount of time because you
 5   can't get hooked up.  So I -- you know, it's a
 6   catch-22.  Take your time to get it straightened up.
 7   Write them down, do whatever you need to do, get
 8   back at them, get them level, get a new hook, get a
 9   new lid.  I don't care.  Okay?  It's the last thing
10   I want.  I don't want any complaints on that route.
11   Okay?  That's a damn good truck.  Yes, it has a few
12   problems, but it's a good truck.  You know, so it
13   will do a good job.  And the whole idea was that
14   that truck would be able to do not necessarily twice
15   as fast or twice as much, but with this added
16   capacity and speed, obviously it's way faster, way
17   more efficient than the old truck.  The old truck
18   wasn't all that bad.  It's what we had that was
19   better (inaudible) truck.
20              MR. MESTAS:  Right.
21              MR. BROWN:  So as far as you and I,
22   boy, don't argue with me.  It just sits wrong.
23              MR. MESTAS:  Well, and -- and I
24   understand that.  And like I said, I apologize.  I
25   didn't realize I was -- honestly.  I didn't realize
```

14

```
 1   I was arguing with you.
 2               MR. BROWN:  Well, I said -- you said
 3   it needed (inaudible).  I don't care about that.
 4   And then you kept right on going saying it needed
 5   it.
 6               MR. MESTAS:  I didn't hear you.
 7   That's probably why I did that, Dale.
 8               MR. BROWN:  Well, maybe.  Maybe we
 9   should both learn to listen better.
10               MR. MESTAS:  Yeah.  And as far as the
11   Friday route, I'm usually done by about 2:30, 2:45
12   with the route.  But then I've got to fuel it and --
13   and everything else, and I come back and clean it.
14   And I -- I don't --
15               MR. BROWN:  That's fine.  Come back
16   and clean it, you know.
17               MR. MESTAS:  Yeah.
18               MR. BROWN:  That's all well and good.
19               MR. MESTAS:  Well, I clean out the
20   inside, the back -- the back part of it.
21               MR. BROWN:  Yeah.
22               MR. MESTAS:  But I -- I don't rush to
23   where it gets to an unsafe or -- you know, picking
24   up the bin, dropping a bin.  I want to make sure I
25   pick it up or don't tear something up.  So, you
```

15

```
 1   know, I take a couple extra minutes to pick up a
 2   bin, where I don't with the rollout, because the
 3   rollouts, you know, you pick them up.  Make sure you
 4   don't (inaudible) lids if they're open, but still
 5   I -- and then sometimes I have to pick up -- get out
 6   and pick up a bunch of trash.  Aspens, they're
 7   famous for that.
 8              MR. BROWN:  Uh-huh.  Yeah.  It's not
 9   going to change.
10              MR. MESTAS:  No.  And so I get out all
11   the time, in and out.
12              MR. BROWN:  But, you know, when --
13   they're paying a different rate than -- than
14   everybody else, too.  Just so you know.  I mean, we
15   understood what it was going to be like.  No.  We
16   did.  We went up and looked at what they had before
17   we took it over.
18              MR. MESTAS:  What was it, BFI or
19   somebody?
20              MR. BROWN:  Yeah.  And we looked at
21   what the situation was with their -- but BFI would
22   do nothing to maintain their -- their equipment up
23   there.  So, I mean, it just made it worse and worse
24   and worse.  Well, you know, if we take care of our
25   equipment, at least a percentage of those people
```

16

```
 1   will treat it right and do the right thing.  And
 2   there's the other percent, no matter what you do,
 3   they're just animals.  That's just all there is to
 4   it.
 5             MR. MESTAS:  Yeah.  It's true, they
 6   are.
 7             MR. BROWN:  You can't fix that.
 8             MR. MESTAS:  No.
 9             MR. BROWN:  You can't fix it.
10             MR. MESTAS:  You can ask them.  I've
11   asked them several times.  You know, they've got an
12   overflow bin up there, but...
13             MR. BROWN:  And any of those bins that
14   are sitting in front of an empty --
15             MR. MESTAS:  Trailer?
16             MR. BROWN:  -- trailer, first off,
17   write down the lot number and go to the office.  And
18   that's something you can do after you're done with
19   the route, go back up there, go to the office, find
20   out which ones are empty.  Pick those bins up.
21             MR. MESTAS:  Yeah.
22             MR. BROWN:  Get them back here before
23   they get damaged or -- or -- because the wind will
24   blow, and (inaudible).
25             MR. MESTAS:  And they've done that.
```

17

```
 1              MR. BROWN:  Well, they're going to do
 2    that.  It's up to us to manage it.  They're not
 3    going to manage it.  (Inaudible.)  So -- and that's
 4    what I'm saying.  But I'm not going to follow you
 5    around and tell you everything to do.
 6              MR. MESTAS:  Well, I -- I think I'm
 7    doing a fairly decent job.  I don't know how you
 8    feel about me.
 9              MR. BROWN:  Well, you're here.
10              MR. MESTAS:  Yeah.
11              MR. BROWN:  Yeah.
12              MR. MESTAS:  So I -- I mean, I really
13    haven't screwed anything up really bad.
14              MR. BROWN:  Yet.
15              MR. MESTAS:  Knock on wood.
16              MR. BROWN:  Everybody does sooner or
17    later.
18              MR. MESTAS:  Yeah.  Well, I -- I'm
19    glad I got to talk to you.  I -- I -- because it's
20    been -- it's been really bugging the hell out of me.
21    I -- I -- I just -- you know, for whatever reason it
22    was, I knew that there -- you weren't happy about
23    something.  And -- and I had to talk to you.  I just
24    had to talk to you.
25              MR. BROWN:  Right.
```

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 291
Case 1:17-cv-00017-NDF   Document 59-4   Filed 11/03/17   Page 18 of 24

18

1              MR. MESTAS:  And it -- it was

2    personally between you and I.  It has nothing to do

3    with Brian personally.  It's -- you know, I talk --

4    never have -- I don't think I've ever had anything

5    bad with Brian, ever.  I mean --

6              MR. BROWN:  Yeah.  I'm -- I'm a

7    different -- entirely different type personality

8    than Brian, of course.  But that's not -- that's not

9    necessarily bad, but it's not necessarily very good

10   either.

11             MR. MESTAS:  Yeah.  I mean --

12             MR. BROWN:  I am who I am.  And --

13             MR. MESTAS:  Yeah.

14             MR. BROWN:  -- that's my age.  I got

15   to be very honest with you, I'm probably not going

16   to change a whole lot.

17             MR. MESTAS:  Probably not.  I mean,

18   it -- that's okay.  But we can still live and work

19   together.  I mean, I -- I don't have to go home with

20   you, but I still got to work with you.

21             MR. BROWN:  You ain't going home with

22   me.  (Inaudible) you've seen the other two.

23             MR. MESTAS:  Yeah.

24             MR. BROWN:  I will (inaudible).

25             MR. MESTAS:  All right, Dale.

19

```
 1                    MR. BROWN:  All right.

 2                    MR. MESTAS:  I apologize.

 3                    MR. BROWN:  All right.

 4                    MR. MESTAS:  I really do.  And if I do

 5   it again, I mean, it's not intent- -- just say, Roy,

 6   come here.

 7                    MR. BROWN:  Yeah.

 8                    MR. MESTAS:  You know, grab me by the

 9   goddamn ear or something and say, Quit it.

10                    MR. BROWN:  All right.  That's fine.

11   And in the meantime (inaudible).  Because they walk

12   in it and it stinks and they get it on their shoes.

13                    MR. MESTAS:  I know.

14                    MR. BROWN:  (Inaudible.)

15                    MR. MESTAS:  Spring will be coming up,

16   we won't have to have it in there, but --

17                    MR. BROWN:  Yeah.  Another couple

18   months, (inaudible).

19                    MR. MESTAS:  I got a bin over here on

20   Evans alley that the hook that ripped -- the bolt

21   ripped out of it, but the base of it -- it's a

22   3-yard.  It's just so rotted out that --

23                    MR. BROWN:  Well, don't tell me.  Do

24   it.  Take care of it.

25                    MR. MESTAS:  Well, I'm (inaudible).
```

20

```
 1              MR. BROWN:  See, that -- see, that's
 2   another thing.  Now, I know -- I realize right now
 3   that the -- the John Deere won't start.  And I --
 4   somebody's got to call (inaudible).  But -- and
 5   sometimes I assume you know what I expect when I
 6   tell you to do something.  We used to go over there
 7   and just take the bucket -- put the bucket on the
 8   skid steer.  Hook the damn bucket underneath the
 9   hooks, lift it up, and drive the damn thing over to
10   where it's got to go.  It'll stay on the -- on the
11   bucket if the bucket's up a ways, you know, where it
12   stays on there.  Yeah, you only get that much, but
13   we've driven them all over town.  And swap them out
14   that way.
15              We've also -- and I've done it by myself.
16   Everybody here -- not everybody here.  Too many new
17   people.  But most of the people that are here, Dan,
18   Brian, myself, Eric, we've had to deliver a bin and
19   we were by ourselves.  We didn't do it that way.  We
20   just used a hoist, lifted them up with the chain and
21   the hoist and put them on the flatbed.
22              MR. MESTAS:  On the flatbed?
23              MR. BROWN:  Take them over, drop them
24   off.  Pick up the other one.  Slide them around,
25   whatever we had to do.  Or go over to get the one
```

Appellate Case: 17-8092    Document: 01019955822    Date Filed: 03/08/2018    Page: 294
Case 1:17-cv-00017-NDF   Document 59-4   Filed 11/03/17   Page 21 of 24

21

```
1   that we're replacing, bring it back, drop it off,
2   pick up what we want to take over, and do it that
3   way.  You can do that all by yourself.
4                  MR. MESTAS:  Yeah.  This --
5                  MR. BROWN:  You know?
6                  MR. MESTAS:  -- particular case, can't
7   use the skid steer because it's -- or bucket because
8   of the hook is ripped.
9                  MR. BROWN:  Yeah.  Well, now I gave
10  you a different option.
11                 MR. MESTAS:  Yeah.  I understand.
12                 MR. BROWN:  But you don't -- you don't
13  always need help.  Sometimes you got to use a
14  creativeness, think about how else can I do it.
15                 MR. MESTAS:  Well, I'm learning.
16                 MR. BROWN:  Okay.
17                 MR. MESTAS:  I'm learning.  I mean, I
18  haven't ever done trash, so -- and I -- I'm learning
19  all the tricks of the trade.
20                 MR. BROWN:  And it's not a bad job.
21                 MR. MESTAS:  No.  I have no complaints
22  about it.  I mean, it's -- it -- you sit in the cab
23  by yourself all day long, it gets kind of boring,
24  but --
25                 MR. BROWN:  Yeah.  You know, if you
```

22

```
 1   don't like what you're listening to on the radio,

 2   bring some CDs in.

 3                  MR. MESTAS:  True.  You know.

 4                  MR. BROWN:  I got it with a CD player,

 5   buddy.

 6                  MR. MESTAS:  I didn't know that.

 7                  MR. BROWN:  Yeah.  It's got a CD

 8   player.

 9                  MR. MESTAS:  Oh.  Okay.

10                  MR. BROWN:  You're welcome to listen

11   to it.

12                  MR. MESTAS:  Well, I listen to the

13   radio, but --

14                  MR. BROWN:  I think it's got a CD

15   player in it.

16                  MR. MESTAS:  I don't know.  I don't

17   know.

18                  MR. BROWN:  I know our backhoe and

19   our -- and our loader got it.

20                  MR. MESTAS:  The skid steer does, too,

21   I think.

22                  MR. BROWN:  No.  It's just got a radio

23   in it.

24                  MR. MESTAS:  Is it just a radio?

25                  MR. BROWN:  Yeah.  It's got
```

23

```
 1   (inaudible) on it.

 2              MR. MESTAS:  Nice.  Okay.  Well, I'm

 3   going to grab somebody to help me with the one-ton

 4   over there, if that's okay.

 5              MR. BROWN:  Yeah.

 6              MR. MESTAS:  Okay.

 7              MR. BROWN:  Eric knows how to do it.

 8              MR. MESTAS:  Okay.  I'll grab Eric,

 9   then.  Thank you, Dale.  And I apologize again.

10              MR. BROWN:  All right.

11                  (Pause in voices.)

12              MR. MESTAS:  Have you seen Eric?  Seen

13   Eric?

14              MALE SPEAKER:  He was here a few

15   minutes ago.  He was over here a few minutes ago.

16                  (Inaudible voices.)

17              MR. MESTAS:  Thank you, Brian.  I

18   appreciate that.

19                  (Inaudible voices.)

20              MR. MESTAS:  Huh?

21                  (Inaudible voices.)

22                  (Pause in voices.)

23                  (End of audio recording.)

24

25
```

Appellate Case: 17-8092   Document: 01019955822   Date Filed: 03/08/2018   Page: 297
Case 1:17-cv-00017-NDF   Document 59-4   Filed 11/03/17   Page 24 of 24

24

```
 1              C E R T I F I C A T E

 2           I, SABRINA TREVATHAN, a Registered

 3    Diplomate Reporter, do hereby certify that I

 4    transcribed the audio-recorded proceedings contained

 5    herein and that the foregoing 23 pages constitutes a

 6    full, true, and correct transcript, to the best of

 7    my ability.

 8           I further certify that I am not related in

 9    any manner to any party, witness, or counsel, and

10    have no financial or other interest in the outcome

11    of the above-entitled cause.

12           Dated this 19th day of June, 2017.

13

14    _____

15                    SABRINA TREVATHAN
                  Registered Diplomate Reporter
16

17

18

19

20

21

22

23

24

25
```