# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ROY MESTAS,              )

Plaintiff/Appellant,     )

v.                    )     Case No. 17-8092

TOWN OF EVANSVILLE, )
WYOMING,             )

Defendant/Appellee.   )

---

On Appeal from the United States District Court
for the District of Wyoming

The Honorable Nancy D. Freudenthal
District Court Judge

D.C. No. 17-CV-00017-NDF

---

## APPELLEE TOWN OF EVANSVILLE, WYOMING'S BRIEF

---

Thomas A. Thompson, #6-2640
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713
tthompson@wyomingattorneys.net
Attorney for Defendant
Town of Evansville, Wyoming

ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE  ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE  CASE AND FACTS  . . . . . . . . . . . . . . . . . . . . . . .  1

STANDARD OF  REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Argument 1.      The Court should affirm the District Court's order
                          granting summary judgment in favor of the Town of
                          Evansville on Mr. Mestas's ADA claim of retaliation as
                          there is no genuine issue as to any material fact and  the
                          Town, as the  moving party,  is entitled to judgment in its
                          favor as a matter of law  . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.      Applicable Standard of Review . . . . . . . . . . . . . . . . . . . . . . . 10

B.      ADA-Related Claims Which Are Not at Issue in This Appeal
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       (1)      Mr. Mestas is not challenging the District Court's grant
                of summary judgment to the Town on his claim of
                "Hostile Work Environment Based on Disability in
                Violation of the ADA."  . . . . . . . . . . . . . . . . . . . . . . 11

       (2)      Mr. Mestas is not challenging the District Court's grant
                of summary judgment to the Town on his claim of
                "Retaliation in Employment for Taking Protected
                Medical Leave for a Disability, in Violation of the
                ADA."  Mr. Mestas is now arguing  an ADA  retaliation
                claim  under 42 U.S.C. § 12203(b) survives summary
                judgment  based on Mr. Mestas's "reasonable, good faith

                belief that he was disabled" and he needed an
                accommodation at work . . . . . . . . . . . . . . . . . . . . . . . 13

C.      Discussion of ADA Retaliation Issues Raised on Appeal . . . 14

    (1)    Statutory Provisions; Elements of Prima Facie Case of
             ADA Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    (2)    This Court should affirm the District Court's order
             granting summary judgment to the Town on Mr.
             Mestas's ADA claim of "Retaliation in Employment for
             Taking Protected Medical Leave for a Disability, in
             Violation of the ADA" as originally plead, presented,
             and argued to the District Court . . . . . . . . . . . . . . . . . . 15

    (3)    This Court should apply "Theory Forfeiture" to Mr.
             Mestas's argument that he presented sufficient evidence
             to survive summary judgment based on an ADA
             retaliation claim based on Mr. Mestas's "reasonable,
             good faith belief that he was disabled and needed an
             accommodation at work." . . . . . . . . . . . . . . . . . . . . . . 22

D.      Relief Sought on Mr. Mestas's ADA Retaliation Claim . . . . 25

Argument 2.      The Court should affirm the District Court's order
                  granting summary judgment in favor of the Town of
                  Evansville on Mr. Mestas's claim of discrimination
                  based on national origin as there are no genuine issues as
                  to any material fact and the Town, as the moving party,
                  is entitled to judgment in its favor as a matter of law
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A.      Applicable Standard of Review . . . . . . . . . . . . . . . . . . . . . . 26

B.      Discussion of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    (1)    Mr. Mestas was not subjected to national origin based
             harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    (2)    Discussion of law applicable to Mr. Mestas's claim of
             national origin based harassment . . . . . . . . . . . . . . . . 30

    (3)    Mr. Mestas was not discharged from his employment due
             to his national origin nor in retaliation for having
             complained to Mr. Brown concerning his comments
             about Hispanics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

C.      Relief Sought on This Issue . . . . . . . . . . . . . . . . . . . . . . . . . 37

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT . . . . . . . . 40

CERTIFICATE OF PRIVACY REDACTIONS
    AND DIGITAL SUBMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

APPENDIX

# TABLE OF AUTHORITIES

## Cases

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136 (10th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261 (10th Cir.2015) . . . . . . . 8

*Chavez v. New Mexico,* 397 F.3d 826 (10th Cir.2005) . . . . . . . . . . . . . . . . . . . . . 31

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999)  . . . . 20, 21

*Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189 (10th Cir.2011)  . . . . . . . . . . . . . 9

*Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168 (10th Cir.2014) . . . . . . . . 9, 11, 26

*Dick v. Phone Directories Co.*, 397 F.3d 1256 (10th Cir.2005) . . . . . . . . . . . 18, 35

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . 35

*Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178 (10th Cir.2016)  . . . . . . 8, 9, 15

*Hansen v. Skywest Airlines,* 844 F.3d 914 (10th Cir.2016)  . . . . . . . . . . . . . . . . 36

*Hernandez v. Valley View Hosp. Ass'n.*, 684 F.3d 950 (10th Cir.2012)  . . . . . . . 32

*Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675 (10th Cir.2007)  . . . . . . . . . 33-35

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir.2000) . . . . . . . . . . . . . . 11, 27

*Lounds v. Lincare, Inc.*, 812 F.3d 1208 (10th Cir.2015)  . . . . . . . . . . . . . 11, 27, 32

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) . . . . . . . . . . . . . . . . . . . . . . 30

*Morris v. City of Colorado Springs,* 666 F.3d 654 (10th Cir.2012) . . . . . . . . . . . 32

iv

*Moss v. Harris County Constable Precinct One,* 851 F.3d 413 (5th Cir.2017) . . 20

*Motley v. New Jersey State Police*, 196 F.3d 160 (1999) . . . . . . . . . . . . . . . . . . 21

*O'Shea v. Yellow Tech. Services, Inc.*, 185 F.3d 1093 (10th Cir.1999) . . . . . . . . 31

*Parker Excavating, Inc. v. Lafarge West, Inc., et.al,* 863 F.3d 1213 (10th Cir.2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Proctor v. United Parcel Serv.*, 502 F.3d 1200 (10th Cir.2007) . . . . . . . . . . . . . 9

*Richison v. Ernest Grp., Inc.,* 634 F.3d 1123 (10th Cir.2011) . . . . . . . . . . . . . . 23

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955 (10th Cir.2002) . . . . 18

**Statutes**

42 U.S.C. § 12102(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 12203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

42 U.S.C. § 2000e-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30

**Prior and Related Cases Statement**

    There are no prior or related cases.

## JURISDICTIONAL STATEMENT

Appellee, Town of Evansville, Wyoming ["Town"], agrees with Appellant's Jurisdictional Statement. (Appellant Roy Mestas's Opening Brief, p. 1).

## STATEMENT OF THE ISSUES

This appeal challenges the District Court's grant of summary judgment in favor of the Town on Mr. Mestas's claims of retaliation under the Americans with Disabilities Act ["ADA"] and discrimination based on national origin under Title VII. The Town would state the issues before the Court slightly differently:

> Issue One: Does all the evidence presented and all reasonable inferences that may be drawn therefrom demonstrate that there are genuine issues of material fact as to whether the Town of Evansville retaliated against Mr. Mestas for engaging in protected activities under the Americans with Disabilities Act?

> Issue Two: Does all the evidence presented and all reasonable inferences that may be drawn therefrom demonstrate that there are genuine issues of material fact as to whether Supervisor Brown's discharge of Mr. Mestas and use of national origin epithets and derogatory comments violated Title VII?

## STATEMENT OF THE CASE AND FACTS

The Town would provide the following statement of the material facts in the case as follows:

1.     The Town of Evansville is a municipal corporation located in Natrona County, Wyoming.  Roy Mestas was an employee of the Town from September 24, 2012, to April 17, 2013. (Aplt. App. at 46-56).

2.     Mr. Mestas's *Amended Complaint* set forth three counts or causes of action: Discrimination Based on National Origin; Hostile Work Environment Based on Disability, in Violation of the ADA; Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.  *Id*.

3.     The Town's *Motion for Summary Judgment* (*Id*. at 103) was directed to all three counts or causes of action set forth in Mestas's *Amended Complaint*, *i.e.* Discrimination Based on National Origin; Hostile Work Environment Based on Disability, in Violation of the ADA; Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.  *Id*.

4.     The Town's *Motion for Summary Judgment* was based upon pertinent parts of Mestas's deposition testimony and pertinent deposition exhibits (*Id*. at 98-102, 105-19, 120-39, 662-718), Mestas's responses to requests for admissions (*Id*. at 106-10), and Mestas's answers to interrogatories (*Id*. at 112-9), which for purposes of the motion were undisputed material facts:

A.     Mr. Mestas suffered an injury on November 26, 2012. *Id*. at 106. Mr. Mestas was treated for the injury by Dr. Demian Yakel. *Id*. Mr. Mestas

was off work due to his work injury for approximately 6-7 weeks, *i.e.*, from November 26, 2012, to January 14, 2013. *Id.* at 107.

B.    On January 14, 2013, Dr. Yakel released Mr. Mestas to return to work to his regular duties with the Town with no restrictions. *Id.* The medical release contained no information concerning a physical impairment; it contained no information concerning whether Mr. Mestas had a physical impairment which substantially limited a major life activity as compared to most people in the general population. 29 C.F.R. 1630.2(j), (Aplee. Supp. App. at 23; Aplt. App. at 662-178).

C.    Between January 14, 2013, and April 17, 2013 [the date of Mr. Mestas's termination from employment], Mr. Mestas did not present the Town with any doctor's statement or order which stated he had any restrictions regarding the performance of his regular job duties with the Town. (Aplt. App. at 107).

D.    Mr. Mestas submitted an affidavit of Yvonne Currie of Casper Orthopaedic Associates, P.C., a supervisor whose duties included supervising the medical records department of Casper Orthopaedic Associates, P.C., to which eighty-seven (87) pages of various medical records were attached. *Id.* at 780-866. Mr. Mestas did not designate any healthcare provider or treating physician as an expert in this matter who could testify as to the content of those medical records

3

and explain his physical condition, disability, or physical impairment, if any there
were.

      E.     When Mr. Mestas returned to work at the Town on January 14,
2013, he returned to the same position and all the duties he held on November 26,
2012. (Aplt. App. at 107).

      F.     The Town expected Mr. Mestas to perform all the duties
required of his position when he returned to work on January 14, 2013, through
the date of his termination. *Id*.

      G.     When Mr. Mestas returned to work on January 14, 2013, there
were no changes in his job duties from those which existed on November 26,
2012; there was no reduction in his pay from what he was being paid on
November 26, 2012; there was no reduction in his benefits provided by the Town
from what were being provided on November 26, 2012; there was no reduction in
the amount of work tasks that he was assigned from that which he performed on
November 26, 2012; there was no reduction in the nature of work tasks that he was
assigned from that which he performed on November 26, 2012. *Id*. at 108.

      H.     Mr. Mestas described Mr. Brown's conduct as being harsh and
condescending; that Mr. Brown would not let him use his personal snow blower
on one occasion, and Mr. Brown had him do his job without assistance. *Id*. at

692-3.  Mr. Mestas testified he had sought counseling, but the counseling was not related to his termination from employment with the Town of Evansville.  *Id.* at 698.

      I.     In response to requests for admissions, Mr. Mestas admitted Mr. Brown spoke the words "stupid beaner" or "dumb Mexican" on three occasions between February 22, 2013, and  April 17, 2013.  *Id.* at 108.  The first two occasions were February 22, 2013, and March 27, 2013.  *Id.* at 50, 334-40, 694; Aplee. Supp. App. at 9.  The third occasion was on April 15, 2013, when  Mr. Mestas asked to use his own personal snow blower to shovel snow at Town Hall. Mr. Mestas testified Mr. Brown  refused the request  saying it would take him too long to get his snow blower which was at Mr. Mestas's home a few blocks away, and told Mr. Mestas "that's what I have Mexicans for, to do this work" or words to that effect.  (Aplt. App. at 112-3).   On or about April 1, 2013, Mr. Mestas told Mr. Brown that he did not like those comments ["stupid beaner" and/or "dumb Mexican"] and not to use those comments.  *Id.* at 108, 115.

      J.     In response to Interrogatory No. 11, which asked how many different occasions Mr. Mestas personally heard Mr. Brown speak the words "Stupid Beaner" or "Dumb Mexican," who those words were directed to, and where it occurred, Mr. Mestas answered :

I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees.  <u>These were general comments, references and jokes, not directed specifically at any one person,</u> that included derogatory references about Hispanics.  Also before and during weekly morning meetings in the Public Works maintenance garage in the presence of other Public Works employees, Dale Brown and other employees would joke about Hispanics or other ethnic and racial minority groups.  I personally heard Dale Brown make derogatory comments about Hispanics on at least six occasions, if not more.  (Emphasis added.)

*Id.* at 115.

> K.     Mr. Mestas did not file a grievance with the Town concerning Mr. Brown's comments as described  above; did not file a formal written complaint with the Town concerning Mr. Brown's comments as described above; did not file an informal complaint with the Town concerning Mr. Brown's comments as described above; did not personally speak to any of Mr. Brown's supervisors at the Town concerning Mr. Brown's comments; or, personally speak to the mayor or any council members at the Town concerning Mr. Brown's comments. *Id.* at 109.

> L.     Mr. Mestas's employment with the Town  was terminated on April 17, 2013. *Id.* at 77-8, 84, 680; Aplee. Supp. App. at 9.  On May 3, 2013, Mr. Mestas filed a claim with the EEOC claiming discrimination based on national

origin and disability and stating that he was qualified for his job with the Town and was performing satisfactorily. Aplee. Supp. App. at 8-12. On May 16, 2013, Mr. Mestas filed a claim for Social Security Disability benefits, asserting he was disabled from working beginning on April 16, 2013. (Aplt. App. at 85, 116). He was awarded SSDI benefits on April 14, 2014, and found to be disabled as of April 16, 2013. (Aplt. App. at 85; Aplee. Supp. App. at 13-22). Mr. Mestas filed the action which is now before this Court in 2017. (Appellant Roy Mestas's Opening Brief).

5.     The District Court granted summary judgment in favor of the Town on all three counts or causes of action of Mestas's *Amended Complaint*, as well as on the Title VII retaliation, which was not included in his *Amended Complaint*, but which Mr. Mestas claimed occurred when he was terminated after complaining to Mr. Brown about the use of the term "beaner." (Aplt. App. at 719-35).

6.     On appeal to this Court, Mr. Mestas asks this Court to reverse the District Court's grant of summary judgment on an ADA retaliation claim and the Title VII discrimination based on national origin claim, but does not challenge the District Court having granted summary judgment to the Town on the ADA hostile work environment claim.

Mr. Mestas no longer argues or bases his ADA retaliation claim on Mr.

Mestas being a qualified person with a disability because of a record of disability

based on his medical leave following his work injury, consistent with his *Amended

Complaint* or *Motion for Partial Summary Judgment* or *Brief* in support of said

motion, filed with the District Court.  (Aplt. App. at 46-56, 79-94).  Mr. Mestas

now argues an ADA retaliation claim based on Mr. Mestas's "reasonable, good

faith belief that he was disabled" and needed accommodation at work. (Appellant

Roy Mestas's Opening Brief, at 22).

## STANDARD OF REVIEW

Summary judgment is governed by Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or
> defense--or the part of each claim or defense--on which summary
> judgment is sought. The court shall grant summary judgment if the
> movant shows that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law. The court
> should state on the record the reasons for granting or denying the
> motion.

This Court reviews a grant of summary judgment *de novo*, using the same

materials and following the same standards as the district court.  *Bennett v.

Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265 (10th Cir.2015) (citing

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th

Cir.2008)); *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th

8

Cir.2016) (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1205 (10th

Cir.2007)); *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir.2014)

(citing *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir.2011)).

When conducting a summary judgment review, this Court construes the record in

the light most favorable to the party opposing the motion, affording that party the

benefit of all reasonable inferences. *Foster*, at 22; *Proctor* at 1205.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's order granting summary

judgment to the Town of Evansville on all causes of action or counts.

Specifically, as it relates to Mr. Mestas's ADA retaliation claim: Before the

District Court, Mr. Mestas's claimed he was retaliated against in his employment

for taking protected medical leave for a disability in violation of the ADA. Mr.

Mestas failed to present sufficient evidence that established there was a genuine

issue of material fact, and failed to show that his medical leave was protected

activity under the ADA. On appeal before this Court, Mr. Mestas raises, for the

first time on appeal, a new theory as to his ADA retaliation claim. Mr. Mestas now

argues that he had a "reasonable, good faith belief that he was disabled and needed

an accommodation in his work." Under "theory forfeiture," this new theory of

ADA retaliation should be considered forfeited since it was not presented to the

9

District Court, and because Mr. Mestas has failed to establish the District Court's decision was plain error.

As it relates to the Title VII discrimination based on national origin claims: Taking Mr. Mestas's testimony and description of events as true, the conduct described is not legally sufficient to establish that a hostile work environment based on national origin existed. The matters complained of were isolated incidents, were general in nature, and did not target Mr. Mestas; there was not a steady barrage of opprobrious comments such as to permeate the workplace with discriminatory intimidation, ridicule and insult so as to be sufficiently severe or pervasive, as a matter of law, to alter the conditions of employment. There was no evidence presented by Mr. Mestas that demonstrated there was a genuine issue of material fact that Mr. Mestas's national origin was a motivating factor in his termination from employment with the Town.

**Argument 1.**  **The Court should affirm the District Court's order granting summary judgment in favor of the Town of Evansville on Mr. Mestas's ADA claim of retaliation as there is no genuine issue as to any material fact and the Town, as the moving party, is entitled to judgment in its favor as a matter of law.**

**A.**  **Applicable Standard of Review.**  On appeal, this Court reviews, *de novo*, the District Court's grant of summary judgment in favor of the Town. The

standard for summary judgment is well known. "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Davis, supra,* at 1170; *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1220 (10th Cir.2015). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and an issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Lounds, supra.* As stated above, the Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party. *Lounds, supra.* Even so, in order to survive a motion for summary judgment, the non-movant (in this case, Mr. Mestas) must still identify sufficient evidence, meaning evidence which establishes material facts which create a genuine dispute, which dispute requires submission to the jury. *Id.* Failure to present evidence necessary to prove an essential element renders all other facts immaterial. *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1212 (10th Cir.2000).

**B.     ADA-Related Claims Which Are Not at Issue in This Appeal.**

**(1)     Mr. Mestas is not challenging the District Court's grant of summary judgment to the Town on his claim of "Hostile Work Environment Based on Disability in Violation of the ADA."**

11

Mr. Mestas  asserted two ADA claims in the *Amended Complaint* before the District Court: (1) "Hostile Work Environment [harassment] Based on Disability in Violation of the ADA" (with the disability being of the "record of impairment" disability type as provided by 42 U.S.C. § 12102(1)(B)); and, (2) "Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA." (Aplt. App. at 46).  The Town  moved for summary judgment on the ADA retaliation claim as then framed by Mr. Mestas as well as the ADA hostile work environment [harassment] claim.  *Id.*  The District Court granted the Town's motion on both claims and dismissed both of Mr Mestas's ADA-based claims, with prejudice.  *Id.*

Mr. Mestas's Notice of Appeal appeared to challenge the District Court's grant of summary judgment in favor of the Town on both the ADA hostile work environment claim [harassment] and the ADA retaliation claim as had then been framed by Mr. Mestas.  However, Mr. Mestas presents no argument to this Court challenging the District Court having granted the motion for summary judgment in favor of the Town on his claim of "Hostile Work Environment Based on Disability in Violation of the ADA."  What was originally alleged and argued to the District Court to establish a separate claim of hostile work environment [harassment]

12

based on disability is now argued to be evidence of ADA retaliation in violation of

42 U.S.C. § 12203(b).

> **(2)    Mr. Mestas is not challenging the District Court's grant of
> summary judgment to the Town on his claim of "Retaliation in
> Employment for Taking Protected Medical Leave for a Disability,
> in Violation of the ADA." Mr. Mestas is now arguing an ADA
> retaliation claim under 42 U.S.C. § 12203(b) survives summary
> judgment based on Mr. Mestas's "reasonable, good faith belief
> that he was disabled" and he needed an accommodation at work.**

Before the District Court, the ADA retaliation claim in his *Amended*

*Complaint* was framed as "Retaliation in Employment for Taking Protected

Medical Leave for a Disability, in Violation of the ADA." (Aplt. App. at 46-56).

Mr. Mestas's motion for partial summary judgment sought to establish "Mr.

Mestas had an actual disability that was reasonably accommodated with medical

leave, leave to which Mr. Mestas was entitled and that constitutes protected

conduct for purposes of his ADA retaliation claim." *Id*. at 82. Mr. Mestas's brief

in opposition to the Town's *Motion for Summary Judgment* (*Id*. at 147-71) stated

that "a plaintiff need not show that []he suffers from an 'actual disability' "and that

"the ADA protects 'any individual' who has opposed any act or practice made

unlawful by the ADA. . . ." *Id*. at 166. Mr. Mestas did not, however, specifically

argue to the District Court that his ADA retaliation claim was, or should be, based

on Mr. Mestas's "reasonable, good faith belief that he was disabled and needed an

13

accommodation at work." To the contrary, Mr. Mestas specifically represented to the District Court in his motion for partial summary judgment, that he was "able to perform his job duties without accommodation" and specifically claimed that Brown engaged in ADA retaliation for Mr. Mestas taking ADA protected medical leave. *Id.* at 92-3.

Now, on appeal to this Court, it appears that Mr. Mestas is not, per se, challenging the District Court's granting summary judgment to the Town on the ADA retaliation claim as framed by his *Amended Complaint*, of "Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA." Instead, Mr. Mestas is asserting a new theory that an ADA retaliation claim survives, or should survive, summary judgment in favor of the Town based on Mr. Mestas's "reasonable, good faith belief that he was disabled and needed an accommodation at work." Mr. Mestas also now characterizes certain activities as requests for reasonable accommodations under the ADA which were formerly argued to be retaliatory acts by Mr. Brown for Mr. Mestas having taken ADA protected medical leave.

**C.    Discussion of ADA Retaliation Issues Raised on Appeal.**

**(1)    Statutory Provisions; Elements of Prima Facie Case of ADA Retaliation.**

42 U.S.C. § 12203(b), provides in pertinent part,  as follows:

**§ 12203.  Prohibition against retaliation and coercion**
      \* \* \*
**(b) Interference, coercion, or intimidation**
It shall be unlawful to coerce, intimidate, threaten, or interfere
with any individual in the exercise or enjoyment of, or on
account of his or her having exercised, or enjoyed, or on
account of his or her having aided or encouraged any other
individual in the exercise or enjoyment of, any right granted or
protected by this chapter.

To establish a prima facie case of ADA retaliation, a plaintiff must prove

that (1) he engaged in a protected activity; (2) he was subjected to an adverse

employment action subsequent to or contemporaneous with the protected activity;

and (3) there was a causal connection between the protected activity and the

adverse employment action.  *Foster, supra* at 1186-87.

> **(2)**   **This Court should affirm the District Court's order granting
> summary judgment  to the Town on Mr. Mestas's ADA claim of
> "Retaliation in Employment for Taking Protected Medical Leave for a
> Disability, in Violation of the ADA" as originally plead,  presented, and
> argued to the District Court.**

Mr. Mestas's *Amended Complaint* and Mr. Mestas's *Motion for Partial*

*Summary Judgment* and *Brief* in support of that motion, claimed Mr. Mestas had

suffered ADA retaliation by Mr. Brown for taking ADA protected medical leave.

(Aplt. App. at 46-56, 79-94).  Before the District Court, Mr. Mestas claimed he

took protected medical leave, Mr. Brown belittled him, failed to provide assistance

15

and extended his probationary period because of the extended absence from work and ultimately terminated his employment for having taken that protected leave in violation of 42 U.S.C. § 12203(b). *Id.* In his *Motion for Partial Summary Judgment*, Mr. Mestas asked the District Court to rule, based on facts presented by Mr. Mestas, as a matter of law, that his medical leave was protected conduct for purposes of his ADA retaliation claim. *Id.* at 79-80. No argument was made that Mr. Mestas's retaliation claim was based on a theory of "reasonable, good faith belief that he was disabled and needed accommodation at work."

The evidence concerning Mr. Mestas's ADA retaliation claim clearly established that Mr. Mestas was off work due to his work injury for approximately 6-7 weeks. *Id.* at 107. Dr. Yakel released Mr. Mestas to return to work to his regular duties with the Town of Evansville with no restrictions. *Id.* at 106-7. The medical release contained no information concerning a physical impairment, and no information concerning whether Mr. Mestas had a physical impairment which substantially limited a major life activity as compared to most people in the general population. 29 C.F.R. 1630.2(j), Aplee. Supp. App. at 23.

Between January 14, 2013, and April 17, 2013, Mr. Mestas did not present his employer with any doctor's statement or order which stated he had any

16

restrictions  regarding the performance of his regular job duties with the Town of

Evansville. (Aplt. App. at 107).

Upon return from taking medical leave, Mr. Mestas returned to the same job

and job duties and  received the same pay and same benefits as he had received

prior to the medical leave.  *Id.* at 107-8.  There was no reduction in the amount of

work tasks that he was assigned from that which he performed on November 26,

2012; there was no reduction in the nature of work tasks that he was assigned from

that which he performed on November 26, 2012.  *Id.* at 108.  The Town of

Evansville expected Mr. Mestas to perform all the duties required of his position

when he returned to work on January 14, 2013, through the date of his

termination. *Id.* at 107.  There was never a report to the Town that Mr. Mestas had

re-injured his back or he was under any restrictions.

Mr. Mestas maintained that upon his return to work in January, 2013, he

could and did perform the essential functions of his position without

accommodation, (*Id.* at 87) and so stated in making his claim to the EEOC.

(Aplee. Supp. App. at 8-12).

Mr. Mestas  claimed Mr. Brown terminated his employment on April 17,

2013,  in retaliation for his having taken a medical leave five and a half months

earlier.  (Aplt. App. at 92-3).  The burden was on Mr. Mestas to come forward

17

with evidence which established that termination was "on account of" or motivated by his having taken that medical leave, and that the medical leave was protected by the ADA. To do so, Mr. Mestas had to come forth with some showing of a causal connection between that leave and the subsequent termination. There was no evidence presented, direct or indirect, which supported that causal connection between Mr. Mestas having taken medical leave five and a half months earlier and his termination.

Mr. Mestas's *Motion for Partial Summary Judgment* claimed Mr. Mestas had engaged in protected activity under the ADA by taking medical leave after his work-related injury. In addressing that claim, the District Court noted the Tenth Circuit has recognized that requests for limited leave for medical treatment may qualify as a reasonable accommodation under the ADA. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 967 (10th Cir.2002). However, nothing in the case suggested that Mr. Mestas's medical leave was a protected activity under the ADA.

Although Mr. Mestas sought partial summary judgment to establish that the medical leave taken was protected conduct for purposes of his ADA retaliation claim, he did not present evidence which supported his claim or demonstrated that he was entitled to judgment in his favor as a matter of law. He made no showing

18

of a request for an accommodation of time off under the ADA to recover from his injury. There was no evidence that he took steps to classify his medical leave from November to January as a reasonable accommodation.

Mr. Mestas asserted there is no requirement that he specifically invoke the provisions of the ADA in order to be entitled to the protections of the ADA. However, Mr. Mestas brought the ADA retaliation claim, and he had the burden of establishing that he engaged in a protected activity under the ADA. An employee does not just "take" ADA leave as a reasonable accommodation without any notice or discussion with his employer. ADA leave as a reasonable accommodation is not mandatory or automatic, rather it is part of the accommodation discussion, which includes a determination of whether leave poses a hardship to the employer. (See 29 C.F.R. § 1630.2(o)(3)(4). 29 C.F.R. to part 1630 provides a detailed description of the interactive process). The District Court noted there was no evidence presented that the leave taken following the injury was taken as a part of an "accommodation" provided by the Town. There was no evidence in the record to support his claim that his medical leave from November to January was a protected activity under the ADA. Since Mestas did not bring forth evidence to establish that he engaged in a protected activity under the ADA, he failed to establish a prima facie claim for retaliation under the ADA.

19

Mr. Mestas also was not a qualified individual on his date of termination of April 17, 2013, and any ADA claim related to his termination fails since he was no longer able to perform the essential functions of his position. A court looks only to whether Mr. Mestas was qualified at the time of his termination. *Moss v. Harris County Constable Precinct One,* 851 F.3d 413, 418 (5th Cir.2017).

Mr. Mestas by his own statements made in his claim for Social Security Disability benefits, stated that he was totally disabled from performing various work activities as of April 16, 2013, (Aplt. App. at 116-7) and that the disability for which he was applying for Social Security Disability benefits was present at the time he was terminated from the Town of Evansville on April 17, 2013. *Id.*

While Mr. Mestas argued that he was not required to produce an explanation as to the inconsistencies in his statements, the case law indicates otherwise. A person seeking to assert a claim under the ADA who has made an application for disability benefits, and asserts that he is unable to work, he must produce an explanation of this apparent inconsistency that is "sufficient" to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807 (1999).

Mr. Mestas offered no explanation for the inconsistency between his sworn testimony in applying for SSDI , and his claim to the EEOC, and then to the District Court that he is a qualified individual with a disability who can perform the essential functions of the job. In fact, here, as in *Cleveland, supra,* the only evidence he uses to support his contention is that the statutes have different standards for determining disability. (Aplt. App. at 700). In *Motley v. New Jersey State Police*, 196 F.3d 160, 166 (1999), the court noted that simply averring that the statutory schemes differ is not enough to survive summary judgment in light of *Cleveland*. In addition, the *Cleveland* court held that a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or own previous sworn statement." *Cleveland*, *supra*, at 806.

In this situation, Mr. Mestas was not able to perform the essential functions of his position as of the date of termination, according to his own statements made under oath. (Aplt. App. at 700). As such, by his own admission, he was not a qualified individual with a disability, able to perform the essential function of the position, and a person to whom ADA would provide a claim related to his termination. Consequently, Mr. Mestas failed to establish a prima facie case of retaliation under the ADA claim of "Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA " as first plead

21

and argued to the District Court, and his claim failed as a matter of law, and summary judgment in favor of the Town was appropriate.

**(3)    This Court should apply "Theory Forfeiture" to Mr. Mestas's argument that he presented sufficient evidence to survive summary judgment based on an ADA retaliation claim based on Mr. Mestas's "reasonable, good faith belief that he was disabled and needed an accommodation at work."**

Mr. Mestas now argues a new and different legal theory for his ADA retaliation claim than was argued and presented to the District Court.  The original claim which was plead, presented to, and argued before the District Court, was one of "Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.  Now, Mr. Mestas argues for the first time on appeal, an ADA claim which is based on him holding a "reasonable, good faith belief that he was disabled" and that he needed an accommodation at work, which was not provided.

In response to this new theory of ADA retaliation, the Court's attention is directed to the concept of "theory forfeiture."  Under "theory forfeiture" when a party raises a legal theory on appeal which was not argued or raised in the district court, the appeals court treats the theory as forfeited and the appeal fails unless the party demonstrates the district court plainly erred in granting summary judgment–something Mr. Mestas has not attempted to do in this case.  As stated in

*Parker Excavating, Inc. v. Lafarge West, Inc., et.al,* 863 F.3d 1213, 1222 (10th Cir.2017):

> When a plaintiff raises a legal theory on appeal that was not raised in district court, we consider that theory forfeited. *Richison v. Ernest Grp., Inc.,* 634 F.3d 1123, 1127028 (10th Cir.2011). An appellant's failure to argue for plain error on appeal "marks the end of the road for an argument for reversal not first presented to the district court. *Id.* at 1131. "To show plain error, a party must establish the presence of (1) error; (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1128.

In *Parker*, the appellant argued that to preserve an issue, it needed only to allege its retaliation claim in the district court and then could present any supportive legal theory for the first time on appeal. The appeals court rejected that argument finding it had no legal support. *Parker, supra*, at 1223.

It is submitted "theory forfeiture" is applicable to Mr. Mestas's new ADA retaliation legal theory, and disposes of Mr. Mestas's argument that he presented sufficient evidence to survive summary judgment on an ADA retaliation claim based on a theory of Mr. Mestas's "reasonable, good faith belief that he was disabled and needed an accommodation at work." The Court should not reverse the District Court's *Order of Summary Judgment* in favor of the Town based on this new theory of ADA retaliation.

In addition, the arguments actually presented to the District Court regarding summary judgment, and statements made by Mr. Mestas, directly contradict that Mr. Mestas had a "reasonable, good faith belief that he was disabled and needed an accommodation at work." For example, Mr. Mestas asserted in his brief in support of his motion for partial summary judgment "that when he returned to work from his medical leave and was able to perform his job duties <u>without accommodation</u>" that he none the less was disabled because he had a "record of" a disability based on that medical leave. Aplt. Appl. at 82. Mr. Mestas further stated that "after returning to work in January of 2013, Mr. Mestas was physically able to perform his job duties without any work restrictions. *Id.* at 84, 97.

When Mr. Mestas made a claim for Social Security Disability benefits he asserted he was totally disabled from working commencing on April 16, 2013. Aplee. Supp. App. at 13-22. The Social Security Administration found that his total disability began on April 16, 2013. *Id.* The logical conclusion from that statement is that <u>prior</u> to the date of April 16, 2013, Mr. Mestas did not hold a reasonable, good faith belief that he was disabled otherwise he would have so stated in his application for SSDI.

Mr. Mestas repeatedly stated that he performed the essential functions of his position with the Town in a satisfactory manner and without reasonable

24

accommodation.  Those type statements indicate Mr. Mestas did not hold a
reasonable, good faith belief that he was disabled  from the time period that he
returned to work in January until his termination.

 As noted above, Mr. Mestas was only off work for 6-7 weeks, and he was
released  to return to his regular job duties, with no restrictions.  During the period
of his employment from January 14, 2013, to his termination, no restrictions were
placed upon him or his activities at work by his physician from which Mr. Mestas
could reasonably develop a "reasonable, good faith belief that he was disabled"
and needed an accommodation at work.

In conclusion, an ADA retaliation claim based upon a reasonable, good faith
belief that he was disabled and needed an accommodation at work, is a new theory
being offered for the first time on appeal and should be deemed by this Court to
have been forfeited.  In addition, Mr. Mestas has failed to show there was plain
error committed by the district court below.  As such, the argument now presented
that sufficient evidence was presented for the ADA retaliation claim to survive
summary judgment in favor of the Town on the basis that Mr. Mestas had a
"reasonable good faith belief that he was disabled" fails.

> **D.**    **Relief Sought on Mr. Mestas's ADA Retaliation Claim.**

For the reasons stated above, this Court should affirm the District Court's

grant of summary judgment in favor of the Town on Mr. Mestas's ADA claim of

retaliation. Under "theory forfeiture" the Court should not entertain Mr. Mestas's

appeal on a new theory of ADA-related retaliation or reverse the District Court's

order granting summary judgment to the Town on any ADA retaliation claim.

**Argument 2.**     **The Court should affirm the District Court's order granting summary judgment in favor of the Town of Evansville on Mr. Mestas's claim of discrimination based on national origin as there are no genuine issues as to any material fact and the Town, as the moving party, is entitled to judgment in its favor as a matter of law.**

**A.     Applicable Standard of Review.**

The Town moved for summary judgment on Mr. Mestas's Title VII claims.

(Aplt. App. at 103-104). The District Court granted the Town's motion and

dismissed Mr. Mestas's Title VII claims with prejudice. *Id.* at 724-25. On appeal,

this Court reviews, *de novo*, the District Court's grant of summary judgment in

favor of the Town under the well known standard that "Summary judgment is

appropriate if the movant shows that there is no genuine dispute as to any material

fact, and the movant is entitled to judgment as a matter of law." *Davis, supra*, at

1170. An issue is "genuine" if there is sufficient evidence on each side so that a

rational trier of fact could resolve the issue either way, and an issue of fact is

"material" if under the substantive law it is essential to the proper disposition of the claim. *Lounds, supra.* The Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party. *Lounds, supra.* Even so, in order to survive a motion for summary judgment, the non-movant, Mr. Mestas, in this case, must still identify sufficient evidence, meaning evidence which establishes material facts which create a genuine dispute, which dispute requires submission to the jury. *Id.* Failure to present evidence necessary to prove an essential element which has been challenged renders all other facts immaterial. *Koch, supra*, at 1212.

**B.    Discussion of the Issues.**

Mr. Mestas asserts he was subjected to discrimination based on his national origin in violation of 42 U.S.C. § 2000e-2. Mr. Mestas's claim is twofold. First, that he was subjected to national origin based harassment and intimidation that affected a term, condition or privileged of employment and was so pervasive and egregious that it altered the working conditions of his employment and created a hostile working environment. Secondly, that his discharge from employment with the Town was because of or motivated by his national origin and/or that he was discharged after he complained to his supervisor of the national origin based harassment.

27

### (1)    Mr. Mestas was not subjected to national origin based harassment.

The material facts set forth above under **Statement of the Case and Facts**, (paragraphs 3H, 3I, 3J, 3K and 3L), were taken as undisputed facts for purposes of the Town's summary judgment motion.  Mr. Mestas was the source of those material facts upon which the Town relied in making its summary judgment motion.  In response to requests for admissions, Mr. Mestas admitted that Mr. Brown spoke the words "stupid beaner" or "dumb Mexican" on three occasions between February 22, 2013, and April 17, 2013.  (Aplt. App. at 108).  The first two occasions were February 22, 2013, and March 27, 2013.  *Id.* at 50, 334-40, 694.  The third occasion was on April 15, 2013, when Mr. Mestas asked to use his personally owned snow blower to shovel snow at Town Hall and Mr. Brown refused the request, saying it would take him too long to get his snow blower, which was at Mr. Mestas's home a few blocks away, and told Mr. Mestas "that's what I have Mexicans for, to do this work" or words to that effect.  *Id.* at 112-3.

In response to Interrogatory No. 11, which asked how many different occasions Mr. Mestas  personally heard Mr. Brown speak the words "Stupid Beaner" or "Dumb Mexican," who those words were directed to, and where it occurred, Mr. Mestas answered:

I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees. <u>These were general comments, references and jokes, not directed specifically at any one person,</u> that included derogatory references <u>about</u> Hispanics. Also before and during weekly morning meetings in the Public Works maintenance garage in the presence of other Public Works employees, Dale Brown and other employees would joke <u>about</u> Hispanics or other ethnic and racial minority groups. I personally heard Dale Brown make derogatory comments <u>about</u> Hispanics on at least six occasions, if not more. (Emphasis added.)

*Id.* at 115.

In his brief, Mr. Mestas references snippets of Reyna's, Edmond's and Adcock's testimonies, who confirm, not contradict and create a genuine issue of material fact, relative to the evidence presented by the Town in support of its motion for summary judgment. (Appellant Roy Mestas's Opening Brief at p. 6-7). It is submitted that repeating multiple witnesses' testimony concerning the same isolated incident/event is cumulative evidence and does not create many different events occurring on multiple different occasions, and does not amount to evidence of or create an environment wherein there is a steady barrage of opprobrious comments nor does it create an environment that was so pervasive and egregious that it altered the working conditions of Mr. Mestas's employment and created a hostile working environment. *Id.*

29

Mr. Mestas did not file a grievance with the Town concerning Mr. Brown's comments as described above; did not file a formal written complaint with the Town concerning Mr. Brown's comments as described above; did not file an informal complaint with the Town concerning Mr. Brown's comments as described above; did not personally speak to any of Mr. Brown's supervisors at the Town concerning Mr. Brown's comments; or, personally speak to the mayor or any council members at the Town concerning Mr. Brown's comments. *Id*. at 109.

During Mr. Mestas's period of employment with the Town, there was no change in his job duties, pay, benefits; there was no change in the nature or amount of the work tasks assigned. *Id*. at 107-8.

**(2)    Discussion of law applicable to Mr. Mestas's claim of national origin based harassment.**

42 U.S.C. § 2000e-2 (a)(1) provides, in pertinent part, that it shall be an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

The requirements to establish a Title VII hostile work environment claim, established long ago in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-66

(1986), are: (1) the employee is a member of a protected class; (2) the employee was subjected to unwelcome harassment; (3) that harassment was based upon membership in protected class; (4) the harassment was sufficiently severe or pervasive so as to alter conditions of the employee's employment and create a hostile or abusive work environment; (5) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim did in fact perceive it to be so, and (6) some basis for employer liability has been established.

Whether an individual was subjected to a hostile work environment depends on the totality of the circumstances. In examining whether an environment is sufficiently hostile or abusive for purposes of Title VII, courts consider the totality of the circumstances, including such factors as (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct was physically threatening/humiliating or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the employee's work; (5) what physiological harm, if any, resulted. *Chavez v. New Mexico,* 397 F.3d 826, 832-33 (10th Cir.2005) (quoting *O'Shea v. Yellow Tech. Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999)).

31

The law is clearly established in the Tenth Circuit that a claimant, such as Mr. Mestas, does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments. *Morris v. City of Colorado Springs,* 666 F.3d 654, 666 (10th Cir.2012). To survive summary judgment, Mr. Mestas is required to come forward with and present sufficient evidence that demonstrates there is a genuine issue or dispute as to a material fact, upon which a rational trier of fact could decide that the workplace is permeated with discriminatory intimidation, ridicule and insult based on his national origin which reaches the level that meets the legal requirement that the conduct complained of is sufficiently severe or pervasive to alter the conditions of the Mestas's employment, and that Mr. Mestas was targeted for harassment because of his national origin. *Hernandez v. Valley View Hosp. Ass'n.*, 684 F.3d 950, 957 (10th Cir.2012) (citing *Morris*, 666 F.3d at 664). The work environment must be subjectively *and* objectively hostile or abusive. *Lounds, supra*, at 1222. Mr. Mestas failed to come forward with such evidence in response to the Town's *Motion for Summary Judgment* with any such evidence.

Looking at the totality of the circumstances in this case, Mr. Mestas's claim of hostile work environment based on national origin fails, as a matter of law.

(*See* paragraphs 3H, 3I, 3J, 3K and 3L) above.  Taking as true Mr. Mestas's description of Mr. Brown's conduct, while not appropriate, such conduct did not <u>target</u> Mr. Mestas, specifically, based on his national origin, was not  pervasive, and it was not so egregious that it altered the working conditions of Mr. Mestas's employment and created a hostile working environment.

According to Mr. Mestas, Mr. Brown made comments about Hispanics that he found objectionable on three to six occasions during Mr. Mestas's period of employment with the Town.  Mr. Mestas stated  that the comments were made "about Hispanics."  Unlike the situation in *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675 (10th Cir.2007), which is discussed below, Mr. Mestas stated in response to Interrogatory No. 11, "These were <u>general</u> comments, references and jokes, <u>not directed specifically at any one person</u>, that included derogatory references about Hispanics." (Emphasis added.)  (Aplt. App. at 115).  There is no evidence presented that Mr. Brown's conduct was in any way targeted at Mr. Mestas or was physically threatening or humiliating.  Mr. Mestas testified while he had sought counseling, that counseling was not related to his termination from employment with the Town of Evansville.  *Id.* at 698.

The description contained in Mr. Mestas's brief concerning Mr. Brown's comments about Hispanics is in direct contradiction to Mr. Mestas's description

33

made under oath. While Mr. Mestas's response to Interrogatory No. 11 stated the comments were general and not directed specifically to any one person, in his brief Mr. Mestas repeatedly, incorrectly, states that Mr. Brown "<u>called</u>" [Mr Mestas] a "beaner," "a stupid beaner," and a "drunk Mexican," vulgar terms whose only purpose was to humiliate and demean. (Appellant Roy Mestas's Opening Brief at 43, 45).

Mr. Mestas argues that *Herrera, supra*, is authority for and mandates that this Court find there is a genuine issue of material fact as to the national origin harassment claim, which would require this Court to reverse and vacate the District Court's granting of summary judgment to the Town on that claim. A review of the *Herrera* decision demonstrates that Mr. Mestas's reliance is misplaced; the evidence presented in opposition to the motion for judgment in *Herrera* was entirely different than that which exists in this case.

As stated above, taking what Mr. Mestas says as true, Mr. Brown made comments about Hispanics on three to six occasions during Mr. Mestas's period of employment with the Town. Mr. Mestas stated "<u>These were general comments, references and jokes, not directed specifically at any one person,</u> that included derogatory references <u>about</u> Hispanics." (Emphasis added.) (Aplt. App. at 115). By Mr. Mestas's own admission, the comments based on national origin were not

in any way targeted at Mr. Mestas.  In contrast, in *Herrera*, Herrera's supervisor who was in Texas specifically targeted his negative comments concerning national origin <u>at</u> Mr. Herrera, and Mr. Herrera felt personally threatened and intimidated. In *Herrera*, rather than three to six general comments concerning national origin, Mr. Herrera's supervisor engaged in a number of discrete incidents of harassment specifically directed to Mr. Herrera based on his national origin; he also repeatedly specifically referred to Mr. Herrera as "the Mexican" or the "f___ Mexican" not just once or twice but every two or three days.  *Herrera*, supra.

Mr. Mestas also argues that Mr. Brown being condescending and harsh, while race-neutral, were in reality also evidence of harassment based on national origin and that showing was sufficient to create a genuine issue of material fact sufficient to avoid entry of summary judgment.  Yet, Mr. Mestas's own testimony was that Mr. Brown was condescending and harsh to everyone.  (Aplt. App. at 688).

In conclusion, as stated in *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir.2005), Title VII does not establish "a general civility code."  The run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim.  *See*, e.g., *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

wherein the Court, in discussing the Supreme Court's hostile work environment decisions, and stated that "[a] recurring point in these opinions is that simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."

    **(3)    Mr. Mestas was not discharged from his employment due to his national origin nor in retaliation for having complained to Mr. Brown concerning his comments about Hispanics.**

To prevail on a Title VII claim of discrimination retaliation, Mr. Mestas must establish that his having complained to Mr. Brown on April 1, 2013, about his comments about Hispanics played some part in the employment decision to terminate him on April 17, 2017. *Hansen v. Skywest Airlines,* 844 F.3d 914, 925 (10th Cir.2016). To prevail on a Title VII claim that he was discriminated against based on his national origin when Mr. Brown terminated his employment, Mr. Mestas must present evidence that demonstrates that his national origin was a motivating factor in that decision. While Mr. Mestas makes those allegations, he has not come forward to present any evidence that demonstrates there is a genuine issue of material fact or that demonstrates that Mr. Mestas's complaints to Mr. Brown played any part in his discharge or that his national origin was a motivating factor for his termination from employment from the Town. In the absence of

evidence which demonstrates there is a genuine issue of a material fact, summary judgment for the Town was appropriate.

## C.    Relief Sought on This Issue.

It is respectfully requested that the Court affirm the District Court's *Order Granting Summary Judgment* in favor of the Town on Mr. Mestas's claim of discrimination based upon national origin.  Taking Mr. Mestas's responses to the requests for admission, interrogatories and deposition testimony as true, there  are no genuine issues of material fact, and as a matter of law, the conduct described, while inappropriate, is not legally sufficient to establish a hostile work environment based upon national origin.  These were isolated incidents of sporadic slurs, not the required steady barrage of opprobrious comments.  The comments were general in nature and did not target Mr. Mestas.  The isolated incidents were not such as to permeate the workplace with discriminatory intimidation, ridicule and insult so as to be sufficiently severe or pervasive, as a matter of law, so as to alter the conditions of Mr. Mestas's employment.  Further, there is no evidence which demonstrates that there is a genuine issue of material fact that Mr. Mestas's national origin was a motivating factor in his termination from employment with the Town or was the reason for or a motivating factor in the decision to terminate his employment.

## CONCLUSION

The Town respectfully requests this Court affirm in all respects the District Court's Order Granting Summary Judgment in favor of the Town of Evansville.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Counsel believes oral argument may be helpful to the Court to address any legal issues presented in this appeal or questions the Court might have.

**DATED** this 6th of April, 2018.

<div style="margin-left:40%">

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Attorney for Appellee, Town of Evansville, Wyoming
MacPherson, Kelly & Thompson, LLC
616 W. Buffalo St./PO Box 999
Rawlins, WY  82301
tthompson@wyomingattorneys.net
307-324-2713

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on 6th day of April, 2018, I electronically filed the foregoing Appellee Town of Evansville, Wyoming's Brief using the Court's CM/ECF system, which will send notification of such filing to the following:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY  82070
Email: mlhayes@wyoming.com

and on the same date I mailed or served seven (7) hard copies of the foregoing by use of the United Parcel Service, overnight, postage pre-paid, to the following:

Clerk of Court
10th Circuit Court of Appeals
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

/s/   Thomas A. Thompson
For MacPherson, Kelly, & Thompson,

LLC

Electronically Filed and Mailed By: js

39

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This Appellee Town of Evansville, Wyoming's Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8653 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using WordPerfect in 14 point Plain Times New Roman.

I relied upon WordPerfect X3 to calculate the word count.  I certify the information is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

**DATED** this 6th of April, 2018.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Attorney for Appellee, Town of Evansville, Wyoming
MacPherson, Kelly & Thompson, LLC
616 W. Buffalo St./PO Box 999
Rawlins, WY  82301
tthompson@wyomingattorneys.net
307-324-2713

## CERTIFICATE OF PRIVACY REDACTIONS
## AND DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

    (1) all required privacy redactions have been made per 10th Cir. R. 25.5;

    (2) if required to file hard copies, that the ECF submission is an exact copy of those documents;

    (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Emisoft Anti-Malware - Full Edition, and according to the program are free of viruses.

**DATED** this 6th of April, 2018.

               /s/ Thomas A. Thompson
               Thomas A. Thompson, #6-2640
               Attorney for Appellee, Town of Evansville, Wyoming
               MacPherson, Kelly & Thompson, LLC
               616 W. Buffalo St./PO Box 999
               Rawlins, WY  82301
               tthompson@wyomingattorneys.net
               307-324-2713