UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 17-8092 |
| | ) | |
| TOWN OF EVANSVILLE, | ) | |
| WYOMING, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

On Appeal from the United States District Court
for the District of Wyoming

The Honorable Nancy D. Freudenthal
District Court Judge

D.C. No. 17-CV-00017-NDF

**APPELLANT ROY MESTAS'S REPLY BRIEF**

Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Tel: (307) 760-6258
E-mail: mlhayes@wyoming.com
Attorney for Roy Mestas

## TABLE OF CONTENTS

TABLE OF AUTHORITIES …..……………………………………………… iii

SUMMARY OF THE ARGUMENT……….…………………………………... 1

ARGUMENT          …………………………………………………………... 2

      I.  Summary Judgment on the ADA retaliation claim is unwarranted
because Mr. Mestas requested leave as a reasonable accommodation
for a medical condition, requested several other accommodations for
that same medical condition, and Supervisor Brown retaliated against
him shortly thereafter………………………………………………... 2

      II.  Mr. Mestas has not Forfeited his ADA Retaliation Claim because
he Never Based that Claim on Being a Qualified Individual with a
Disability………………………………………………………………. 9

      III.  Summary Judgment on the Title VII Hostile Work Environment
Claim is Unwarranted Because Supervisor Brown Created a
Pervasively Hostile Workplace Based on National Origin-Based and
National Origin-Neutral Harassment.......………………………… 12

CONCLUSION   …………………………………………………………   18

CERTIFICATE OF SERVICE………………………………………………19

CERTIFICATE OF COMPLIANCE.....…………………………………...  19

CERTIFICATE OF DIGITAL SUBMISSION………………………….......  19

# TABLE OF AUTHORITIES

## Cases

*Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998) ………………………... 5

*Cash v. Lockheed Martin Corp.*,
    2017 U.S App. LEXIS 6332 (10th Cir. 2017) (unpublished) ……………3, 10

*Chavez v. New Mexico*, 397 F.3d 826 (10th Cir. 2005) …………………………...17

*Cleveland v. Policy Mngmnt. Systems, Corp.*, 526 U.S. 795 (1999)……………… 8

*EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028 (10th Cir. 2011) …………………........ 12

*Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178 (10th Cir. 2016) …………3, 10

*Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762 (10th Cir. 1999)… 5

*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675 (10th Cir. 2007)……………………17

*Koch v. Koch Indus.*, 203 F.3d 1202 (10th Cir. 2000)……………………………... 5

*Morris v. City of Colorado Springs,* 666 F.3d 654 (10th Cir.2012) …………..16-17

*Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413 (5th Cir. 2017)…….. 8

*Parker Excavating v. Lafarge West, Inc.*, 863 F.3d 1213 (10th Cir. 2017) ……….10

*Proctor v. United Parcel Serv.*, 502 F.3d 1200 (10th Cir. 2007) …………………. 6

*Yinger v. Postal Presort*,
    2017 U.S. App. LEXIS 10184 (10th Cir. 2017) (unpublished) …………..3, 10

## Statutes

Wyoming Stat. Ann. § 27-14-407………………………………………………… 7

**Other**

EEOC Fact Sheet: The FMLA, the ADA, and Title VII of the Civil Rights Act of 1964 ……………………………………………………………………… 3- 4

EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA, No. 915.002 (10/17/02) ……………………………… 4

## SUMMARY OF THE ARGUMENT

The Town claims that summary judgment was proper on Mr. Mestas's ADA retaliation claim because he presented no evidence that his medical leave was protected activity, there is no causal connection between his medical leave and his termination, and his receipt of SSDI benefits precludes any ADA claim related to his termination because he was not a "qualified individual with a disability" on that date. These arguments have no merit. There is ample evidence that Mr. Mestas engaged in protected activity on multiple occasions. There is also direct and indirect evidence of the causal connection between that protected activity and Supervisor Brown's retaliation. Finally, his SSDI award does not conflict with his ADA retaliation claim, a claim that does not require him to show he was a qualified individual on the date of his termination.

The Town also argues that Mr. Mestas forfeited his right to appeal his ADA retaliation claim because he no longer bases his ADA retaliation claim on being a qualified individual with a disability and has instead presented a new legal theory never raised below to support his ADA claim. Again, this argument applies an element to Mr. Mestas's retaliation claim that does not exist and Mr. Mestas has never argued that he is a "qualified individual" for purposes of that claim. Even assuming the Town is correct, the district court committed plain error by making multiple legal errors in entering summary judgment for the Town on the ADA

retaliation claim, including that he must be a "qualified individual" on the date of his termination.

The Town also argues that there is no evidence of a pervasively hostile work environment to support his Title VII hostile work environment claim.  Contrary to the Town's assertions, there is ample evidence of pervasive discrimination based on Mr. Mestas's national origin as well as a retaliatory, hostile work environment after he returned from medical leave.  When a plaintiff has evidence of both national origin-based and national origin-neutral harassment, summary judgment is particularly inappropriate, especially in light of the Town's focus on whether the number of derogatory slurs Mr. Mestas heard is or is not actionable.  The jury should decide that question. Therefore, summary judgment on Mr. Mestas's Title VII hostile work environment claim is not warranted because it usurps the jury's role in this case.

**ARGUMENT**

I.   **Summary Judgment on the ADA retaliation claim is unwarranted because Mr. Mestas requested leave as a reasonable accommodation for a medical condition, requested several other accommodations for that same medical condition, and Supervisor Brown retaliated against him shortly thereafter.**

The Town contends first contends that summary judgment on Mr. Mestas's ADA retaliation claim is warranted because he claimed there was "no requirement

that he specifically invoke the provisions of the ADA in order to be entitled to the

protections of the ADA;" that he can't just 'take' ADA leave as a reasonable

accommodation without any notice or discussion with his employer; and that there

was no evidence to show that his medical leave was protected ADA activity.

Town's Brief, pp. 11 and 19. These contentions lack merit.

This Court has previously determined that an employee must be somewhat

clear in indicating the need for accommodation because of a medical condition, but

need not be terribly precise.  *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1188

(10th Cir. 2016).  *See also Cash v. Lockheed Martin Corp.*, 2017 U.S App. LEXIS

6332 (10th Cir. 2017) (unpublished) (hearing impaired employee "triggered the

reasonable accommodation process" by providing employer with audiologist's

letter stating employee had "significant hearing loss" and offering "strategies" for

communicating with him and others with hearing loss); *Yinger v. Postal Presort*,

2017 U.S. App. LEXIS 10184 (10th Cir. 2017) (unpublished) (where employee told

employer he needed an extra week of leave for his heart-related infection, that

"constituted an adequate request" for reasonable accommodation).  The EEOC has

stated that, "if an employee requests time off for a reason related or possibly

related to a disability **(e.g. 'I need six weeks off to get treatment for a back

problem')**, the employer should consider this a request for ADA reasonable

accommodation as well as FMLA leave."  EEOC Fact Sheet: The FMLA, the ADA,

and Title VII of the Civil Rights Act of 1964, p. 8 (question 16) (emphasis added), available at www.eeoc.gov.  The EEOC has also stated that when an individual informs an employer than an adjustment or change is needed simply because of "a medical condition," that is enough to qualify as a reasonable accommodation request.  EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA, No. 915.002 (10/17/02) at Question 1.

Before this Court, Mr. Mestas presented facts showing that his employer knew he had slipped on the ice and hurt his back; his back injury was so painful he could not work or perform many other activities without significant pain; he had asked his employer for suitable duties that would accommodate his physical condition; he provided the Town with medical documentation that he was "unable to work until further notice;" the Town placed him on unpaid medical leave from November 26, 2012 until January 14, 2013; he received medical treatment for his injury and Temporary Total Disability benefits while on unpaid leave; his physician indicated on the Town's insurance form that Mr. Mestas was "totally disabled;" the Town held his job open for him and he resumed his position with the same duties, pay, and benefits on January 14, 2013; he did not qualify for leave under the FMLA so the only other option for unpaid leave was under the ADA; and that his supervisor believed he was doing Mr. Mestas a big favor by not firing him while he was out on "disability."  Opening Brief, pp. 3-5 and 9.

Mr. Mestas also provided evidence that he engaged in ADA protected activity on multiple other occasions, including when he complained to Supervisor Brown about his hostile treatment, requested time off of work for a steroid injection, and asked to use his snow blower to shovel snow and to be excused from shoveling snow, all within days of being fired.  Opening Brief, pp. 15-16.

Contrary to the Town's representations and viewing the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to Mr. Mestas, he has produced sufficient evidence to establish that he engaged in protected activity on five separate occasions, including his unpaid medical leave. These facts are not analogous to the 'needle in the haystack' problem presented in *Koch v. Koch Indus.*, 203 F.3d 1202 (10th Cir. 2000), wherein this Court "reviewed all of the record evidence which might support the Plaintiffs' claim" and found none.  *Koch*, 203 F.3d at 1213 (citing *Adler v. Wal-Mart Stores*, 144 F.3d 664, 672 (10th Cir. 1998) and *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 773 n.5 (10th Cir. 1999) ("In the absence of sufficient citation to record support for a party's allegations, we decline to search for the proverbial needle in a haystack.")).  Here, the evidence demonstrates that Mr. Mestas's medical leave, his complaint to Supervisor Brown, and his three other requests for accommodations of his medical condition all constituted protected activity under the ADA.  Thus, taking the facts and all reasonable inferences therefrom in the light most favorable

to Mr. Mestas, the Town is not entitled to judgment as a matter of law on the ADA

retaliation claim.

The Town also contends that there was "no evidence presented, direct or

indirect, which supported that causal connection between Mr. Mestas having

taken medical leave five and a half months earlier and his termination." Town's

Brief, p. 18. Mr. Mestas presented ample evidence of retaliatory motive, which

can be inferred from the short time period between protected activity and adverse

employment actions, specifically termination within three months after returning

from medical leave, two months after complaining about Brown's hostile treatment,

and days after making three requests for reasonable accommodations of his back

condition, in addition to retaliatory conduct during that time. *Proctor v. United

Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007). Additionally, direct evidence

of Supervisor Brown's retaliation is revealed by his angry statements and

unfounded accusations made in mid-February 2013, in response to Mr. Mestas's

complaint about Brown's hostile treatment, such as: "I'm still frustrated with your

back" and Mestas "could have come in and done light duty work." (Aplt. App. at

272-73). By mid-February, Mr. Mestas was performing his job duties without any

accommodation for his back injury, so at that point, why was Brown still

"frustrated" with his back? Medical documentation provided to the Town indicated

that during his medical leave, Mr. Mestas was "unable to work" and his doctor did

not clear him to return to work until January 14, 2013. Had Mr. Mestas returned to light duty work prior to getting a medical release, he may have jeopardized medical coverage related to his workplace injury under Worker's Compensation, for which he later underwent two surgeries. *See* Wyoming Stat. Ann. § 27-14-407 (Forfeiture of benefits due to injurious practice). In short, there is evidence in the record to support the causal connection between Mr. Mestas engaging in protected activity and Supervisor Brown's retaliation.

Finally, the Town maintains that summary judgment on the ADA retaliation claim is proper because Mr. Mestas "was not a qualified individual on his date of termination of April 17, 2013, and any ADA claim related to his termination fails since he was no longer able to perform the essential functions of his position." Town's Brief, p. 20. The Town contends that in this appeal, Mr. Mestas offers "no explanation" for the inconsistency between his SSDI application and his contention that "he is a qualified individual with a disability who can perform the essential functions of the job. In fact, here . . . the only evidence he uses to support his contention is that the statutes have different standards for determining disability." Town's Brief, p. 21. Mr. Mestas has made no such argument to this Court. Opening Brief at 37. Moreover, the Town relies on two cases where plaintiffs asserted ADA claims for their employers' failure to reasonably accommodate their disabilities after they had applied for SSDI benefits. Town's Brief, pp. 20-21,

citing *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413 (5th Cir. 2017)

and *Cleveland v. Policy Mngmnt. Systems, Corp.*, 526 U.S. 795 (1999). An

essential element of a failure to accommodate claim is that the employee is a

qualified individual with a disability who could perform the essential duties of his

or her job with reasonable accommodation. *Cleveland*, 526 U.S. at 799; *Moss*, 851

F.3d at 417.

Mr. Mestas's ADA retaliation claim does not require him to be a qualified

individual with a disability and therefore does not conflict with his SSDI

application. Opening Brief at 37. Moreover, Supervisor Brown did not fire Mr.

Mestas because Mestas could not perform the essential functions of his job, but

instead because purportedly and pretextually, Brown believed Mestas was lazy,

unmotivated, full of excuses, would disappear from the job-site, didn't get along

with co-workers, and had "anti-social" tendencies. (Aplt. App. at 545, 550-53 and

614-15). Brown's retaliation took many forms that predated him firing Mr. Mestas.

And whether Supervisor Brown terminated Mr. Mestas's employment as

retaliation for engaging in protected activity or because of his national origin are

questions of fact for the jury to determine. Therefore, contrary to the Town's

arguments, Mr. Mestas's ADA retaliation claim does require him to prove he was a

"qualified individual" on the day he was terminated.

8

**II.  Mr. Mestas has not Forfeited his ADA Retaliation Claim because he Never Based that Claim on Being a Qualified Individual with a Disability.**

Mr. Mestas alleged in his Amended Complaint that the Town of Evansville engaged in unlawful retaliation after he "took protected medical leave that was a reasonable accommodation for his disabling back condition . . . ." (Aplt. App. at 54-55 ¶ 57 and 166).  He also argued at summary judgment that to prosecute an ADA retaliation claim, "'a plaintiff need not show that []he suffers from an actual disability.'" (Aplt. App. at 86 and 166) (quoting *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) and 42 U.S.C. § 12203(a)).  He further argued that "conduct protected under the ADA includes medical leave to receive treatment for or to recover from an injury" and that he must show "that he was subjected to an adverse employment action because he took medical leave protected by the ADA."  (Aplt. App. at 166 and 167).

Nevertheless, the Town contends that Mr. Mestas has forfeited this claim because he no longer "argues or bases his ADA retaliation claim on . . . being a qualified person with a disability because of a record of a disability," but rather on his "reasonable, good faith belief that he was disabled and needed accommodation at work."  Town's Brief, p. 8 (quoting Mr. Mestas's Opening Brief, p. 22, without properly attributing the quote to language quoted directly from *Foster*, 830 F.3d 1178, 1186).  The Town here conflates an element of Mr. Mestas's ADA hostile

work environment claim (the dismissal of which he has not appealed) that he must

be a "qualified individual with a disability" with his ADA retaliation claim that

contains no such requirement.  Mr. Mestas argued at the district court and here on

appeal that his requests for accommodations of his back injury, without using any

specific words or ever referring to the ADA, as well as his medical leave for that

injury, constitute protected activity and for which Brown retaliated against him.

*Foster*, 830 F.3d 1178, 1188; *Cash v. Lockheed Martin Corp.*, 2017 U.S App.

LEXIS 6332 (10th Cir. 2017) (unpublished); *Yinger v. Postal Presort*, 2017 U.S.

App. LEXIS 10184 (10th Cir. 2017) (unpublished).

The Town's reliance on *Parker Excavating v. Lafarge West, Inc.*, 863 F.3d

1213 (10th Cir. 2017), for its theory forfeiture contention is misplaced.  In *Parker*,

the plaintiff never responded to the defendant's assertion at summary judgment

that it could not be held liable for retaliatory conduct perpetrated by an unrelated

third party.  863 F.3d at 1222.  This Court applied theory forfeiture in that case

because arguments made by the plaintiff on appeal were not presented below.

*Parker*, 863 F.3d at 1224.  That is simply not the case here. Mr. Mestas has

consistently maintained that the Town retaliated against him for taking medical

leave as a reasonable accommodation to receive treatment for and to recover from

a workplace injury and that the medical leave was activity protected by the ADA,

as were his multiple other requests for accommodations of his back condition.

If this Court decides that Mr. Mestas did not make these arguments below and reviews this issue for plain error, Mr. Mestas can establish that the district court committed plain error by granting summary judgment to the Town on the ADA retaliation claim.  To establish plain error, Mr. Mestas must show an error that is plainly on the record, which affects his substantial rights and seriously affects the fairness, integrity or public reputation of the judicial proceedings. *Parker Excavating, Inc.*, 863 F.3d at 1222. The district court below erred by making the following legally incorrect conclusions on the record: that at the summary judgment hearing, "Mestas's counsel argued that Mestas did not have to specifically invoke the provisions of the ADA to be entitled to the protections of the ADA;" that there is "no evidence in the record to support Mestas's claim that his medical leave from November to January was a protected activity under the ADA" because he never took steps to "classify" it as such; and that in any event, on the date of his termination, Mestas was not a qualified individual, because he was not able to perform the essential functions of his position" so any ADA claim related to his termination fails . . . ."  (Aplt. App. at 732-34).

These are legally erroneous conclusions plainly on the record because an individual must only "let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. To request accommodation, an individual may use 'plain English' and need not mention the

ADA or use the phrase 'reasonable accommodation.'" *EEOC v. C.R. Engl., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011).  There is no requirement for Mr. Mestas to have asked his employer for a "reasonable accommodation under the ADA" for his known back injury after providing a doctor's note that he is "unable to work until further notice."  Nor is there any requirement for him to "classify" his medical leave as a reasonable accommodation under the ADA; neither the district court nor the Town cited any authority for this proposition.  Finally, the district court conflated the elements of his ADA hostile work environment and ADA retaliation claims. Based on these legal errors, the district court concluded that his six-week medical leave for his back injury was not activity protected by the ADA.

Dismissing Mr. Mestas's ADA retaliation claim on the basis of these legal errors affected his substantial rights by depriving him of his right to present a legally valid retaliation claim to a jury.  Dismissal further seriously affected and undermined the fairness of the judicial proceedings by imposing on Mr. Mestas requirements that have no basis in the law.  For these reasons, Mr. Mestas has established that the district court committed plain error and that the Town is not entitled to summary judgment on his ADA retaliation claim.

### III.  Summary Judgment on the Title VII Hostile Work Environment Claim is Unwarranted Because Supervisor Brown Created a Pervasively Hostile Workplace Based on National Origin-Based and National Origin-Neutral Harassment.

The Town maintains that summary judgment on the Title VII hostile work

environment claim was proper because Supervisor Brown's "conduct did not target Mr. Mestas, specifically, based on his national origin, was not pervasive, and it was not so egregious that it altered the working conditions of Mr. Mestas's employment and created a hostile working environment." Town's Brief, p. 33. The Town suggests that without evidence of a 'steady barrage of opprobrius comments,' Mr. Mestas's Title VII claim fails. This argument ignores the national origin-based and national origin-neutral hostility that Mr. Mestas endured during his short six-month tenure as well as the fact that the workplace was permeated with racially hostile slurs and derogatory comments directed at Mr. Mestas, citizens of Evansville, and Hispanics and other minority groups in general.

In a declaration, Mr. Mestas swore that on multiple occasions during his employment with the Town of Evansville, Supervisor Brown repeatedly made derogatory remarks about Hispanics. Supervisor Brown frequently called subordinates, including Mr. Mestas, as well as citizens of the Town of Evansville, "beaners" or "stupid beaners." On multiple occasions during regular weekly morning safety meetings with Public Works Department employees, Supervisor Brown told, participated in, and condoned the telling of "minority" jokes. (Aplt. App. at 609-10). Supervisor Brown was hostile and condescending to Mr. Mestas in these meetings in front of his co-workers. (Aplt. App. at 174, Mestas Declaration, ¶¶ 13-15). Mr. Mestas heard Brown use the words "stupid beaner,"

"dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees. These were general comments, references and jokes, not directed specifically at any one person, that included derogatory references about Hispanics. Mr. Mestas personally heard Brown make derogatory comments about Hispanics on at least six occasions, if not more. (Aplt. App. 115, Plaintiff's Response to Interrogatory 11).

On or about February 22, 2013 and again on or about March 27, 2013, Mr. Mestas documented in his memo pad that Supervisor Brown had made a "stupid beaner" remark. On at least two separate occasions, Mr. Mestas complained directly to Brown that his derogatory comments regarding Hispanics were offensive.  Mr. Mestas documented one of those occasions in his memo pad on April 1, 2013, two weeks before Brown fired him. (Aplt. App. at 174, Mestas Declaration, ¶¶ 13-15). When Mr. Mestas complained to Supervisor Brown about the derogatory slurs, Brown never told Mestas to file a complaint or grievance at the Town Hall but instead said he 'refers to his wife like that all the time,' yet another discriminatory comment that hardly excused his offensive behavior.[1]  (Aplt.

---

[1] Dan Adcock confirmed that he had heard Supervisor Brown use the term "beaner" "many times" outside of the workplace and also had heard him refer to his wife as a beaner. (Aplt. App. at 442-43).

App. at 177 ¶33).  Lastly, while shoveling snow two days before he was fired, Mr.

Mestas asked Brown if he could use his own snow blower because of back pain.

Supervisor Brown denied his request for a snow blower and said, 'that's what I

have Mexicans for, to do this work.' (Aplt. App. at 179, Mestas Declaration, ¶¶ 46-

47).

Mr. Mestas's accounts of Supervisor Brown's derogatory slurs and racial

animus were corroborated by co-workers, including Ron Emond, who heard

Brown call Mestas a "stupid beaner" sometime after Mr. Mestas returned from

medical leave. (Aplt. App. at 393-94). Eric Reyna also testified that Supervisor

Brown would make derogatory comments to him about Hispanics that he would

relay to Mr. Mestas.  (Aplt. App. at 351).  Mr. Reyna also described a specific

incident when Brown had made a derogatory comment to Reyna and Mestas about

"Mexicans" that Reyna described as "pretty upsetting."  (Aplt. App. at 351).

Taking the evidence and all reasonable inferences that may be drawn therefrom in

the light most favorable to Mr. Mestas, there were rude and racist jokes and

comments made in general office banter that Supervisor Brown participated in and

condoned, Mr. Mestas himself heard Brown make derogatory comments about

Hispanics on at least six occasions, if not more, Mr. Reyna conveyed to Mr.

Mestas other derogatory comments made by Supervisor Brown that Mr. Mestas did

not hear directly, and Mr. Emond heard Brown call Mestas a "stupid beaner."

The Town contends that "Brown's conduct, while not appropriate, . . . did not target Mr. Mestas, specifically, based on his national origin . . . ." Town's Brief, p. 33. Brown's conduct is similar to calling women "dumb broads" repeatedly, treating them in a dehumanizing and hostile manner, and contending that any female employee hearing those remarks or being subjected to that treatment needn't be offended because the comments were not targeting them specifically. Sexist and racial slurs are classic "othering" comments. Brown's insulting slurs reflected his mental classification of Mr. Mestas and Hispanics generally as "not one of us," in some way less human and less worthy of respect and dignity. Supervisor Brown's offensive comments were demeaning, discriminatory and pervasive given Mr. Mestas's limited six-month tenure in his job.

The Town contends that Title VII is not a "general civility code" and Mr. Mestas did not establish that the environment was pervasively hostile because there must be a steady barrage of opprobrious comments rather than just a few isolated incidents of sporadic slurs, citing *Morris v. City of Colorado Springs,* 666 F.3d 654, 666 (10th Cir.2012). The facts in *Morris* involved two incidents directed toward the plaintiff (flicking her in the head) and one that did so only ambiguously (tossing a surgical tissue that touched her leg). *Morris*, 666 F.3d at 658-59. Mr. Mestas's case is different, both in terms of the nature of the harassment as well as its intensity and pervasiveness. As this Court determined in *Herrera v. Lufkin*

*Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007), "'[f]acially neutral abusive conduct can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct.'" *Herrera*, 474 F.3d at 682, n.7 (quoting *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005). This is because in a hostile environment claim, it is the environment that is important and racially-neutral harassment "makes up an important part of the relevant work environment." *Id.* The Court in *Herrera* determined that "by framing the evidence on *summary judgment* within the context of this particular workplace, we eliminate the suggestion that a certain number of comments is or is not actionable ... and leave the resolution to the trier of fact."

Here, as in *Herrera*, there were racist comments made to Mr. Reyna, to Mr. Mestas, to Mr. Emond, and in the office generally. There was also an environment of hostility and harsh, demeaning conduct after Mr. Mestas returned from unpaid medical leave. For these reasons, the facts and all reasonable inferences that may be drawn therefrom support the existence of pervasive discrimination. Therefore, the Town is not entitled to judgment as a matter of law on Mr. Mestas's Title VII hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the district court's order dismissing Mr. Mestas's ADA retaliation and Title VII hostile work environment claims at summary judgment with prejudice should be reversed.  The case should be remanded to the district court with directions to deny the Town's Motion for Summary Judgment on the ADA retaliation and Title VII hostile work environment claims and to reinstate the case for trial.

Respectfully submitted this 17th day of April, 2018.

s/ Megan L. Hayes

_____

Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6258
E-mail: mlhayes@wyoming.com

Attorney for Roy Mestas

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2018, I deposited a true and correct copy of the foregoing **APPELLANT ROY MESTAS'S REPLY BRIEF,** by this Court's CM/ECF system and by United States mail, postage prepaid, addressed to:

Thomas Thompson
tthompson@wyomingattorneys.net

/s  Megan L. Hayes

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. Aplt. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 4,231 words.  I relied upon Microsoft® Office Word 2017 SP2 to calculate the word count.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that pursuant to this Court's General Order dated March 18, 2009 that there are no required privacy redactions to be made to this document or its attachments, and that this document and its attachments have been scanned for viruses with Norton AntiVirus (Symantec Corporation) version 14.2.0.29 (updated on January 1, 2018) and are free of viruses.

s/   Megan L. Hayes